HOLLAND & KNIGHT LLP
Warren E. Gluck, Esq.
Barbra R. Parlin, Esq.
Robert J. Burns, Esq.
K. Blythe Daly, Esq.
31 West 52nd Street
New York, New York 10019
Telephone: (212) 513-3200
Facsimile: (212) 385-9010

*Counsel for the Liquidators of the Master Fund*

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P. (IN OFFICIAL LIQUIDATION), *et al.*,[1]<br><br>Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 16-12925 (SCC)<br><br>(Jointly Administered) |
| PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P.,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL M. GOLDBERG,<br><br>Defendant. | Adv. Pro. No. 18-__________<br><br>**COMPLAINT** |

Martin Nicholas John Trott and Christopher Smith, the current and duly appointed joint official liquidators ("**Liquidators**") of the Platinum Partners Value Arbitrage Fund L.P. (in

[1] The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, follow in parentheses: Platinum Partners Value Arbitrage Fund L.P. (in Official Liquidation) (1954); Platinum Partners Value Arbitrage Fund (International) Ltd. (in Official Liquidation) (2356); and Platinum Partners Value Arbitrage Intermediate Fund Ltd. (in Official Liquidation) (9530).

Official Liquidation) ("**Master Fund**" or "**PPVA**"), in liquidation by way of the Financial Services Division of the Grand Court of the Cayman Islands (cause no. FSD 131 of 2016 (NSJ)), by their undersigned United States counsel, Holland & Knight LLP, as and for their Complaint in this adversary proceeding against Defendant Michael M. Goldberg ("**Goldberg**"), allege as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. At all relevant times, PPVA was a hedge fund organized as a Cayman Islands exempted limited partnership. PPVA's business included making investments in companies across various sectors.

2. By orders dated August 25, 2016, October 27, 2016, December 16, 2016, September 29, 2017, and July 6, 2018 (the "**Cayman Liquidation Orders**"), the Financial Services Division of the Grand Court of the Cayman Islands ("**Cayman Court**") directed the official winding up of PPVA (the "**Cayman Liquidation Proceeding**"), and has appointed Martin Trott and Christopher Smith of RHSW (Cayman) Ltd. as PPVA's current joint official liquidators.

3. Upon information and belief, Goldberg resides at 207 Booth Avenue, Englewood, New Jersey.

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

6. This adversary proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

## GENERAL ALLEGATIONS

### A.    PPVA's Warrants

7.    On information and belief, Navidea Biopharmaceuticals, Inc. ("**Navidea**") is, and at all relevant times was, a public corporation formed and existing under the laws of the State of Delaware, with its principal place of business in the State of Ohio.

8.    On information and belief, Goldberg was, at all relevant times, Navidea's President and Chief Executive Officer, and a member of Navidea's Board of Directors. On information and belief, Goldberg resigned from his roles as director and officer of Navidea, effective as of August 14, 2018.

9.    In August 2015, PPVA, together with its wholly owned subsidiary Montsant Partners LLC ("**Montsant**"), entered into a Securities Exchange Agreement ("**Exchange Agreement**") with Navidea. A Navidea 2015 Form 8-K, filed on August 26, 2015, confirmed the existence and terms of this Exchange Agreement. True and correct copies of the Exchange Agreement and the relevant pages of Navidea's 2015 Form 8-K are annexed hereto as Exhibit 1 and Exhibit 2, respectively.

10.    Pursuant to the Exchange Agreement, PPVA and Montsant exchanged 4,519 shares of Navidea Series B Convertible Preferred Stock that they owned for warrants to purchase, in the aggregate, 14,777,130 shares of Navidea common stock.

11.    Specifically, Navidea issued warrants to purchase 9,365,280 shares of Navidea common stock to Montsant, and warrants to purchase 5,411,850 shares of Navidea common stock (No. WLL15-002) to PPVA ("**PPVA Warrants**"). A true and correct copy of the certificate evidencing the PPVA Warrants is annexed hereto as Exhibit 3.

12. On information and belief, the PPVA Warrants remained PPVA's property at all relevant times through the present.

13. For example, a statement for a custodial account held by PPVA at The Bank of New York Mellon confirms that the PPVA Warrants were held as "Custody Holdings" of PPVA as of the November 2017 date thereof. True and correct copies of the relevant pages from The Bank of New York Mellon account statement for PPVA are annexed hereto as Exhibit 4.

**B. The Liquidation Proceeding**

14. Pursuant to the Cayman Liquidation Orders, the Cayman Court authorized the Cayman Liquidation Proceeding, appointed the Liquidators to oversee such proceeding, and vested in the Liquidators sole authority over the assets of PPVA and its subsidiaries.[2] True and correct copies of the Cayman Liquidation Orders are annexed hereto as Exhibits 5 – 9, respectively.

15. On or about November 22, 2016, this Court entered an order pursuant to chapter 15 of the Bankruptcy Code ("**Chapter 15 Order**"), that, among other things: (1) recognizes the Cayman Liquidation Proceeding as a foreign main proceeding; (2) recognizes the Liquidators as the foreign representatives of PPVA; and (3) enjoins all persons and entities from transferring, relinquishing, or disposing of any property of PPVA. *See In re Platinum Partners Value Arbitrage Fund. L.P. (in Official Liquidation), et al*, No. 16-12925 (SCC) (Bankr. S.D.N.Y., Doc. 27). A true and correct copy of the Chapter 15 Order is annexed hereto as Exhibit 10.

16. These developments were widely reported. On information and belief, Navidea, and its then-President and CEO Goldberg, were aware of the commencement of the Cayman

[2] Section 99 of the Cayman Islands Companies Law (2016 Revision) ("Cayman Islands Companies Law") provides that: "When a winding up order has been made, any disposition of the company's property and any transfer of shares or alteration in the status of the company's members made after the commencement of the winding up is, unless the Court otherwise orders, void." Pursuant to Section 100(2) of the Cayman Islands Companies Law: "the winding up of a company by the Court is deemed to commence at the time of the presentation of the petition for winding up." Here, the subject petition was presented on August 23, 2016.

Liquidation Proceeding and the chapter 15 case at or about the time that such events occurred.[3] Indeed, the filing of PPVA's chapter 15 case was expressly noted in Navidea's 2016 10-Q filed on November 9, 2016. True and correct copies of relevant pages from the Navidea 2016 10-Q are annexed hereto as Exhibit 11.

### C. Goldberg's Improper Exercise of PPVA's Warrants

17. In Preliminary Proxy Solicitation materials dated January 13, 2017 ("**Proxy Solicitation**"), which were signed by Goldberg as Navidea's President and CEO, Navidea claimed for the first time that on October 17, 2016—several weeks after issuance of the first of the Cayman Liquidation Orders—"Platinum-Montaur and its affiliates" [4] transferred the PPVA Warrants to Goldberg. Navidea's Proxy Solicitation did not identify the entity that allegedly transferred the PPVA Warrants to Goldberg, and did not describe the circumstances or terms of this purported transfer. True and correct copies of the relevant pages of Navidea's Proxy Solicitation are annexed hereto as Exhibit 12.

18. Navidea's Definitive Proxy Statement, dated February 8, 2017 ("**Proxy**"), signed by Goldberg as Navidea's President and CEO, states that Goldberg exercised the PPVA Warrants on or about January 17, 2017—over four months after issuance of the first of the Cayman Liquidation Orders, over two months after Navidea publicly recognized that PPVA was in liquidation and nearly two months after the Chapter 15 Order was entered. True and correct copy of the relevant pages of Navidea's Proxy are annexed hereto as Exhibit 13.

---

[3] Notice or actual knowledge of the petition for winding up is not required for the protections of Section 99 of the Cayman Islands Companies Law to apply.

[4] The reference to "Platinum-Montaur" is, presumably, a reference to Platinum-Montaur Life Sciences LLC, a Delaware LLC of which PPVA was, and is, the 99% owner. Platinum-Montaur Life Sciences LLC is a subsidiary of PPVA and, accordingly, subject to the Liquidators' exclusive control pursuant to the Cayman Liquidation Orders and the Chapter 15 Order.

19. On information and belief and assuming the accuracy of the exercise date set forth in Navidea's Proxy, at the time Goldberg improperly exercised the PPVA Warrants, Navidea's stock was trading at roughly $.61 per share. Based on this price, Goldberg converted roughly $3.3 million of PPVA's assets when he exercised the PPVA Warrants.

### D. Efforts by PPVA's Liquidators to Recover PPVA's Property

20. On March 16, 2017, upon becoming aware of the statements made in Navidea's Proxy Solicitation and Proxy concerning the purported transfer of the PPVA warrants to and exercise thereof by Goldberg, the Liquidators served a subpoena on Goldberg ("**Subpoena**"). A true and correct copy of the Subpoena is annexed hereto as Exhibit 14. Among other things, the Subpoena sought from Goldberg the production of all documents evidencing or concerning the purported October 16, 2016 transfer of the PPVA Warrants to Goldberg and/or Goldberg's purported January 17, 2017 exercise of the PPVA Warrants.

21. On April 28, 2017, Goldberg, through counsel, made his sole production of documents in response to the Liquidators' Subpoena. Notably, Goldberg's document production did not include any documents memorializing a transfer of the PPVA Warrants to Goldberg (or to anyone else), whether occurring before or after commencement of PPVA's liquidation proceedings on August 25, 2016.

22. Likewise, the Liquidators' subsequent searches of the PPVA files available to them have not revealed any documents evidencing a transfer of the PPVA Warrants to Goldberg (or to anyone else) before or after the commencement of PPVA's liquidation proceedings on August 25, 2016.

23. On November 1, 2017, the Liquidators formally demanded that Goldberg return any and all proceeds derived from his improper exercise of the PPVA warrants.

24.     On November 9, 2017, Goldberg rejected the Liquidators' demand.  Notably, although Goldberg vaguely claimed that he had "obtained the rights" to the PPVA Warrants "***long before*** the liquidation proceedings commenced" (emphasis in original), to date, Goldberg has not produced any documents evidencing any pre-liquidation transfer of the PPVA Warrants to Goldberg.

**COUNT I – TURNOVER PURSUANT TO 11 U.S.C. §§ 542, 1521(a)(5), and 1521(a)(7)**

25.     PPVA, through its Liquidators, repeats and re-alleges the allegations contained in paragraphs 1 through 24 as though fully set forth herein.

26.     Pursuant to 11 U.S.C. §§ 542, 1521(a)(5), and 1521(a)(7), the Court has the authority to order Goldberg to turn over any and all proceeds derived from his improper exercise of the PPVA Warrants, plus appropriate interest accruing from the date of such exercise.

27.     PPVA is, and at all times since August 2015 has been, the rightful owner of the PPVA Warrants.

28.     On information and belief, there was no valid transfer of the PPVA Warrants to Goldberg before the Cayman Liquidation Orders and the Chapter 15 Order were issued.  Neither PPVA's records nor Goldberg's document production evidence any valid pre-liquidation transfer of the PPVA Warrants from PPVA to Goldberg.

29.     The Cayman Liquidation Orders vest in the Liquidators sole authority over the assets of PPVA and its subsidiaries as of August 25, 2016.  The Liquidators' authority has been recognized pursuant to the Chapter 15 Order.

30.     Section 99 of the Cayman Islands Companies Law (2016 Revision) ("Cayman Islands Companies Law") provides that: "When a winding up order has been made, any disposition of the company's property and any transfer of shares or alteration in the status of the company's

members made after the commencement of the winding up is, unless the Court otherwise orders, void." Pursuant to Section 100(2) of the Cayman Islands Companies Law: "the winding up of a company by the Court is deemed to commence at the time of the presentation of the petition for winding up." Here, the subject petition was presented on August 23, 2016.

31. PPVA's Liquidators neither made nor approved any transfer of the PPVA Warrants to Goldberg subsequent to the Liquidators' appointment. Indeed, they only became aware of such purported transfer upon review of Navidea's January 13, 2017 Proxy Solicitation, which states that the PPVA Warrants were transferred to Goldberg on October 17, 2016.

32. On information and belief, Goldberg was aware that the Cayman Liquidation Proceeding was pending when the PPVA Warrants purportedly were transferred to him and when he exercised the PPVA Warrants.

33. Any purported transfer of the PPVA Warrants to Goldberg, and any purported exercise of the PPVA Warrants by Goldberg, is void and of no effect.

34. The PPVA Warrants and the proceeds thereof were, and at all relevant times through the present remain, the property of PPVA under the Liquidators' sole custody and control.

35. Notwithstanding the Liquidators' demands and Goldberg's clear awareness of the Cayman Liquidation Proceeding, Goldberg has retained and has refused to turn over to the Liquidators the proceeds of his improper exercise of the PPVA Warrants, which are believed to have been in excess of $3,000,000.

36. Goldberg's retention of PPVA's property (and/or the proceeds from his conversion thereof) is preventing PPVA's Liquidators from maximizing the value of PPVA's assets for the benefit of its creditors and investors.

37. Accordingly, PPVA's Liquidators respectfully request that this Court order

Goldberg to turn over any and all proceeds derived from his improper exercise of the PPVA Warrants, plus interest accruing from the date of such exercise, plus the Liquidators' reasonable costs and attorneys' fees.

**COUNT II – CONVERSION**

38. PPVA, through its Liquidators, repeats and re-alleges the allegations contained in paragraphs 1 through 37 as though fully set forth herein.

39. PPVA is, and at all times since August 2015 has been, the rightful owner of the PPVA Warrants.

40. Goldberg converted PPVA's property for his own benefit by taking and exercising the PPVA Warrants, which Warrants are property belonging to PPVA that was within the Liquidators' sole control pursuant to the terms of the Cayman Liquidation Orders. The PPVA Warrants never became Goldberg's property.

41. On information and belief, Goldberg knew that any transfer of the PPVA Warrants to him and his exercise thereof were improper and in violation of the Cayman Liquidation Orders and/or the Chapter 15 Order.

42. PPVA's Liquidators have demanded return of the proceeds derived from Goldberg's improper exercise of the PPVA Warrants.

43. Goldberg has wrongfully refused to relinquish possession of the proceeds he received upon his improper exercise of the PPVA Warrants.

44. As a direct and proximate result of Goldberg's conversion of the PPVA Warrants, PPVA has suffered, and will continue to suffer, damages in an amount to be determined at trial, but not less than the amount of proceeds Goldberg derived from his improper exercise of the PPVA Warrants, plus appropriate interest accruing from the date of such exercise, plus the Liquidators'

reasonable costs and attorneys' fees.

45. Goldberg also should be held liable for punitive damages for his knowing attempts to contravene the Cayman Liquidation Orders and/or the Chapter 15 Order.

**COUNT III – UNJUST ENRICHMENT**

46. PPVA, through its Liquidators, repeats and re-alleges the allegations contained in paragraphs 1 through 45 as though fully set forth herein.

47. PPVA is, and at all times since August 2015 has been, the rightful owner of the PPVA Warrants.

48. Goldberg's improper exercise of the PPVA Warrants and continued retention of the proceeds thereof has conferred a substantial benefit upon Goldberg and damaged PPVA in an amount equal to the proceeds of Goldberg's improper exercise of the PPVA Warrants plus interest.

49. Goldberg's retention of the proceeds of his improper exercise of the PPVA Warrants would be unjust and against fundamental principles of equity and good conscience.

50. Without justification, Goldberg has wrongfully retained the proceeds of his improper exercise of the PPVA Warrants, and has refused to return them to their rightful owner, PPVA.

51. Accordingly, Goldberg is liable to PPVA for disgorgement of the proceeds he derived from his improper exercise of the PPVA Warrants, plus appropriate interest accruing from the date of such exercise, plus the Liquidators' reasonable costs and attorneys' fees.

**COUNT IV – CONTEMPT**

52. PPVA, through its Liquidators, repeats and re-alleges the allegations contained in paragraphs 1 through 51 as though fully set forth herein.

53. PPVA is, and at all times since August 2015 has been, the rightful owner of the

PPVA Warrants.

54. Section 99 of the Cayman Companies Law and the Cayman Liquidation Orders prohibit the disposition of PPVA's property except by or with the authority of the Liquidators.

54. Section 362 of the U.S. Bankruptcy Code and the Chapter 15 Order issued by this Court enjoins all persons and entities other than the Liquidators from transferring, relinquishing, or disposing of any property of PPVA.

55. Navidea's alleged transfer to, and Goldberg's improper exercise of, the PPVA Warrants is in contempt the Cayman Liquidation Orders and the Chapter 15 Order issued by this Court.

**WHEREFORE**, based upon the foregoing, the Liquidators on behalf of PPVA respectfully request judgment against Defendant Michael M. Goldberg, as follows:

A. Directing Goldberg, pursuant to 11 U.S.C. §§ 542, 1521(a)(5), and 1521(a)(7), to turn over any and all proceeds derived from his improper exercise of the PPVA Warrants, plus interest accruing from the date of such exercise;

B. Awarding PPVA damages on Counts II and III in an amount to be determined at trial, plus interest accruing from the date of Goldberg's improper exercise of the PPVA Warrants;

C. Awarding damages, including punitive damages, against Goldberg in respect of his knowing violation and contempt of the Stays provided for under the Cayman Liquidation Orders and/or the Chapter 15 Order;

D. Granting the Liquidators' reasonable costs and attorneys' fees; and

E. Awarding such other, further, and different relief as this Court may deem just, equitable, and proper.

Dated: New York, New York
October 5, 2018

Respectfully submitted,

*/s/ Barbra R. Parlin*
HOLLAND & KNIGHT LLP
Warren E. Gluck, Esq.
Barbra R. Parlin, Esq.
Robert J. Burns, Esq.
K. Blythe Daly, Esq.
31 West 52nd Street
New York, New York 10019
Telephone: (212) 513-3200
Facsimile: (212) 385-9010

*Counsel for the Liquidators of Platinum Partners Value Arbitrage Fund, L.P. (in Official Liquidation)*