# LAW OFFICE OF MARK R. KOOK

1180 Avenue of the Americas, Floor 8 • New York, NY 10036 • Tel. (212) 766-4100
mkook@kooklaw.com

December 22, 2021

**By Email**
Hon. Shelley C. Chapman
United States Bankruptcy Judge
Southern District of New York
One Bowling Green – Chambers 623
New York, NY 10004-1408

        Re:    Platinum Partners Value Arbitrage Fund L.P. v. Goldberg
                Adv. Pr. No. 18-01650

Dear Judge Chapman:

      My firm represents Defendant Dr. Michael Goldberg. I understand that correspondence is not the regular communication following motion argument. However, I respectfully submit this letter in light of specific incorrect statements that were directed at Dr. Goldberg at the Argument on the Summary Judgment Motions on December 8, 2021. Your Honor commented on the public record that Dr. Goldberg may have engaged in criminal conduct; may be liable for punitive damages; "cooked up" the date of an assignment; and that arguments in Dr. Goldberg's papers were "incredible".

      Dr. Goldberg's reputation has been unfairly and incorrectly impugned. The above statements are based on a misstatement or misunderstanding of the fundamental and dispositive facts here. As I stated at the Argument, Dr. Goldberg would appreciate the opportunity to testify at trial, as to the facts and documents at issue here. These arguments are set forth in the underlying motion papers, and I did not have the full opportunity to present them at the Argument.

      One of these principal facts is Dr. Goldberg's ownership of the securities at the heart of this proceeding. As stated at Argument (Tr. 47-48), Dr. Goldberg's ownership of the Navidea Securities was specifically certified in the Amendment No. 3 to Navidea's 13D filing, and confirmed by the actual parties to the Binding Term Sheets, the only parties with standing to address any supposed breach of contract– Dr. Goldberg and Platinum Management -- in memoranda, emails and other documents. As Dr. Goldberg will explain, and as specifically stated in the agreements, the Binding Term Sheets transferred ownership which provides for specific rights to control the shares and to the value realized when and if the shares were monetized. Further, Dr. Goldberg is the one that loaned money to Platinum, over $5 million, and in return received certain rights to control securities. The economic value of those securities was determined by a formula in Binding Term Sheets. Platinum never loaned Dr. Goldberg $11 million. Rather, in return for Dr.

Judge Shelley C. Chapman
December 22, 2021
Page 2

Goldberg loaning Platinum $5 million, Dr Goldberg was given exclusive trading and voting control over the shares listed in the Binding Term Sheets. The only way Dr. Goldberg could violate the agreement was if he sold securities and failed to forward the required amounts to Platinum. Dr Goldberg will testify that prior to the liquidation, the parties operated without difficulty and in complete agreement as to the ownership of the securities and the parties' obligations. In addition, PPVA's claims for damages fail based on the plain reading of the Binding Term Sheets, and the facts at the time concerning the securities and PPVA's ability to market them. There are at minimum issues of fact here, especially as the law requires all facts to be resolved in Dr. Goldberg's favor upon PPVA's Motion.

Navidea worked out a deal to convert the Series B Convertible 1,655 Preferred Stock into a Warrant that would be convertible into the 5,411,850 shares of Navidea Common Stock. PPVA refers to an August 20, 2015, Securities Exchange Agreement between Navidea, PPVA and Monstat Partners LLC. In that Agreement, PPVA purports to transfer Dr. Goldberg's specific 1,655 Series B Convertible Preferred for 5,411,850 Navidea common shares. It is not a coincidence that these are the exact number of Preferred and Common shares that were transferred to Dr. Goldberg in the Binding Term Sheets. Dr. Goldberg as a director of Navidea had recused himself from this transaction. Although PPVA incorrectly stated in the Exchange Agreement that it "owns" the Preferred Shares, Dr. Goldberg was not concerned because both Navidea and Platinum Management, as well as PPVA, had already publicly disclosed and confirmed that he was the owner of those 1,655 shares of Preferred Stock, and by virtue of that ownership, he was the owner of the underlying 5,411,850 Common Shares. Moreover, for example, on April 29, 2016, *eight months after* the date of the Exchange Agreement, PPVA as Reporting Person certified in the Section 13D SEC filing, that the 5,411,850 shares of Common Stock are "excluded" from PPVA's beneficial ownership and instead are "owned by Michael M. Goldberg" pursuant to the Binding Term Sheets. Dr. Goldberg has requested documents which he knows exists that demonstrate the accounting treatment for the securities in question. Dr. Goldberg is prepared to provide his basis for the fact that those documents will corroborate that Platinum and its auditors were in complete agreement with Dr. Goldberg on the validity and interpretation of the Binding Term Sheets.

Moreover, there is a fundamental misunderstanding as to the binding effect of the Term Sheets. At Argument, Your Honor (Tr. 36-37) stated that "It makes no sense that parties would draft a term sheet that contemplates the signing of additional arguments, when, in fact, what you're saying they really meant was this is the only document we need because then, you would draft the term sheet by saying, by signing this term sheet, there is now an obligation." However, that is precisely what the Term Sheets state. The parties to the agreement specifically agreed in

Judge Shelley C. Chapman
December 22, 2021
Page 3

executed and dated Binding Term Sheets that all obligations were in place and binding even if no additional documents were entered into by the parties:

> This Binding Term Sheet represents a legally binding agreement between the parties hereto regarding the principal terms of the transactions described herein . . . The parties agree to negotiate in good faith definitive documentation containing terms consistent with the provisions set forth herein as soon as reasonably practicable after the date hereof; <u>provided, however,</u> **that if such agreement is not entered into between the parties this Binding Term Sheet shall continue in full force and effect**. (Emphasis added.)

Such "legally binding agreements" are specifically upheld under the rules of construction in New York. See Avant Capital v. W108 Dev. LLC, 2016 U.S. Dist. LEXIS 177548, at * 7-8 (S.D.N.Y. Dec. 9, 2016); Suarez v. SCF CEDAR LLC, 2016 U.S. Dist. LEXIS 34064, at * 4-7 (S.D.N.Y. March 14, 2016).

The actual nature of the Note also was incorrectly represented. PPVA argued (Tr. 38-39) that if it had the Notes, it would have simply walked into New York Supreme Court for Summary Judgment in lieu of Complaint. However, as PPVA knows, the Binding Term Sheets specifically state that the Notes are Non-Recourse as to Dr. Goldberg.

Your Honor and PPVA repeatedly referred to the Note as an "$11 million dollar Note". As PPVA knows, the Note was not an $11 million note. Dr. Goldberg did not receive any loan or other money in exchange for the Note. Rather, Dr. Goldberg had defined economic rights. The segregated account with provisions was already agreed upon. Prior to the liquidation Dr. Goldberg did not insist on physical possession of the entire volume of transferred securities -- except for the Navidea share at issue here because he wanted to vote the shares as was his right. The record is clear that the request for physical shares and the effort to effect that transfer began over one year before the liquidation. As set forth in the Term Sheets and underlying motion papers, Dr. Goldberg provided full consideration. As the Term Sheets provide, the entire transaction was a stock loan, with a percentage of specific proceeds to be paid to PPVA only upon the sale of any Transferred Securities by Dr. Goldberg. At, and only at such time, would Dr. Goldberg be obligated to deliver approximately 85 percent of the proceeds from the actual sale to PPVA, and Dr. Goldberg would receive a certain percentage of any upside upon any such sale. However, Dr. Goldberg never sold any of the securities.

Further, the specific language of the Binding Term Sheets state that only Dr. Goldberg has the" sole" right to sell any of the transferred securities.

Judge Shelley C. Chapman
December 22, 2021
Page 4

    Another critical issue is the absence of any damage sustained by PPVA. Your Honor stated (Tr. 54) that if a party committed a wrong, then the wrongful act *must* have caused damages to the other party: " – Mr. Kook, you can't do something wrong and then say, but it did not matter to you anyway." In fact, that is precisely what New York law holds when, like here, no damages have been proven. See cases cited in Dockery v. Tucker, 2006 U.S. Dist. LEXIS 97826, at * 101-07 (E.D.N.Y. Dec. 6, 2006).

    Dr. Goldberg believes his integrity was unfairly attacked based on a misunderstanding of the facts here. This has severely negatively impacted the ability of the parties to equitably resolve this matter. Dr. Goldberg believes there is an equitable solution for all parties, but the statements made at the Argument prevent that at this point.

    I thank Your Honor for consideration of this letter.

                                    Respectfully,

                                    Mark R. Kook

Cc: Robert J. Burns, Esq.
     By Email