# Holland & Knight

31 West 52nd Street | New York, NY 10019 | T 212.513.3200 | F 212.385.9010
Holland & Knight LLP | www.hklaw.com

Robert J. Burns
+1 212-513-3490
Robert.Burns@hklaw.com

January 14, 2022

*Via ECF*

The Honorable Shelley C. Chapman
United States Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, NY 10004-1408

      Re:    *In re Platinum Partners Value Arbitrage Fund L.P. (in Official Liquidation), et al.*,
             Case No. 16-12925 (Jointly Administered)
            *Platinum Partners Value Arbitrage Fund L.P. v. Goldberg*
            Adv. Proc. No. 18-01650
            **Response to Defendant's December 23 Letter**

Dear Judge Chapman:

      On behalf of the Joint Official Liquidators of Platinum Partners Value Arbitrage Fund L.P. ("PPVA"), debtor in foreign proceedings and Plaintiff in the above-referenced adversary proceeding, we write in response to the letter sent to Chambers by Defendant on December 23, 2021 (Dkt. No. 40).

      Defendant's December 23 letter rehashes arguments made at length in the parties' respective summary judgment motions and at oral argument. Nothing raised in the December 23 letter is new; indeed, the letter itself concedes that the same issues "are set forth in the underlying motion papers." Dkt. No. 40 at 1. Accordingly, we will not burden the record, or the Court, with detailed repetition of the arguments and counter-arguments presented in our motion papers, or in our oral argument, all of which are incorporated by reference herein. However, as the Court has permitted a response to the December 23 letter, we do so here, and will be as brief as possible.

      Defendant's letter argues that the Court's questioning during oral argument indicates a misunderstanding of the dispositive facts. Dkt. No. 40 at 1. There was no misunderstanding. The record of undisputed documentary and testimonial facts plainly indicates that, as of the commencement of the Cayman liquidation proceeding, Defendant did not have possession of the PPVA Warrant, which was a physical certificated security that remained in PPVA's custody at all relevant times. The undisputed factual record further indicates that as of this point in time, Defendant had no live right to receive the PPVA Warrant from PPVA, as he had not satisfied at least two of the material conditions precedent expressly imposed on him by the contract giving

January 14, 2022
Page 2

rise to his claimed interest. And the undisputed factual record further indicates that Defendant knew all of this, and knew that the commencement of the Cayman liquidation proceeding vested all authority to dispose of PPVA's property in the Cayman court and its appointed liquidators, but nevertheless cooked up a backdated assignment that Defendant then used to direct Navidea (of which he was then CEO) to re-issue the PPVA Warrant in Defendant's name. It is very clear, on these undisputed facts, what happened here.

Whether Goldberg had a live legal right to the warrant held by PPVA for the purchase 5,411,850 shares of common stock of Navidea Biopharmaceuticals Inc. ("Navidea") (the "PPVA Warrant") as of August 23, 2016[1] is, of course, the central legal and factual question before the Court. Defendant's position is, at essence, that he thought he "owned" the PPVA Warrant from the moment he signed the 2014 and 2105 Confidential Binding Term Sheets ("Term Sheets") executed between Goldberg and Platinum Management (NY) LLC ("PMNY") concerning his separation from PMNY because these Term Sheets themselves "transferred ownership." Dkt. No. 40 at 1. But on this central question, the factual record is plain, undisputed, and dispositive, and nothing in the December 23 letter changes any of that:

- Goldberg's claimed entitlement to the PPVA Warrant arises from the Term Sheets, exclusively. *Compare* Dkt. No. 30-27 ("Goldberg Reply SOMF") ¶ 7 *and* Dkt. No. 34 ("PPVA Reply SOMF") ¶ 4.

- Defendant states in his December 23 letter that "[t]he only way Dr. Goldberg could violate the agreement was if he sold securities and failed to forward the required amounts to Platinum." Dkt. No. 40 at 2. That is flatly incorrect. As discussed at length in our papers and at oral argument, the Term Sheets imposed several express conditions precedent to any obligation of any Platinum entity to deliver securities to Defendant. These conditions precedent were material, given the nature of the transactions contemplated in the Term Sheets: these were *not* to be outright transfers of securities to Defendant, but rather transfers conditioned on the transferring Platinum entity's receipt of Securities Loan Notes from Defendant for the stated market value of the securities as of December 31, 2013 (for the securities that became the PPVA Warrants, approximately $11 million).[2] To secure the Notes and protect the Platinum entities' first-priority perfected security interest in the certificated securities to be transferred, Goldberg was further required to create a

---

[1] The day PPVA filed for voluntary liquidation with the Financial Services Division of the Grand Court of the Cayman Islands. *See* PPVA SOMF ¶ 57.

[2] The December 23 letter opaquely states that "Platinum never loaned Dr. Goldberg $11 million." Respectfully, we don't understand what this assertion is intended to mean. Per the Term Sheets, various Platinum funds were to loan securities to Goldberg in exchange for their receipt from Goldberg of Securities Loan Notes for their corresponding market value. For the securities that became the PPVA Warrant, that means that PPVA would loan these securities to Goldberg in exchange for PPVA's receipt of a Note from Goldberg for those securities' stated value of approximately $11 million.

January 14, 2022
Page 3

- segregated account that would hold them pursuant to Account Control Agreements reasonably acceptable to Platinum.

- The suggestion in the December 23 letter that PPVA (as non-signatory to the Term Sheets, which were signed by PPVA's manager Platinum Management) lacks standing to assert Goldberg's non-compliance with the Term Sheets' conditions precedent is a non-starter, for the reasons detailed in our papers and at oral argument. *See* Dkt. No. 23 ("PPVA Moving Br.") at 10. It was PPVA that held the PPVA Warrant in its own name, and accordingly it was PPVA that would be directed to transfer these particular securities per the terms of the Term Sheet, and PPVA that would benefit from Goldberg's corresponding Note and from the segregated account protections contained in the Term Sheets.

- Goldberg does not dispute that he never issued separate promissory notes to PPVA. *See* Dkt. No. 30-2 ("Goldberg SOMF") ¶ 15; *see also* Goldberg Tr. 87:9-12, 109:4-23. His legal argument that the Term Sheets constituted the notes themselves fails as a matter of law, for the reasons discussed in our papers and at argument. *See, e.g.,* PPVA Reply MOL at 6-7. The fact that the Term Sheets state that they are binding in the absence of a further definitive agreement between the parties does not alter the fact that the Term Sheets expressly require Goldberg's issuance of actual Notes, in separate documents, meeting the requirements as set forth in the Terms Sheets. That indisputably did not occur.

- The record of Defendant's pre-liquidation non-compliance with the segregated account provisions of the Term Sheets is likewise dispositive. Defendant summarily states in his December 23 letter that "[t]he segregated account with provisions was already agreed upon." Dkt. No. 40 at 3. But simply saying that does not make it so. Nor is an "agreement" that a segregated account was required mean that Goldberg actually opened the account. Goldberg testified during his deposition that the account was *never opened*. *See* Goldberg Reply SOMF ¶¶ 66-70. The unrebutted documentary evidence also confirms that no segregated account with Account Control Agreement satisfactory to Platinum was in place any earlier than September 2016. *See* Goldberg Reply SOMF ¶¶ 67-70. And Platinum's former CFO testified that the absence of such segregated account with appropriate protections was the reason why the PPVA Warrants were not transferred to Goldberg prior to commencement of the Cayman liquidation. PPVA Reply SOMF ¶ 35.

- In August 2015—well after Goldberg claims he became the owner of the securities that became the PPVA Warrants by operation of the Term Sheets—Navidea and PPVA agreed to exchange the Navidea preferred shares referenced in the Term Sheets for the PPVA Warrants. Goldberg Reply SOMF ¶¶ 28, 38. The transaction documents clearly identify PPVA as the owner of these securities, in their entirety

January 14, 2022
Page 4

    and free and clear of competing claims. *Id.* at ¶ 28. The corresponding PPVA Warrants were, accordingly, issued to PPVA, and in PPVA's name. *Id.* at ¶ 38. Goldberg, then a member of Navidea's Board and present at the Board meeting where these documents were discussed, raised no issues with any of this. *Id.* at ¶¶ 34-35.

- Defendant's December 23 letter (like his motion papers) tries to spin gold from purported dispositive admissions contained in two places: a single SEC Form 13D from April 2016, and Platinum's "accounting treatment" of the Term Sheet transactions. Neither of these sources transforms Defendant into the pre-liquidation "owner" of the PPVA Warrant notwithstanding his non-compliance with the contractual conditions precedent. These contentions were refuted at length in our motion papers and at oral argument. *See* Dkt. No. 35 at 10-25. To summarize: *First,* any purported admissions in these documents are not binding on PPVA's foreign representatives as a matter of law. *Second,* the single vague reference in the Form 13D to Goldberg's "ownership", made with reference to a class of securities that are not at issue here, is hardly sufficient to transform Goldberg into the legal owner of the PPVA Warrants over abundant contrary evidence, particularly as the PPVA Warrants were expressly excluded from PPVA's beneficial ownership calculations in that document due to the presence of "blocker" provisions in the PPVA Warrants. And *third*, Platinum's accounting treatment of the Term Sheet transactions—which, as an accrual accounting matter and for "presentation purposes", booked a participation interest in the Term Sheet securities, and a corresponding note receivable from Goldberg[3]—does not alter the underlying legal and factual realities: that Goldberg had issued no Notes, that Goldberg had no satisfied the segregated account provisions of the Term Sheets, and that Goldberg was accordingly not the legal or beneficial owner of the PPVA Warrants as of the date of commencement of PPVA's Cayman liquidation.

- By mid-2016, it became increasingly clear to Defendant that the Platinum house of cards was collapsing. PPVA's Cayman liquidation commenced on August 23, 2016. By mid-September, Goldberg was aware of the liquidation proceeding. *See* Goldberg Reply SOMF ¶ 64. By October 11, 2016, Goldberg was expressly advised by Platinum personnel that, in light of the Cayman liquidation, PPVA could not transfer the PPVA Warrants to Goldberg. *Id.* at ¶ 77. But Goldberg went ahead and made it happen anyway. In the following days, he worked with Mark Nordlicht to

---

[3] The December 23 letter vaguely refers to certain documents "requested" by Defendant "that demonstrate the accounting treatment for the securities in question." Dkt. No. 40 at 2. The accounting documents at issue are before the Court, and Defendant has made lengthy argument based on them. There is no dispute that Platinum employed this accrual accounting treatment for the Term Sheet transactions in its 2014 audited financial statements, and in its monthly Net Asset Value reports. The dispute is whether this accrual accounting treatment suffices to transform Defendant into the true legal owner of the PPVA Warrants as of 2014, over abundant evidence to the contrary. It does not.

#154268482_v2

January 14, 2022
Page 5

> manufacture an assignment form purportedly assigning the PPVA Warrant to Goldberg, bearing a fictitious 2015 date with no significance beyond the fact that it happened to be prior to the liquidation. *Id.* at ¶¶ 79-88. Goldberg—then Navidea's CEO—used that backdated form to get Navidea to reissue the PPVA Warrant in his name, despite the fact that (contrary to the terms of the PPVA Warrant) the physical original was not surrendered and instead remained in PPVA's custodial vault. *Id.* at ¶¶ 89-91. In January 2017, Goldberg exercised the Warrant and became record owner of 5,411,850 common shares. *Id.* at ¶ 98. As the Court correctly observed during oral argument, these post-Liquidation acrobatics stand in stark contrast to Goldberg's litigation position that he was confident that he had been the true owner of the PPVA Warrants since 2014.

- Finally, Goldberg never reported to the SEC that he was the beneficial owner of the PPVA Warrants until October 19, 2016, and when he did so, he reported that he became beneficial owner by virtue of a transaction that occurred on October 17, 2016. *See* Goldberg Reply SOMF ¶ 94. This timeline—which plainly reflects a post-liquidation transfer, which is precisely what actually occurred—is consistent with that stated by Navidea in its SEC filings, which Goldberg (as Navidea's then-CEO) signed.

Putting aside the conjecture, innuendo, and *ipse dixit* in the December 23 letter, the above are the actual facts, and they are dispositive. Nothing in Goldberg's December 23 letter warrants further consideration from the Court on the question of whether Goldberg owned the PPVA Warrant as of August 23, 2016. The undisputed facts are that Goldberg never satisfied the conditions precedent to his receiving the PPVA Warrant under the Term Sheet, that the purported October 2016 assignment was improper, unauthorized, and unlawful, and that PPVA is therefore entitled to summary judgment in its favor.

     PPVA's position on damages was as stated in its motion papers, which detail authority for a turnover remedy in the amount of the value of the property at the time it was wrongfully taken where—as here—there has been a subsequent gross diminution in the value of that property. *See* PPVA Moving Br. at 16-18, 20-24; Dkt. No. 35 ("PPVA Reply Br.") at 28. Although the December 23 letter blithely states that PPVA has suffered no damage, that is simply not so: the fact that these Navidea shares have improperly been in Defendant's possession for well over five years, while their market value has atrophied by well over 90%, has effectively deprived PPVA and its appointed liquidators of doing anything to staunch the diminution of value and to realize meaningful value from this PPVA asset. To the extent the Court would like supplemental submissions from the parties specifically directed to the issue of Plaintiff's damages, we are happy to provide them if and as directed by the Court.

Sincerely yours,

#154268482_v2

January 14, 2022
Page 6

HOLLAND & KNIGHT LLP

/s Robert J. Burns

Robert J. Burns

cc:   All counsel of record (*via Email*)

#154268482_v2