# IN THE UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P. (IN OFFICIAL LIQUIDATION), *et al*.<br><br>Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 16-12925 (SCC)<br>(Jointly Administered) |
| PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P.,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL M. GOLDBERG,<br><br>Defendant. | Adv. Proc. No. 18-01650 (SCC) |

**PLAINTIFF PLATINUM PARTNERS VALUE ARBITRAGE FUND LP'S MEMORANDUM OF LAW IN OPPOSITION TO MICHAEL M. GOLDBERG'S MOTION PURSUANT TO BANKRUPTCY LOCAL RULE 9023 FOR RECONSIDERATION OF THE MODIFIED BENCH DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    I.      The Applicable Standard of Review. ..................................................................... 2

    II.     The Court Did Not Err in Holding that the Note Condition Was an
Executory Condition Precedent. ............................................................................ 3

    III.    The Court Did Not Err in Holding that the Segregated Account Condition
Was a Material Condition Precedent. .................................................................... 9

    IV.    The JOLs' Accounting Treatment of Receivables from Goldberg Is Not
New Evidence that Requires a Reversal of the Court's Decision on
Summary Judgment. ............................................................................................. 11

    V.     Goldberg Presents No Intervening Law or New Evidence in Support of
His Regurgitated Argument that Ownership of the PPVA Warrant Vested
in Him Prior to the Liquidation. ........................................................................... 13

CONCLUSION ............................................................................................................................ 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Crozier Bros., Inc.*,
    60 B.R. 683 (Bankr. S.D.N.Y. 1986)..................................................................................3

*Dore v. La Pierre*,
    226 N.Y.S.2d 949 (Sup. Ct. 1962).......................................................................................7

*In re Health Mgmt. Sys. Inc. Sec. Litg.*,
    113 F. Supp. 2d 613 (S.D.N.Y. 2000)..................................................................................2

*Nat'l Fuel Gas Distribution Corp. v. Hartford Fire Ins. Co.*,
    11 Misc. 3d 1058(A) (Sup. Ct. 2005) ..................................................................................6

*Novomoskovsk Joint Stock Co. "Azot" v. Revson*,
    No. 95 CIV. 5399 (JSR), 1999 WL 767325 (S.D.N.Y. Sept. 28, 1999)................................8

*In re Papadopoulos*,
    No. 12-13125 (JLG), 2015 WL 1216541 (Bankr. S.D.N.Y. Mar. 13, 2015)..........................3

*Parlux Fragrances, LLC v. S. Carter Enters., LLC*,
    204 A.D.3d 72 (1st Dep't 2022) ..........................................................................................6

*Pereira v. Aetna Cas. & Surety Co. (In re Payroll Exp. Corp.)*,
    216 B.R. 713 (S.D.N.Y. 1997).............................................................................................3

*Pettiford v. City of Yonkers*,
    No. 14 CIV. 6271 (JCM), 2020 WL 1989419 (S.D.N.Y. Apr. 27, 2020) .....................12, 13

*Schonberger v. Serchuk*,
    742 F. Supp. 108 (S.D.N.Y. 1990).......................................................................................2

*Shrader v. CSX Transp.*,
    70 F.3d 255 (2d Cir. 1995)...................................................................................................3

*Thomas & Betts Corp. v. Trinity Meyer Utility Structures, LLC*,
    No. 20-2904, 2021 WL 4302739 (2d Cir. Sept. 22, 2021) ..........................................4, 5, 6

**Rules**

Bankr. L.R. 9023...........................................................................................................................1

N.Y.C.P.L.R. 3212........................................................................................................................8

Fed. R. Civ. P. 59......................................................................................................................2, 3


**Other Authorities**

28 N.Y. Prac., Contract Law § 10:11 ...........................................................................................7

Restatement (Second) of Contracts .............................................................................................6

The current and duly appointed joint official liquidators ("Liquidators") of Plaintiff Platinum Partners Value Arbitrage Fund L.P. (in Official Liquidation) ("PPVA"), in liquidation by way of the Financial Services Division of the Grand Court of the Cayman Islands (cause no. FSD 131 of 2016 (NSJ)), by their undersigned United States counsel, Holland & Knight LLP, respectfully submit this memorandum of law in opposition to Defendant Michael M. Goldberg's ("Goldberg") Motion Pursuant to Bankr. L.R. 9023 for Reconsideration of the Modified Bench Decision and Order on Cross-Motions for Summary Judgment ("Motion for Reconsideration").

## **PRELIMINARY STATEMENT**[1]

Unhappy with being caught with his hand in the metaphorical cookie jar, Goldberg seeks "reconsideration" of the Court's May 10, 2022 Modified Bench Decision and Order on Cross-Motions for Summary Judgment ("Decision"). While styled as a motion for reconsideration, Goldberg's motion throws everything on paper *except any intervening case law or new evidence* that would support reversing the Court's Decision.

The overwhelming focus of Goldberg's motion is simply to rehash arguments he already – unsuccessfully – made on summary judgment, and which were undermined by legal precedent and the undisputed facts. In his 21-page legal memorandum in support of the Motion for Reconsideration, Goldberg relies on two cases (issued before the date of the Court's Decision here, but not previously cited by Goldberg), and submits two documents as "new evidence." But the two "new" cases actually support the Court's holding that the Notes Condition and Segregated Account Condition were conditions precedent to transferring the PPVA Warrant to Goldberg. And the "new evidence" is neither new (as Goldberg admits, these are emails Goldberg received long

---

[1] Capitalized terms not otherwise defined herein have the same meaning as in the Liquidators' Motion for Summary Judgment. *See* Dkt. Nos. 19-24, 33-35, 41.

1

before the Court's Decision), nor does it reflect anything different from the accounting treatments Goldberg previously relied upon in his written and oral arguments to the Court.

Ultimately, even if the Court accepted all of Goldberg's arguments, nothing he asserts by way of this Motion for Reconsideration changes the undisputed fact that the PPVA Warrant *was not* assigned or otherwise transferred to Goldberg pre-Liquidation. Goldberg does not and cannot dispute that, on October 16, 2016, he and Nordlicht backdated and executed a document purporting to assign the PPVA Warrant to Goldberg. The fact that Goldberg and Nordlicht felt it necessary to backdate the assignment is a blatant acknowledgment that Nordlicht, as of October 16, 2016, did not have authority to dispose of the PPVA Warrant. Goldberg and Nordlicht's scheme was a flagrant violation of the liquidation stay imposed as of August 23, 2016 by the Cayman courts, and an improper attempt to evade the Liquidators' control over estate property. If Goldberg really believed he had a valid claim to the PPVA Warrant, he could have simply submitted a creditor's claim to the Liquidators. He did not, knowing that such a claim would be rejected because he never satisfied the conditions set forth in the Term Sheet and Amended Term Sheet.

Goldberg's Motion for Reconsideration should be denied in its entirety.

## **ARGUMENT**

### I.    The Applicable Standard of Review.

Reconsideration of a previous order by the court is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys. Inc. Sec. Litg.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citations and quotation marks omitted). "The provision for reargument is not designed to allow wasteful repetition of arguments already briefed, considered and decided." *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990). A motion for reargument or reconsideration is reviewed under the same standard as a motion to amend a judgment pursuant to Fed. R. Civ. P. 59(e). *In re*

2

*Papadopoulos*, No. 12-13125 (JLG), 2015 WL 1216541, at *2 (Bankr. S.D.N.Y. Mar. 13, 2015). Under Fed. R. Civ. P. 59(e), the Court may revisit a prior decision if there is a change in intervening law or new evidence, or to correct manifest errors of law or fact or prevent manifest injustice. *Id.* (citing, inter alia, *Official Comm. of Unsecured Creditors of Enron Corp. v. Martin (In re Enron Creditors Recovery Corp.)*, 378 B.R. 54, 56–57 (Bankr. S.D.N.Y. 2007)).

"The standard for granting . . . a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.*, 70 F.3d 255, 256 (2d Cir. 1995). "A motion based on manifest errors of law or fact will not be granted except on a showing of some substantial reason. The burden is on the movant to demonstrate these manifest errors." *In re Crozier Bros., Inc.*, 60 B.R. 683, 688 (Bankr. S.D.N.Y. 1986).

Motions for reconsideration are not opportunities to reargue issues already considered by the court, and for that reason, such motions are "limited to the record that was before the Court on the original motion." *Pereira v. Aetna Cas. & Surety Co. (In re Payroll Exp. Corp.)*, 216 B.R. 713, 716 (S.D.N.Y. 1997) (quoting *Wishner v. Cont'l Airlines*, 1997 WL 615401, at *1 (S.D.N.Y. Oct. 6, 1997)).

**II.    The Court Did Not Err in Holding that the Notes Condition Was an Executory Condition Precedent.**

Goldberg devotes a substantial portion of his Motion for Reconsideration to recapitulating the same argument he made on summary judgment that the Notes Condition was satisfied because the Term Sheet and Amended Term Sheets are themselves the notes. Goldberg cites no new legal authority or new evidence that supports reversing the Decision.

3

First, Goldberg argues in his Motion for Reconsideration that the Court "made a fundamental legal error as to the binding effect of the '**Binding**' Term Sheets" because the "parties to the contract specifically agreed in an executed and dated Binding Term Sheet that all obligations were in place and binding even if no additional documents were entered into by the parties." Dkt. No. 46, Moving Br. at 8 (emphasis in original). The two cases cited in the Motion for Reconsideration are not new, as Goldberg cited the same two cases in his letter sur-reply on summary judgment. *Compare id. with* Dkt. No. 40 at 3. Goldberg otherwise does not explain *how* the Court misinterpreted or misapplied the law and facts in finding that the Term Sheet and Amended Term Sheet set forth conditions precedent that were not satisfied prior to the Liquidation; he simply says it is so.

Second, Goldberg's reliance on *Thomas & Betts Corporation v. Trinity Meyer Utility Structures, LLC*, No. 20-2904, 2021 WL 4302739, at *2 (2d Cir. Sept. 22, 2021) for the proposition that the phrase "subject to" is *never* sufficient to create conditions precedent mischaracterizes the analysis and holding of that case. *See* Dkt. No. 46, Moving Br. at 10. The court explained in *Thomas & Betts* that there is no "bright-line rule" that the phrase "subject to" automatically creates a condition precedent, and that courts analyzing such language "must look to both the placement of the conditional language and the context in which it is used." No. 20-2904, 2021 WL 4302739, at *2-3. Critical to the Second Circuit's analysis that the specific language in that case did not create conditions precedent were the facts that (i) elsewhere in the subject agreement were headings labeled "conditions precedent" whereas the provision at issue contained no such heading; (ii) the words "subject to" were not included in the provision at issue; and (iii) a construction of the notice provision at issue as a strict condition precedent would result in a forfeiture of substantial

4

rights based on a technical violation, particularly where there was no dispute that the counterparty had actual notice of the underlying dispute. *Id.* at *3.

The application of the interpretive principle set forth in *Thomas & Betts* (which is not new law, and follows the long-established rules of contract interpretation recited in the Court's Decision) does not require the Court to change its analysis or decision on the parties' summary judgment motions. Here, the Decision acknowledged and applied the same analytical framework discussed in *Thomas & Betts*:

> As a general rule, provisions "commencing with words such as 'if,' 'on condition that,' 'subject to,' and 'provided' create conditions precedent," albeit "this result cannot be guaranteed because of the presumption in favor of language of promise and because all language requires interpretation." *Nat'l Fuel Gas Distribution Corp. v. Hartford Fire Ins. Co.*, 11 Misc. 3d 1058(A) (Sup. Ct. 2005), *aff'd as modified*, 28 A.D. 3d 1169 (2006) (concluding that a notice requirement which "follow[ed] the word 'PROVIDED' . . . indicate[d] the creation of a condition") (citation omitted); *see also* Restatement (Second) of Contracts § 226 (1981) ("No particular form of language is necessary to make an event a condition, although such words as 'on condition that,' 'provided that' and 'if' are often used for this purpose. An intention to make a duty conditional may be manifested by the general nature of an agreement, as well as by specific language. Whether the parties have, by their agreement, made an event a condition is determined by the process of interpretation.").

Decision at 12-13.

Following the analytical framework set forth in *National Fuel*, the Restatement, and *Thomas & Betts*, the Court's holding that the Notes Condition is a condition precedent was not based solely on the use of the phrase "subject to at the outset of the Binding Term Sheet," *see* Dkt. No. 46, Moving Br. at 10. Rather, the Court did consider the placement of conditional language and the context in which it was used. *See* Decision at 12-14. The Court took into account the fact that the Notes Condition and Segregated Account Condition were placed in separate boxes and under separate headings in the Term Sheet and Amended Term Sheet. *See id.* at 14. The Court also relied on the inclusion of the phrase "shall" in both the Notes Condition and the Segregated

5

Account Condition as indicators of future actions. *Id.* And the Court correctly observed that the Notes Condition and Segregated Account Condition both went to the core of the transaction that the parties to the Term Sheet and Amended Term Sheet were agreeing to in these documents: a conditional transfer of certain securities, supported by and conditioned on corresponding notes to be issued by Goldberg and adequate protections of Platinum's security interests being in place. *Id.* at 14-15. These facts – as the Court's Decision properly recognizes – take this case far from the circumstances present in *Thomas & Betts*.

Goldberg's reliance on *Parlux Fragrances, LLC v. S. Carter Enterprises, LLC*, 204 A.D.3d 72, 85 (1st Dep't 2022) fares no better. That decision rejected a construction of a contract provision as a condition precedent where the provision included no traditional language of condition, and where "conditions" were expressly enumerated elsewhere in the contract. *See generally id*. Here again, as the analysis in the Court's Decision properly concluded, that is far from the case here.

In short, neither *Thomas & Betts* nor *Parlux* are intervening case law that change the long-standing principles of construction also espoused by *National Fuel Gas* and the Restatement (Second) of Contracts, which the Court correctly relied on in determining that, considering the context and essential purpose of the Term Sheet and Amended Term Sheet, the Notes Condition (and the Segregated Account Condition, as discussed further below) was a condition precedent to Goldberg's executory interest in the PPVA Warrant.

Third, Goldberg continues to advance fundamentally contradictory positions in arguing that the Notes Condition did not require promissory notes to be issued in separate form after the execution of the Term Sheet and Amended Term Sheet, while at the same time conceding that the Segregated Account required separate, future action. In his Motion for Reconsideration, Goldberg

6

admits that the use of the term "shall" with respect to the Segregated Notes Condition "contemplates future action." *See* Dkt. No. 46, Moving Br. at 13; *see also* Dkt. No. 25-1 at D 00003 ("The Transferred Securities shall be deposited . . . . "). But the phrase "shall" also appears in the Notes Condition:

> In consideration for the Transferred Securities, Dr. Goldberg *shall* issue to one or more of the Platinum Funds, as directed by Platinum . . . five year notes . . . ."

Dkt. No. 25-1 at D-00002. Goldberg cannot have it both ways – the rules of construction do not allow Goldberg to argue that "shall" in one provision "contemplates future action" but is self-executory when used in exactly the same manner in another provision in the same agreement. *See Dore v. La Pierre*, 226 N.Y.S.2d 949, 952 (Sup. Ct. 1962) ("A word used by the parties in one sense is to be interpreted as employed in the same sense throughout the writing in the absence of countervailing reasons") (citing 3 Williston Contracts, 1780, rev. ed. 1936); *see also* 28 N.Y. Prac., Contract Law § 10:11 (stating that words have the same meaning throughout a document). As the Court correctly held, the imperative "shall" speaks to future conduct. Decision at 14 (citing *Salahuddin v. Mead*, 174 F. 3d 271, 274 (2d Cir. 1999)). As such, Goldberg was required to issue separate promissory notes, distinct from the Term Sheet and Amended Term Sheet themselves, to Platinum. And, despite Goldberg's erratic efforts to bob and weave around this conclusion, it is undisputed that this did not occur. *See* Moving Br. at 12 ("Dr. Goldberg and PMNY were aware that a stand-alone Note had not been executed.").[2]

---

[2] Goldberg's renewed argument that "because the issuance of a stand-alone Note was not a condition precedent, PPVA's remedy would *not* be a lawsuit for summary judgment in lieu of complaint" pursuant to N.Y.C.P.L.R. 3212. This argument – which was previously raised during the summary judgment argument – remains, frankly, a total mystery and has no apparent connection to this case. The Liquidators did not bring an action pursuant to CPLR 3212 – this action is one seeking a turnover of the PPVA Warrant under the Bankruptcy Court procedures and remedies, and the Court's Decision is one granting that turnover.

Fourth, Goldberg raises in this Motion for Reconsideration – for the first time – that PMNY waived the Notes Condition. *See* Dkt. No. 26, Moving Br. at 12. "New arguments . . . are not to be considered [on a motion for reconsideration] unless there is some valid reason they could not have been previously advanced when the motion was originally filed." *Novomoskovsk Joint Stock Co. "Azot" v. Revson*, No. 95 CIV. 5399 (JSR), 1999 WL 767325, at *1 (S.D.N.Y. Sept. 28, 1999). Goldberg offers no explanation as to why he did not raise this argument on his cross-motion for summary judgment. *See* Dkt. No. 46, Moving Br. at 12. This new argument is neither supported by intervening law nor new evidence. Even if meritorious (which it is not), Goldberg waived these arguments by failing to raise them in his cross-motion for summary judgment and the Court should not consider them now.

Substantively, Goldberg's waiver argument is fatally flawed. Goldberg asserts that PMNY waived the Notes Condition when Nordlicht supposedly assigned the PPVA Warrant to him. Dkt. No. 46, Moving Br. at 12. That argument, however, ignores Cayman law that on October 16, 2016 (when Nordlicht signed and backdated a purported assignment of the PPVA Warrant to Goldberg), Nordlicht had no authority to dispose of PPVA's assets. *See* Decision at 6 (citing Goldberg Reply SOMF ¶¶ 79-90) & 8 (citing Section 99 of the Companies Act). Nordlicht intentionally backdating the purported assignment in an attempt to evade the effect of PPVA's Liquidation does not change the fact that he had no authority to do so.

Fifth, Goldberg's Motion for Reconsideration ignores that the Court's Decision did not turn on whether Goldberg satisfied the Notes Condition. *See* Decision at 18 (because the Court held that Goldberg indisputably failed to satisfy the Segregated Account Condition, "[t]he Court, therefore, need not address whether Goldberg satisfied the Notes Condition."). As such, even if Goldberg raised valid grounds for reconsideration (which he has not), a finding that the promissory

8

notes were deemed issued by virtue of execution of the Term Sheet and Amended Term Sheet would not cure his indisputable failure to satisfy the Segregated Account Condition, and would not alter the Court's ultimate finding that the PPVA Warrant did not transfer to Goldberg before the Cayman Liquidation commenced.

### III.   The Court Did Not Err in Holding that the Segregated Account Condition Was a Material Condition Precedent.

Goldberg's arguments directed at the Court's holdings on the Segregated Account Condition, *see* Moving Br. 13-14, were made previously in his summary judgment motion, and are not supported by intervening law or new evidence. On this point, Goldberg presents a hodge-podge of arguments – Goldberg wasn't required to set up the segregated account, or Goldberg wasn't required to set it up before the transfer of securities, or the securities weren't required to be transferred into the segregated account – all of which are flatly contradicted by the plain language and manifest intent of the Term Sheet and Amended Term Sheet, as correctly construed in the Court's Decision.  *See* Decision at 12-15.

As with the Notes Condition, it is beyond reasonable dispute that the Segregated Account Condition was indeed a material condition precedent to the transfer of the PPVA Warrant.  That the Segregated Account Condition was a material condition precedent, and not just a contractual requirement that could be substantially complied with in part or at any time, is evidenced by the plain and unambiguous language in that provision that the "Transferred Securities shall be deposited into one or more segregated brokerage accounts . . . subject to a Securities Account Control Agreement in favor or Platinum and/or its affiliates." *See* Dkt. No. 25-1, Exs. 2-3.  The Transferred Securities, including the PPVA Warrant, could not logically be deposited into such an account until the account was set up.  *See also* Dkt. No. 34 ¶ 35 (PMNY's former chief financial officer testified that the absence of such segregated account with appropriate protections was the

9

reason why the PPVA Warrants were not transferred to Goldberg prior to commencement of the Cayman liquidation).

Further, Goldberg's assertion that he might have substantially complied with the Segregated Account Condition – as, for example, by opening up the segregated account and/or agreeing to a satisfactory Securities Account Control Agreement, *after* the PPVA Warrant was transferred to him, *see* Dkt. No. 46, Moving Br. at 13 – is flatly contradicted by the readily-apparent purpose of the segregated account. As the Court correctly held, "the establishment of a segregated brokerage account was vital to securing the notes issued by Goldberg . . . and protecting the Platinum entities' first-priority perfected security interest in the securities to be transferred, many of which (including the PPVA Warrant) were certificated and as to which Platinum's security interest *could otherwise be threatened by transferring control*." *See* Decision at 14-15 (emphasis added). It is manifest from the Term Sheet and Amended Term Sheet that this was not to be an outright transfer of securities to Goldberg. Rather, any such transfer was to be conditioned on Goldberg's issuance of notes in the amount of those securities' fair market value as of a stated date, the payment of which was to be secured by a perfected first-priority security interest in the underlying securities. *See* Dkt. No. 25-1, Exs. 2-3. Allowing physical certificated securities to be transferred to Goldberg, without the contemplated protections in place at the time of transfer, would eviscerate that contractual scheme. *See* Decision at 14 (explaining that the "intent of the parties" was to ensure that Platinum had a mechanism to ensure a first priority perfected security interest" in the Transferred Securities, including the PPVA Warrant.

Ultimately, despite his re-treaded arguments for why the Segregated Account Condition should not matter here, Goldberg's Motion for Reconsideration does not, and cannot, dispute that he had not created the requisite segregated account subject to a Securities Account Control

10

Agreement reasonably satisfactory to Platinum prior to the date of commencement of the Cayman Liquidation. This undisputed failure to satisfy the Segregated Account Condition pre-Liquidation is fatal to any claimed live right to receive the PPVA Warrant as of the moment when, under Cayman law, all rights to dispose of PPVA's property became vested in the Liquidators under the auspices of the Cayman Court. Putting everything else aside, this alone is more than sufficient to support the Court's Decision granting summary judgment against Goldberg.

At bottom, Goldberg's own actions after learning of PPVA's Liquidation undermine all of his arguments concerning the Notes Condition and Segregated Account Condition. Only after August 23, 2016 did Goldberg wake up and scramble to try to satisfy the Segregated Account Condition. *See* Dkt. No. 30-2 ¶ 68. Because the segregated account had not been set up, PMNY personnel refused to transfer him the PPVA Warrant. Dkt. No. 30-27 ¶ 66. Unsatisfied with that response, Goldberg went directly to PMNY's then-chief-investment-officer, Nordlicht, and concocted a scheme to fraudulently backdate an assignment of the PPVA Warrant knowing that the Liquidation meant Goldberg could not have the PPVA Warrant validly transferred to him. Goldberg's actions are an admission that he knew he failed to satisfy the conditions precedent to getting any rights to the PPVA Warrant prior to PPVA entering Liquidation.

IV.  **The JOLs' Accounting Treatment of Receivables from Goldberg Is Not New Evidence that Requires a Reversal of the Court's Decision on Summary Judgment.**

Goldberg's proffered March 18, 2022 email from the Liquidators and the Seventh Report of the Liquidators ("Seventh Report") attached thereto is not new evidence.[3] *See* Dkt. No. 46,

---

[3] Goldberg's suggestion that the Liquidators somehow violated their discovery obligations should be ignored. By Goldberg's own admission, he had the Liquidators' periodic progress reports in his emails all along but simply chose to ignore them. Moreover, the Liquidators' progress reports are not "financial statements" sought by Goldberg in discovery, and the parties resolved that dispute long ago with no further protest by Goldberg; Goldberg had the financial statements, and made abundant (unsuccessful) summary judgment arguments based on them.

11

Goldberg Aff. Ex. 1. Even if it were, the Seventh Report merely reflects a potential receivable arising from this litigation, and does not create any dispute of fact as to whether Goldberg ever satisfied the Notes Condition.

First, despite Goldberg characterizing this argument based on supposedly "new evidence," *see* Dkt. No. 46, Moving Br. at 3 (citing a March 18, 2022 email), Goldberg concedes that he had "several unopened emails from the JOL[s] which he had not before reviewed." *See id.* at 4. Goldberg further admits that one of these unopened emails is a March 17, 20**20** email from the JOLs containing the same purported admission of receivables due from him as the March 18, 2022 email. *See* Dkt. No. 46, Goldberg Aff. Ex. 2 (attaching a March 17, 20**20** email from Liquidators). That Goldberg ignored his emails for two years after does not make such emails "new evidence." *See Pettiford v. City of Yonkers*, No. 14 CIV. 6271 (JCM), 2020 WL 1989419, at *2 (S.D.N.Y. Apr. 27, 2020) ("In order for evidence to be considered 'newly discovered' on a motion for reconsideration, it must be evidence that was truly newly discovered or could not have been found by due diligence . . . . Newly discovered evidence must not have been available prior to entry of the judgment leading to reconsideration.") (internal quotations and citations omitted).

At the very latest, Goldberg had notice of the JOLs' accounting treatment of potential receivables no later than March 2020 – the same day he filed his opposition and cross-motion for summary judgment. *See* Dkt. No. 30. Goldberg had an opportunity to reply to his cross-motion, which he did on May 22, 2020, and he made no mention of any emails from the Liquidators in his possession. *See generally* Dkt. No. 36. Goldberg then submitted a supplemental letter brief on January 4, 2022, again, making no mention of any emails from the Liquidators in his possession. *See generally* Dkt. No. 40. The March 2022 email that he now proffers as "new evidence" is an update of accounting summaries that Goldberg had notice of for the last two years. He simply

12

chose to ignore this "evidence" until now. Moreover, the March 2022 email was available nearly two months prior to the date the Court entered its Decision on May 10, 2022. *See* Dkt. No. 44. Goldberg could have submitted the March 2022 email before the Court issued its Decision, but chose not to. Accordingly, the email is not "new evidence" as a matter of law. *Pettiford*, 2020 WL 1989419, at *2.

Second, even if the Court considered the March 18, 2022 email and the Seventh Report attached thereto as "new evidence," the report has no probative value. The listing of the "Notes Receivable from Michael Goldberg" is under a section titled "To Be Realized or Unrealizable." *See* Dkt. No. 46, Goldberg Ex. 1 at 25. On its face, acknowledging that any notes potentially due from Goldberg as unrealized and potentially unrealizable indicates the Liquidators do not believe any such notes are a viable asset. And, of course, this accounting treatment is simply a carry-over of PMNY's accounting treatment. *Compare id.* with Dkt. 30-5 at 29 (PPVA 2014 financial statement listing notes receivable in the same amount of $16,142,504).

Nor does the vague reference in the Seventh Report negate the dispositive effect of Goldberg's *own admissions* that he never issued the notes. *See* Dkt. No. 30-2 ¶ 15; *see also* Dkt. No. 20-1 at 87:9-12 & 109:4-23; Dkt. No. 46, Moving Br. at 12 ("Dr. Goldberg and PMNY were aware that a stand-alone Note had not been executed."). For these reasons, Goldberg's newly asserted argument that the Seventh Report is evidence he substantially complied with the Notes Condition also fails. *See* Dkt. No. 46, Moving Br. at 12.

V. **Goldberg Presents No Intervening Law or New Evidence in Support of His Regurgitated Argument that Ownership of the PPVA Warrant Vested in Him Prior to the Liquidation.**

Goldberg makes one last gasp in arguing – again – that the evidence he offered on summary judgment concerning accounting treatments by third parties "certified and/or memorialized and confirmed that Dr. Goldberg did in fact own the subject Transferred Securities well *before* the

13

Liquidation Date." Dkt. No. 46, Moving Br. at 19 (emphasis in original). In so doing, Goldberg does not cite any intervening law or new evidence that would support reconsideration. *See id.*

Goldberg contends here, as he did on summary judgment, that ownership of the PPVA Warrant transferred to him at some unidentified point in time[4] prior to the Liquidation based on the "absence of conditions precedent." *See id.* at 20. That argument fails for all of the reasons discussed in the Court's Decision and above.

Otherwise, Goldberg proffers the same documents and "evidence" he submitted on his cross-motion for summary judgment, which the Court held to be "vague observations of a third party" that "fail[s] to raise any genuine issues of material fact to the contrary." Decision at 19 (relying on Dkt. No. 35 at 17). Goldberg argues that the Court's analysis of this evidence was in clear error, but makes no attempt to explain how.

No matter how much Goldberg protests, the Court's Decision is well-grounded in an analysis of the applicable law and undisputed facts. Goldberg's dissatisfaction with the result is not grounds to find that the Court erred or to reverse the Court's Decision.

---

[4] Goldberg's own inability to explain on what date ownership of the PPVA Warrant supposedly transferred to him is telling.

14

## CONCLUSION

For the foregoing reasons, PPVA respectfully requests that the Court deny Goldberg's Motion for Reconsideration in its entirety.

Dated: June 10, 2022
     New York, New York

                                                /s   *Robert J. Burns*
                                                Warren E. Gluck, Esq.
                                                Robert J. Burns, Esq.
                                                Qian (Sheila) Shen, Esq.
                                                HOLLAND & KNIGHT LLP
                                                31 West 52nd Street
                                                New York, NY 10019
                                                warren.gluck@hklaw.com
                                                robert.burns@hklaw.com
                                                qian.shen@hklaw.com
                                                Tel:   (212) 513-3200
                                                Fax:   (212) 385-9010