IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P. (IN OFFICIAL LIQUIDATION), et al.,

    Debtors in Foreign Proceedings.

Chapter 15

Case No. 16-12925 (SCC)

(Jointly Administered)

---

PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P.,

    Plaintiff,

-vs-

MICHAEL M. GOLDBERG,

    Defendant.

Adv. Pro. No. 18-01650

---

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN
SUPPORT OF HIS MOTION PURSUANT TO BANKRUPTCY RULE 9023 FOR
RECONSIDERATION OF THE MODIFIED BENCH DECISION AND ORDER ON
<u>CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>**

LAW OFFICE OF MARK R. KOOK
1180 Avenue of the Americas, 8th Floor
New York, NY 10018
Tel.: (917) 673-9869
Attorneys for Defendant

## TABLE OF CONTENTS

Applicable Legal Standards ................................................................................................1

Controlling Precedent and the Language of the
Note and Control Agreement Provisions Preclude a
Finding that They Impose Conditions Precedent ................................................................3

The Evidence Demonstrates that, or at a Minimum Creates a
Question of Fact as to Whether, Dr. Goldberg Substantially
Complied With the Note and Control Account Provisions, or
Whether They Were Waived by PPVA .............................................................................7

The Newly Discovered JOL Reports Establish that
Plaintiff's Representations to the Court Were False ..........................................................9

The Court Overlooked the Facts Establishing
the Dr. Goldberg Was Vested with Ownership ................................................................13

Conclusion ........................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

Avant Capital v. W108 Dev. LLC,
   2016 U.S. Dist. LEXIS 177548 (S.D.N.Y. Dec. 9, 2016).................................................1

In re Banfi,
   2021 Bankr. LEXIS 1553 (E.D.N.Y. June 9, 2021).........................................................1

Microtel Franchise and Development Corp. v. Country Inn Hotel,
   923 F. Supp. 415, 419 (W.D.N.Y. 1996).....................................................................2, 3

New York v. Almy Bros.,
   1998 U.S. Dist. LEXIS 5469 (N.D.N.Y. Apr. 15, 1998)..................................................1

Oppenheimer & Co. v. Oppenheim,
   86 N.Y.2d 685 (1995).................................................................................................1, 2

Parlux Fragrances, LLC v. S. Carter Enterprises, LLC,
   204 A.D.3d 72, 164 N.Y.S.3d 108 (1st Dep't 2022).........................................................2

Sengillo v. Valeo Elec. Sys.,
   536 F. Supp. 2d 310 (W.D.N.Y. 2008).......................................................................2, 3

Sohm v. Scholastic Inc.,
   959 F.3d 39 (2d Cir. 2020).............................................................................................1

Thomas & Betts Corp. v. Trinity Meyer Util. Structures, LLC
   2021 U.S. App. LEXIS 28670 (2d Cir. Sept 22, 2021)................................................2, 3

U.S. v. Hamdi,
   432 F.3d 115 (2d Cir. 2005).......................................................................................2, 3

US Bank National Association v. Grady McMullin, Jr.,
   55 Misc. 3d 1053 (N.Y. Sup. Ct., Albany Co., Feb. 17, 2017)........................................2

Defendant Dr. Michael Goldberg ("Dr. Goldberg") respectfully submits this Reply Memorandum of Law in support of his Motion pursuant to Bankruptcy Rule 9023 for Reconsideration of the Modified Bench Decision and Order on Cross-Motions for Summary Judgment, entered on May 10, 2022 (the "Order"), granting Partial Summary Judgment on the issue of liability to Plaintiff Platinum Partners Value Arbitrage Fund L.P. ("PPVA").

**Applicable Legal Standards**

"[T]he Second Circuit has made clear that 'until there is a final judgment in a case, an interlocutory ruling generally remains subject to reconsideration or modification.'" New York v. Almy Bros., 1998 U.S. Dist. LEXIS 5469, *4 (N.D.N.Y. Apr. 15, 1998). *See also* In re Banfi, 2021 Bankr. LEXIS 1553, * 5 (E.D.N.Y. June 9, 2021) (reconsideration motions appropriate where "'the moving party can point to . . . matters . . . that might reasonably be expected to alter the conclusion reached by the court'").

Binding term sheets are fully enforceable under controlling New York law. See, e.g., Avant Capital v. W108 Dev. LLC, 2016 U.S. Dist. LEXIS 177548, * 7-8 (S.D.N.Y. Dec. 9, 2016). Under New York law, "[a] condition precedent . . . is 'an act or event which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises.'" Sohm v. Scholastic Inc., 959 F.3d 39, 46 (2d Cir. 2020). "New York respects a presumption that terms of a contract are covenants rather than conditions, and conditions precedent are not readily assumed." Id. "Express conditions must be literally performed, whereas constructive conditions, which ordinarily arise from language of promise, are subject to the precept that substantial compliance is sufficient." Oppenheimer & Co. v. Oppenheim, 86 N.Y.2d 685, 690 (1995).

Although "linguistic conventions of condition—such as 'if,' 'on condition that,' 'provided that,' 'in the event that,' and 'subject to[]'" can indicate the intent to create a condition

1

precedent, "[i]t does not follow that 'subject to' are magic words that necessarily create conditions precedent." Thomas & Betts Corporation v. Trinity Meyer Utility Structures, LLC, 2021 U.S. App. LEXIS 28670, *6 (2d Cir. Sept. 22, 2021). The Second Circuit has cautioned that "[r]ather than interpreting 'subject to' as words that automatically create conditions precedent, a court must look to both the placement of the conditional language and the context in which it is used in order to determine whether the parties intended to impose conditions precedent." Id. "[A]bsent some ambiguity in the underlying contract, a recital clause does not create enforceable obligations on the part of the parties . . . ." See Sengillo v. Valeo Elec. Sys., 536 F. Supp. 2d 310 (W.D.N.Y. 2008) (citing U.S. v. Hamdi, 432 F.3d 115, 123 (2d Cir. 2005); Microtel Franchise and Development Corp. v. Country Inn Hotel, 923 F. Supp. 415, 419 n. 4 (W.D.N.Y. 1996). "In short, that which is functionally a recital does not, 'by any other name,' or even in the absence of a clarifying heading, comprise an enforceable contractual term." Id.

"In determining whether a particular agreement makes an event a condition courts will interpret doubtful language as embodying a promise or constructive condition rather than an express condition. This interpretive preference is especially strong when a finding of express condition would increase the risk of forfeiture by the oblige." Oppenheimer, 86 N.Y.2d at 690; see also US Bank National Association v. Grady McMullin, Jr., 55 Misc. 3d 1053 (N.Y. Sup. Ct., Albany Co., Feb. 17, 2017). The term "shall" which appears in both the Note and Control Agreement sections of the Binding Term Sheet, denotes promissory language, not a condition precedent. See, e.g., Parlux Fragrances, LLC v. S. Carter Enterprises, LLC, 204 A.D.3d 72, 86, 164 N.Y.S.3d 108 (1st Dep't 2022).

2

**Controlling Precedent and the Language of the
Note and Control Agreement Provisions Preclude a
<u>Finding that They Impose Conditions Precedent</u>**

Once the proper standard is applied to the language of the Binding Term Sheet, it becomes clear that the Note and the Control Agreement provisions contained obligations of Dr. Goldberg, and not conditions precedent which would result in Dr. Goldberg forfeiting the benefits of the Binding Term Sheet if they were not strictly complied with. As set forth in Dr. Goldberg's moving brief, the language "subject to the terms and conditions described herein" appearing in the "Background" recitals of the Binding Term Sheet, cannot rebut the presumption under New York law that provisions such as the Note and Control Account provisions in contracts such as the Binding Term Sheet represent obligations, *not* conditions precedent.

In finding that the Note and Control Agreement provisions were conditions precedent, the Court focused on the language "subject to the terms and conditions herein" contained in the "Background" recitals of the Binding Term Sheet. However, as the Second Circuit has recognized, generalized statements in precatory portions of a contract providing background and context for the promises exchanged do not create substantive obligations of the parties. See <u>Sengillo</u>, 536 F. Supp. 2d 310; <u>Hamdi</u>, 432 F.3d at 123; <u>Microtel Franchise and Development Corp.</u>, 923 F. Supp. at 419, n. 4.

The Second Circuit's recent decision in <u>Thomas & Betts Corp.</u> v. <u>Trinity Meyer Util. Structures, LLC</u>, <u>supra</u>, cautioned that "[r]ather than interpreting 'subject to' as words that automatically create conditions precedent, a court must look to both the placement of the conditional language and the context in which it is used in order to determine whether the parties intended to impose conditions precedent." 2021 U.S. App. LEXIS 28670, *6 (2d Cir. Sept 22, 2021). The court ruled that the phrase "subject to" at the beginning of a preceding subsection in the same section of the contract "falls short of the kind of clear conditional language that would

3

enable us to infer the existence of conditions precedent in the face of New York's strong presumption against inferring that the parties have imposed strict conditions precedent to performance." *Id.* at *10. In this case, the phrase "subject to" appears in the "Background" recitals which, in itself, counsels against an interpretation that would expand or contract the substantive rights set forth in the Binding Term Sheet. In addition, the construction given to that phrase by the Court would render *every single word* of the substantive portion of the Binding Term Sheet its own condition precedent and would result in an unworkable "chicken or egg" situation where mutual obligations could each be construed as conditions precedent to one another and render the contract unworkable.

For example, the Note provision of the Binding Term sheet begins with the following language: "In consideration for the Transferred Securities, Dr. Goldberg shall issue to one or more of the Platinum Funds, as directed by Platinum (the "Noteholders"), seven year notes in the form of Exhibit A attached hereto." If the words "subject to the terms and conditions contained herein" could be read to set up a "condition precedent," what would the condition precedent be? Given that PPVA's obligation to transfer securities to Dr. Goldberg is mentioned before Dr. Goldberg's obligation to execute a note, the logical reading would be that the transfer of the securities would be a condition precedent to any obligation by Dr. Goldberg to issue a note for them. This is especially true in light of the fact that the language regarding Dr. Goldberg's obligation to issue notes is governed by the word "shall" appearing after the reference to transfer of the securities to him, and this Court has previously noted that the word "shall" generally denotes future conduct. Thus, the phrase "In consideration for the Transferred Securities, Dr.

4

Goldberg *shall* issue . . . notes . . ." could best be read to make the transfer of the securities the condition precedent.[1]

Given the strong presumption against conditions precedent recognized by New York law and the specific language of the Note provision of the Binding Term Sheet, controlling New York law does not allow the Court's reading of the Binding Term Sheet to impose the execution of one or more notes by Dr. Goldberg to be a condition precedent to the transfer of the securities such that absent strict compliance with the provision Dr. Goldberg would forfeit his rights under the agreement.

Similarly, if the phrase "subject to" appearing in the "Background" recitals could render the Control Agreement provision a condition precedent required for the transfer of the securities, one would expect the Binding Term Sheet to provide that the Transferred Securities had to be "transferred" directly into the account(s), but it does not. It merely says that "[t]he Transferred Securities *shall* be *deposited* into one or more segregated brokerage accounts owned by Dr. Goldberg." It does not state that PPVA would "deposit" the securities in the account, much less require that they be "transferred" directly into the account. This language can properly (and consistent with New York's presumption against conditions precedent) be read to obligate Dr. Goldberg to deposit the securities once he received them. Again, this Court has recognized that the word "shall" generally denotes future conduct. The Court has also noted that the parties to the Binding Term Sheet are sophisticated parties. In light of the presumption against conditions

---

[1] At oral argument the Court stated repeatedly that the note(s) contemplated by the Note provision were required because Dr. Goldberg was required to "pay" PPVA for the Transferred Securities. In fact, that is not the case at all. As the Binding Term Sheet makes clear, the "Note" relating to the Transferred Securities would entitle PPVA only to a conditional entitlement to payment representing a portion of the profit *if and only if* Dr. Goldberg disposed of the securities at a price higher than the value assigned to them as of December 31, 2013 – in other words, a contingent profit participation right. The Binding Term Sheet also makes clear that the Note(s) would be non-recourse as to Dr. Goldberg, meaning that PPVA could not look beyond its security interest in the Transferred Securities that were owned by Dr. Goldberg.

5

precedent, a reading of this language as imposing such a condition precedent, and the threat of forfeiture, on Dr. Goldberg is contrary to controlling New York law.

Additionally, the Control Account provision *does not* require Dr. Goldberg to establish the account. It is at best ambiguous as to who was required to open the account, but does provide that "*the parties* agree to take such steps as are necessary or desirable to effect such security interest." There is nothing in the language of the Control Account provision that can unambiguously be read to require Dr. Goldberg to do anything other than cooperate with PPVA to create a security interest in the Transferred Securities in favor of PPVA – an interest that could only exist and would only be necessary because the securities were *not* the property of PPVA. Once again, in light of the strong presumption against conditions precedent and forfeitures, the Court's holding that creation of a control account and drafting of a securities control agreement by *Dr. Goldberg* were conditions precedent to Dr. Goldberg's receiving ownership of the Transferred Securities simply cannot be squared with controlling New York law.

Instead, New York law commands that the Note and Control Agreement provisions be construed as "obligations" of Dr. Goldberg, corresponding to the obligations placed on PPVA in the Binding Term Sheet. All of those terms are subject to the same principles of substantial compliance, waiver and breach. The Binding Term Sheet itself provides that the rights of the parties as set forth in the agreement would be "in full force and effect" even if no additional documents were ever executed.

When viewed in that light, the overwhelming evidence consisting of contemporaneous declarations and memorializations by Dr. Goldberg and Platinum Management (and even PPVA), establish that PPVA had already transferred ownership of the Transferred Securities to Dr. Goldberg and deemed ownership of the Transferred Securities to have passed to Dr.

6

Goldberg at or about the time of the Binding Term Sheet, long *before* the Liquidation. This overwhelming yet overlooked evidence also makes clear that even if Dr. Goldberg had not been deemed to have substantially performed his obligations by PPVA, and even if PPVA had not waived those obligations, PPVA partially performed on the Binding Term Sheet. If a party to a contract is aware of breaches by its counterparty but performs anyway, its remedy is an action for breach of contract, not unilateral rescission of the agreement.

Thus, as clearly stated in myriad business records of Platinum and PPVA, the Transferred Securities were "owned by Dr. Goldberg." (See Moving Brief at pp. 19-21 and pp. 13-14, infra.) *If*, as the Court suggested repeatedly at oral argument, PPVA was none-the-less entitled to a separate "Note" and to have the Transferred Securities deposited into a control account subject to an account control agreement acceptable to PPVA, PPVA's recourse for any failure of Dr. Goldberg to perform his obligations with regard to the Notes or Control Account provisions was a claim for breach of contract seeking either specific performance (i.e., an order compelling Dr. Goldberg to execute a note and deposit the Transferred Securities into a control account subject to an account control agreement) or a suit for damages.

**The Evidence Demonstrates that, or at a Minimum Creates a Question of Fact as to Whether, Dr. Goldberg Substantially Complied With the Note and Control Account Provisions, or Whether They Were Waived by PPVA**

The plain language of the Binding Term Sheet shows that there were no conditions precedent. As a result, all that was required of Dr. Goldberg was substantial compliance with the Note requirement. And there cannot be any good faith dispute as to at least substantial compliance, because the JOLs and PPVA have affirmatively booked the "Notes Receivable from Michael Goldberg" as an actual existing asset. In order to do so under GAAP, the receivable from Dr. Goldberg must be, at a minimum, reasonable certainty about the terms and obligations

7

to pay. Given that PPVA consistently booked the "notes receivable" from Dr. Goldberg as an asset of PPVA and represented that it was "fully recoverable" in its JOL Reports, the JOLs and PPVA cannot in good faith argue that there was not *at least* substantial compliance as to the Notes. (See p. 12, infra.)

Moreover, even if PPVA did not deem the Note provision to be substantially complied with, there is at least a fact question as to whether PMNY (the only signatory to the Binding Term Sheet other than Dr. Goldberg) waived the Note requirement. (See Defendants' Moving Brief, p. 12.)

With respect to the control account, the "shall" language in the Security Interest section (as the Court recognized) contemplates future action. There is absolutely *no* language in the Binding Term Sheet requiring that an account be in place BEFORE ownership of the Transferred Securities could vest with Dr. Goldberg.

Further, here, the evidence produced by Dr. Goldberg plainly establishes that it was the intent and declared memorialization of all the parties to the Binding Term Sheet (as well as PPVA) that Dr. Goldberg was the "owner", and "owned" all of the Transferred Securities long *before* the Liquidation. (See Moving Summary Judgment Brief, pp. 7-11, 13, 17-21, 30-31.) The Court should correct its error in overlooking all of the facts, and instead hold at minimum that there are numerous issues of fact as to PPVA's claim that Dr. Goldberg was *not* the owner.

Finally, the language that it is the "intent of the parties" that Platinum and/or its affiliates **_will have_** a perfected security interest in the accounts evidences, again, the fact that PPVA did *not* own the Transferred Securities, but was entitled solely to a perfected security interest. The Security Interest section of the Binding Term Sheet does *not* have anything to do with ownership of the Transferred Securities. Rather, PPVA was to have a perfected lies *because* PPVA was *not*

the owner. The owner of property does not require a lien upon his own property. In addition, there is *no* language stating that PPVA's perfection of a security interest could or was required to be completed before ownership was transferred to Dr. Goldberg.

**The Newly Discovered JOL Reports Establish that**
**Plaintiff's Representations to the Court Were False**

PPVA, from the outset, repeatedly represented to the Court that Dr. Goldberg failed to honor the purported conditions precedent regarding the Note provision as described in the Binding Term Sheet, and that, instead, there were "no notes." PPVA went to manifestly disingenuous lengths to paint a false and distorted picture that there were "no notes."

Martin Trott, one of the Liquidators, testified – contrary to the facts as the Liquidators knew the actual facts to be – that Dr. Goldberg "did not comply with the terms" regarding the Note provision. (See Moving Brief, pp. 15-16.) Mr. Trott also testified, again disingenuously, that the Liquidators never issued any schedules of assets that referred to Dr. Goldberg or the Note provision. The truthfulness of Mr. Trott's testimony, and the veracity of PPVA's position, must be measured against *the now irrefutable fact that the JOLs indeed maintained a meticulous Schedule of Assets - - and carried on those Schedules the aptly named "Notes Receivable from Michael Goldberg" with a value of $16,142,504*, i.e., the exact aggregate value of the value of all the Transferred Securities in the Binding Term Sheet.

PPVA responds to the transparent bad faith of the Liquidator's testimony by *ignoring* Mr. Trott in its Opposition, hoping that the Court will not take notice of Mr. Trott if PPVA does not mention him.

PPVA similarly fails to address its failure to produce the JOL Asset Reports. PPVA cavalierly argues that Dr. Goldberg is just again referring to PPVA's prior inexcusable failure to produce any "financial statements," which PPVA falsely asserted earlier could not be found (see

9

PPVA Opp. Brief, p. 11 n.3) – until Platinum Manager produced those very financial statements in response to a subpoena. In fact, PPVA's "list of assets" was separately and specifically requested in Defendant's Second Document Request:

> 1. All documents constituting or relating or referring to **any list of assets** filed in connection with the liquidation proceedings in the Cayman Islands reporting any assets concerning Navidea, as referred to at page 13 of the PPVA deposition.
>
> 2. All documents constituting or relating or referring to any records provided in connection with the liquidation which concern any of Navidea's securities, as referred to at page 14 of the PPVA deposition.

--See Defendant's Moving Brief, p. 8.[2]

PPVA simply reverted to its game plan of hiding the facts that undermine its position. The Asset Schedules did exist – PPVA just ignored the Federal Rules and failed to produce any of the Asset Schedules. And now, PPVA pleads with the Court to keep its Asset Schedules hidden.

PPVA states that "Defendant had notice of the JOL's accounting treatment" of the notes receivable. (PPVA's Opp. Brief, p. 12.) In fact, it was not until March 2022, several months after Argument, and years after he demanded production of all PPVA Asset Schedules which PPVA pretended did not exist, that Dr. Goldberg (as explained in his Moving Aff.) saw for the first time that the JOLs in their Fifth Report listing PPVA's assets, for the period through December 31, 2019, listed the **"Notes Receivable from Michael Goldberg"** with the value of $16,142,503, the *same exact* value assigned to all the Transferred Securities. The JOLs stated without qualification that:

---

[2] The citation in the Moving Brief at p. 8, to E-Docket No. 30 inadvertently referred to Exhibit "8" instead of Exhibit "6."

**The JOL's believe that this debt is fully recoverable.**

--Emphasis added.

PPVA fails in its Opposition even to refer to this "debt [that] is fully recoverable" in the amount of $16,142,053, as listed in the JOL's Fifth Report. PPVA instead quotes only from the March 2022 Seventh Report, which refers to the Notes Receivable as being, "To Be Realized or Unrealizable":

> [T]he report has no probative value. The listing of the "Notes Receivable from Michael Goldberg" is under a section titled "To Be Realized or Unrealizable," *See* Dkt. No. 46, Goldberg Ex. 1 at 25. On its face, acknowledging that any notes potentially due from Goldberg as unrealized and potentially unrealizable indicates the Liquidators do not believe any such notes are a viable asset.

--PPVA Opp. Brief, p. 13.

Of course, it was not for PPVA to decide whether the Schedules "had no probative value" and to withheld them from disclosure. In addition, there is no testimony from any JOL as to what that phase means, or at what point in time, and for what reason, the Goldberg Notes Receivable went from "fully recoverable" to "To Be Realized or Unrealizable." What is crystal clear is that the JOLs, in their Asset Schedules that they and PPVA steadfastly failed to produce, plainly did **not** consider there to be "**no notes**."

PPVA, to further bolster its position, falsely argued to the Court at Argument that Dr. Goldberg was required under the Binding Term Sheet to issue a wholly monetized note, in the amount of $11 million that was an instrument for the payment of money, and subject to immediate summary judgment under CPLR 3212 in the New York State courts - - and that there was no such CPLR 3212 note.

Of course, PPVA could never bring a CPLR 3212 Motion upon the Notes Receivable that are actually set forth under the Binding Term Sheets. The express language of the Binding Term

11

Sheets dictates that PPVA would only be entitled to certain amounts if certain value targets were met if and when the Transferred Shares were sold by Dr. Goldberg. Further, the Notes are **Non-Recourse Notes**. PPVA could **not** "run" into State Court with a Motion for Summary Judgment in lieu of Complaint with their Notes Receivable valued at $16,146,503.

But PPVA nevertheless told the Court the absence of this monetized note was proof that there was "no note" whatsoever.

Incredibly, in its Opposition Brief, p. 7, n. 2, PPVA now claims that its assertions at Argument to CPLR 3212 are "frankly, a total mystery and have no apparent connection to this case." PPVA cannot avoid the transcript which shows that it was *PPVA* that injected at Argument that Dr. Goldberg was required to issue an $11 million money-only-instrument-note, which of course was never found. Indeed, at argument, PPVA declared as follows:

> **The Court: And so no notes?**
>
> **Mr. Burns: No notes. We've never seen a note, Your Honor. We've never - - we've scoured - -**[3]
>
> ***
>
> The Court: Could you respond to some of this past - - some or all of this past colloquy that we've had here?
>
> Mr. Burns: Sure, Your Honor. Let me just start with, if we, PPVA, had in our file notes from Dr. Goldberg for eleven million dollars, we would not be here before Your Honor, fighting about four million dollars. **We would have long since taken those notes, brought them to state supreme court, and collected on them, pursuant on summary judgment in lieu of complaint. It would be easy.**
>
> **The problem is we don't have the notes because there were no notes...**
>
> --Argument, pp. 19-20; <u>see</u> pp. 38-39 (emphasis added).

---

[3] PPVA should have "scoured" the JOL's Asset Schedules.

12

In all events, the Court accepted PPVA's disingenuous "No Notes" argument based on PPVA's false assertions. (See Argument, pp. 22, 29.)

### The Court Overlooked the Facts Establishing the Dr. Goldberg Was Vested with Ownership

The Court also disregarded the evidence establishing that all the persons involved – including Platinum Manager and PPVA - - certified and/or memorialized and confirmed that Dr. Goldberg did in fact **own** the subject Transferred Securities well before the liquidation date. (See PPVA Opposition Brief, pp 13-14.)

PPVA, and the Court, repeatedly refer to the "intent of the parties." (See PPVA Opp. Brief, p. 10.) The actual intent of the only parties to the Binding Term Sheet, Dr. Goldberg and Platinum Manager (and as echoed by PPVA) underscore that Dr. Goldberg **owned** the Transferred Securities more than a year *before* the Liquidation.

These ownership facts include the unambiguous Amended 13D certified by Platinum Manager and PPVA, as the Reporting Person, and filed with the SEC, April 29, 2016, which declares that ownership had already transferred and belonged to Dr. Goldberg:

> Also excluded from [PPVA's] beneficial ownership calculation are 5,411,850 shares of common stock **owned by Michael M. Goldberg**, a current Director of Navidea, pursuant to an agreement effective March 28, 2014, and amended effective June 11, 2015 (the "Platinum Separation Agreement), which provides that Dr. Goldberg has sole voting and dispositive power over those securities....
>
> --See E-Docket No. 30, Exhibit 1 to the Moving Goldberg Summary Judgment Affirmation (emphasis added).

Platinum Management's CFO, Mr. San Filippo, also produced a Platinum memorandum dated July 9, 2015, which confirmed that PPVA did *not* own the Transferred Navidea Securities:

**"It is also important to note that the fund has disclosed to the public and SEC that the fund**

13

does not own these securities.[4]

PPVA's counsel admitted these dispositive facts in an email, dated January 13, 2020: "**notes receivable from Goldberg were booked per Goldberg's term sheet** with PM (NY), and the **Navidea Series B preferred shares referenced in Goldberg's term sheet (and/or the Warrants for which they were exchanged in 2015) were not included within the accounting of PPVA's positions …**"[5]

We respectfully submit that the Court should correct these clear errors and prevent the manifest injustice of awarding any judgment on any issue to PPVA.

**Conclusion**

Based on the foregoing, Defendant Dr. Michael Goldberg respectfully requests that the Court should grant his Motion for Reconsideration, and thereupon deny PPVA's Motion for Summary Judgment.

Dated:  New York, New York
        June 17, 2022

                                    LAW OFFICE OF MARK R. KOOK

                                    By: ___/s/ Mark R. Kook___
                                    Mark R. Kook (6832)
                                    1180 Avenue of the Americas, 8th Floor
                                    New York, NY 10036
                                    Tel.: (917) 673-9869
                                    Attorneys for Defendant

---

[4] E-Docket No. 30, Exhibit 4 to the Moving Goldberg Summary Judgment Affidavit (emphasis added).

[5] See E-Docket No. 30, Affirmation of Mark R. Kook, dated March 18, 2020 (the "Kook Aff.") Exhibit 8 (emphasis added).