IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P.
(IN OFFICIAL LIQUIDATION), et al.,

Chapter 15

Debtors in Foreign Proceedings.

Case No. 16-12925 (SCC)

PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P.,

(Jointly Administered)

Plaintiff,

Adv. Pro. No. 18-01650

-vs-

MICHAEL M. GOLDBERG,

**DEFENDANT'S NOTICE
OF APPEAL**

Defendant.

------------------------------------------------------------------

**PLEASE TAKE NOTICE THAT**, pursuant to 28 U.S.C.§ 158(a)(2) and

Bankruptcy Rule 8004, Defendant Dr. Michael Goldberg, by and through counsel, hereby gives

notice of his appeal from the Modified Bench Decision and Order on Cross-Motions for

Summary Judgment, entered on May 10, 2022 (the "Order") which granted summary judgment

on the issue of liability to Plaintiff Platinum Partners Value Arbitrage Fund L.P. ("PPVA") in

this adversary proceeding between Dr. Goldberg and PPVA in the United States Bankruptcy

Court for the Southern District of New York, Hon. Shelly Chapman, J. (the "Bankruptcy Court")

see Exhibit 1), and the Order of the Bankruptcy Court Denying Defendant's Motion for

Reconsideration, dated July 11, 2025 (see Exhibit 2) (together, the "Orders"), and all prior

pleadings submitted herein, at the United States District Court for the Southern District of New

1

York, 500 Pearl Street, New York, New York, for an Order vacating those Orders and the

granting of Partial Summary Judgment on the issue of liability to Plaintiff Platinum Partners

Value Arbitrage Fund L.P.; and for such other relief the Court deems proper.

**PLEASE TAKE FURTHER NOTICE THAT,** upon the Court selecting a return date

for this Motion, the parties will submit a briefing schedule to be approved by the Court.


Dated:  July 25, 2022

                                        LAW OFFICE OF MARK R. KOOK


                                        By: _____/Mark R. Kook/_____
                                             Mark R. Kook (6832)
                                             1180 Avenue of the Americas, Floor 8
                                             New York, NY 10038
                                             Tel.: (917) 673-9869

                                             Attorneys for Defendant


TO:     Robert J. Burns, Esq.
        Holland & Knight
        31 West 31st Street
        New York, NY 10019
        (212) 513-3200

        Attorneys for Plaintiff

EXHIBIT 1

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>PLATINUM PARTNERS VALUE ARBITRAGE<br>FUND L.P. (IN OFFICIAL LIQUIDATION), *et al.*,<br><br>      Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 16-12925 (SCC)<br><br>(Jointly Administered) |
| PLATINUM PARTNERS VALUE ARBITRAGE<br>FUND, L.P.,<br><br>      Plaintiff,<br><br>vs.<br><br>MICHAEL M. GOLDBERG,<br><br>      Defendant. | Adv. Pro. No. 18-01650 |

**MODIFIED BENCH DECISION AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT[1]**

**A P P E A R A N C E S:**

HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
    By: Robert J. Burns, Esq.

*Counsel to Joint Official Liquidators of Platinum Partners Arbitrage Fund L.P.*

LAW OFFICE OF MARK R. KOOK
270 Madison Avenue
Suite 1203
New York, New York 10016
    By: Mark R. Kook, Esq.

*Counsel to Michael M. Goldberg*

---

[1]    This bench decision was dictated on the record of the hearing held on May 9, 2022. It has been modified to include full citations and defined terms and reflects minor additional non-substantive modifications.

**SHELLEY C. CHAPMAN**
**United States Bankruptcy Judge**

Before the Court are cross-motions for summary judgment filed by (i) the joint official liquidators (the "Liquidators") of Plaintiff Platinum Partners Value Arbitrage Fund L.P. ("PPVA") and (ii) Defendant Dr. Michael M. Goldberg ("Goldberg") in Adversary Proceeding No. 18-01650. The Liquidators filed a memorandum of law in support of their motion for summary judgment [Dkt. No. 23] ("Liquidators' Moving Br.") on January 31, 2020. On March 20, 2020, Goldberg filed a memorandum of law in support of his cross-motion for summary judgment and in opposition to the Liquidators' motion for summary judgment [Dkt. No. 30] ("Goldberg Brief"). The Liquidators filed a reply memorandum of law in further support of their motion for summary judgment and in opposition to Goldberg's cross-motion for summary judgment [Dkt. No. 35] on April 30, 2020 ("PPVA Reply"). Goldberg filed a reply in support of his cross-motion for summary judgment [Dkt. No. 36] on May 22, 2020.

Additionally, the Liquidators filed a statement of undisputed material facts in support of their motion for summary judgment [Dkt. No. 24] on January 31, 2020. On March 20, 2020, Goldberg filed a statement of undisputed material facts in support of his motion [Dkt. No. 30-2] and a counterstatement of material facts in opposition to PPVA's statement [Dkt. No. 30-27] ("Goldberg Reply SOMF"), after which the Liquidators filed a counterstatement of material facts [Dkt. No. 34]. In support of their motion for summary judgment, the Liquidators also filed the Declaration of Matthew Dors [Dkt. No. 21] ("Dors Declaration") and the Declaration of Kevin Wilson [Dkt. No. 22] ("Wilson Declaration"), as well as two Declarations of Robert Buns [Dkt. Nos. 20, 33] ("Burns Declaration"). In support of his motion for summary judgment, Goldberg

submitted two Affirmations of Mark Kook [Dkt. Nos. 30-18, 36-2] ("Kook Affirmation") and the

Affirmation of Michael Goldberg [Dkt. No. 30-3].

On December 8, 2021, the Court heard oral argument from the parties. The parties

subsequently filed several letters on the docket, which the Court has considered as supplemental

briefing on the merits [Dkt. Nos. 40–41]. The Court has carefully considered all of the foregoing

submissions in rendering the following decision.

**Background**

Before filing for liquidation, PPVA was a hedge fund formed in 2002 under the laws of

the Cayman Islands. Platinum Management (NY) LLC ("Platinum") was the general partner of

PPVA and provided investment management and advisory services to PPVA and its investors.

Beginning in 2007, Goldberg served as a portfolio manager for Platinum; he worked with

companies in the healthcare industry, including Navidea Biopharmaceutical Inc. ("Navidea").

Goldberg joined the board of directors of Navidea in November 2013.  Shortly thereafter, in

December 2013, Goldberg left Platinum, after which he served as the interim chief executive

officer ("CEO") of Navidea from mid- to late-2014 and then as CEO of Navidea from September

2016 until August 2018.

Goldberg and Platinum entered into a separation agreement (the "Term Sheet"), effective

March 28, 2014, which outlined the terms of Goldberg's separation from Platinum. (*See* Burns

Decl. Ex. 2.) The Term Sheet was signed by Goldberg, on behalf of himself, and by Mark

Nordlicht, a co-founder of Platinum and its chief investment officer ("CIO"), on behalf of

Platinum. The Term Sheet provided that, "Platinum wishes, subject to the terms and conditions

described herein, to cause certain private investment funds under its management . . . to transfer

to Dr. Goldberg certain positions held by them as of December 31, 2013 . . . ." (Burns Decl. Ex.

2.) Among the positions to be transferred to Goldberg, upon satisfaction of the contractual conditions in the Term Sheet, were 1,655 Navidea Series B Convertible Preferred Shares (the "Preferred Shares"), which could be converted into 5,411,850 shares of Navidea common stock (the "Navidea Common Stock"). The Term Sheet specified that Goldberg "shall issue to one or more of the Platinum Funds, as directed by Platinum . . . notes in the form of Exhibit A attached hereto," which required Goldberg to issue notes for the stated market value of the securities as of December 31, 2013 (the "Notes Condition"). (*Id.*) Additionally, the Term Sheet provided that the securities to be transferred "shall be deposited into one or more segregated brokerage accounts owned by Dr. Goldberg, each subject to a Securities Account Control Agreement in favor of Platinum and/or its affiliates . . . the terms of the Account Control Agreements must be reasonably acceptable to Platinum" and that "[i]t is the intent of the parties that Platinum . . . will have a first priority, perfected security interest in the Accounts, and the parties agree to take such steps as are necessary or desirable to effect such security interest" (the "Segregated Account Condition"). (*Id.*)

Goldberg and Platinum later entered into an amended separation agreement (the "Amended Term Sheet," and, together with the Term Sheet, the "Term Sheets"), effective on June 11, 2015. (*See* Burns Decl. Ex. 3.) The Amended Term Sheet included the same Segregated Account Condition as the Term Sheet and a substantially similar Notes Condition that included different prepayment and repayment terms, including the issuance of seven-year notes, rather than five-year notes. (*Id.*)

On August 20, 2015, PPVA and Navidea entered into an agreement (the "Securities Exchange Agreement"), in which all Navidea Class B Convertible Preferred Shares held by PPVA, including the Preferred Shares, were to be exchanged for warrants to purchase Navidea

common shares, including a warrant to exchange the Preferred Shares for the Navidea Common

Stock (the "PPVA Warrant"). (*See* Burns Decl. Ex. 4, Securities Exchange Agreement, § 2(a))

("[E]ach Investor agrees to deliver to the Company the Series B Stock set forth on Exhibit A . . .

in exchange for a 20 year Common Stock Purchase Warrant . . . to acquire [a] number of shares

of Common Stock . . . at an exercise price per share of $0.01 per share. In consideration of and in

express reliance upon the representations, warranties, covenants, terms and conditions of this

Agreement, the Company agrees to issue and deliver the Warrants in exchange for the Original

Securities.") The Securities Exchange Agreement was purportedly executed due to Navidea's

upcoming listing on the Tel Aviv Stock Exchange, which forbade listing companies from having

multiple classes of shares. (*See* Goldberg Br. at 14.) Pursuant to the Securities Exchange

Agreement, PPVA exchanged the Preferred Shares for the PPVA Warrant, issued by Navidea in

PPVA's name; both the Securities Exchange Agreement and the PPVA Warrant identify PPVA

as the owner of the Preferred Shares and, subsequently, the PPVA Warrant. (*See* Burns Decl. Ex.

4, Securities Exchange Agreement, § 4(c), Ex. A (providing that PPVA "owns and holds,

beneficially and of record, the entire right, title and interest in and to the [Preferred Shares] set

forth opposite its name on Exhibit A hereto, free and clear of any claim . . . ." and listing 1,655

shares of Preferred Stock and 5,411,850 in Warrant Shares in Exhibit A); Burns Decl. Ex. 5,

PPVA Warrant.)

On August 23, 2016, Platinum, as general partner of PPVA, filed a voluntary petition

with the Financial Services Division of the Grand Court of the Cayman Islands (the "Cayman

Court") to wind up PPVA (the "Cayman Liquidation"). On August 25, 2016, the Cayman Court

entered an order directing the provisional liquidation of PPVA and appointed Matthew Wright

and Christopher Kennedy as joint provisional liquidators of PPVA. The Cayman Court converted

the provisional liquidation to an official liquidation on October 27, 2016, and, on November 23, 2016, this Court entered an order granting recognition and relief in aid of the Cayman Liquidation.

In October 2016, after the commencement of the Cayman Liquidation and at Goldberg's direction, Mark Nordlicht, CIO of Platinum, completed and executed a transfer/assignment form on a copy of the PPVA Warrant in an effort to assign the PPVA Warrant to Goldberg. Instead of utilizing the then current date of October 16, 2016, Nordlicht backdated the assignment form to October 1, 2015. (Goldberg Reply SOMF ¶¶ 79-90.) The original of the PPVA Warrant was not surrendered to Navidea and remained in PPVA's custody vault at Bank of New York Mellon at all relevant times, through the present. (Goldberg Reply SOMF ¶ 91; Wilson Decl. ¶¶ 6-11.)

Upon receipt of the copy of the PPVA Warrant, Navidea reissued the PPVA Warrant in Goldberg's name on October 17, 2016. (Goldberg Reply SOMF ¶ 92.) On January 16, 2017, Goldberg exercised the copy of the PPVA Warrant and received the Navidea Common Stock. (Burns Decl. Ex. 35; Goldberg Reply SOMF ¶ 98.)

On or about October 19, 2016, Goldberg filed with the Securities and Exchange Commission a Form 4 Statement of Changes in Beneficial Ownership which (i) asserted a beneficial ownership interest in the PPVA Warrant and (ii) stated that such interest was acquired via a transfer of the PPVA Warrant to Goldberg which occurred on October 17, 2016. (Burns Decl. Ex. 23.) Likewise, in a Section 14A Proxy Statement filed with the Securities and Exchange Commission on February 8, 2017, Navidea stated that, on October 17, 2016, Platinum had transferred the PPVA Warrant to Goldberg, which warrant was exercised in full by Goldberg on January 17, 2017. (Goldberg Reply SOMF ¶¶ 95, 101-102.) The Proxy Statement was signed

by Goldberg as Navidea's President and Chief Executive Officer. (Goldberg Reply SOMF ¶ 101.)

On October 5, 2018, the Liquidators commenced the instant adversary proceeding, filing a complaint against Goldberg seeking the turnover of the value of the PPVA Warrant pursuant to sections 1521(a)(5) and 1521(a)(7) of the Bankruptcy Code ("Count I") and asserting claims against Goldberg under theories of (i) conversion ("Count II"), (ii) unjust enrichment ("Count III"), and (iii) contempt ("Count IV"). The Liquidators seek summary judgment on Counts I, II, and III and an order requiring the turnover of the value of the PPVA Warrant, or, alternatively, damages under a theory of conversion or unjust enrichment. Goldberg opposes PPVA's Motion and has cross-moved for summary judgment, dismissal of the Liquidators' claims in the adversary proceeding with prejudice, and sanctions.

**Legal Standard**

**A. Summary Judgment**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court draws all inferences in the "light most favorable to the nonmoving party." *Mortise v. United States*, 102 F.3d 693, 695 (2d Cir. 1996).

A fact is "material" only if it "affects the result of the proceeding," and a fact is in dispute "only when the opposing party submits evidence such that a trial would be required to resolve the differences." *In re Rockefeller Ctr. Props.*, 1999 WL 33457719, *11 (Bankr. S.D.N.Y. Oct. 8, 1999). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A dispute is "genuine" if the

7

evidence in support of it is "such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.* at 248. In determining whether to grant a motion for summary judgment, the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. The Court applies these bedrock principles to the matter before it.

**B. Chapter 15 and Turnover**

Section 1521(a)(7) provides that upon recognition of a foreign proceeding under chapter 15 of the Bankruptcy Code, the court may grant "any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a)." 11 U.S.C. § 1521(a)(7). Section 1521(a)(7) "'authorizes the court to grant to the foreign representative the sort of relief that might be available to a trustee appointed in a full bankruptcy case,' including the turnover of property belonging to the debtor." *In re Markus*, 610 B.R. 64, 76 (Bankr. S.D.N.Y. 2019) (holding that the bankruptcy court has authority to order trust proceeds, consisting of funds in bank account in the United States, to be turned over to the foreign representative, subject to the protection of affected interests) (citations omitted).

In turn, liquidations in the Cayman Islands are governed under the Companies Act of the Cayman Islands (the "Companies Act"). Section 99 of the Companies Act provides:

> When a winding up order has been made, any disposition of the company's property and any transfer of shares or alteration in the status of the company's members made after the commencement of the winding up is, unless the Court otherwise orders, void.

(Companies Act § 99 (2016 Revision).) Under Section 100(2) of the Companies Act, "the winding up of a company by the Court is deemed to commence at the time of the presentation of the petition for winding up." (Companies Act § 100(2).)

8

**Discussion**

**A. Standing**

Goldberg argues that the Liquidators lack standing to bring this adversary proceeding because PPVA was "not a signatory party" to the Term Sheets. (Goldberg Br. at 23.) The Liquidators argue that they have standing to seek turnover of the value of the PPVA Warrant pursuant to sections 1521(a)-(b) of the Bankruptcy Code. The Liquidators submit that section 1521(a) of the Code "expressly grants the Liquidators standing to pursue actions to protect the assets of the debtors, including standing to bring actions for turnover under Cayman Law." (PPVA Reply at 4.) The Liquidators further submit that PPVA held the PPVA Warrant "in its own name" and accordingly, "would be directed to transfer these particular securities per the terms of the Term Sheet . . . and would benefit from Goldberg's corresponding Note and from the segregated account protections contained in the Term Sheets." (PPVA Letter [Dkt. No. 41] at 3.)

The Court agrees with the Liquidators. At issue in this adversary proceeding, *inter alia*, is the beneficial ownership of the PPVA Warrant as of the date of the commencement of the Cayman Liquidation on August 23, 2016. It is clearly within the purview of section 1521(a)(7) of the Code to grant the Liquidators relief that would enable them to obtain turnover of property belonging to PPVA. "Incident to the task of administering and realizing assets of the debtor within the U.S. is the need to obtain affirmative control over such assets. It may be necessary to obtain turnover of assets in the hands of third parties." *In re Atlas Shipping A/S*, 404 B.R. 726, 740 (Bankr. S.D.N.Y. 2009) (quoting Leif M. Clark, ANCILLARY & OTHER CROSS–BORDER INSOLVENCY CASES UNDER CHAPTER 15 OF THE BANKRUPTCY CODE, § 7[2], at 73 (2008)).

## B. The Parties' Arguments

In support of their respective motions, the parties have submitted extensive briefing and exhibits. The Court assumes familiarity with the details set forth therein, and it will provide only a brief overview for purposes of this bench decision.

Goldberg asserts that he "owned" the Preferred Shares upon execution of the Term Sheets, and that no additional documents were required to be executed by the parties in order to effectuate the obligation of PPVA to deliver such securities to him. He contends that the Securities Exchange Agreement entered into by PPVA and Navidea after execution of the Term Sheets incorrectly stated that PPVA owned the Preferred Shares. Goldberg further maintains that, by virtue of his "ownership" of the Preferred Shares, he "owned" the underlying Navidea Common Stock for which the Preferred Shares could be exchanged. (Goldberg Letter [Dkt. No. 40] at 2.) Because the Term Sheets themselves allegedly "transferred ownership" of the securities to Goldberg prior to the commencement of the Cayman Liquidation, Goldberg argues that the PPVA Warrant is not part of the PPVA estate and is not subject to turnover. (Goldberg Letter [Dkt. No. 40] at 1.) With respect to the contractual conditions imposed by the Term Sheets, Goldberg asserts that (i) the Segregated Account Condition was only a "ministerial" term and not a condition precedent to any obligation of a Platinum entity to deliver securities to Goldberg and (ii) he satisfied the Notes Condition. In the alternative, Goldberg argues that Platinum properly assigned ownership of the PPVA Warrant to Goldberg prior to the commencement of the Cayman Liquidation.

The Liquidators submit that the Term Sheets unambiguously provide that PPVA would cause the Preferred Shares to be transferred to Goldberg *solely* upon Goldberg's satisfaction of certain contractual conditions precedent set forth in the Term Sheets – namely, the Segregated

10

Account Condition and the Notes Condition. Because they assert that Goldberg failed to satisfy such conditions precedent, the Liquidators maintain that Goldberg had no "live" right to receive the Preferred Shares or the PPVA Warrant at any time prior to the commencement of the Cayman Liquidation on August 23, 2016. (PPVA Letter [Dkt. No. 41] at 2.) Upon commencement of the Cayman Liquidation, all authority to dispose of or transfer PPVA's property vested in the Liquidators and became subject to the approval of the Cayman Court. Accordingly, the Liquidators argue, the purported October 2016 assignment of the PPVA Warrant to Goldberg was "improper, unauthorized, and unlawful" and was an ineffective assignment. (PPVA Letter [Dkt. No. 41] at 5.) The Liquidators submit that the undisputed factual record supports the granting of summary judgment in their favor.

**Ruling**

The central question before the Court is whether a genuine dispute as to any material fact exists regarding Goldberg's right to receive the PPVA Warrant and, more specifically, whether PPVA had an obligation to transfer the Preferred Shares (or, after the exchange of the Preferred Shares for the PPVA Warrant, the PPVA Warrant) to Goldberg prior to the commencement of the Cayman Liquidation.

Neither party disputes that any purported entitlement that Goldberg may have to the Preferred Shares and the PPVA Warrant arises from the Term Sheets. Accordingly, the Court must determine whether there exist any genuine issues of material fact and whether Goldberg or the Liquidators are entitled to judgment as a matter of law as to (i) whether the Segregated Account Condition and the Notes Condition were each contractual conditions precedent to the transfer of ownership of the Preferred Shares to Goldberg and (ii) if so, whether Goldberg

properly satisfied such provisions prior to the commencement of the Cayman Liquidation,

providing him with a live, unconditional right to receive the PPVA Warrant at that time.

## A. Whether the Segregated Account Condition and the Notes Condition Are Conditions Precedent to the Obligation to Transfer the Preferred Shares and the PPVA Warrant to Goldberg

The Term Sheets are governed by New York law. (Burns Decl. Exs. 2–3.) Under New

York law, a written agreement that is "complete, clear and unambiguous on its face must be

enforced according to the plain meaning of its terms." *Greenfield v. Philles Recs., Inc.*, 780

N.E.2d 166 (N.Y. 2002). Where "the contract is clear and unambiguous on its face, the intent of

the parties must be gleaned from within the four corners of the instrument, and not from extrinsic

evidence." *Rainbow v. Swisher*, 527 N.E.2d 258 (N.Y. 1988). Evidence "outside the four corners

of the document" is "admissible only if a court finds an ambiguity in the contract." *Schron v.*

*Troutman Sanders LLP*, 986 N.E.2d 430, 433 (N.Y. 2013). Extrinsic evidence is "inadmissible to

alter or add a provision to a written agreement," and is "not admissible to create an ambiguity in

a written agreement which is complete and clear and unambiguous upon its face." *Id.*; *W.W.W.*

*Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639 (N.Y. 1990).

Where "a condition is required by the agreement of the parties . . . a rule of strict

compliance traditionally applies." *Markovits v. Venture Info Capital, Inc.*, 129 F. Supp. 2d 647,

654 (S.D.N.Y. 2001) (citing Farnsworth, Contracts § 8.3, at 571 (1990)). As a general rule,

provisions "commencing with words such as 'if,' 'on condition that,' 'subject to,' and 'provided'

create conditions precedent," albeit "this result cannot be guaranteed because of the presumption

in favor of language of promise and because all language requires interpretation." *Nat'l Fuel Gas*

*Distribution Corp. v. Hartford Fire Ins. Co.*, 11 Misc. 3d 1058(A) (Sup. Ct. 2005), *aff'd as*

*modified*, 28 A.D.3d 1169 (2006) (concluding that a notice requirement which "follow[ed] the

12

word 'PROVIDED' . . . indicate[d] the creation of a condition") (citation omitted); *see also*

Restatement (Second) of Contracts § 226 (1981) ("No particular form of language is necessary to

make an event a condition, although such words as 'on condition that,' 'provided that' and 'if'

are often used for this purpose. An intention to make a duty conditional may be manifested by

the general nature of an agreement, as well as by specific language. Whether the parties have, by

their agreement, made an event a condition is determined by the process of interpretation.").

> Here, the Term Sheet and the Amended Term Sheet each provide, in pertinent part, that:
>
> Platinum wishes, subject to the terms and conditions described herein, to cause certain private investment funds under its management (collectively, the "Platinum Funds") to transfer to Dr. Goldberg certain positions held by them as of December 31, 2013 . . .

(Burns Decl. Exs. 2-3.) The Notes Condition contained in the Term Sheet specifies that Goldberg

"shall issue to one or more of the Platinum Funds, as directed by Platinum . . . notes in the form

of Exhibit A attached hereto." The Segregated Account Condition provides that the securities to

be transferred "shall be deposited into one or more segregated brokerage accounts owned by Dr.

Goldberg, each subject to a Securities Account Control Agreement in favor of Platinum and/or

its affiliates . . . the terms of the Account Control Agreements must be reasonably acceptable to

Platinum" and that "[i]t is the intent of the parties that Platinum . . . will have a first priority,

perfected security interest in the Accounts, and the parties agree to take such steps as are

necessary or desirable to effect such security interest." (Burns Decl. Exs. 2-3.)

The Court finds that no genuine dispute exists that the Term Sheets unambiguously

provide that the obligation to transfer securities is "subject to the terms and conditions described

herein," which conditions include the Segregated Account Condition and the Notes Condition as

conditions precedent to any obligation to transfer the Preferred Shares to Goldberg. Further, the

phrase "subject to" connotes the parties' intent to create a condition precedent, as does the

placement of the Segregated Account Condition and the Notes Condition under separate

headings as separate boxed terms within the Term Sheet and the Amended Term Sheet. *See*

*Royal Bank of Canada v. Beneficial Fin. Leasing Corp.*, 1992 WL 167339, at *5 (S.D.N.Y. June

29, 1992) (providing that the inclusion of "'such as, if, on condition that, subject to, and

provided' . . . as a general rule demonstrate[s] an intent to make an express condition

precedent"). The use of the word "shall" in the Segregated Account Condition and the Notes

Condition also demonstrates the parties' clear and unambiguous intent to set conditions

precedent to the obligation to transfer the Preferred Shares, as the language states that (i)

Goldberg "shall" establish and deposit the Preferred Shares into "one or more segregated

brokerage accounts" pursuant to the Segregated Account Condition and (ii) Goldberg "shall issue

to one or more of the Platinum Funds, as directed by Platinum . . . notes in the form of Exhibit A

attached hereto." *See Salahuddin v. Mead*, 174 F.3d 271, 274 (2d Cir. 1999) ("There is no doubt

that 'shall' is an imperative, but it is equally clear that it is an imperative that speaks to future

conduct. Even the most demanding among us cannot reasonably expect that a person 'shall' do

something yesterday.").

    In addition, the Segregated Account Condition explicitly provides that (i) it was "the

intent of the parties" that a segregated account be established to hold the notes issued by

Goldberg pursuant to the Notes Condition in order to provide Platinum with "a first priority,

perfected security interest" and (ii) such segregated account "must be reasonably acceptable to

Platinum." (Burns Decl. Ex. 2.) The presence of such language in the Segregated Account

Condition demonstrates the material nature of the Segregated Account Condition – the

establishment of a segregated brokerage account was vital to securing the notes issued by

Goldberg pursuant to the Term Sheet and protecting the Platinum entities' first-priority perfected

14

security interest in the securities to be transferred, many of which (including the PPVA Warrant) were certificated and as to which Platinum's security interest could otherwise be threatened by transferring control. (*See* Goldberg Br. at 4, n.1.) Simply put, the express conditions precedent were material – none of the language in the Term Sheets supports Goldberg's argument that the Segregated Account Condition was "purely ministerial."

Because the Term Sheets are clear and unambiguous, the Court need not look to extrinsic evidence to interpret the agreements. *See Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 433 (N.Y. 2013) (explaining that evidence "outside the four corners of the document" is "admissible only if a court finds an ambiguity in the contract").

Goldberg has failed to identify a genuine issue of material fact regarding his contentions that (i) execution of the Term Sheets in 2015 constituted an outright transfer of ownership of the Preferred Shares to him or (ii) the Term Sheets imposed a direct, immediate obligation by a Platinum entity to deliver the Preferred Shares to him. Each of these claims is unsupported by the explicit language of the Term Sheets. Instead, the Court finds, as a matter of law, that the Term Sheets impose express conditions precedent – the satisfaction of the Segregated Account Condition and the Notes Condition – to the obligation of any Platinum entity to deliver the Preferred Shares to Goldberg.

## B. Whether Goldberg Satisfied the Conditions Precedent

### 1. *Whether Goldberg Satisfied the Segregated Account Condition*

The Liquidators assert that, as of the commencement of the Cayman Liquidation on August 23, 2016, Goldberg had failed to set up a segregated brokerage account pursuant to the Segregated Account Condition. Goldberg, on the other hand, disputes that he was required to satisfy the Segregated Account Condition in order to trigger the obligation of a Platinum entity to

transfer to him the Preferred Shares. The Court already has found this argument unavailing and held that Goldberg was required, as a matter of law, to satisfy the Segregated Account Condition and the Notes Condition before any obligation to deliver securities to him could arise.

The timing of any purported satisfaction by Goldberg of both the Segregated Account Condition and the Notes Condition is crucial. As of the commencement of the Cayman Liquidation, no disposition or transfer of PPVA's assets could be made without the approval of the Cayman Court, and only the Liquidators had authority to act on behalf of PPVA. (*See, generally*, Dors Decl.; Section 99 of the Companies Act (providing that "[w]hen a winding up order has been made, any disposition of the company's property and any transfer of shares . . . made after the commencement of the winding up is, unless the Court otherwise orders, void.")) As such, only if both conditions precedent contained in the Term Sheets were satisfied prior to August 23, 2016 would Goldberg possess a legal right to receive beneficial ownership of the PPVA Warrant. Stated differently, even if the material conditions precedent were in fact satisfied by Goldberg after August 23, 2016, any transfer of the PPVA Warrant at that time would be void under the Companies Act. The Liquidators have introduced unrebutted evidence that, no later than October 11, 2016, Goldberg admitted that he was aware that the commencement of the Cayman Liquidation meant that "no one at Platinum can transfer the shares committed to me in December 2013." (Burns Decl. Ex 11.)

Goldberg's statements regarding his purported opening of a segregated brokerage account and the timing thereof fail to create a genuine disputed issue of material fact as to whether Goldberg satisfied the Segregated Account Condition prior to the commencement of the Cayman Liquidation. Goldberg provides no factual support for any contention that he established a segregated brokerage account with a securities control agreement reasonably satisfactory to

Platinum prior to August 23, 2016. Instead, Goldberg's pleadings appear to support a conclusion that, if Goldberg in fact established a segregated brokerage account at all, it was only *after* the commencement of the Cayman Liquidation. First, Goldberg testified that, on September 14, 2016, after the commencement of the Cayman Liquidation, he and David Steinberg of Platinum corresponded with Merrill Lynch regarding how to set up the controls that needed to be implemented for a brokerage account to be consistent with the protections required by the Term Sheets. (Burns Decl. Ex. 9 at Goldberg-PPVA_0033790-92; Goldberg Reply SOMF ¶ 68.) Email communications from that date, which Goldberg does not dispute took place, show that Platinum personnel stated that Platinum "should probably hold the shares in its possession" . . ."until [Goldberg has] this controlled deposit account set up." (Goldberg Reply SOMF ¶ 66.) Goldberg submits that he opened a segregated brokerage account "immediately upon Platinum finally coming to [him] with the Navidea securities in hand to physically deliver to him" (Goldberg Br. at 28.), but that Platinum "never came to [him] with actual stock to deliver until October 2016, at which time the Account was in place." (*Id.* at 14.) Goldberg does not dispute that the control agreement for the account had not been executed as of September 15, 2016, but he attributes this to Platinum's failure to "deliver to Dr. Goldberg the Navidea securities that he owned." (Goldberg Reply SOMF ¶ 70.) Goldberg's arguments are unavailing; there is no genuine dispute of material fact as to his failure to establish a segregated brokerage account in compliance with the Segregated Account Condition prior to the commencement of the Cayman Liquidation.

   *2. Whether Goldberg Satisfied the Notes Condition*

   The obligation to transfer to Goldberg the Preferred Shares pursuant to the Term Sheets was contingent upon the satisfaction of two independent conditions precedent: the Segregated Account Condition and the Notes Condition. Because there is no genuine issue of material fact

that Goldberg failed to satisfy the Segregated Account Condition prior to the commencement of the Cayman Liquidation, a legal right to the Preferred Shares, and subsequently, the PPVA Warrant, did not transfer to Goldberg. The Court, therefore, need not address whether Goldberg satisfied the Notes Condition. Even assuming, *arguendo*, that the Segregated Account Condition was not a condition precedent and that an obligation to transfer the Preferred Shares to Goldberg was triggered solely by his satisfaction of the Notes Condition, the Court finds that there exists no genuine issue of material fact that Goldberg failed to satisfy the Notes Condition.

Goldberg contends that he "owned" the Preferred Shares upon his execution of the Term Sheets because (i) the Term Sheets themselves constitute the notes (the "Notes") required by the Notes Condition and (ii) certain accounting and financial records reflect that Goldberg satisfied the Notes Condition. Goldberg argues that the Notes, which he contends are the signed Term Sheets themselves, were "signed, delivered, and recorded as a 'notes receivable' and an 'asset' on PPVA's books and records." (Goldberg Br. at 28.) As support for this argument, Goldberg points to PPVA's accounting and financial records and to the testimony of Joseph San Filippo, PPVA's Chief Financial Officer, who testified that he "saw" the Notes. (Kook Aff. Ex. 4, San Filippo Dep. 24:13–25:6.)

The Liquidators vehemently disagree. They argue that the record indisputably reflects that Goldberg did not issue the Notes as required and that the accounting and financial records cited by Goldberg reflect the accounting treatment of the Notes and have nothing whatsoever to do with the fact that no Notes were issued. As the Liquidators submit, the accounting booking of the Notes do "not as a factual or legal matter indicate that PPVA had such a note in its hands as of that moment" and instead only reflect PPVA's corresponding obligation to transfer securities from an "accrual accounting perspective, when the obligation arises." (PPVA Reply at 17.)

18

Simply put, as a matter of law, the Term Sheets indisputably do not constitute the actual Notes. The mere execution of the Term Sheets by Goldberg and Platinum did not transfer ownership of the Preferred Shares to Goldberg; references to the accounting treatment of the Notes or vague observations by a third party fail to raise any genuine issues of material fact to the contrary.

**C. Whether the Purported Assignment of the PPVA Warrant to Goldberg is Valid**

Prior to the commencement of the Cayman Liquidation, Goldberg failed to satisfy the Segregated Account Condition and the Notes Condition, each of which were material conditions precedent under the Term Sheets. Accordingly, the obligation to transfer to Goldberg the Preferred Shares, and, subsequently, the PPVA Warrant, was not triggered, and Goldberg had no live legal right to the PPVA Warrant as of the commencement of the Cayman Liquidation. As the Liquidators correctly assert, only if Goldberg had such a right at that time could "Goldberg's bald-faced attempt to have the PPVA Warrant assigned to him in October 2016, via a backdated purported assignment form and behind the backs of PPVA's appointed liquidators" be viewed as a legitimate action. (PPVA Reply 1-2.) Because the obligation to transfer the securities to Goldberg had not been triggered as of August 23, 2016, any such purported assignment is void, and the existence of the backdated assignment on a copy of the PPVA Warrant purporting to assign the PPVA Warrant to Goldberg did not alter Goldberg's ability to lawfully obtain the Navidea Common Stock.

Pursuant to the Securities Exchange Agreement, in August 2015, PPVA exchanged the Preferred Shares for the PPVA Warrant, which was exercisable for 5,411,850 shares of Navidea Common Stock. The PPVA Warrant was issued by Navidea in PPVA's name; both the Securities Exchange Agreement and the PPVA Warrant identify PPVA as the owner of the Preferred

Shares and, subsequently, the PPVA Warrant. (*See* Burns Decl. Ex. 4, Securities Exchange Agreement, § 4(c), Ex. A; Burns Decl. Ex. 5.) The PPVA Warrant on its face requires that, in order to effectuate a valid assignment of such warrant, (i) the physical original warrant must be surrendered to Navidea by PPVA or by its duly authorized attorney, (ii) the warrant must be properly endorsed by PPVA executing the assignment form, and (iii) any necessary transfer tax or governmental charges must be paid. (*See* Burns Decl. Ex. 5 at §2(f).) The factual record is undisputed that none of these requirements was satisfied at the time Nordlicht, on behalf of PPVA, purported to assign the PPVA Warrant to Goldberg. First, in October 2016, Nordlicht had no authority to act on behalf of PPVA. In addition, in purportedly assigning the PPVA Warrant to Goldberg, Nordlicht did not surrender the original PPVA Warrant. The original warrant has remained in PPVA's custody vault at Bank of New York Mellon at all relevant times, through the present. (Goldberg Reply SOMF ¶ 91; Wilson Decl. ¶¶ 6-11.) Thus, it is indisputable as a matter of law that the PPVA Warrant remained property of PPVA and that the purported assignment is void.

**Conclusion**

For the foregoing reasons, the Court concludes that no genuine issues of material fact exist which preclude the Court from (i) granting summary judgment in favor of the Liquidators in connection with the turnover of the value of the PPVA Warrant pursuant to sections 1521(a)(5) and 1521(a)(7) of the Bankruptcy Code and (ii) denying the cross-motion for summary judgment filed by Goldberg. The Liquidators' motion for summary judgment is granted, and Goldberg's cross-motion for summary judgment is denied.

IT IS SO ORDERED.

Dated: May 10, 2022
New York, New York

/s/Shelley C. Chapman
United States Bankruptcy Judge

EXHIBIT 2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | |
| | Chapter 15 |
| PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P. (IN OFFICIAL LIQUIDATION), *et al.*, | Case No. 16-12925 (SCC) |
| Debtors in Foreign Proceedings. | (Jointly Administered) |
| | |
| PLATINUM PARTNERS VALUE ARBITRAGE FUND, L.P., | |
| Plaintiff, | Adv. Pro. No. 18-01650 |
| vs. | |
| MICHAEL M. GOLDBERG, | |
| Defendant. | |

## <u>ORDER DENYING MOTION FOR RECONSIDERATION</u>

WHEREAS, on August 23, 2016, Platinum Management (NY) LLC ("Platinum"), as general partner of Platinum Partners Value Arbitrage Fund L.P. ("PPVA"), filed a voluntary petition with the Financial Services Division of the Grand Court of the Cayman Islands (the "Cayman Court") to wind up PPVA (the "Cayman Liquidation"); and

WHEREAS, on August 25, 2016, the Cayman Court entered an order directing the provisional liquidation of PPVA; and, on October 27, 2016, the Cayman Court converted the provisional liquidation to an official liquidation; and

WHEREAS, on October 18, 2016, Matthew Wright and Christopher Kennedy, as duly appointed joint official liquidators of PPVA (together, the "Liquidators"), filed a voluntary petition for relief under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code")

1

[Case No. 16-12925; Dkt. No. 1] seeking, among other things, recognition of the Cayman Liquidation; and, on November 23, 2016, an order recognizing the Cayman Liquidation was entered by this Court; and

WHEREAS, on October 5, 2018, the Liquidators commenced the instant adversary proceeding in this Court by filing a complaint against defendant Michael Goldberg ("Goldberg") seeking turnover of the value of the PPVA Warrant[1] pursuant to sections 1521(a)(5) and 1521(a)(7) of the Bankruptcy Code ("Count I") and asserting claims against Goldberg under theories of (i) conversion ("Count II"), (ii) unjust enrichment ("Count III"), and (iii) contempt ("Count IV"); and

WHEREAS, on January 31, 2020, the Liquidators filed a motion for summary judgment [Dkt. No. 19] ("Summary Judgment Motion") and a memorandum of law in support of such motion [Dkt. No. 23], pursuant to which the Liquidators sought (i) summary judgment on Counts I, II, and III of the complaint and an order requiring the turnover of the value of the PPVA Warrant, or, alternatively, (ii) damages under a theory of conversion or unjust enrichment; and

WHEREAS, on March 20, 2020, Goldberg filed a cross-motion for summary judgment [Dkt. No. 30] ("Summary Judgment Cross-Motion") and a memorandum of law in support of such cross-motion and in opposition to the Summary Judgment Motion [Dkt. No. 30], pursuant to which Goldberg (i) cross-moved for summary judgment, (ii) moved for dismissal of the Liquidators' claims in the adversary proceeding with prejudice, and (iii) sought sanctions; and

---

[1]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in this Court's modified bench decision, entered on May 10, 2022 [Dkt. No. 44].

WHEREAS, on April 30, 2020, the Liquidators filed a reply memorandum of law in further support of their motion for summary judgment and in opposition to Goldberg's cross-motion for summary judgment [Dkt. No. 35]. On May 22, 2020, Goldberg filed a reply in support of his cross-motion for summary judgment [Dkt. No. 36]; and

WHEREAS, on December 8, 2021, the Court heard oral argument from the parties, after which the parties subsequently filed several letters on the docket, which the Court has considered as supplemental briefing on the merits [Dkt. Nos. 40–41]; and

WHEREAS, on May 9, 2022, on the record of a telephonic hearing before the Court, the Court dictated its bench decision on the Summary Judgment Motion and the Summary Judgment Cross-Motion, in which the Court (i) granted summary judgment in favor of the Liquidators in connection with the turnover of the value of the PPVA Warrant pursuant to sections 1521(a)(5) and 1521(a)(7) of the Bankruptcy Code and (ii) denied the Summary Judgment Cross-Motion filed by Goldberg. On May 10, 2022, the Court entered on the docket of this adversary proceeding a modified bench decision, which reflected non-substantive modifications to the Court's bench decision, such as full citations and defined terms (the "Decision") [Dkt. No. 44]; and

WHEREAS, on May 24, 2022, Goldberg filed a motion for reconsideration of the Decision [Dkt. No. 46] (the "Reconsideration Motion"). By the Reconsideration Motion, Goldberg argues that reconsideration is warranted because (i) the Court purportedly made a legal error in not finding that the Term Sheets[2] themselves created enforceable rights upon execution without the satisfaction of any conditions precedent; (ii) the Court purportedly overlooked (a)

---

[2]     As set forth more fully in the Decision, the "Term Sheets" are defined as the separation agreement between Goldberg and Platinum, effective March 28, 2014, as amended by a second separation agreement, effective June 11, 2015 (together, the "Term Sheets").

3

Second Circuit precedent and the language in the Term Sheets in finding that the Term Sheets

created conditions precedent with respect to the establishment of a segregated account (the

"Segregated Account Condition") and the issuance of certain notes by Goldberg (the "Notes

Condition"), which conditions precedent were required to be satisfied by Goldberg prior to the

obligation of any Platinum entity to transfer to Goldberg the Preferred Shares (or, after the

exchange of the Preferred Shares for the PPVA Warrant, the PPVA Warrant); (b) newly

discovered evidence in the form of progress reports issued by the Liquidators to the Cayman

Court that purportedly contain accounting treatment documenting a note receivable by PPVA

from Goldberg which would allegedly satisfy the Notes Condition (the "Notes"), or "at a

minimum, create[] factual questions as to whether Dr. Goldberg substantially performed the note

obligation," which Goldberg alleges was all that was required by the Term Sheets (Reconsid.

Mot. at 3, 16; Reconsid. Reply at 9); (c) certain evidence, previously submitted by Goldberg in

connection with the Summary Judgment Cross-Motion, which purportedly establishes that

Goldberg was allegedly vested with ownership of the Preferred Shares prior to the

commencement of the Cayman Liquidation; and (iii) there is a need to prevent manifest injustice.

By the Reconsideration Motion, Goldberg submits that the Court should grant reconsideration of

the Decision and, upon such reconsideration, vacate the Court's prior granting of the Summary

Judgment Motion and deny the motion; and

WHEREAS, on June 10, 2022, the Liquidators filed an objection to the Reconsideration

Motion [as amended, Dkt. No. 48] (the "Reconsideration Objection"), asserting that each

argument advanced in the Reconsideration Motion was previously considered and rejected by

this Court in its Decision. The Liquidators submit that the Reconsideration Motion does not

identify (i) new, controlling law that the Court failed to consider or (ii) any new facts or evidence

4

that would support reconsideration or vacatur of the Decision.  Instead, the Liquidators assert

that the Reconsideration Motion primarily restates arguments that Goldberg made on summary

judgment, which arguments are undermined by legal precedent and the undisputed facts of the

case, and nothing asserted in the Reconsideration Motion alters the undisputed fact that the

PPVA Warrant was not validly assigned or otherwise transferred to Goldberg prior to the

commencement of the Cayman Liquidation; and

WHEREAS, on June 17, 2022, Goldberg filed a reply to the Reconsideration Objection

[Dkt. No. 49] (the "Reconsideration Reply"), reiterating the arguments in the Reconsideration

Motion; and

WHEREAS, the Court has considered the standard on a motion for reconsideration set

forth in Federal Rules of Civil Procedure 59(e) and 60(b), made applicable to this Court pursuant

to Federal Rules of Bankruptcy Procedure 9023 and 9024, respectively, and the statements of the

United States Court of Appeals for the Second Circuit in *Analytical Surveys, Inc. v. Tonga

Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), that the standard for granting a motion for

reconsideration is "strict" and a motion for reconsideration "will generally be denied unless the

moving party can point to controlling decisions or data that the court overlooked[.]"  The Court

has further considered the statements of courts in this District that (i) reconsideration is an

extraordinary remedy that must be employed sparingly, *see In re Loral Space &

Communications Ltd.*, 346 B.R. 71 (S.D.N.Y. 2006); (ii) reconsideration serves the limited

function to correct manifest errors of law or fact or to present newly discovered evidence, *see

Aldo Ismael Perez Plaintiff, v. Terrestar Corp., et al. (In re: Terrestar Corp.)*, No. 11-10612

(SHL), 2016 WL 197621, at *3 (Bankr. S.D.N.Y. Jan. 15, 2016) (internal quotations and

citations omitted); and (iii) a motion for reconsideration "is not a vehicle for relitigating old

issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise

taking a second bite at the apple," *see Mexico Infrastructure Fin., LLC v. Corp. of Hamilton*,

2020 WL 5646107, at *1 (S.D.N.Y. September 21, 2020) (citation omitted); and

WHEREAS, in the Reconsideration Motion, Goldberg cites to no new law or controlling

law that the Court purportedly overlooked in the Decision. He instead cites to two cases,

*Thomas & Betts Corp. v. Trinity Meyer Utility Structures, LLC*, 2021 WL 4302739 (2d Cir. Sept.

22, 2021) and *Parlux Fragrances, LLC v. S. Carter Enterprises, LLC*, 204 A.D.3d 72, 85 (1st

Dep't 2022), both of which were cited by Goldberg in his letter sur-reply [Dkt. No. 40] and

previously considered by the Court. By the Reconsideration Motion, Goldberg argues that the

Court misapplied the law and claims that "[o]nce the proper standard is applied to the language

of the Binding Term Sheet, it becomes clear that the [Notes Condition and Segregated Account

Condition] contained obligations of Dr. Goldberg, and not conditions precedent which would

result in Dr. Goldberg forfeiting the benefits of the Binding Term Sheet if they were not strictly

complied with" (Reconsid. Reply at 3). In his reconsideration pleadings, Goldberg quotes

*Thomas & Betts* numerous times for the proposition that "[r]ather than interpreting [the phrase]

'subject to' as words that automatically create conditions precedent, a court must look to both the

placement of the conditional language and the context in which it is used in order to determine

whether the parties intended to impose conditions precedent," *Thomas & Betts*, 2021 WL

4302739 at *6. Goldberg then proceeds to analyze the language of the Term Sheets and suggest

to the Court new "logical reading[s]" of the language which, if read and interpreted as Goldberg

asserts, would require a summary judgment ruling in Goldberg's favor (Reconsid. Reply at 4);

and

6

WHEREAS, the Liquidators argue that, contrary to Goldberg's argument that controlling precedent such as *Thomas & Betts* **precludes** a finding by the Court that the Term Sheets impose conditions precent, the standard articulated by the Second Circuit in *Thomas & Betts* in fact **supports** the Court's prior finding the Segregated Account Condition and the Notes Condition were conditions precedent to any obligation to transfer the PPVA Warrant to Goldberg. The Court agrees. In the Decision, in determining whether the Term Sheets created conditions precedent, the Court considered the analytical framework laid out in *National Fuel*[3] and *Thomas & Betts*, analyzing not solely the use and location of the phrase "subject to" – as Goldberg asserts – but, instead, the placement of all conditional language in the documents and the context in which such language was used. The Court also notes that, while the standard in *Thomas & Betts* was reviewed and considered by the Court, the facts of *Thomas & Betts* (and, for that matter, the facts of *Parlux Fragrances*, also cited by Goldberg) are distinguishable from the instant case. Even assuming such cases were new law or had been overlooked by the Court in rendering the Decision, neither constitutes a change in controlling law or otherwise warrants granting the Reconsideration Motion; and

WHEREAS, by the Reconsideration Motion, Goldberg also asserts that "newly discovered" evidence in the form of reports issued by the Liquidators to the Cayman Court in March 2020 and March 2022 may demonstrate that all that was required by the Term Sheets was "substantial compliance" with the Notes Condition, and Goldberg's compliance therewith is evident in the Liquidators' accounting summaries by the booking of a "note receivable" from Goldberg as an existing asset (Reconsid. Mot. at 14-16; Reconsid. Reply at 9). In connection

---

[3]    *Nat'l Fuel Gas Distribution Corp. v. Hartford Fire Ins. Co.*, 11 Misc. 3d 1058(A) (Sup. Ct. 2005), *aff'd as modified*, 28 A.D.3d 1169 (2006).

with this argument, Goldberg makes several statements that the Liquidators' representations to the Court on this topic were false and that the Liquidators failed to produce these "financial statements," instead intentionally withholding them from disclosure (Reconsid. Reply at 9-12); and

WHEREAS, the Liquidators dispute any wrongdoing and assert that Goldberg misrepresents the facts associated with the Liquidators' periodic progress reports and the accounting summaries contained therein. First, assert the Liquidators, such periodic progress reports do not constitute "financial statements" which were sought by Goldberg in discovery, and all financial statements were in fact provided. Second, for several years, the Liquidators have sent their periodic progress reports to Goldberg by email at the time they are issued, and, as such, they do not constitute newly discovered evidence, even if Goldberg is now admittedly opening old emails for the first time and reviewing the reports that he ignored for two years. (Reconsid. Obj. at 12-13 (citing *Pettiford v. City of Yonkers*, 2020 WL 1989419, at *2 (S.D.N.Y. Apr. 27, 2020) ("In order for evidence to be considered 'newly discovered' on a motion for reconsideration, it must be evidence that was truly newly discovered or could not have been found by due diligence . . . . Newly discovered evidence must not have been available prior to entry of the judgment leading to reconsideration") (internal quotations and citations omitted)). Third, Goldberg had multiple opportunities in the pleadings he filed with this Court after March 2020 to raise any issues arising from the Liquidators' reports (of which he had notice). Finally, the Liquidators contend that, even if the Court considered the emails and the Liquidators' reports attached thereto as "new evidence," such information has no probative value, as the accounting treatment of notes receivable potentially due from Goldberg does not prove that the Liquidators

believe any such notes are a viable asset or that any actual notes had been issued by Goldberg (Reconsid. Obj. at 13); and

WHEREAS, the Court finds that the March 2020 and March 2022 emails to Goldberg attaching copies of the Liquidators' periodic progress reports are, as a matter of law, not new evidence requiring reconsideration of the Decision, as they were available to Goldberg in his email inbox for over two years beginning in March 2020 (with an updated report containing the same information on receivables having been sent to Goldberg in March 2022). Moreover, the Court previously considered the Liquidators' accounting treatment of potential receivables from Goldberg arising from this litigation and found that it did not raise a genuine issue of material fact regarding Goldberg's failure to satisfy the Notes Condition. As the Court stated in the Decision, "references to the accounting treatment of the Notes or vague observations by a third party fail to raise any genuine issues of material fact to the contrary" (Decision at 19). Finally, on a motion for reconsideration, the Court is not required to consider Goldberg's newly asserted theory that the Liquidators' accounting treatment of a potential receivable from Goldberg proves that Goldberg "substantially complied" with the Notes Condition, which was all that was required by the Term Sheets; and

WHEREAS, having reviewed the Reconsideration Motion, the Court finds that a number of arguments contained therein are, as stated in by the District Court in *Mexico Infrastructure Fin., LLC v. Corp. of Hamilton*, 2020 WL 5646107, at *1 (S.D.N.Y. September 21, 2020) (citation omitted), attempts to (i) relitigate issues previously considered, (ii) present the case under new theories, (iii) secure a rehearing on the merits, or (iv) otherwise take "a second bite at the apple." Such arguments by Goldberg include: (a) assertions that the Notes Condition was satisfied because the Terms Sheets themselves constitute the Notes; (b) a newly asserted

19-01650-scc   Doc 50   Filed 07/11/22   Entered 07/11/22 11:06:54   Main Document
Pg 10 of 11

argument that Platinum allegedly waived the Notes Condition when Mark Nordlicht purportedly assigned the PPVA Warrant to Goldberg (which occurred on October 16, 2016, after the commencement of the Cayman Liquidation when Mr. Nordlicht had no legal authority to do so); (c) an argument that certain previously submitted evidence supports the fact that ownership of the Preferred Shares had already transferred to Goldberg at the time of execution of the Term Sheet; and (d) several arguments regarding the Segregated Account Condition and Goldberg's purported compliance therewith, each argument which is contradicted by the language and intent of the Term Sheets and by Goldberg's previous admission that he had not created the required segregated account prior to the commencement of the Cayman Liquidation. Even if such arguments were meritorious (which the Court observes they are not), for the reasons set forth *supra*, the Court is not obligated to consider them on a motion for reconsideration; and

WHEREAS, the Court having reviewed the Reconsideration Motion, the Reconsideration Objection, and the Reconsideration Reply; and the Court having determined that, by the Reconsideration Motion, Goldberg has not identified any new evidence or controlling decisions overlooked by the Court or manifest errors of fact or law made by the Court in granting the Summary Judgment Motion and denying the Summary Judgment Cross-Motion; and the Court having found that the Reconsideration Motion merely attempts to advance new arguments and repeat arguments already presented to the Court in an effort to relitigate the Summary Judgment Motion and the Summary Judgment Cross-Motion; and, after due deliberation, and sufficient cause therefore, it is hereby

ORDERED, that the Reconsideration Motion is denied in its entirety.

Dated: July 11, 2022
New York, New York

/S/ Shelley C. Chapman
HON. SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

11