IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P.      Chapter 15
(IN OFFICIAL LIQUIDATION), et al.,

                 Debtors in Foreign Proceedings.      Case No. 16-12925 (SCC)

---

                                                   (Jointly Administered)

PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P.,

                         Plaintiff,

                                                     Adv. Pro. No. 18-01650

          -vs-

MICHAEL M. GOLDBERG,

                         Defendant.

---------------------------------------------------------------------

## DEFENDANT'S MEMORANDUM OF LAW IN
## SUPPORT OF HIS MOTION FOR LEAVE TO APPEAL

LAW OFFICE OF MARK R. KOOK
1180 Avenue of the Americas, 8th Floor
New York, NY 10018
Tel.: (917) 673-9869
Attorneys for Defendant

## **Table of Contents**

PRELIMINARY STATEMENT ....................................................................................................1

LEGAL STANDARD .....................................................................................................................2

ARGUMENT...................................................................................................................................3

I.  The Order Involves a Controlling Question of Law .............................................................3

II. There Are Substantial Grounds For Disagreement With Respect To the
Bankruptcy Court's Holding that the Binding Term Sheet Imposed Conditions
Precedent.............................................................................................................................5

III. An Immediate Appeal from the Order Will Materially
Advance the Ultimate Termination of the Litigation ..........................................................9

IV. There Are Ample Grounds to Reverse the Order ..............................................................11

A.  No Standing: ...................................................................................................................11

B.  The Order: .......................................................................................................................12

C.  Newly Discovered JOL Reports Establish that
Plaintiff's Representations Were False:.........................................................................15

D.  The Court Ignored the Facts Establishing that Dr. Goldberg
Was Vested with Ownership: .........................................................................................18

CONCLUSION...............................................................................................................................19

## Table of Authorities

**Cases**

*Avant Capital v. W108 Dev. LLC,*
    2016 U.S. Dist. LEXIS 177548 (S.D.N.Y. Dec. 9, 2016) .......................................................... 15

*Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.,*
    444 F.3d 158 (2d Cir. 2006)") ........................................................................................................ 21

*Cnty of Tioga v. Solid Waste Indus. Inc.,*
    178 A.D.2d 873, 577 N.Y.S.2d 922 (3d Dep't 1991) ..................................................................... 14

*Crane Co. v. Coltec Indus.,*
    171 F.3d 733 (2d Cir. 1999) ............................................................................................................. 5

*Cutter,*
    No. 05 Civ. 5527 (FB), 2006 U.S. Dist. LEXIS 61242, 2006
    WL 2482674 (E.D.N.Y. Aug. 29, 2006) .......................................................................................... 3

*Fishoff v. Coty Inc.,*
    634 F.3d 647 (2d Cir. 2011)) ............................................................................................................ 5

*Futter Lumber Corp.,*
    473 B.R. 20 (E.D.N.Y. 2012) ............................................................................................................ 3

*Hillside Metro Assocs. LLC v. JP Morgan Chase Bank,*
    747 F.3d 44 (2d Cir. 2014) .............................................................................................................. 14

*In re Kassover,*
    343 F.3d 91 (2d Cir. 2003)), appeal dismissed, No. 18-995, 2018 U.S. App.
    LEXIS 28495, 2018 WL 4859355 (2d Cir. July 23, 2018) ............................................................. 3

*JA Apparel Corp. v. Abboud,*
    568 F.3d 390 (2d Cir. 2009) ............................................................................................................. 4

*K. Bell & Associates v. Lloyd's Underwriters,*
    97 F.3d 632 (2d Cir. 1996) ............................................................................................................... 4

*Kass v. Kass,*
    91 N.Y.2d 554, 673 N.Y.S.2d 350, 356 (1998) ................................................................................ 4

*Krumme v. Westpoint Stevens Inc.*,
  238 F.3d 133 (2d Cir. 2000)..................................................................................5

*Lehman Bros. Holdings Inc.*,
  No. 13 Civ. 2211 (RJS), 2014 U.S. Dist. LEXIS 160533,
  2014 WL 3408574 (S.D.N.Y. June 30, 2014)..........................................................11

*Lehman Bros. Holdings*,
  544 B.R. 62 (Bankr. S.D.N.Y. 2015).....................................................................21

*Markovits v. Venture Info Capital, Inc.*,
  129 F. Supp. 2d 647 (S.D.N.Y. 2001)....................................................................6

*Metropolitan Life Insurance Co. v. RJR Nabisco, Inc.*,
  906 F.2d 884 (2d Cir. 1990)..................................................................................5

*Mortg. Corp. v. Equifax Information Services LLC*,
  583 F.3d 103 (2d Cir. 2009)................................................................................14

*NML Capital v. Republic of Argentina*,
  621 F.3d 230 (2d Cir. 2010)................................................................................21

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*,
  86 N.Y.2d 685 (2d Cir. 1995)..............................................................................10

*Revson v. Cinque & Cinque, P.C.*,
  221 F.3d 59 (2d Cir. 2000)....................................................................................4

*SEC v. Gruss*,
  No. 11 Civ. 2420 (RWS), 2012 U.S. Dist. LEXIS 114007,
  2012 WL 3306166 (S.D.N.Y. Aug. 13, 2012)........................................................11

*Seiden Associates, Inc. v. ANC Holdings, Inc.*,
  959 F.2d 425 (2d Cir 1992)..............................................................................4, 5

*Smurfit Newsprint Corp. v. Se. Paper Mfg.*,
  368 F.3d 944 (7th Cir. 2004)................................................................................9

*Sterling*,
  No. 17 Civ. 248, 2018 U.S. Dist. LEXIS 34638, 2018 WL 1157970 (S.D.N.Y. Mar 2, 2018) ..3

*Suarez v. SCF CEDAR LLC*,
  2016 U.S. Dist. LEXIS 34064 (S.D.N.Y. March 14, 2016).......................................15

*Thomas & Betts Corporation v. Trinity Meyer Utility Structures, LLC,*
  2021 U.S. App. LEXIS 28670 (2d Cir. Sept. 22, 2021) .................................................................8

*United Nat'l Ins. Co. v. Tunnel, Inc.,*
  988 F.2d 551 (2d Cir. 1993)......................................................................................................21

### **Statutes**

28 U.S.C. § 1292(b)..................................................................................................................3

28 U.S.C.§ 158(a)(2) ............................................................................................................1, 3

Defendant Dr. Michael Goldberg ("Dr. Goldberg") respectfully submits this Memorandum of Law in support of his Motion pursuant to 28 U.S.C.§ 158(a)(2) and Bankruptcy Rule 8004 for leave to appeal the (i) Modified Bench Decision and Order on Cross-Motions for Summary Judgment, entered on May 10, 2022 (the "Order") which granted summary judgment on the issue of liability to Plaintiff Platinum Partners Value Arbitrage Fund L.P. ("PPVA") , and (ii) Order Denying Defendant's Motion for Reconsideration, dated July 11, 2022, in this adversary proceeding between Dr. Goldberg and PPVA in the United States Bankruptcy Court for the Southern District of New York.

## PRELIMINARY STATEMENT

This Motion seeks leave to appeal the interlocutory Order issued by the Bankruptcy Court and the Bankruptcy Court's denial of Dr. Goldberg's motion for reconsideration of the Order. The Order held that, as a pure matter of law, a contract (as amended, the "Binding Term Sheet") between Dr. Goldberg and PPVA's Managing Member, Platinum Partners, NY ("PPNY") – *but NOT PPVA* -- imposed two express conditions precedent on Dr. Goldberg and therefore required prior, strict and absolute compliance by Dr. Goldberg before he was, at minimum, vested with full beneficial ownership to certain securities transferred to him in the Binding Term Sheet (the "Transferred Securities"), which *PPVA* – which, again, is not even a party to the Binding Term Sheet and is only mentioned in the Binding Term Sheet as a debtor that owes Dr. Goldberg over One Million Dollars – alleges are somehow the property of PPVA's estate in its pending Cayman Islands receivership. As a result of the Bankruptcy Court's legal error, it failed even to consider whether the obligations the Bankruptcy Court deemed conditions precedent were merely covenants of Dr. Goldberg, which could be performed after he had already been vested with ownership to the Transferred Securities and/or which were subject to

1

the substantial performance doctrine, or whether PPNY and/or PPVA temporarily or permanently waived the obligations.

The Bankruptcy Court held that the Binding Term Sheet was unambiguous and could be construed as a matter of law without consideration of any matter other than the language of the contract. However, the Bankruptcy Court's interpretation of the Binding Term Sheet's plain language is contrary to the holding of the Second Circuit in nearly identical circumstances, which held that the phrase "subject to" at the outset of a contract should *not* be held to rebut the strong presumption against conditions precedent under controlling New York law. Thus, there is, at a minimum, a strong basis to disagree as to the legal meaning of the contract language interpreted by the Bankruptcy Court. Finally, because the Order will result in Dr. Goldberg being required to participate in trial solely on the issue of damages which an appeal after trial may render moot, thereby requiring the parties and the Court to expend significant, unnecessary resources on a second trial, and which may subject Dr. Goldberg to an improper judgment with the attendant affects on his finances, credit and business reputation, granting this Motion will advance the interests of justice and expedite the ultimate disposition of the Adversary Proceeding in the Bankruptcy Court.

For these reasons, as set forth more fully herein, the Court should grant this Motion, permit Dr. Goldberg to appeal the Order, and, on appeal, reverse the Order and remand the case for further proceedings consistent with that ruling.

## LEGAL STANDARD

District courts have jurisdiction to hear appeals from interlocutory orders and decrees of the United States Bankruptcy Courts with leave of the court. *In re Sterling*, No. 17 Civ. 248, 2018 U.S. Dist. LEXIS 34638, 2018 WL 1157970, at *3 (S.D.N.Y. Mar 2, 2018) (citing *In re*

2

*Kassover*, 343 F.3d 91, 94 (2d Cir. 2003)), appeal dismissed, No. 18-995, 2018 U.S. App. LEXIS

28495, 2018 WL 4859355 (2d Cir. July 23, 2018); *see also* Fed. R. Bankr. P. 8004 (providing

procedure for appeal requiring leave).

While neither 28 U.S.C. § 158 nor the Bankruptcy Rules "provides guidelines for

determining whether a district court should grant leave to appeal . . . most district courts in the

Second Circuit have applied the analogous standard for certifying an interlocutory appeal from a

district court order, set forth in 28 U.S.C. § 1292(b)." *In re Cutter*, No. 05 Civ. 5527 (FB), 2006

U.S. Dist. LEXIS 61242, 2006 WL 2482674, at *4 (E.D.N.Y. Aug. 29, 2006) (citations omitted);

*see also In re Futter Lumber Corp.*, 473 B.R. 20, 26-27 (E.D.N.Y. 2012). Thus, interlocutory

appeals are appropriate where the order being appealed involves "(1) a controlling question of

law (2) as to which there is substantial ground for difference of opinion and (3) that an

immediate appeal from the order may materially advance the ultimate termination of the

litigation." 28 U.S.C. § 1292(b).

## **ARGUMENT**

### I. **The Order Involves a Controlling Question of Law**

The Bankruptcy Court's determination that the Binding Term Sheet imposed conditions

precedent on the vesting of Dr. Goldberg's ownership of the Transferred Securities involved a

pure question of law – the meaning of the Binding Term Sheet, which the Bankruptcy Court

ruled was unambiguous on its face.

"Under New York law . . . the question of whether a written contract is ambiguous is a

question of law for the court."[1] *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009)

(citing *Seiden Associates, Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 429 (2d Cir 1992)).

---

[1]    The Binding Term Sheet contains a New York choice of law provision.

"Ambiguity is determined by looking within the four corners of the document, not to outside

sources . . . ." *Id.* (quoting *Kass v. Kass*, 91 N.Y.2d 554, 566, 673 N.Y.S.2d 350, 356 (1998)).

"If the contract is unambiguous, its meaning is likewise a question of law for the court to

decide." *Id.* at 397 (citing *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000); *K.*

*Bell & Associates v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996)); *see also Krumme v.*

*Westpoint Stevens Inc.*, 238 F.3d 133, 139 (2d Cir. 2000) ("Where 'the parties' intent is

unambiguously conveyed by the plain meaning of the agreements, then interpretation is a matter

of law'") (quoting *Crane Co. v. Coltec Indus.*, 171 F.3d 733, 737 (2d Cir. 1999)).  In interpreting

an unambiguous contract . . . the court is not to consider any extrinsic evidence as to the parties'

intentions." *Id.* (citing *Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992));

*Metropolitan Life Insurance Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990)).[2]

      The Bankruptcy Court clearly made its ruling that the Binding Term Sheet imposed

conditions precedent on the vesting of Dr. Goldberg's ownership of the Transferred Shares as a

matter of law based on the language of the Binding Term Sheet, without regard to extrinsic

evidence.  In the Order, the Bankruptcy Court held that:

> The Term Sheets are governed by New York law. . . . Under New York law, a
> written agreement that is "complete, clear and unambiguous on its face must be
> enforced according to the plain meaning of its terms." *Greenfield v. Philles Recs.,*
> *Inc.*, 780 N.E.2d 166 (N.Y. 2002).  Where "the contract is clear and unambiguous
> on its face, the intent of the parties must be gleaned from within the four corners
> of the instrument, and not from extrinsic evidence." *Rainbow v. Swisher*, 527
> N.E.2d 258 (N.Y. 1988).  Evidence "outside the four corners of the document" is
> "admissible only if a court finds an ambiguity in the contract." *Schron v.*
> *Troutman Sanders LLP*, 986 N.E.2d 430, 433 (N.Y. 2013).  Extrinsic evidence is
> "inadmissible to alter or add a provision to a written agreement," and is "not

---

[2]    An appellate court reviews a lower court's ruling that a contract's language is unambiguous *de novo*. *See,*
*e.g., Krumme v. Westpoint Stevens Inc.*, 238 F.3d 133, 139 (2d Cir. 2000); *Fishoff v. Coty Inc.*, 634 F.3d 647, 652
("Contract interpretation is a question of law that we review *de novo*") (citing *Lee v. BSB Greenwich Mortgage Ltd.*
*P'ship*, 267 F.3d 172, 178 (2d Cir. 2001)).

admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." *Id.*; *W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639 (N.Y. 1990) . . . Because the Term Sheets are clear and unambiguous, the Court need not look to extrinsic evidence to interpret the agreements. *See Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 433 (N.Y. 2013) (explaining that evidence "outside the four corners of the document" is "admissible only if a court finds an ambiguity in the contract").

(Order , at p. 12.)

It is also clear that the issue whether Dr. Goldberg's obligation to issue certain notes and to open certain securities accounts were conditions precedent or merely covenants, was *the* controlling issue with respect to the Bankruptcy Court's award of summary judgment to PPVA. In that regard, the Bankruptcy Court clearly ruled that "[w]here 'a condition is required by the agreement of the parties . . . a rule of strict compliance traditionally applies.'" (Order at p. 12 (quoting *Markovits v. Venture Info Capital, Inc.*, 129 F. Supp. 2d 647, 654 (S.D.N.Y. 2001)). Having made this controlling legal determination, the Bankruptcy Court went on to hold:

> Goldberg has failed to identify a genuine issue of material fact regarding his contentions that (i) execution of the Term Sheets in 2015 constituted an outright transfer of ownership of the Preferred Shares to him or (ii) the Term Sheets imposed a direct, immediate obligation by a Platinum entity to deliver the Preferred Shares to him.  Each of these claims is unsupported by the explicit language of the Term Sheets.  Instead, the Court finds, as a matter of law, that the Term Sheets impose express conditions precedent – the satisfaction of the Segregated Account Condition and the Notes Condition[3] – to the obligation of any Platinum entity to deliver the Preferred Shares to Goldberg.

(Order at p. 15.)

## II.    There Are Substantial Grounds For Disagreement With Respect To the Bankruptcy Court's Holding that the Binding Term Sheet Imposed Conditions Precedent

In finding that the note and segregated account provisions of the Binding Term Sheet were conditions precedent, the Bankruptcy Court focused on the phrase "subject to the terms and

---

[3]    The Bankruptcy Court denoted the two purported conditions precedent as the "Notes Condition" and the "Segregated Account Condition."

conditions herein" contained in the "Background" section of the Binding Term Sheet. The

Bankruptcy Court held that this single phrase rendered all of Dr. Goldberg's obligations under

the Binding Term Sheet conditions precedent requiring strict compliance before he was entitled

to any rights of ownership with respect to the Transferred Securities under the contract, rather

than covenants which are subject to principles of substantial performance and waiver. The

Bankruptcy Court's entire legal analysis with respect to its holding that the Binding Term Sheet

imposed conditions precedent was as follows:

> The Court finds that no genuine dispute exists that the Term Sheets
> unambiguously provide that the obligation to transfer securities is "subject to the
> terms and conditions described herein," which conditions include the Segregated
> Account Condition and the Notes Condition as conditions precedent to any
> obligation to transfer the [Transferred Securities] to Goldberg. Further, the phrase
> "subject to" connotes the parties' intent to create a condition precedent, as does
> the placement of the Segregated Account Condition and the Notes Condition
> under separate headings as separate boxed terms within the Term Sheet and the
> Amended Term Sheet. *See Royal Bank of Canada v. Beneficial Fin. Leasing
> Corp.*, 1992 WL 167339, at *5 (S.D.N.Y. June 29, 1992) (providing that the
> inclusion of "'such as, if, on condition that, subject to, and provided' . . . as a
> general rule demonstrate[s] an intent to make an express condition precedent").
> The use of the word "shall" in the Segregated Account Condition and the Notes
> Condition also demonstrates the parties' clear and unambiguous intent to set
> conditions precedent to the obligation to transfer the [Transferred Securities], as
> the language states that (i) Goldberg "shall" establish and deposit the Preferred
> Shares into "one or more segregated brokerage accounts"[4] pursuant to the
> Segregated Account Condition and (ii) Goldberg "shall issue to one or more of
> the Platinum Funds, as directed by Platinum . . . notes in the form of Exhibit A
> attached hereto." *See Salahuddin v. Mead*, 174 F.3d 271, 274 (2d Cir. 1999)
> ("There is no doubt that 'shall' is an imperative, but it is equally clear that it is an
> imperative that speaks to future conduct. Even the most demanding among us
> cannot reasonably expect that a person 'shall' do something yesterday.").

(Order at pp. 13-14.)

---

[4]    The actual terms of the Binding Term Sheet are silent as to who was obligated to establish the account(s)
referenced, and the section containing the account provision states that "the parties agree to take such steps as are
necessary or desirable to effect such security interest" in favor of PPNY intended to result from the establishment of
the account.

However, the Second Circuit's decision in *Thomas & Betts Corporation v. Trinity Meyer Utility Structures, LLC*, 2021 U.S. App. LEXIS 28670 (2d Cir. Sept. 22, 2021), makes clear that the inclusion of the phrase "subject to" at the outset of even a single section of a contract does not render the provisions of that section conditions precedent. The Second Circuit in *Thomas Bets* held that although "linguistic conventions of condition—such as 'if,' 'on condition that,' 'provided that," 'in the event that,' and 'subject to[]'" can indicate the intent to create a condition precedent, "[i]t does not follow that 'subject to' are magic words that necessarily create conditions precedent." *Id.* at \*6. The Second Circuit noted that "[t]here are no cases under New York law which espouse a bright-line rule that the phrase "subject to" creates conditions precedent which demand strict compliance" and cautioned that "[r]ather than interpreting 'subject to' as words that automatically create conditions precedent, a court must look to both the placement of the conditional language and the context in which it is used in order to determine whether the parties intended to impose conditions precedent." Id. at \*7. The Second Circuit also specifically noted that "the Seventh Circuit, also applying New York law, has similarly found such 'subject to' language in an indemnification provision 'not sufficiently precise to make prompt written notice an express condition precedent to indemnification.'" *Id.* at \*8 (citing *Smurfit Newsprint Corp. v. Se. Paper Mfg.*, 368 F.3d 944, 951-52 (7th Cir. 2004)).

In light of the applicable standard, the Second Circuit ruled that in the contract at issue there, "[t]he phrase 'subject to' at the beginning of Section 6.2 falls short of the kind of clear conditional language that would enable us to infer the existence of conditions precedent in the face of New York's strong presumption against inferring that the parties have imposed strict conditions precedent to performance." *Id.* at \*10. The Second Circuit relied heavily on the fact

that the phrase "subject to" did not appear in the specific paragraph alleged to create the condition precedent but, rather, appeared at the beginning of the preceding paragraph:

> The "subject to" language upon which Trinity and the district court rely is not found in the same section that imposes the alleged conditions precedent. Rather, the words "subject to" are contained in Section 6.2, whereas the notice procedures Trinity claims are conditions precedent are enumerated in Section 6.3. Nor does that language specifically reference the notice procedures, or even the provisions of Section 6.3 as a whole. Instead, it embraces all of "the terms and conditions of this Article VI," many of which cannot remotely be construed as creating conditions precedent to the indemnification obligations in Section 6.2.

*Id.* at *8-9.

In this case, words "subject to" do not appear in either of the sections of the Binding Term Sheet that the Bankruptcy Court held imposed conditions precedent on Dr. Goldberg. Rather, they appear in the specifically denoted "Background" section at the beginning of the 5-page Binding Term Sheet. In fact, the Order specifically states that the Bankruptcy Court is relying in part on the fact the contract terms which the Bankruptcy Court holds impose conditions precedent were placed "*under separate headings as separate boxed terms* within the [Binding] Term Sheet." Order at p. 14. The inclusion of the phrase "subject to" in the initial Background section of the Binding Term Sheet clearly "embraces all of 'the terms and conditions of [the Term Sheet],' many of which cannot remotely be construed as creating conditions precedent," including the terms and conditions regarding notes and the segregated account. *Compare Thomas & Betts Corporation*, 2021 U.S. App. LEXIS 28670 at *9 *with* Order at pp. 13-14.

The Bankruptcy Court's holding that the words "subject to" in the Background section of the Binding Term Sheet creates conditions precedent in unrelated sections of the Binding Term Sheet also runs afoul of the black letter law that conditions precedent are not only disfavored, but

8

they are *to be avoided* unless the parties' intent is crystal clear where the finding of a condition

precedent would result in a forfeiture. *See, e.g., Oppenheimer & Co. v. Oppenheim, Appel,*

*Dixon & Co.*, 86 N.Y.2d 685, 690 (2d Cir. 1995) ("In determining whether a particular

agreement makes an event a condition courts will interpret doubtful language as embodying a

promise or constructive condition rather than an express condition.  This interpretive preference

is especially strong when a finding of express condition would increase the risk of forfeiture by

the oblige").

    While there are additional arguments and authorities demonstrating that the Bankruptcy

Court erred as a matter of law in finding that the phrase "subject to" in the Background section of

the Binding Term Sheet created conditions precedent, the above clearly demonstrates that there

are substantial grounds for difference of opinion with respect to the Bankruptcy Court's holding.

### III.    An Immediate Appeal from the Order Will Materially Advance the Ultimate Termination of the Litigation

    In addition to the existence of a controlling issue of law as to which there is substantial

grounds for difference of opinion, granting Dr. Goldberg leave to appeal the Order is likely to

substantially decrease the time required to complete this litigation, increase judicial efficiency

and reduce the time burdens on both the Bankruptcy Court and the parties, and reduce the cost of

the litigation to the parties.  This third factor, which primarily concerns judicial efficiency, is

considered the most important of the § 1292(b) factors. *See SEC v. Gruss*, No. 11 Civ. 2420

(RWS), 2012 U.S. Dist. LEXIS 114007, 2012 WL 3306166, at *4 (S.D.N.Y. Aug. 13, 2012); *In*

*re Lehman Bros. Holdings Inc.*, No. 13 Civ. 2211 (RJS), 2014 U.S. Dist. LEXIS 160533, 2014

WL 3408574, at *1 (S.D.N.Y. June 30, 2014).

9

The Order granted PPVA summary judgment on liability. As a result, a trail will be required on the issue of what remedy, if any, PPVA may be entitled to. There has been no trial date set by the Bankruptcy Court. Absent an interlocutory appeal of the Order, a trial will go forward solely on the issue of damages. Such a trial will consume considerable resources of the Bankruptcy Court and impose significant costs on the parties. If the Order is reversed on appeal, a damages trial will become moot and a new trial will be required to address liability and, if there is a finding of liability at trial, damages. This second trial will require significant, duplicative resources from the Bankruptcy Court which can be completely avoided if leave to appeal is granted and a determination is made whether the Bankruptcy Court's summary judgment ruling on liability stands. After the appeal is decided, and a single, efficient trial can be conducted by the Bankruptcy Court. This will conserve scarce judicial resources and also shorten the time until this Adversary Proceeding ultimately concludes.

Relatedly, if a damages trial is permitted to go forward now despite the fact that the Bankruptcy Court's legal ruling regarding the existence of conditions precedent, Dr. Goldberg may be subjected to a judgment against him that cannot be justified, and would subject him to the financial, reputational and other harms that such a false judgment would inflict on him. Although not technically an articulated factor considered when deciding a motion for leave to appeal, the Bankruptcy Courts are courts of equity, and the interests of justice are always a relevant consideration in any judicial decision. In this case those factors weigh strongly in favor of granting this Motion.

Moreover, granting leave to appeal will not prejudice PPVA. A trial on damages has not been scheduled. Judge Chapman has announced her retirement and the Adversary Proceeding will be reassigned to a new Judge, who played no role in the Adversary Proceeding (or the

10

Order). It will undoubtedly take the new Court time to familiarize itself with the Adversary

Proceeding and, potentially, to schedule and conduct one or more conferences to familiarize

itself with the parties and the issues for trial. This would be in addition to the ordinary pre-trial

requirements. Thus, a timely appeal of the Order is unlikely to materially delay any trial on

damages. Conversely, however, a post-trial appeal and reversal of the Order would require the

Adversary Proceeding to be remanded to the new Court for further proceedings, further

disrupting that Court's schedule and further straining its resources after having the Adversary

Proceeding added to its presumably already busy docket.

**IV.    There Are Ample Grounds to Reverse the Order**

    A.    No Standing:

Even aside from the manifest condition precedent errors, the Bankruptcy Court

committed legal error in ignoring PPVA's admission as to the absence of standing in its

Opposition Brief (at p. 4) to Dr. Goldberg's Summary Judgment Motion. PPVA admitted that it

had *no* right as a non-party to the contract to bring a claim that Dr. Goldberg or Platinum

Management breached the Binding Term Sheet. As a consequence of that admitted fact, PPVA

also had no right to assert that Dr. Goldberg or PMNY breached the Binding Term Sheet by

failing to fulfill certain "conditions precedent," and that, by virtue of that alleged breach of

contract, ownership of the Transferred Securities was not transferred to Dr. Goldberg and,

instead, ownership of the Transferred Securities somehow became "property of PPVA." PPVA

here alleged and litigated the exact same breach of contract that PPVA admits it has *no right* to

assert. The Bankruptcy Court ignored this error and the controlling precedent.

    PPVA made a specific point to underscore that it is not a signatory party to the Binding

Term Sheets (see PPVA's Statement of Material Facts, ¶ 21), and therefore had no standing to

11

raise any alleged non-performance by Dr. Goldberg in this Proceeding. *See Premium Mortg. Corp. v. Equifax Information Services LLC*, 583 F.3d 103, 108 (2d Cir. 2009) (explaining that the plaintiff who was not a party to the contract at issue lacked standing, and there was an "absence of terms that clearly evidence an intent to permit enforcement" by the plaintiff); *Hillside Metro Assocs. LLC v. JP Morgan Chase Bank*, 747 F.3d 44, 50 (2d Cir. 2014) (holding that a lessor lacked standing to litigate whether liabilities were assigned under a purchase and assumption agreement because the lessor was neither a contracting party nor a third-party beneficiary under the agreement); *Cnty of Tioga v. Solid Waste Indus. Inc.*, 178 A.D.2d 873, 874, 577 N.Y.S.2d 922 (3d Dep't 1991). This absence of standing is especially conspicuous because (i) PPVA (and, more importantly, PPNY) *never* asserted any supposed failure by Dr. Goldberg to perform; and (ii) PPVA and its General Partner in fact provided contemporaneous, sworn and other conclusive proof that there was full performance by Dr. Goldberg under the Binding Term Sheets.

Indeed, PPVA is not even mentioned in the Binding Term Sheet, except *once* as a debtor to Dr. Goldberg in the section (at p.4) entitled "Goldberg's LP Interests" in which it states that Dr. Goldberg holds limited partner interests in PPVA totaling over $1,000,000, and that PNMY "shall endeavor to pay quarterly redemptions to Dr. Goldberg in an amount equal to $150,000/quarter until the balance on the account is $0.00." Dr. Goldberg never received any payment on that debt.

B.    The Order:

The Bankruptcy Court's also committed error in the Order, by referring to the parties' binding contract as a simple "Term Sheet" – thereby deleting the governing term "Binding" which is how the parties to the contract titled and interpreted their binding contract. The

Bankruptcy Court also made a fundamental legal error as to the binding effect of the "**Binding Term Sheets**" (emphasis added). The parties to the contract specifically agreed in an executed and dated Binding Term Sheet that all obligations were in place and binding even if no additional documents were entered into by the parties:

> This Binding Term Sheet represents a legally binding agreement between the parties hereto regarding the principal terms of the transactions described herein . . . The parties agree to negotiate in good faith definitive documentation containing terms consistent with the provisions set forth herein as soon as reasonably practicable after the date hereof; provided, however, *that if such agreement is not entered into between the parties this Binding Term Sheet shall continue in full force and effect*. (Emphasis added.)

Such "legally binding agreements" are consistently upheld under the rules of construction in New York. *See Avant Capital v. W108 Dev. LLC*, 2016 U.S. Dist. LEXIS 177548, at * 7-8 (S.D.N.Y. Dec. 9, 2016); *Suarez v. SCF CEDAR LLC*, 2016 U.S. Dist. LEXIS 34064, at * 4-7 (S.D.N.Y. March 14, 2016). The Bankruptcy Court committed clear error in ignoring this binding New York precedent.

In ruling that the Binding Term Sheet imposed conditions precedent with respect to certain notes to be issued by Dr. Goldberg and certain securities accounts into which the Transferred Securities were to be deposited once received by Dr. Goldberg, the Bankruptcy Court ignored certain plain and express language of the Binding Term Sheet that negated that finding. For example, the Binding Term Sheet stated that "In consideration for the Transferred Securities, Dr. Goldberg shall issue to one or more of the Platinum Funds, as directed by [PMNY] . . . seven year notes in the form of Exhibit A attached hereto . . ." (Binding Term Sheet at 3 (emphasis in original).) This language contradicts the Bankruptcy Court's holding that issuance of the Notes was a condition precedent to transfer of the Transferred Securities and

13

also ignores that PPVA submitted no evidence that PMNY ever directed Dr. Goldberg to issue a note to PPNY (or anyone else).

Additionally, the Order erroneously states that the Binding Term Sheet requires *Dr. Goldberg* to establish a securities account with certain attributes, that the opening of the account was required *before* the Transferred Securities were transferred to Dr. Goldberg, or that the Transferred securities be "transferred" into the account directly when provided to Dr. Goldberg. There is no such language in the contract signed by Dr. Goldberg *and PPNY*.

Rather, on its face, the Binding Term Sheet does *not* assign the responsibility to open the account to *either* Dr. Goldberg or PMNY, but states only that "the parties will use their best efforts" to create a security interest in the Transferred Securities held in the account. The Binding Term Sheet *does not* mandate that the Transferred Securities "shall be deposited" directly into an existing account at the time ownership had been transferred to and vested in Dr. Goldberg.

The Bankruptcy Court ignored Dr. Goldberg's arguments that the provisions of the Binding Term Sheet requiring him to issue certain notes in consideration for the Transferred Securities based on specific information that was to be provided to him by PMNY (but was never provided to him) was a mere covenant to be performed after ownership of the Transferred Securities had been transferred to Dr. Goldberg. The Bankruptcy Court also ignored the evidence that Dr. Goldberg substantially complied with the note covenant, because the signed Binding Term Sheet clearly laid out Dr. Goldberg's exact obligations with respect to the note and stated that even if additional documents contemplated by the parties were never executed, the parties would still retain all of their rights under the Binding Term Sheet.

14

Further, the Bankruptcy Court ignored evidence that PMNY (the only other signatory to

the Binding Term Sheet) waived the note obligation, including the fact that PMNY's Chief

Investment Officer, who executed the Binding Term Sheet on behalf of PMNY and knew that the

Binding Term Sheet expressly set out PMNY's rights with respect to potential earn-out

payments, authorized the transfer of the Transferred Securities without insisting that a stand-

alone note be executed before the transfer.  The Bankruptcy Court also ignored evidence that

PMNY had already transferred ownership of the Transferred Securities to Dr. Goldberg knowing

that the account was in the process of being created by PMNY, Dr. Goldberg and Merrill Lynch.

In fact, PMNY's attorneys were working with Merrill Lynch to finalize the terms of the control

agreement relating to the account at the time of the transfer.  This is further evidence that PMNY

and Dr. Goldberg, the only two signatories to the Binding Term Sheet, did *not* believe the

existence of the account was required before the transfer or that the Transferred Securities were

required to be "transferred" directly into the account as the Bankruptcy Court suggested.[5], at a

minimum, that PMNY was willing to temporarily waive any such requirement until the account

opening process was complete.

C.    Newly Discovered JOL Reports Establish that
      Plaintiff's Representations Were False:

PPVA falsely represented to the Bankruptcy Court that PMNY did not consider the

purported conditions precedent to have been substantially complied with or unnecessary as

preconditions to the transfer of the Transferred Securities (*i.e.*, either temporarily or permanently

waived).  Martin Trott, one of the Cayman Island Liquidators (who was not a PPVA employee

---

[5]    In fact, the Binding Term Sheet requires only that the Transferred Securities be "deposited" into the
account at some unspecified time.  (*See* Binding Term Sheet at 4.)

and had no personal knowledge of the course of dealings between Dr. Goldberg, PMNY and/or

PPVA, testified as follows:

> Q. And what do you mean by that, sir?

> A. So it refers to – it refers to notes, for example, that you
> were to be issued by Dr. Goldberg, and I haven't seen those notes.
> It refers to securities being transferred to a securities control
> account, and I have not seen the securities control account.

> --Trott Tr. pp. 48-49, attached as Exhibit 1 to E-
> Docket No.30.

Mr. Trott also falsely testified that the Liquidators *never* issued any schedules of assets

that referred to Dr. Goldberg or to Dr. Goldberg's note obligations under the Binding Term Sheet

– despite the now irrefutable fact that the JOL carried on its very own list of assets "Notes

Receivable from Michael Goldberg" with a value of $16,142,504, i.e., the exact aggregate value

of the value of all the Transferred Securities on Schedule 1 of the Binding Term Sheet.  Further,

PPVA sought to fabricate a false CPLR 3212 narrative by arguing as follows:

> **The Court: And so no notes?**

> **Mr. Burns: No notes.  We've never seen a note, Your
> Honor.  We've never - - we've scoured - -**

> **The Court: So never seen a note, and I mean, and he
> never paid for those shares, right?**

> **Mr. Burns:** Yeah, we absolutely - - we've never seen - -
> there should be, according to the - - **according to the term sheet
> themselves, the warrants had a value as of the end of December
> 2013 of about eleven million dollars, which means that PPVA
> should be sitting on a note of about eleven million dollars, a
> seven million - - a seven-year note for eleven million dollars
> from Goldberg for these.  We've never seen it.**

\*\*\*

16

> **Mr. Burns:** Sure, Your Honor. Let me just start with, if
> we, PPVA, had in our file notes from Dr. Goldberg for eleven
> million dollars, we would not be here before Your Honor, fighting
> about four million dollars. **We would have long since taken
> those notes, brought them to state supreme court, and collected
> on them, pursuant on summary judgment in lieu of complaint.
> It would be easy.**
>
> **The problem is we don't have the notes because there
> were no notes. . . .** --Argument, pp.19-20, 38-39 (emphasis
> added.)

PPVA's CPLR 3212 argument was an abject lesson in misdirection. Because the

issuance of a stand-alone Note was not a condition precedent, *PMNY's* remedy (*if* there were no

Notes) would *not* be a lawsuit for summary judgment in lieu of complaint - - it would instead be

a breach of contract claim seeking an order compelling Dr. Goldberg to execute a stand-alone

note embodying the terms set forth in the Binding Term Sheet. Moreover, PPVA knows that it

could *never* bring a CPLR 3212 Motion because under their express terms, the Notes were *Non-*

*Recourse Notes.*

Further, under the plain language of the Binding Term Sheet, the only path to reap any

economic benefit under the Notes Receivable was if Dr. Goldberg sold any of his Transferred

Securities, at which time, and only at which time, would PPNY and Dr. Goldberg each receive

their scheduled percentage of such proceeds. The Bankruptcy Court, in clear error and ignoring

the actual language of the Binding Term Sheet, accepted PPVA's false "No Notes" barrage:

> The Court: The notes don't exist. . . . I mean, a term sheet
> is not a note and a security agreement.
>
> Mr. Kook: Your Honor, two points, if I may?
>
> One, the term sheets can be a note. The term sheets say
> that no further documentation is necessary. But more importantly,
> Mr. SanFilippo testified - -

17

**The Court: No, no, no, no, no.** --Argument, pp. 22
(emphasis added).]

D.    The Court Ignored the Facts Establishing that
Dr. Goldberg Was Vested with Ownership:

In ruling that Dr. Goldberg did not have a "live right" to own the Transferred Securities

before the August 25, 2016 liquidation date, the Bankruptcy Court committed legal error by

completely disregarding the evidence presented by Dr. Goldberg establishing that all the persons

involved – including Platinum Manager and PPVA certified and/or memorialized and confirmed

that Dr. Goldberg did in fact own the subject Transferred Securities well *before* the liquidation

date. This is *not* an "issue of fact." Rather, this is an issue of law as Bankruptcy Court

disregarded the basic law on Motion for Summary Judgment[6], and made dispositions of fact

upon, at best, a *very* distorted and limited record upon which it disregarded the Defendant's

evidence.

These ownership facts ignored by the Bankruptcy Court include the unambiguous

Amended 13D certified by Platinum Manager and PPVA, as the Reporting Person, and filed with

the SEC, April 29, 2016, which declared that ownership of the Transferred Securities had already

transferred and belonged to Dr. Goldberg:

> Also excluded from [PPVA's] beneficial ownership calculation are
> 5,411,850 shares of common stock **owned by Michael M.
> Goldberg**, a current Director of Navidea, pursuant to an agreement
> effective March 28, 2014, and amended effective June 11, 2015
> (the "Platinum Separation Agreement), which provides that Dr.

---

[6] *See In re Lehman Bros. Holdings*, 544 B.R. 62, 69 (Bankr. S.D.N.Y. 2015) (Summary Judgment is appropriate
where there is "no genuine dispute as to any material fact," and the moving party is entitled to "judgment as a matter
of law."); *NML Capital v. Republic of Argentina*, 621 F.3d 230, 236 (2d Cir. 2010) (In determining whether to grant
a motion for summary judgment, the court is not to "weigh the evidence and determine the truth of the matter but to
determine whether there is a genuine issue for trial"); *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d
158, 162 (2d Cir. 2006)"); *United Nat'l Ins. Co. v. Tunnel, Inc.*, 988 F.2d 551, 554 (2d Cir. 1993)).

18

Goldberg has sole voting and dispositive power over those
securities....

--See E-Docket No. 30, Exhibit 1 (emphasis added).

Platinum Management's CFO, Mr. San Filippo, produced a Platinum memorandum,

dated July 9, 2015, which confirmed the fact that due consideration was received by Platinum

*and* that PPVA did not own the Transferred Navidea Securities: "the fund believes it does not

have control or ownership of the securities.  Given the transfer of the voting and dispositive

power, the transaction constitutes a legal transfer and not an assignment or participation in the

securities. . . . It is also important to note that the fund has disclosed to the public and SEC that

the fund does not own these securities." (E-Docket No. 30, Exhibit 4.)

Further, PPVA refused to produce financial statements in discovery.  It was only *after*

Platinum Management's CFO, Mr. San Filippo, produced those documents at his deposition, that

PPVA finally admitted that it in fact did have the PPVA financial statements.  PPVA's counsel

admitted these dispositive facts in an email, dated January 13, 2020:

> I suggest to you that I stipulate that (1) as of the NAV statement
> for the period ending 6/30/14, **notes receivable from Goldberg were
> booked per Goldberg's term sheet** with PM (NY), and the **Navidea
> Series B preferred shares referenced in Goldberg's term sheet (and/or
> the Warrants for which they were exchanged in 2015) were not
> included within the accounting of PPVA's positions,** and (2) that this
> accounting treatment continued in subsequent NAV statements for so
> long as they were prepared (on information and belief, through
> March 2016).

--See E-Docket No. 30, Exhibit 8 (emphasis added).

## CONCLUSION

Based on the foregoing, Defendant Dr. Michael Goldberg respectfully requests that this

Court grant this Motion, permit Dr. Goldberg to appeal the Order, and, on appeal, reverse the

Bankruptcy Court's determination with respect to the existence of conditions precedent and

remand the case for further proceedings consistent with that ruling, and grant Dr. Goldberg such

further relief as this Court deems appropriate.

Dated:  New York, New York
         July 25, 2022

                                        LAW OFFICE OF MARK R. KOOK

                                        By: _____
                                            Mark R. Kook (6832)
                                        1180 Avenue of the Americas, 8th Floor
                                        New York, NY 10036
                                        Tel.: (917) 673-9869
                                        Attorneys for Defendant

20