IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P. (IN OFFICIAL LIQUIDATION), et al., | Chapter 15 |
| Debtors in Foreign Proceedings. | Case No. 16-12925 (JPM) |
| | (Jointly Administered) |
| PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P., | Adv. Pro. No. 18-01650 |
| Plaintiff, | |
| -vs- | |
| MICHAEL M. GOLDBERG, | |
| Defendant. | |

# DEFENDANT'S REPLY MEMORANDUM OF LAW
# IN SUPPORT OF MOTION FOR MODIFICATION

LAW OFFICE OF MARK R. KOOK
Mark R. Kook
1180 Avenue of the Americas, 8th Floor
New York, NY 10036
Tel.: (917) 673-9869
mkook@kooklaw.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT AND SUMMARY OF FACTS **Error! Bookmark not defined.**

Conclusion ................................................................................**Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

**Cases**

Rosen v. Chowaiki & Co. Fine Art (In re Chowaiki & Co. Fine Art),
   593 B.R. 699 (S.D.N.Y. B'cy 2018).................................................................................12

**Statutes**

Fed. R. Bkcy. P. 7054 ......................................................................................................1
Fed. R. Bkcy. P. 9024 ......................................................................................................1

Dr. Michael M. Goldberg, M.D. ("Dr. Goldberg") respectfully submits this reply memorandum of law in further support of his motion (the "Motion") for Modification of the Decision and Order on Cross-Motions for Summary Judgment entered in this adversary proceeding on May 10, 2022 (the "Order"), [Dkt. No. 44] pursuant to Fed. R. Bkcy. P. 7054, Fed. R. Bkcy. P. 9024 and the Court's inherent powers.

## PRELIMINARY STATEMENT AND SUMMARY OF FACTS

In his moving memorandum of law (the "Moving Memo") Dr. Goldberg showed that a recently-identified document calls into question: (i) the derogatory and misleading picture painted of Dr. Goldberg by plaintiff Platinum Partners Value Arbitrage Fund L.P. (In Liquidation) ("PPVA") in support of its summary judgment motion, (ii) the primary argument espoused by PPVA in support of its summary judgment motion and (iii) the primary basis for the Court's decision set forth in the Order – that is, that Dr. Goldberg knowingly conspired with someone who completely lacked authority with respect to the warrant that PPVA seeks to recover in this Adversary Proceeding (the "Warrant"), in a nefarious scheme to take PPVA's supposed property. The recently discovered document (the "Second Report") makes clear that the actual facts are far more complicated than presented by PPVA. The document, published in October 2018 – two years after the Warrant was assigned to Dr. Goldberg – makes clear that the individual who assigned the Warrant to Dr. Goldberg in October 2016, Mark Nordlicht ("Nordlicht"), retained control of at least one Platinum-related entity – in fact, the General Partner of **all** the Platinum Funds.

The Second Report states that "Mark Nordlicht currently retains control of [Platinum Partners Arbitrage Fund (USA) L.P.] as its *General Partner*. The Liquidator is in discussions

1

with Mr. Nordlicht regarding an alternative arrangement to secure the Liquidator's appointment." (See Exhibit 2 to the Moving Kook Aff. (emphasis added).)

In response, PPVA makes two seemingly straightforward arguments. First, it argues that this fact is not relevant because Nordlicht had no authority over PPVA. Second, it argues that even if Nordlicht did have authority over PPVA he still would not have the authority to assign property of PPVA due to the existence of the PPVA Liquidation. However, as with its arguments in support of its original summary judgment motion, their seeming simplicity is actually an attempt at misdirection, at best, and fraud on the Court at worst.

The documentary evidence[1] calls into question every single argument made by PPVA in support of summary judgment. The recently discovered Second Report is the lynchpin to unlocking how the seemingly straightforward picture portrayed by PPVA glosses over the conflicting evidence in this case.

The Warrant was purportedly issued to PPVA by Navidea in exchange for 1,655 shares of Navidea Series B Convertible Shares (the "Preferred Shares") on August 20, 2015. (See Securities Exchange Agreement, (Complaint, Exh. 1.) However, the Preferred Shares were undisputedly the subject of a series of earlier agreements concerning Dr. Goldberg's separation from his position as a Portfolio Manager at Platinum Management (NY) LLC ("Platinum

---

[1] "After the argument on the summary judgment motion, Dr. Goldberg found emails containing the Fifth Report and the Seventh Report published by the JOLs of PPVA. Each of these Reports contains, among other information, schedules or listings of PPVA's assets – documents that Dr. Goldberg specifically requested in discovery, and which PPVA represented did *not* exist. Further, each of the Fifth Report, dated March 17, 2020, and the Seventh Report, lists in its Asset Schedule the very Notes that are mentioned in the Separation Agreements: "Notes Receivable from Michael Goldberg", in amount of $16,142,503.80" - - the nominal value of all the Transferred Securities in the Separation Agreements. (See Dkt. No. 46, Goldberg Aff. Ex. 1, at 22, and Ex. 2, at p. 27.) There these two Reports demanded in Dr. Goldberg's First Document Request before the summary judgment motion, but PPVA then had the audacity to tell Judge Chapman that: "No notes, we've never seen a note, Your Honor. We've never, we've scoured . . . ." (Tr. p. 19.) \

\

2

Management"). Nordlicht was the principal officer of Platinum Management, which also was the general partner of PPVA.

As consideration for his separation and in lieu of other amounts owed to Dr. Goldberg by Platinum Management, in a Binding Term Sheet dated March 28, 2014 (the "Separation Agreement"), Platinum Management pledged to Dr. Goldberg a number of equity and debt positions held by "certain of the private investment funds under its management" (defined collectively in the Separation Agreement as the "Platinum Funds") in exchange for Dr. Goldberg's promise to execute a series of promissory notes in amounts equal to the value of the tranches of equity and debt positions as of December 31, 2013. The Separation Agreement also required that segregated brokerage accounts be established to hold each position. (*Id.* at 3.) The Separation Agreement attached a schedule ("Schedule 1") which listed the various equity and debt positions that were pledged to Dr. Goldberg. Schedule 1 includes the Preferred Shares and specifically identifies Platinum Montaur Life Sciences ("Platinum Montaur") as the "Current Holding Company" of the Navidea shares. (*Id.* Schedule 1.) Schedule 1 also lists many other securities and the "Current Holding Company" for each. Plaintiff PPVA is not listed as a Current Holding Company in Schedule 1 to the Separation Agreement.

Indeed, PPVA is not mentioned at all in the Separation Agreement. The only two parties to, and who executed the Separation Agreement are Dr. Goldberg and Platinum Management.

The Separation Agreement was amended through a First Omnibus Amendment to Confidential Binding Term Sheet (the "Amended Separation Agreement") on June 11, 2015, which also was executed on behalf of Platinum Management by Nordlicht. The Amended Separation Agreement contained an identical Schedule 1, reaffirming that as of June 11, 2015

3

that the Preferred Shares were pledged to Dr. Goldberg and held by Platinum Montaur. (*Id.* Schedule 1.) Again, there is no mention of PPVA.

Moreover, PPVA has never even attempted to explain how or why the Warrant relating to the Preferred Shares was issued to PPVA only two months after Platinum Management, the manager of both PPVA (see below) *and* Platinum Montaur, reaffirmed that the Preferred Shares were pledged to Dr. Goldberg and held by Platinum Montaur in Schedule 1 to the Amended Separation Agreement.

In August 2015, just two months after the Amended Separation Agreement was executed by Platinum Management – the manager of PPVA – Navidea worked out a deal to convert the Preferred Stock into the Warrant, which would be exercisable for 5,411,850 shares of Navidea Common Stock. The transaction (supposedly required by the Tel Aviv Stock Exchange which allowed a company to list only kind of stock) is set forth in a Securities Exchange Agreement dated August 20, 2015 between Navidea, PPVA and an entity called Monstat Partners LLC.

Although the Securities Exchange Agreement states that PPVA "owns" the Preferred Shares, in fact Navidea, PPVA and Platinum Management (PPVA's general partner) were publicly disclosing and confirming that Dr. Goldberg was the owner of the Preferred Shares, and by virtue of that ownership, was the owner of the underlying 5,411,850 Common Shares. For example, on April 29, 2016, *eight months after* the date of Securities Exchange Agreement, and *four months before* PPVA's liquidation filing, PPVA as Reporting Person disclosed in an amendment ("Amendment No. 3") to a Navidea Form 13D, filing with the SEC, that the 5,411,850 shares of Common Stock underlying the Preferred Shares and Warrant had been previously transferred to Dr. Goldberg through the Separation Agreement:

> Also excluded from [PPVA's] beneficial ownership calculation are 5,411,850 shares of common stock **owned by**

> **Michael M. Goldberg**, a current Director of Navidea, pursuant to an agreement effective March 28, 2014, and amended effective June 11, 2015 (the "Platinum Separation Agreement), which provides that Dr. Goldberg has sole voting and dispositive power over those securities....

(Kook Moving Aff., Exh. 3, at pp. 8-9 (emphasis added). Remarkably, when asked at oral argument on the Summary Judgment motion (Transcript, p. 24) how PPVA could escape the plain language in the Amendment of the Navidea 13D whereby *PPVA itself* reported to the SEC, under penalty of government sanctions to both PPVA and its officers for false statements, that Dr. Goldberg "owned" all of the underlying shares of common stock, PPVA responded that "it's essentially impossible to figure out" – and Judge Chapman accepted that statement.

The only way PPVA was able to engage in this exercise in smoke and mirrors and succeed is because it painted a picture of Nordlicht as a criminal actor with no authority to act in any capacity with respect to the Warrant, and Dr. Goldberg as a knowing conspirator in a nefarious plan and "crime" to have Nordlicht improperly assign the Warrant to Dr. Goldberg:

> The Court: So two guys got together in October of 2016 knowing that the train had left the station because the winding up had already commenced, and one guy realized that, gee, it wouldn't really work to put the accurate date on it because the curtain had dropped on the winding up. So between the two of them, they just said, whatever, let's put an earlier date on it so it looks okay.
>
> Mr. Kook: All the - -
>
> The Court: Not only is that not okay, and not only is it a question of that you can't find a case that says that bad, that's a crime.

--Tr. p. 21.

PPVA's inability to establish its ownership of the Preferred Shares underlying the Warrant, or to explain the myriad documentary evidence to the contrary, is especially suspect

5

because not only was Platinum Montaur a "private investment fund[] under [the] management" of Platinum Management (*see* Separation Agreement and Amended Separation Agreement at p. 1), but Platinum Management was also the *general partner* of PPVA (*see* Fifth Report of Liquidators at 4).

In fact, it was Platinum Management which applied to the Cayman courts to place PPVA into liquidation. (*Id.*) Thus, PPVA's argument which implied that Nordlicht was an *excommunicado* former affiliate lacking any authority with respect to the Platinum companies and that the filing of the liquidation removed all authority to assign the Warrant, is again an exercise in misdirection and misrepresentation. There is no basis to assume or infer – and PPVA provides none – that a liquidation concerning PPVA instituted by Platinum Management (of which Nordlicht was the principal officer) as its general partner would strip Platinum Management of its authority to assign its own property, or the property of other investment funds under its management, including Platinum Montaur, which held the Preferred Shares before ownership was transferred to Dr. Goldberg. Again, the fact that Platinum Montaur was the Current Holding Company holding the Preferred Shares prior to their pledge to Dr. Goldberg was set forth in the Separation Agreement and reaffirmed in the Amended Separation Agreement; and, further, Dr. Goldberg's ownership of the Preferred Shares *by virtue of* the Separation Agreement was publicly "certified" by Platinum Management *and* PPVA in an SEC filing.

The Second Report states that Nordlicht retained control over one or more Platinum entities – specifically PPVA (USA) – years after the PPVA liquidation was filed. It also indicates that certain Platinum entities were outside the scope of the PPVA liquidators' authority. Thus, while PPVA implied in its arguments that Nordlicht lacked any authority with respect to

Platinum-related entities or business, that clearly was not the case. And there is nothing in the record suggesting that Nordlicht had been stripped of his position at Platinum Management or that PPVA's liquidation proceeding had any impact on Platinum Management or any of the other investment funds under its management, including Platinum Montaur.

The primary significance of the Second Report is that it negates the implication presented to the Court that Nordlicht was a criminal bad actor – in mid-October 2016 – who was no longer affiliated with the Platinum funds and clearly acted without authority, and that Dr. Goldberg knew this when he "conspired" with Nordlicht to unlawfully assign the Warrant to Dr. Goldberg. Only against this background could the Court have granted PPVA summary judgment when PPVA was unable to provide evidence on even the first element of its cause of action.

PPVA failed to prove that it had a legal right to the Preferred Shares, the Navidea common stock that it was convertible into, or the Warrant which replaced the stock. In fact, PPVA did not explain to the Court how it received the Warrant on August 20, 2015, when that Warrant was undisputedly issued in replacement for the Preferred Shares, and the Amended Separation Agreement effective as of June 11, 2015 stated that the Preferred Shares were "currently" held by Platinum Montaur, and then transferred to Dr. Goldberg by the Separation Agreements.

Thus, in October 2016, when Nordlicht signed an assignment of the Warrant to Dr. Goldberg through a form dated as of October 2015, and told Dr. Goldberg that he was doing so because the issuance of the Warrant to PPVA was in error because PPVA did not own the Preferred Shares, Dr. Goldberg had every reason to believe him. And the Report suggests that Nordlicht was correct and had the authority to make the assignment, at least on behalf of Platinum Montaur, which the documentary evidence shows was the true holder of the Preferred

7

Shares underlying the Warrant. In fact, in its (now clearly over-) simplified version of events, PPVA did not put forward any evidence that it actually owned or had any right to the Preferred Shares at any time. The few documents accounting for those shares produced by PPVA showed Dr. Goldberg as the owner of the shares. And filings with the Securities and Exchange Commission, and the deposition testimony of Platinum's CFO and emails from many Platinum principals also stated that Dr. Goldberg was the beneficial owner of the Preferred Shares after the Separation Agreement was executed.

Dr. Goldberg had repeatedly demanded production of an audit or other statement showing that PPVA listed the Warrant as its property. PPVA has always told Dr. Goldberg that it had no such documents. However, PPVA did have Statement of Assets showing that the "Notes Receivable" from Dr. Goldberg were an Asset with a nominal value of $16,142,501, the very value given to all the Transferred Securities.

PPVA refused to produce any significant documents discussing the Preferred Shares, even though its own reports to stakeholders indicate that it spent hundreds of thousands if not millions of borrowed dollars to obtain such materials from PPVA's pre-liquidation vendors. And there has never been any evidence adduced showing how PPVA could have come into ownership of the Preferred Shares, which the undisputed documentary evidence shows belonged to Platinum Montaur, just two months before the Warrant was issued. These facts do not even take into account that the Preferred Shares were pledged to Dr. Goldberg through the Separation Agreement and Amended Separation Agreement by Platinum Management, the manager of Platinum Montaur and general partner of PPVA, that the documentary evidence (reports to stakeholders by PPVA's own liquidators) indicates that neither of those entities were part of the

liquidation, and that public securities filings certified by PPVA stated that Dr. Goldberg owned the shares.

Simply put, this evidence undercuts the house of cards presented by PPVA on summary judgment with regard to both its right to the Warrant and Nordlicht's authority to act on behalf of the stated owner of the Preferred Shares underlying it, Platinum Montaur. Without the derogatory picture painted of Dr. Goldberg and the Warrant assignment transaction, all PPVA actually presented was the statement of the Liquidators who had no involvement with Goldberg (or PPVA); the Warrant – which Mark Nordlicht, an officer of PPVA's General Partner, stated was not subject to the PPVA liquidation, and was issued to PPVA in error. This baseless and unsupported statement of the Liquidators is contradicted by the documentary evidence in this case, including the Separation Agreement and PPVA's own public securities filings and accounting records.

PPVA again seeks to misdirect the Court from the fact that the Second Report shows that Nordlicht retained control over certain Platinum-related entities by arguing that the Second Report states that he retained control only over Platinum Partners Value Arbitrage Fund (USA) as opposed to plaintiff PPVA, and that Dr. Goldberg "obviously **know[s]** the difference between the Master Fund and the Onshore Feeder Fund," because he was "a former Platinum [Management] portfolio manager." (Opp. p. 2). In fact, Dr. Goldberg was a Portfolio Manager of a single fund, Platinum Montaur Life Science, investing exclusively in the health care industry. Moreover, that was more than nine (9) years ago. Dr. Goldberg was not and is not familiar with the corporate structure of the multitude of Platinum-related entities, including the apparently various "Platinum Partners Value Arbitrage"-titled entities.[2]

---

[2] Dr. Goldberg was familiar with Platinum Partners Value Arbitrage Fund (U.S.A.). But that was because he was a limited partner in that "PPVA (USA) LP." Moreover, PPVA (USA) LP is the only "PPVA" Fund

9

There also is no dispute that PPVA applied for the appointment of provisional liquidators in the August 26, 2016 Order "acting by Platinum Management (NY) LLC (the "General Partner") in its capacity as the general partner of the Master Fund". That Order further provided for a Liquidation Committee to engage "either Platinum Management (NY) LLC, or another professional manager" to act as advisor. Then the Winding Up Order, dated October 27, 2016, directed the JOLs to report concerning "details of the professional portfolio manager(s) intended to be engaged or re-engaged by the Official Liquidators, including drafts of the proposed contracts of engagement."

There also is no doubt that the PPVA Liquidators acknowledged that all the Platinum Funds were structured as one big inter-related family:

> The Master Fund forms part of a master-feeder investment structure which served as a vehicle for investing the capital contributed by both Platinum Partners Value Arbitrage Fund (USA) LP (the "**Onshore Feeder Fund**") and Platinum Partners Value Arbitrage Fund (International) Limited – In Official Liquidation (the "**Offshore Feeder Fund**") (ostensibly, through Platinum Partners Value Arbitrage Intermediate Fund Ltd. – In Official Liquidation (the "**Intermediate Fund**"), for the purposes of achieving the investment objectives of the Funds.

--PPVA Fifth Report, Section 1.2.2 (emphasis in original).

There is no reason to believe that Platinum Management did not continue as "professional portfolio manager" – with Platinum Management also continuing as General Manager, through at least October 26, 2016 – which is before the October 27 2016 date of the Winding Down Order, and after the Assignment. Moreover, while there might be such authority, PPVA's attorneys have not cited any Cayman Law dictating different Rules for the bankrupt

---

mentioned in Defendant's Original and Amended Binding Term Sheets. In each of the Binding Term Sheets, Dr. Goldberg is identified as a limited partner in PPVA USA and that Platinum Manager will "endeavor" to pay Defendant the more than $1 million that PPVA USA owes to him.

10

Fund's JOLs and GP, as between PPVA and PPVA-USA, where the JOLs stated that Mr. Nordlicht had "retained control" through October *2018*.

There certainly was no reason for Defendant Goldberg to believe otherwise, in mid-October *2016*, when Mr. Nordlicht specifically stated in an email to Defendant that he – Dr. Goldberg – owned the Warrant since October *2015* (other than that Dr. Goldberg believed that his ownership was confirmed much earlier, in the Separation Agreement).

In light of the above, it is clear that the newly-discovered document calls into question PPVA's entire presentation on summary judgment and demonstrates that there are factual issues not only concerning Nordlicht's authority to act, but also with respect to whether PPVA ever had any claim to the Preferred Shares and whether the Warrant was issued to PPVA in error, as Nordlicht told Dr. Goldberg it was. For these reasons, the Court should modify the Order and deny summary judgment to PPVA or, at a minimum, vacate the Order, permit additional discovery on these issues and then entertain new summary judgment presentations with Dr. Goldberg having access to all relevant materials. As part of any such briefing, PPVA should be required to present undisputed evidence (such as an audit or an asset schedule) of its ownership of the Preferred Shares and the Warrant, including irrefutable explanations, supported by evidence, of how that could be the case in the face of not only the Separation Agreement and Amended Separation Agreement, but also its own accounting records *and* its own securities filings.

This is especially important because unless PPVA can establish that it actually owned the Preferred Shares, it has no right whatever in the Warrant, and therefore could not show any "injury in fact" necessary to establish its standing to bring this adversary proceeding.

Indeed, in a case directly applicable to Plaintiff PPVA here, the Bankruptcy Court held:

Pg 15 of 16

> In order to maintain a case, the plaintiff is required to "allege[] such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction." . . . To establish constitutional standing, the plaintiff must: (1) "have suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." . . . Moreover, it "must be 'likely,' as opposed to merely 'speculative' that the injury will be 'redressed by a favorable decision.'
>
> Regarding the first element, "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and actual or imminent, not conjectural or hypothetical." . . . For an injury to be "particularized" it must "affect the plaintiff in a personal and individual way." . . . For an injury to be "'concrete' it must actually exist." . . . "Any monetary loss suffered by the plaintiff satisfies [the injury element]; 'even a small financial loss.'" . . . However, the injury must be to a legally protected interest of the plaintiff, and not of a third party.
>
> Because standing is not merely a "pleading requirement but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at [each] successive stage[] of litigation." . . . As a result, "the showing that must be made in order to withstand a dismissal for lack of standing increases as the suit proceeds."

*Rosen v. Chowaiki & Co. Fine Art (In re Chowaiki & Co. Fine Art)*, 593 B.R. 699, 712 (S.D.N.Y. B'cy 2018) (internal citations omitted) (citing, *inter alia Warth v. Seldin*, 422 U.S. 490, 498-499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); *Summers v. Earth Island Institute*, 555 U.S. 488, 493, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009); *Alabama Legislative Black Caucus v. Alabama*, 135 S. Ct. 1257, 1276, 191 L. Ed. 2d 314 (2015); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016); *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 55 (2d Cir. 2016). Thus, at this late stage of this litigation, unless PPVA can answer the question it admitted it found "essentially impossible to figure out" – *i.e.*, whether and how it had a legal right to the Preferred Shares and therefore the Warrant -- this adversary proceeding should be dismissed.

In the alternative, PPVA must establish its ownership of the Preferred Shares during any damages phase of this adversary proceeding as part of any presentation concerning any injury or damages allegedly caused by Nordlicht's assignment of the Warrant to Dr. Goldberg.

Conclusion

WHEREFORE, based on the foregoing, Defendant Dr. Michael Goldberg respectfully submits that the Court should grant his Motion in its entirety and grant Dr. Goldberg such other relief as the Court deems just and proper.

March 31, 2023

LAW OFFICE OF MARK R. KOOK

By: /s/ Mark R. Kook

Mark R. Kook
1180 Avenue of the Americas, 8th Floor
New York, NY 10036
Tel.: (917) 673-9869
mkook@kooklaw.com