IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P. (IN OFFICIAL LIQUIDATION), et al.,<br><br>Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 16-12925 (JPM)<br><br>(Jointly Administered) |
| PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P.,<br><br>Plaintiff,<br><br>-vs-<br><br>MICHAEL M. GOLDBERG,<br><br>Defendant. | Adv. Pro. No. 18-01650 |

# DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION

LAW OFFICE OF MARK R. KOOK
Mark R. Kook
1180 Avenue of the Americas, 8th Floor
New York, NY 10036
Tel.: (917) 673-9869
mkook@kooklaw.com

## **TABLE OF CONTENTS**

I.   Dr. Goldberg Is Entitled To Damages Discovery ............................................................. 1

II.  Prior Discovery Requests And Responses Have No Relevance Here ............................. 2

III. The Documents Sought Through The Requests Are Relevant To Damages ................... 4

IV.  PPVA's Cross-Motion Is Replete With Willful Representations ..................................... 8

V.   PPVA's Refusal to Produce Any Documents ................................................................ 13

CONCLUSION ............................................................................................................................ 13

## TABLE OF AUTHORITIES

**Cases**

*In re Gonzalez,*
   559 B.R. at 331 ................................................................................................................5

In re P&Z Island Farms, Inc.
   478 F.Supp, 529 (S.D.N.Y. 1979) .................................................................................10

*In re Platinum Partners Value Arbitrage Fund L.P.,*
   583 B.R. 803 (Bankr. S.D.N.Y., Apr. 17, 2018) (Chapman, J.) .......................................3

Phalsankar v. Andersen Weinroth & Cohen L.P.,
   175 F.Supp.2d 635 (S.D.N.Y. 2001) ..............................................................................10

Phansalkar v. Andersen Weinroth & Co., L.P.,
   2001 U.S. Dist. LEXIS 19406 (S.D.N.Y. Nov. 29, 2001) ..............................................10

Phansalkar v. Andersen Weinroth & Co., L.P.,
   344 F.3d 184, (2d Cir. 2003___) ....................................................................................11

*Robbins & Myers, Inc. v. J.M. Huber Corp.,*
   13-CV-2581 (PKC) (JLC), 2019 U.S. Dist. LEXIS 124326 (S.D.N.Y July 25, 2019) ......4

**Statutes**

Fed. R. Civ. P. 26(e)(1)(A) ......................................................................................................4

Fed. R. Civ. P. 34(b)(2)(E)(i) ...................................................................................................2

Defendant Michael M. Goldberg, M.D. ("Dr. Goldberg") respectfully submits this Memorandum of Law in Opposition to the Cross Motion (the "Cross Motion") of Plaintiff Platinum Partners Value Arbitrage Fund L.P. (In Liquidation) ("PPVA") for a Protective Order providing that PPVA should not produce the documents sought in Dr. Goldberg's Requests.[1]

## PRELIMINARY STATEMENT

In his initial memorandum of law in support of Dr. Goldberg's pending motion to compel production of documents (the "Motion"), Dr. Goldberg showed that PPVA has not produced a single document in response to the Requests served pursuant to this Court's Order authorizing damages discovery. In its memorandum of law in support of the Cross Motion (the "Opp. Br.") PPVA does not dispute this fact. Rather, PPVA first complains about this Court's ruling that damages discovery was to occur before the damages trial. It then argues that documents requested by Dr. Goldberg are not relevant to *PPVA's* theory of damages. And finally, it argues, without identifying a single supporting instance, that it has already produced the requested documents. Based on these arguments in opposition to the Motion, PPVA "cross-moves" for an order reversing this Court's prior ruling authorizing damages discovery and requests sanctions. As set forth herein, PPVA's arguments are not only misguided and incorrect, in many cases they are misleading, and appear to be deliberately so.

### I. Dr. Goldberg Is Entitled To Damages Discovery

Throughout its Opp. Br., PPVA appears to argue that Dr. Goldberg is not entitled to damages discovery. At the outset, PPVA argues that Dr. Goldberg's filing of certain motions relating to the summary judgment decision in this action should preclude document discovery. (*See* Opp. Br. at 1.) However, this Court authorized pre-trial damages discovery at the

---

[1] All capitalized terms herein have the same meaning as such have in Defendant's Moving Memorandum in Support of his Motion to Compel, dated July 17, 2023.

1

conference on March 2, 2023 *after* PPVA raised these same exact arguments. After hearing both parties on the subject, this Court explicitly authorized Dr. Goldberg to serve damages-related discovery requests. (*Conf.* at 9:25-10:5.) PPVA has not provided *any* basis to reverse that decision, especially since Dr. Goldberg has fully complied with the Court's directive and expended significant effort (including making the Motion and the preceding efforts identified therein) to obtain damages-related documents from PPVA in reliance on the Court's directive.

## II. Prior Discovery Requests and Responses Have No Relevance Here

Next, PPVA spends approximately six (6) pages of its Opp. Br. recounting a one-sided and inaccurate description of prior discovery in the case. However, the parties' efforts in connection with those requests have no bearing on the pending Requests except to the extent PPVA has already produced documents responsive to the Requests. Although PPVA vaguely, and without any support, argues that it has already produced at least some of the documents sought through the Requests, it does not identify a single document requested in the Requests that was previously produced.

By way of excuse for not doing so, PPVA asserts that it produced all of the prior documents "as they are maintained in the ordinary course of business." (Opp. Br. at 6.) However, the rule requiring a responding party to produce documents either "as they are kept in the usual course of business or . . . organize and label them to correspond to the categories in the request", applies to the requests in response to which the documents were produced; it does not authorize a party to simply refer to a prior production in its entirety to satisfy obligations pursuant to subsequent, individual requests. *See* Fed. R. Civ. P. 34(b)(2)(E)(i). PPVA cites no authority for the proposition that it can simply ignore the Requests based on an unsubstantiated assertion that some responsive documents have already been produced as part of its document-

2

dump in response to prior requests. Moreover, the assertion that PPVA produced documents "as they are kept in the usual course of business" is false. In fact, PPVA acknowledges that all materials produced were not even kept by PPVA, much less in the usual course of business. Rather, PPVA acknowledges that its production was made from a set of documents seized by and later made available to it by the Securities and Exchange Commission ("SEC") *after* the Cayman liquidation was commenced. (*See* Opp. Br. at 6.) PPVA's argument that documents extracted through the use of *search terms* from "over 13 million PPVA documents found [by the SEC] on" a server obtained by the SEC from a separate entity, Platinum Partners Credit Opportunity Fund (*id.*), were somehow produced as they were kept in the usual course of PPVA's business is facially absurd.

Equally significant, PPVA's admission that its first production was made from the SEC database makes clear that any pretext that PPVA has fully produced documents responsive to the initial requests *or* the pending Requests – which seek primarily documents concerning securities that were the subject of the Separation Agreement at the heart of this turnover proceeding – is false. PPVA states that the SEC took control of the database from which PPVA made its earlier production in 2016. (*See* Declaration of Sheila Shen dated August 11, 2023 ¶ 9.) However, as late as April 2018, PPVA argued to this Court (Chapman, J.) that PPVA lacked information concerning its own assets because it did not have access to its own business documents as they were maintained (in the usual course) by PPVA due to misconduct by PPVA's former officers. *See In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 811 (Bankr. S.D.N.Y., Apr. 17, 2018) (Chapman, J.). As a result, this Court ordered PPVA's former auditors, CohnReznik LLP, to produce its audit workpapers in addition to PPVA financial documents previously produced by CohnReznik. Since PPVA admits that its entire production to date

3

comprises documents obtained from the SEC – *not* CohnReznik – it necessarily **failed** to produce all responsive documents in PPVA's possession, especially those documents relating to PPVA's assets sought through the pending Requests.

Moreover, the prior requests incorporated a duty to supplement, which is also a duty inherent in the discovery process, even with regard to responsive documents obtained or created after the responding party's initial production. *See* Fed. R. Civ. P. 26(e)(1)(A); *see also Robbins & Myers, Inc. v. J.M. Huber Corp.*, 13-CV-2581 (PKC) (JLC), 2019 U.S. Dist. LEXIS 124326 at *78-80 (S.D.N.Y July 25, 2019). It is undisputed that PPVA has never supplemented its initial production, which was served in May of 2019. (*See* Op. Br. at 5.) Since that time, Dr. Goldberg has also independently identified that PPVA issued recurring reports and updates to stakeholders in the Cayman liquidation that are responsive to several of the initial requests, but PPVA has *never* produced those documents.

PPVA's prior productions have no bearing on the pending Requests in light of the fact that PPVA has failed to identify a single document produced in response thereto that is also responsive to the pending Requests. PPVA's own arguments in the Opp. Br. also make clear that PPVA *has not* produced many if not most of the documents concerning its assets and their values that are the subject of the pending Requests and that those documents that might have been produced could not possibly have been produced as they were maintained in the usual course by PPVA.

### III. The Documents Sought Through the Requests Are Relevant To Damages

In the summary judgment decision, Judge Chapman made a single finding with regard to "liability" in this adversary proceeding: that an assignment of the Warrant at issue in this turnover proceeding to Dr. Goldberg was void and that Dr. Goldberg had no right to receive

4

possession of the Warrant after the Cayman liquidation commenced. (*See generally* Modified Bench Decision and Order on Cross-Motions For Summary Judgment, dated May 10, 2022 [Dkt No. 44].) She issued no decision with regard to the remedies available to PPVA based on the decision. (*Id.* at 20.)

Case law makes clear that in a turnover proceeding like the instant adversary proceeding, the remedy available to the debtor is restoration to the debtor of "property of the estate." *See* 11 U.S.C. 542(b) Where a potential right or interest of the estate requires the occurrence of a discretionary act by a third party, that potential right or interest is not property of the estate. *See, e.g., In re Gonzalez*, 559 B.R. at 331 ("the Court disagrees with the notion that the exercise of discretion by a third party can be equated with a contingency. In this case the Debtor . . . had no 'right' at all" where entitlement to payment was subject to discretion of employer").

Here, PPVA has received a ruling that Dr. Goldberg was not entitled to possession of the Warrant at the time it was assigned to him. That ruling was based on the terms of the FIRST OMNIBUS AMENDMENT to the Confidential Binding Term Sheet (the "Amended Separation Agreement") between PPVA's managing partner, Platinum Management (NY) LLC ("Platinum Management") and Dr. Goldberg. (*See generally*, Dkt. No. 44.) That document set forth the terms of Dr. Goldberg's separation from Platinum Management, including the respective rights and obligations of Dr. Goldberg and Platinum Management and its affiliates with respect to certain "Transferred Securities," including the Warrant. (*See* Schedule I to the Amended Separation Agreement.)[2] The Amended Separation Agreement lists Platinum Montour Life Sciences ("Platinum Montour") as the "Current Holding Company" of the Warrant. Therefore,

---

[2] The schedule of "Transferred Securities" allocated in the Amended Separation Agreement included 1,655 shares of Navidea Series B Convertible Preferred stock, which was convertible into 5,411,850 shares of Navidea common stock. (*See id.* Schedule 1.) It is undisputed that those preferred shares were converted into the Warrant, which entitled to holder to purchase 5,411,850 shares of Navidea common stock. For clarity, all references to the Warrant and its predecessor preferred shares in this memorandum of law shall be to the "Warrant."

5

to the extent PPVA can prove that it succeeded to ownership of the Warrant, the Amended Separation Agreement sets out the extent of the rights and obligations with respect to the Warrant that is claimed to be "property of the estate" of PPVA.

The Amended Separation Agreement provides that "Dr. Goldberg shall have sole voting and dispositive power over the Transferred Securities." (*Id.* at 3.) In return, the entity owning each Transferred Security was to receive a seven year, *non-recourse* note from Dr. Goldberg in the amount of the market value of the Transferred Security as of December 31, 2013 (which amount was listed in Schedule 1 to the Amended Separation Agreement as the security's "Transferred Basis"). (*Id.* at 3, Schedule 1) The note would bear interest at 2% compounded annually, and provided that *if* Dr. Goldberg exercised his discretion to monetize the Transferred Securities underling the note, the noteholder would then, and only then, be entitled to "80% of all sale proceeds, dividends and distributions with respect to a Transferred Security up to its Transferred Basis, and 50% of all sale proceeds, dividends and distributions with respect to a Transferred Security in excess of its Transferred Basis." (*Id.* at 3.) In addition, if the total value of the Transferred Securities fell below 35% of the total Transferred Basis the note could be accelerated and declared due in full. (*Id.*) Unless Dr. Golberg monetized Transferred Securities or the aggregate value of the Transferred Securities fell below this threshold, no payments were due until the Maturity Date, which was the seven-year anniversary of the note.

The Transferred Securities themselves were to act as security for the notes by their placement in one or more segregated brokerage accounts with Account Control Agreements reasonably acceptable to the noteholders. (*Id.* at 3.) "Recourse of the Noteholders [is] limited to the Transferred Securities, the Services Payment, and the Participation Securities." (*Id.*)

6

The Amended Binding Term Sheet (a/k/a the "Amended Separation Agreement) has never been rescinded or otherwise invalidated. The Decision by Judge Chapman implicitly found it binding and dealt only with what entity had the right to possession of the Warrant.

Accordingly, the Requests seek production of documents directly relevant to the issue of what, if any, interest in the Warrant comprises "property of the estate" – *and the value of that property*. They seek accounting and business records listing PPVA's assets and their values for the time period between the execution of the Amended Separation Agreement and the present. Liquidator Trott in his deposition testimony stated that there *were* "lists of assets" and "records of [PPVA's] assets" including Navidea securities. (See Dep. Tr. 12-14). These documents are entirely relevant to the issues of whether, when and how PPVA (which is not listed as the Current Holding Company in the Amended Separation Agreement) acquired an interest in the Warrant or any other Transferred Security, what value PPVA attributed to the Warrant (and any other Transferred Securities it had an interest in) at various times, and whether the value of those securities ever fell below the 35% value threshold that would cause an acceleration of PPVA's monetary rights in the Warrant.

The Requests also seek documents concerning certain blocker provisions and other limitations on the exercise of the Warrant implemented by PPVA. These documents are clearly relevant to PPVA's ability to exercise the Warrant. Their relevance is confirmed by PPVA's expert report, in which its expert discusses these provisions. Although PPVA's expert ultimately concludes that they need not be considered when assessing damages, Dr. Goldberg obviously is not bound by that assertion. In fact, PPVA bears the burden of proof as to its interest, if any, in the Warrant, and Dr. Goldberg is charged with *rebutting* PPVA's proposed theories. Far from being a basis to object to production of documents regarding the blocker and other provisions, a

7

dispute regarding their effect on PPVA's damages claim by definition, makes them relevant and discoverable.

The Requests also seek documents concerning any efforts by PPVA to monetize the Warrant of any other Transferred Security. Such documents are obviously relevant to the potential value of the Warrant as well as to any issues that might have arisen with respect to any such attempted or actual monetization based on the fact that the Transferred Securities were subject to the blocker provisions, the Amended Separation Agreement or any other factors as yet unknown to Dr. Goldberg.

The only argument presented by PPVA as to why these documents are not relevant to the damages phase of this adversary proceeding is that they are not relevant to *PPVA's* theory of damages. However, PPVA does not get to unilaterally define the scope of damages discovery based on its own theory of the case. If that were so this adversary proceeding would be converted from the truth-seeking effort inherent in the equitable nature of the Bankruptcy Court into a "kangaroo court" with the sole function of rubber-stamping PPVA's self-serving and counterfactual arguments. That clearly is not the case.

PPVA has not made any plausible argument that could support a finding that the requested documents are not relevant and well within the scope of the damages discovery authorized by this Court. Moreover, while PPVA has clearly refused to produce certain documents as being "legal opinions", "work product" and "legal analysis" (see Opp. Brief at pp. 10, 15 and 20), and thereby shielded from discovery, PPVA has not identified which privilege might be applicable to what document -- *and continues to refuse to provide a privilege log.*

**IV. PPVA's Cross-Motion Is Replete with Willful Misrepresentations**

8

Dr. Goldberg in the Requests seeks documents relating to damages, including lists and valuations prepared by PPVA, or the Liquidators, reflecting (i) the value of the Warrant or Shares; or (ii) the *absence* of the Warrant or Shares on any list of assets; or (iii) the *failure* to assign any value to them.

PPVA falsely states that PPVA declared before Judge Chapman that discovery of damages was strictly limited to the time *before* October 17, 2016 – the day of the alleged wrongful assignment. As stated above, any suggestion that PPVA was (or is) entitled to unilaterally declare the appropriate form of valuation and refuse to produce documents sought to rebut it, or any proposed alternatives by Dr. Goldberg is absurd on its face. Moreover, PPVA *never* argued before Judge Chapman that any particular date defined the entire scope of any discovery. In fact, PPVA stated to Judge Chapman at the end of argument on the summary judgment motion, that it was *not* sure whether the supposed damages "date" was October 17, 2016, or the date PPVA first became aware of the assignment "early in January 2017." (*See* SJ Transcript, at pp. 54-55, 58.)

Similarly, PPVA falsely represents that "both parties agree that [damages] revolves around expert opinion". (Opp. Brief, p. 7.) There is *no* such "agreement." Dr. Goldberg is entitled to formulate whatever theories he wishes relative to the remedy phase of this adversary proceeding, subject to the Court's power to exclude improper evidence or argument. As is clear, Dr. Goldberg has not received the discovery he needs to properly undertake his obligation in that regard.

Further, in truth PPVA could only say that it had unidentified "options" of how to monetize the Warrant:

> Mr. Kook: if your Honor were to find that - - and we respectfully submit that the facts, even if they're heavily disputed or undisputed, show the opposite.

9

> PPVA did not suffer any damage because it could not sell the warrant. It could not convert it into common stock because of the blockers and the 9.99 percent rule. So it could never have sold it, and it could never have realized any monetary gain off of it or monetary impact off of the warrants.
>
> The Court: Okay. Hold on a minute.
>
> Mr. Burns, what do you think about that?
>
> Mr. Burns: Well, I could say that the blockers are not absolute. I mean, we could have - - had these warrants sat in our possession and had they not been - - when we first learned about this, but virtue of the Navidea's SEC filing that Mr. Goldberg signed in - - **I think it was early in 2017, we certainly could have, as Liquidators, tried to do something with respect to monetizing these warrants.**
>
> \* \* \*
>
> Mr. Burns: - - you can't exercise this warrant of it would take you over ninty-nine percent, but there are circumstances in which you *might* be able to, and here's the procedure for doing so. So it's not as if had these warrants not been taken from PPVA that we were powerless. We just had to sit, and the liquidators just needed to sit idly by and watch the value diminished to the vanishing point. **There were - -**
>
> The Court: Mr. Kook - -
>
> Mr. Burns: - - **options available**.
>
> --Emphasis added.

It is misleading for PPVA, based on all this, to argue that the "only remaining question in this case is how to value the PPVA Warrant on the date it was misappropriated" -- which it repeats repeatedly. (*See* Opp. Br. at 3 n.2, 8, 11, 15, 16 and 17.)

PPVA repeatedly cites one case, the decision in In re P&Z Island Farms, Inc. 478 F.Supp, 529, 534 (S.D.N.Y. 1979). However, that decision concerned the date on which damage in that particular case would be calculated. That case did *not* discuss discovery, and did not limit the time period for discovery. Moreover, PPVA knows full well that its one cited case is not the

10

sole decision on the issue of the date of damages. In fact, in its Moving Summary Judgment Brief (at p. 19), PPVA cited the case of Phalsankar v. Andersen Weinroth & Cohen L.P., 175 F.Supp.2d 635 (S.D.N.Y. 2001). In another decision by the same Court, Phansalkar v. Andersen Weinroth & Co., L.P., 2001 U.S. Dist. LEXIS 19406, *113-120 (S.D.N.Y. Nov. 29, 2001), the District Court held that "conversion damages" must be measured by what the value of the stock there was, many months *after* the alleged conversion because the subject securities were governed by Rule 144 restrictions. In that case, the Court here:

> **Phansalkar's MCEL Shares would have been subject to an 180-day lock-up agreement as well as sales restrictions imposed by the securities laws** *(see infra)*. *See Lucente v. International Bus. Mach. Corp.*, 146 F. Supp. 2d 298, 304 (S.D.N.Y. 2001)(refusing to apply *Schultz* methodology to restricted securities); *Commonwealth Assoc. v. Palomar Med. Tech.*, 982 F. Supp. 205, 212 (S.D.N.Y. 1997)(refusing to apply the *Schultz* analysis where investor could not immediately repurchase his converted securities upon learning of the conversion). . . .
>
> * * *
>
> **In this case, application of the *Schultz* methodology would further overcompensate Phansalkar by permitting him to receive the highest price that MCEL stock attained during a period when *his particular* MCEL Shares could not have been sold. This Court will not allow such a "windfall."** . . . [T]he proper measure of Phansalkar's damages is the highest price Phansalkar could have attainted for his *alienable* MCEL Shares within a reasonable time after AW's conversion . . . .[3]

--Emphasis added.

Dr. Goldberg must be permitted to present damages evidence and argument based on full information following discovery and the fact that the Warrant was subject to the terms of the Amended Separation Agreement, which granted Dr. Goldberg all voting and dispositive rights

---

[3] The Second Circuit reversed all three District Court decisions in Phansalkar, but specifically did not reach the issue of the calculation of "conversion damages". See Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 188-189, (2d Cir. 2003).

11

with respect to the Warrant and the Shares in exchange for a non-recourse note by Dr Goldberg. The Separation Agreement was *never invalidated or rescinded.*

PPVA also unfairly ignores the record facts when it falsely asserts that Dr. Goldberg's attorney, Mark R. Kook, specifically "identified the search terms" for PPVA to use in its gathering of documents in its Responses to Dr. Goldberg First and Second Requests in 2019. (See Opp. Br. at 5, 12.) **That is false**. In fact, Mr. Kook defied PPVA to produce a single email or other statement from him stating that he approved of, or agreed or was happy with, the "search terms" or the production of documents. (See Moving Kook Aff. ¶ 16.)[4] PPVA did not, because such an email does **not** exist. (See emails between Dr. Goldberg's attorney and PPVA's attorney annexed as Exhibit 4 and 5 to the Moving Kook Aff.)

PPVA also declares:

> **Indeed, after June 12, 2019, Goldberg never once raised any purported deficiencies with PPVA's productions in response to his First RFPs – until now.**
>
> --PPVA's Opp. and Cross-Motion Brief, p. 6 (emphasis and underline in original).

However, by that time, PPVA had made its Document dump, which Judge Chapman did not want to discuss at a June 12, 2019, status conference.

The falsity of PPVA's representations to this Court is perhaps best illustrated by its assertion that "Goldberg does not dispute that PPVA produced documents and ESI in response to his prior document demands as they were kept in the usual course of business. See Dkt. No. 85." (Opp. Br. at 13.) In truth, "Dkt. No. 85" is the Transcript of the initial Hearing Held on March 2, 2023 with this Court. There was *no* discussion whatso ever about "produced documents" and ESI.

---

[4] The Court is respectfully referred to the Affirmation of Mark R. Kook in Support of Defendant's Motion to Compel, to PPVA's Cross-Motion, dated July 17, 2023.

12

Further, while PPVA states that Dr. Goldberg did not complain about its production after "June 12, 2019" (*see* Cross-Motion Brief at p. 6). Dr. Goldberg pointed in his Motion to Compel to the fact that PPVA does *not* dispute that PPVA failed to produce a single financial statement, even though "financial" and "statement" were terms in its "search engine" in May 2019 - - until *after* the deposition of Platinum Partners' CFO. (See Kook Moving Aff. at ¶ 15.) That deposition took place on *December 12, 2019*.

### V. PPVA's Refusal to Produce Any Documents

There is no basis to the Cross-Motion. PPVA has refused to produce a single document in response to the pending Requests. PPVA has also refused to identify, by Bates Stamp Number, Request No., or any other means, even a single document that PPVA claims in its Response was "previously produced." PPVA also will *not* produce any document, including among others the "JOL Reports", which have many lists of assets on the ground that such documents are "equally available" to Dr. Goldberg. The fact that Dr. Goldberg may or may not have been one of hundreds or thousands of recipients of the documents does not relieve PPVA of its obligation under the Federal Rules to produce these documents.

PPVA's discovery failures prevent Dr. Goldberg from exploring and presenting damages theories and evidence, including opinions opposing PPVA's expert report. There is no merit to PPVA's objections and refusals to produce based on PPVA's own damages theory. That defeats the very purpose of the damages discovery Ordered by the Court – to allow Dr. Goldberg to meaningfully participate in the trial.

### CONCLUSION

WHEREFORE, based on the foregoing, Defendant Dr. Michael Goldberg respectfully submits that the Court should grant his Motion to Compel in its entirety; deny Plaintiff PPVA's Cross-Motion in its entirety; defer the deadline for Dr. Goldberg to serve any rebuttal expert

13

report(s) until sixty (60) days after the date of a decision on this Motion or, if the decision requires production of documents by PPVA, until such order is fully complied with by PPVA and extend all other expert-related deadlines accordingly, and grant Dr. Goldberg such other and further relief as the Court deems just and proper.

Dated: August 30, 2023

                                            LAW OFFICE OF MARK R. KOOK

                                            By: _____
                                                  Mark R. Kook
                                            1180 Avenue of the Americas, 8th Floor
                                            New York, NY 10036
                                            Tel.: (917) 673-9869
                                            mkook@kooklaw.com
                                            Attorneys for Defendant

14