UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

Platinum Partners Value Arbitrage Fund L.P. and
Platinum Partners Value Arbitrage Intermediate
Fund Ltd.,

                            Debtors.
-----------------------------------------------------------x

Platinum Partners Value Arbitrage Fund L.P., (In
Official Liquidation), et al.
                            Plaintiff,
        – v –

Michael M. Goldberg,

                            Defendant.
-----------------------------------------------------------x

**NOT FOR PUBLICATION**

Chapter 15

Case No.: 16-12925 (JPM)

Adv. Pro. No. 18-01650 (JPM)

*A P P E A R A N C E S:*

HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
By: Robert J. Burns, Esq.
     Qian Shen, Esq.

*Counsel to Joint Official Liquidators of Platinum Partners Arbitrage Fund L.P.*

LAW OFFICE OF MARK R. KOOK
270 Madison Avenue
Suite 1203
New York, New York 10016
By: Mark R. Kook, Esq.

*Counsel to Michael M. Goldberg*

1

JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE

<u>**ORDER ON DEFENDANT'S MOTION FOR MODIFICATION**</u>

This is an adversary proceeding arising from the chapter 15 bankruptcy case of *In re Platinum Partners Value Arbitrage Fund L.P. and Platinum Partners Value Arbitrage Intermediate Fund Ltd.*, Case No. 16-bk-12925 (Bankr. S.D.N.Y. October 18, 2016). Before the Court is the *Motion for Modification Pursuant to Rules 7054 and 9024* (the "Motion" or the "Motion for Modification") filed by Defendant, Michael Goldberg ("Defendant") on March 2, 2023. (Docket No. 65). The Motion seeks the modification of a *Modified Bench Decision and Order on Cross-Motions for Summary Judgment* (the "Summary Judgment Order") rendered by this Court on May 10, 2022. (*See generally* Docket No. 44). Plaintiffs Martin Trott and Christopher Smith, the joint official liquidators ("Plaintiffs") of Platinum Partners Value Arbitrage Fund L.P. ("PPVA"), have filed a *Memorandum of Law In Opposition to Michael M. Goldberg's Motion Pursuant to Fed. R. Bkcy. P. 7054 and 9024 for Modification* (the "Opposition"). (Docket No. 67*)*. Defendant filed a *Reply in Support of Motion by Defendant for Modification*. (Docket No. 69).

The Motion seeks review of the Summary Judgment Order "on the basis of a recently-identified document that calls into question the primary argument espoused by [Plaintiffs] . . . ." (Motion for Modification at 1). The evidence presented by Defendant does not, however, satisfy the standard required for such a modification. As a result—and for the reasons set forth below—the Court DENIES the Motion.

**BACKGROUND**

This adversary proceeding stems from the chapter 15 liquidation of PPVA, initiated by Plaintiffs on October 18, 2016. *See In re Platinum Partners Value Arbitrage Fund L.P. and*

2

*Platinum Partners Value Arbitrage Intermediate Fund Ltd*, Case No. 16-bk-12925 (October 18, 2016) (Docket No. 1). Before filing for liquidation, PPVA was a hedge fund formed under the law of the Cayman Islands. (Summary Judgment Order at 3). Platinum Management (NY) LLC ("Platinum Management") served as PPVA's general partner and, in that capacity, provided investment management and advisory services to both PPVA and its investors. (*Id.*).

Beginning in 2007, Defendant served as a portfolio manager for Platinum Management. (*Id.*). In his capacity as portfolio manager, Defendant worked with a number of companies in the healthcare space, including Navidea Biopharmaceutical Inc. ("Navidea"). (*Id.*). Defendant eventually left Platinum Management and, in December of 2013, became the interim chief executive officer ("CEO") of Navidea, a position he held through late 2014.[1] (*Id.*).

Before leaving Platinum Management, however, Defendant and Platinum Management executed a separation agreement (the "Term Sheet") effective March 28, 2014.[2] (Docket No. 20, ex. 2). The Term Sheet provided that—subject to specific terms and conditions—certain private investments owned by PPVA were to be transferred to Defendant. (Summary Judgment Order at 4; *see also* (Docket No. 20, ex. 1, 4) (identifying PPVA, rather than Platinum Management, as the owner of the relevant private investment funds). These investments included 1,655 Navidea Series B Convertible Preferred Shares (the "Preferred Shares"), which could be converted into 5,411,850 shares of Navidea common stock (the "Common Shares"). (Summary Judgment Order at 4).

---

[1]    After a brief hiatus, Defendant later returned to Navidea and again served as its CEO from September 2016 through August 2018. (Summary Judgment Order at 3).

[2]    Notably, the Term Sheet was signed by Defendant and Mark Nordlicht ("Nordlicht"), a co-founder of Platinum Management and its chief investment officer ("CIO"). (Summary Judgment Order at 3).

3

As relevant here, the Term Sheet provided that Defendant's right to receive the Preferred Shares was dependent upon two conditions:

(i) Defendant was to "issue [notes] to one or more of the Platinum funds" (the "Notes Condition") that reflect the "fair market value of the Transferred Securities as of December 31, 2013 . . . ." (Docket No. 20, ex. 2 at 25); and

(ii) Defendant was obligated to deposit these notes into segregated brokerage accounts, each subject to a "Securities Account Control Agreement in favor of Platinum and/or its affiliates." (*Id.*). The Term Sheet further provided that "Platinum and/or its affiliates will have a first priority, perfected security interest in the Accounts, and [that] the parties agree to take such steps as are necessary or desirable to effect such security interest" (the "Segregated Account Condition") (collectively with the Notes Condition, the "Conditions Precedent"). (*Id.* at 26).

On June 11, 2015, Platinum Management and Defendant executed an Amended Term Sheet that contemplated new prepayment and repayment terms, including the issuance of seven-year notes rather than five-year notes. (Docket No. 20, ex. 3 at 32–37). The Amended Term Sheet nonetheless contained an identical Segregated Account Condition and a Notes Condition substantially similar to that found in the original Term Sheet. (*Id.*).

On August 20, 2015, PPVA exchanged its Navidea Preferred Shares—including those referenced in the Term Sheet—for warrants to purchase additional Navidea common shares[3] (the "PPVA Warrant"). (Docket No. 20, ex. 1, 4). Importantly, the Securities Exchange Agreement and the PPVA Warrant identify PPVA as the owner of both the Preferred Shares and the PPVA Warrant. (*Id.*).

On August 23, 2016, Platinum Management filed a voluntary petition to wind up PPVA with the Financial Services Division of the Grand Court (the "Cayman Court") of the Cayman Islands. (Motion for Modification at 5). Two days later, the Cayman Court ordered the

---

[3] As this Court noted previously, "[t]he Securities Exchange Agreement was purportedly executed due to Navidea's upcoming listing on the Tel Aviv Stock Exchange, which forbade listing companies from having multiple classes of shares." (Summary Judgement Order at 5).

4

provisional liquidation of PPVA and appointed the Liquidators as the "joint provisional liquidators" with the power "to take such steps as . . . may be necessary . . . to facilitate the maximisation of the value of the assets of [PPVA] upon their realisation." (*Id.*). On October 27, 2016, the Cayman Court converted the provisional liquidation to an official liquidation (the "Cayman Liquidation Order") and, on November 23, 2016, this Court entered an Order granting recognition and relief in aid of the Cayman Liquidation. (Motion for Modification at 6).

Following the Cayman Liquidation Order, Nordlicht and Defendant executed a transfer/assignment form on a copy of the PPVA Warrant. (*Id.*). Instead of using the then-current date of October 16, 2016, Nordlicht backdated the document using the date of October 1, 2015. (Docket No. 30-27, ¶¶ 79–90). The original PPVA Warrant was, however, never surrendered to Navidea, and has instead remained in PPVA's vault at BNY Mellon throughout the course of these proceedings. (*Id.* ¶ 91).

After receiving the new, back-dated copy of the PPVA Warrant executed by Nordlict and Defendant, Navidea reissued the PPVA Warrant in Defendant's name on October 17, 2016. (*Id.* at 92). Two days later, Defendant filed with the Securities and Exchange Commission a *Form 4 Statement of Changes in Beneficial Ownership* which: (i) asserted a beneficial ownership interest in the PPVA Warrant; and (ii) stated that such interest was "acquired from [PPVA] pursuant to a Separation Agreement, dated March 28, 2014, and amended on June 11, 2015." (*See* Docket No. 20-3, ex. 23). On January 16, 2017, Defendant exercised his copy of the PPVA Warrant and received the Navidea Common Stock. (Summary Judgment Order at 6). Approximately one month later, Navidea filed a *Section 14A Proxy Statement* with the SEC indicating that Platinum Management had transferred the PPVA Warrant to Defendant as of January 17, 2017. (*Id.*).

5

The Liquidators commenced the instant adversary proceeding on October 5, 2018. (Docket No. 1). The Liquidators' Complaint seeks the turnover ("Count I") of the value of the PPVA Warrant pursuant to sections 1521(a)(5) and 1521(a)(7) of the Bankruptcy Code and asserts the following state-law claims against Defendant: (i) conversion ("Count II"); (ii) unjust enrichment ("Count III"); and (iii) contempt ("Count IV"). (Summary Judgment Order at 7).

On January 31, 2020, the Liquidators filed a Motion for Summary Judgement that requested: (i) summary judgment as to Counts I, II, and III, in addition to an order requiring the turnover of the value of the PPVA Warrant; or (ii) alternatively, monetary damages under a theory of conversion or unjust enrichment. (*See generally* Docket No. 19). Defendant opposed PPVA's Motion, cross-moved for summary judgment, and sought dismissal of the Liquidators' claims with prejudice in addition to sanctions (Summary Judgment Order at 7).

On May 9, 2022, the Court granted the Liquidators' Motion for Summary Judgment and ordered the turnover of the value of the PPVA Warrant pursuant to §§1521(a)(5) and 1521(a)(7) of the Bankruptcy Code. (*See generally* Summary Judgment Order (which also denied Defendant's cross-motion for summary judgment)). There, the Court first noted that the law applicable to the Cayman Liquidation provided that "[w]hen a winding up order has been made, any disposition of the company's property . . . is, unless the Court otherwise orders, void." (*See id.* at 8 ("[L]iquidations in the Cayman Islands are governed under the Companies Act of the Cayman Islands . . . [and] [u]nder Section 100(2) of the Companies Act, 'the winding up of a company by the Court is deemed to commence at the time of the presentation of the petition for winding up.'")). The Court then found as follows:

> Prior to the commencement of the Cayman Liquidation, Goldberg failed to satisfy the Segregated Account Condition and the Notes Condition, each of which were material conditions precedent under the Term Sheets. Accordingly, the obligation to transfer to Goldberg the Preferred Shares, and, subsequently, the PPVA

6

> Warrant, was not triggered, and Goldberg had no live legal right to the PPVA Warrant as of the commencement of the Cayman Liquidation. As the Liquidators correctly assert, only if Goldberg had such a right at that time could "Goldberg's bald-faced attempt to have the PPVA Warrant assigned to him in October 2016, via a backdated purported assignment form and behind the backs of PPVA's appointed liquidators" be viewed as a legitimate action. (PPVA Reply 1-2). Because the obligation to transfer the securities to Goldberg had not been triggered as of August 23, 2016, any such purported assignment is void, and the existence of the backdated assignment on a copy of the PPVA Warrant purporting to assign the PPVA Warrant to Goldberg did not alter Goldberg's ability to lawfully obtain the Navidea Common Stock.

(*Id.* at 19–20). On May 24, 2022, Defendant filed a Motion to Reconsider (the "First Motion to Reconsider") under Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 3008. (Docket No. 46). There, Defendant argued:

> [R]econsideration [is] warranted because (i) the Court [] made a legal error in not finding that the Term Sheets themselves created enforceable rights upon execution without the satisfaction of any conditions precedent; (ii) the Court [] overlooked (a) Second Circuit precedent and the language in the Term Sheets in finding that the Term Sheets created conditions precedent . . . ; (b) newly discovered evidence in the form of progress reports issued by the Liquidators to the Cayman Court that purportedly contain accounting treatment documenting a note receivable by PPVA from Goldberg which would allegedly satisfy the Notes Condition (the "Notes"); . . . (c) certain evidence, previously submitted by Goldberg in connection with the Summary Judgment Cross-Motion, which purportedly establishes that Goldberg was allegedly vested with ownership of the Preferred Shares prior to the commencement of the Cayman Liquidation; and (iii) there is a need to prevent manifest injustice.

(*Order Denying Motion for Reconsideration*, Docket No. 50, at 9). On July 11, 2022, the Court found Defendant's First Motion to Reconsider was an attempt to "(i) relitigate issues previously considered, (ii) present the case under new theories, (iii) secure a rehearing on the merits, or (iv) otherwise take 'a second bite at the apple'" and denied the First Motion to Reconsider in its entirety. (*Id.* at 3–4).

Defendant sought leave to appeal this Court's Summary Judgment Order pursuant to 28 U.S.C. § 1292(b) on July 25, 2022. (*See* Docket No. 51 (Defendant's Notice of Appeal)); *see*

*also In Re Platinum Partners Value Arbitrage Fund L.P.*, Case No. 1:22-cv-06376 (July 27, 2022) (Docket No. 3-1 at 6–7). On September 19, 2022, the District Court denied that request, explaining that "[b]ecause [Defendant] has not met his burden to satisfy each of the criteria set forth in 28 U.S.C. § 1292(b), and because no exceptional circumstances justify the exercise of the Court's discretion to grant an interlocutory appeal, Mr. Goldberg's motion for leave to appeal is DENIED." (Docket No. 57).

Finally, on March 2, 2023, Defendant filed the instant Motion pursuant to Federal Rules of Bankruptcy Procedure 7054 and 9024. (*See generally* Motion for Modification). The alleged new evidence presented by Defendant is a document published by the Liquidators of *In the Matter of Platinum Partners Value Arbitrage Fund (USA) L.P.* (Motion for Modification at 1).

## LEGAL ANALYSIS

### I. Applicable Standard

On May 9, 2022, this Court "grant[ed] summary judgment in favor of the Liquidators in connection with the turnover in value of the PPVA Warrant." (Summary Judgment Order at 20–21). The other three claims asserted by Plaintiffs (conversion, unjust enrichment and contempt) were not ruled upon. (*Id.*). As a result, the Court finds that this Motion should be analyzed under Rule 7054 rather than Rule 9024, which only applies to final judgments.[4] *See, e.g.*, *Geo-Group*

---

[4] Federal Rule of Civil Procedure Rule 60 ("Rule 60"), made applicable to bankruptcy proceedings by Bankruptcy Rule 9024, allows courts to "relieve a party or its legal representative from a final judgment" under specific conditions. Fed. R. Civ. P. 60(b).

The Court recognizes that the merits of Defendant's First Motion to Reconsider were considered pursuant to Rule 60. (*See generally* Docket No. 50). The Court nonetheless finds that, because a final judgement has not been rendered with respect to Plaintiffs' claims for conversion, unjust enrichment, and contempt, the instant Motion is properly considered under Rule 54. *See Geo-Group Commun., Inc. v. Chopra,* No. 15 CIV. 1756 (KPF), 2023 WL 6235160, at *8 (S.D.N.Y. Sept. 26, 2023) ("[A] judgment is final for purposes of Rule 60(b) when it is appealable . . . [and] for the purposes of an appeal, '[a] final judgment or order is one that conclusively determines all pending claims of all the parties to the litigation, leaving nothing for the court to do but execute its decision.'") (internal citations omitted). The Court recognizes further that "[t]he standard governing a motion to vacate under Rule 54(b) is less strict than that under Rule 60(b) . . . ." *See Export-Import Bank of Republic of China v. C. Bank of Liberia,*

8

*Commun., Inc. v. Chopra,* No. 15 CIV. 1756 (KPF), 2023 WL 6235160, at *8 (S.D.N.Y. Sept. 26, 2023); *In re Gonzalez*, No. 2:15-BK-25283-RK, 2019 WL 1770000 (Bankr. C.D. Cal. Mar. 27, 2019) ("Rule 60(b) does not apply here because the turnover order is not a final order because it was entered in the adversary proceeding in which no final judgment adjudicating all claims has been entered as required by Federal Rule of Bankruptcy Procedure 7054.").

Rule 54(b) provides that, prior to entry of a final judgment, an "[interlocutory] order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."[5] *See* Fed. R. Bankr. P. 7054

---

No. 1:15-CV-09565 (ALC), 2017 WL 6398726, at *3 (S.D.N.Y. Dec. 13, 2017); *see also Holotouch, Inc. v. Microsoft Corp.,* No. 17 CIV. 8717 (AKH), 2018 WL 11222930, at *1 n.1 (S.D.N.Y. July 17, 2018) ("As the Second Circuit has explained, '[r]elief under Rule 60(b)(6) is appropriate only in cases presenting extraordinary circumstances.'").

For the purposes of this case, however, both Rule 54 and Rule 60 require Defendant to produce "new evidence." *Compare* Fed. R. Civ. P. 60(b)(2) ("On motion and just terms, the court may relieve a party . . . from a final judgment . . . [on the basis of] *newly discovered evidence* that, with reasonable diligence, could not have been discovered in time to move for a new trial . . . .") (emphasis added) *with Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey,* 894 F.Supp. 2d 288, 339 (S.D.N.Y. 2012)*, as amended* (Sept. 19, 2012) ("Under Rule 54(b) . . . reconsideration is limited to circumstances where there is 'an intervening change of controlling law, *the availability of new evidence*, or the need to correct a clear error or prevent a manifest injustice' . . . .") (emphasis added); *see also Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.,* No. 88 CIV. 9127 (DNE), 1992 WL 296314, at *3 (S.D.N.Y. Oct. 6, 1992) ("The test [for a motion to reconsider a non-final order] is the same as under Federal Rule of Civil Procedure 60(b): If evidence was in the possession of the party before the judgment was rendered, or reasonably would have been available to him, it is not 'newly discovered' and does not entitle him to relief."). Much like the instant Motion, the Court's prior Order found that Defendant's First Motion to Reconsider did not present "new evidence requiring reconsideration of the [Summary Judgment Order], as [that evidence] w[as] available to [Defendant] in his email inbox for over two years beginning in March 2020 . . . ." (*Order Denying Motion for Reconsideration*, Docket No. 50, at 9). Thus, even applying the more lenient standard provided by Rule 54(b), the Court's decision with respect to Defendant's First Motion to Reconsider would remain the same.

5    The Second Circuit has historically considered the standard provided by Rule 54(b) within the context of the "law of the case" doctrine. *See Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("We have limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case, which gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'"); *see also Zdanok v. Glidden Co.,* 327 F.2d 944, 953 (2d Cir.1964) ("Perhaps [] 'good sense' . . . comes down to a calculus of the relative unseemliness of a court's altering a legal ruling as to the same litigants, with the danger that this may reflect only a change in the membership of the tribunal, and of its applying one rule to one pair of litigants but a different one to another pair identically situated. This explains why a clear conviction of error on a point of law that is certain to recur . . . will prevail over 'the law of the case' whereas 'mere doubt' will not. In the former instance the court

9

(making Fed. R. Civ. P. 54 applicable to adversary proceedings). As a general matter, however, "there is a strong presumption against amendment of prior orders," even where those prior orders are interlocutory. *See Bergerson v. New York State Off. of Mental Health, C. New York Psychiatric Ctr.*, 652 F.3d 277, 288 (2d Cir. 2011). Reconsideration under Rule 54 is thus appropriate in only three circumstances: (i) where there is "an intervening change of controlling law;" (ii) where a party discovers "the availability of new evidence;" or (iii) where a court observes a "need to correct a clear error or prevent a manifest injustice." *Id.* (citing *Official Comm. of Unsecured Creditors*, 322 F.3d at 167). Absent these circumstances, reconsideration is typically inappropriate. *See Rockland Exposition, Inc. v. All. of Automotive Serv. Providers of New Jersey,* 894 F. Supp. 2d 288, 339 (S.D.N.Y. 2012), *as amended* (Sept. 19, 2012) ("Though the [c]ourt has discretion to reconsider its prior rulings within the bounds of the law of the case doctrine, 'as a rule courts should be loathe to do so in the absence of extraordinary circumstances . . . .'") (internal citations omitted) (citing *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)).

Under Rule 54(b), to prevail on a motion to reconsider on the grounds of "newly discovered evidence," a party must establish that: (i) the proffered evidence was unavailable despite the exercise of due diligence; and (ii) manifest injustice will result if a court does not reconsider its prior decision. *Moshell v. Sasol Ltd*., No. 20 CIV. 1008 (JPC), 2021 WL 3174414, at *12 (S.D.N.Y. July 24, 2021) (citing *JP Morgan Chase Bank, N.A. v. Reifler*, No. 11 Civ. 4016 (DAB), 2013 WL 12177061, at *3 (S.D.N.Y. Sept. 20, 2013)); *see also In re Rezulin Prods. Liab. Litig.,* 224 F.R.D. 346, 350 (S.D.N.Y.2004).

---

knows that later litigants will be governed by a different rule; in the latter that is only a possibility.") (internal citations omitted).

As to the first prong, the party moving for reconsideration under Rule 54(b) must "demonstrate that the newly discovered evidence was neither in his possession nor available upon the exercise of reasonable diligence at the time the interlocutory decision was rendered." *In re Rezulin*, 224 F.R.D. at 350. As to the second prong, reconsideration will prevent "manifest injustice" only where "the new evidence is of such importance that it probably would have changed the outcome of the prior ruling." *Id.* (citing *Geo-Grp. Commc'ns, Inc. v. Shah*, No. 15 Civ. 1756 (KPF), 2020 WL 5743516, at *10 (S.D.N.Y. Sept. 25, 2020), *reconsideration denied*, 2020 WL 6729181 (S.D.N.Y. Nov. 16, 2020)).

## II. The Report Does Not Warrant Reconsideration

Here, Defendant presents a document entitled "Second Report of the Liquidator" (the "Report") ostensibly published on October 26, 2018. (*See* Motion for Modification, ex. 2). The Report identifies a "Cosimo Borrelli" as "Liquidator" and provides as follows:

> This report ("Report") has been prepared for the creditors and limited partners . . . of Platinum Partners Value Arbitrage Fund *(USA) L.P.* ("Onshore Feeder Fund") and reports on the progress of the winding up of the Onshore Feeder Fund and the work undertaken by the Liquidator since its First Report to Stakeholders of the Onshore Feeder Fund dated 9 May 2018 . . . Mark Nordlicht currently retains control of the [Platinum Partners Value Arbitrage Fund (USA) L.P.] as its General Partner. The Liquidator is in discussions with Mr. Nordlicht regarding an alternative arrangement to secure the Liquidator's appointment.

(*Id.* at 4, 10, 17 (emphasis added)). Defendant's Motion thus argues:

> This [Report] by PPVA and the Liquidators themselves appears to indicate that . . . Nordlicht in fact "retain[ed] control" of the PPVA fund through its General Partner, Platinum Management. (See Exhibit 2 to the Kook Aff., at Number 25). It also indicates that the scope of the Liquidators' powers was circumscribed by that fact at that same time.

(Motion for Modification at 12–13) (asserting that the Report "calls into question PPVA and its Liquidators' statements and arguments that Norlicht utterly lacked authority with respect to PPVA, that [] Nordlicht therefore had no authority to transfer the Warrants to [Defendant], and

11

that Nordlicht had no authority to waive any conditions precedent that may have existed to the assignment of the Warrants to [Defendant]").

Defendant's argument is unpersuasive. Two considerations support this conclusion. First, Defendant's Motion to Reconsider simply describes the Report as a "recently-identified document . . . published by the Liquidators in October *2018*" that "calls into question the primary argument espoused by [PPVA] in support of its summary judgment motion . . . ." (*Id.* at 4 (emphasis in original)). Defendant does not indicate how he obtained access to this document, nor does he explain why—despite his due diligence—he was unable to proffer this document in connection with his previous Summary Judgment Motion. (*See generally id*; *see also Reply* at 4 (where, without more, Defendant describes the Report as a "recently-identified document . . . published in October 2018 . . . .")). Defendant has thus failed to "demonstrate that the newly discovered evidence was neither in his possession nor available upon the exercise of reasonable diligence at the time the [Summary Judgment Order] was rendered."[6] *Rockland Exposition, Inc. v. All. of Automotive Serv. Providers of New Jersey*, 894 F. Supp. 2d 288, 339 (S.D.N.Y. 2012), *as amended* (Sept. 19, 2012); *see also Aini v. Sun Raiyabg Co.,* 174 F.R.D. 327, 330 (S.D.N.Y. 1997) ("[The Movant] has offered no explanation for its failure to raise this point at or during the trial or, indeed, in the two months that passed between the [c]ourt's decision and the entry of the interlocutory judgment. The most charitable reason for its failure to do so is inadvertence. This factor cuts against the application [for reconsideration]."); *Pettiford v. City of Yonkers*, No. 14

---

[6] Although he does not explain how he acquired the Report, Defendant does suggest (without explanation) that the Report was intentionally withheld by Plaintiffs during discovery. (*See* Motion for Modification at 13 ("The Second Report, which was responsive to [Defendant's] document requests in this adversary proceeding, but which was not produced by PPVA, calls the fundamental premise underlying the Order into question. Had the Liquidators produced the Second Report as required by [Defendant's] document requests the Court should have, at a minimum, engaged in an effort to test the veracity of PPVA's arguments regarding Nordlicht's purported lack of authority, rather than accepting them wholesale.")).

12

CIV. 6271 (JCM), 2020 WL 1989419, at *2 (S.D.N.Y. Apr. 27, 2020) (considering a motion to reconsider under Local Rule 6.3 and noting that "[i]n order for evidence to be considered 'newly discovered' on a motion for reconsideration, it must be 'evidence that was truly newly discovered or could not have been found by due diligence'").[7]

Additionally, the Report on its face indicates that it was drafted during the liquidation of Platinum Partners Value Arbitrage Fund *(USA) L.P.*, the onshore feeder fund for PPVA.[8] (*See generally* Motion for Modification, ex. 2; *see also id.* at 17 (where, instead of naming Plaintiffs, the Report lists Cosimo Borrelli as "Liquidator")). The Court has already found that, as of the Cayman Islands Liquidation, the PPVA Warrant was the property of PPVA (that is, Platinum Partners Value Arbitrage Fund *L.P)*., and it is undisputed that any rights Defendant has to the PPVA Warrant arise from the Term Sheets, agreements executed by Defendant and Platinum Management. (*See* (Summary Judgment Order at 19–20 ("The PPVA Warrant was issued by Navidea in PPVA's name; both the Securities Exchange Agreement and the PPVA Warrant identify PPVA as the owner of the Preferred Shares and, subsequently, the PPVA Warrant."); *see also* (Doc. 30-2, p. 2 (where, in connection with his unsuccessful Cross-Motion for Summary Judgment, Defendant states that he "left Platinum Management pursuant to a Confidential Binding Term Sheet, dated March 28, 2014, with Platinum [Management]"); *id.* at p. 14 (where

---

[7] Relatedly, because Defendant has not demonstrated that the Report is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial," the Report would not satisfy the more stringent standard imposed by Rule 60(b). *See Avalon Holdings Corp. v. Gentile,* No. 18CV7291DLCRWL, 2023 WL 6566810, at *17 (S.D.N.Y. Oct. 6, 2023) ("If evidence was in the possession of the party before the judgment was rendered, or reasonably would have been available to him, it is not 'newly discovered' and does not entitle him to relief.").

[8] In the hedge fund context, a "feeder fund" is "an entity that pools money from numerous investors and then places it into a 'master fund' on their behalf." *See In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Securities LLC*, 917 F.3d 85, 92 (2d Cir. 2019) (noting that "[a] master fund . . . pools investments from multiple feeder funds and then invests the money [on behalf of investors]").

13

Defendant notes that "Navidea issued [the] Warrant to PPVA . . . [who] kept possession of the Warrant at BNY Mellon.")).

Because Platinum Partners Value Arbitrage Fund *(USA) L.P.* was neither a party to the Term Sheets nor the owner of the PPVA Warrant, Nordlicht's authority as to that entity has no bearing on the instant dispute. Put differently, the Report does not contain "evidence [] of such importance that it probably would have changed the outcome of the [Summary Judgment Order]." *In re Rezulin Prods. Liab. Litig.,* 224 F.R.D. 346, 350 (S.D.N.Y.2004). Defendant has thus failed to carry his burden under Rule 54(b).[9]

---

[9] Defendant also maintains that "the first basis for the Court's rejection of [Defendant's] arguments on summary judgment was the false statement by PPVA and the Liquidators that [Mr.] Nordlicht lacked authority to act for PPVA in October 2016 . . . [and] [t]his same theme was reiterated and relied upon by the Court throughout the Order." (Motion for Modification at 5). This argument fundamentally mischaracterizes the Court's previous Summary Judgment Order, which held:

(i) the Notes Condition and the Accounts Condition were both Conditions Precedent to Defendant's right to the PPVA Warrant;

(ii) Defendant did not satisfy either Condition Precedent prior to the Cayman Islands Liquidation; and, critically,

(iii) under the law of the Cayman Islands, once a winding up order has been made, "*any* disposition of the company's property . . . after the commencement of the winding up is, *unless the Court otherwise orders*, void."

(*See generally* Summary Judgment Order (emphasis added)). Accordingly, even assuming the Report spoke to Mr. Nordlicht's authority to transfer the property of PPVA (which it does not), Defendant has not explained how—as a matter of Cayman Islands law—Mr. Nordlicht could have legally transferred the PPVA Warrant mere days after the initiation of the Cayman Islands Liquidation.

14

## CONCLUSION

For the foregoing reasons, Defendant has not proffered evidence that would warrant reconsideration of the Court's prior Summary Judgment Order. Defendant's Motion for Modification (Docket No. 65) is DENIED accordingly. Any arguments not addressed above are deemed OVERRULED.

**IT IS SO ORDERED**.

Dated: New York, New York          /s/ John P. Mastando III
       January 31, 2024                       Honorable John P. Mastando III
                                                      United States Bankruptcy Judge