**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PLATINUM PARTNERS VALUE ARBITRAGE<br>FUND L.P. (IN OFFICIAL LIQUIDATION), *et al*.<br><br>      Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 16-12925 (JPM)<br>(Jointly Administered) |
| PLATINUM PARTNERS VALUE ARBITRAGE<br>FUND L.P.,<br><br>      Plaintiff,<br><br>    vs.<br><br>MICHAEL M. GOLDBERG,<br><br>      Defendant. | Adv. Proc. No. 18-01650 (JPM) |

**PLAINTIFF PLATINUM PARTNERS VALUE ARBITRAGE FUND LP'S**
**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO STRIKE MICHAEL M. GOLDBERG'S EXPERT DISCLOSURE**
**PURSUANT TO FED. R. P. 26(a)(2)(C) AND**
**MOTION TO PRECLUDE EXPERT TESTIMONY PURSUANT TO**
**FED. R. CIV. P. 37(c)(1) AND 16(f)**

## TABLE OF CONTENTS

                                                                                            **Page**

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT PROCEDURAL HISTORY .............................................................................. 4

I.    Goldberg Has Had Access to Documents Supposedly Needed to
Substantiate His Expert Opinion Since 2019 and Has Caused Considerable
Unjustified Delay in Expert Discovery. ................................................................. 4

    A.    PPVA Produced All Damages Related Documents When Fact
Discovery Was Open Four Years Ago. ...................................................... 4

    B.    In March 2023, the Court Orders the Parties to Serve Expert
Reports, and Goldberg Propounds Additional Duplicative
Discovery Requests. .................................................................................... 5

    C.    On June 12, 2023, PPVA Served its Expert Report, and Goldberg
Submitted an Unsuccessful Motion to Compel Duplicative and
Irrelevant Documents. ................................................................................. 6

    D.    PPVA Agrees to Re-Produce Its Prior Productions as a
Professional Courtesy. ................................................................................ 7

    E.    PPVA Granted Goldberg's Multiple Requests for Extensions of
Time to Purportedly Review PPVA's Production and Provide his
Expert Report. ............................................................................................. 7

II.    Goldberg Seeks to Appoint Himself His Own Expert and Fails to Comply
with Expert Disclosure Requirements. ................................................................... 8

    A.    Goldberg Represents During the March 12, 2024 Pre-Motion
Conference That He Intends to Testify About Patently Improper
Topics. ......................................................................................................... 9

ARGUMENT .......................................................................................................................... 9

I.    Goldberg Should Not be Permitted to Serve As His Own Expert Here. ................ 9
II.    Goldberg's Expert Disclosure Should be Stricken for Failing to Comply
with Federal Rule of Civil Procedure 26(a)(2)(C). .............................................. 12
III.    Goldberg Should Not Be Permitted to Testify as to Facts and Legal
Conclusions Under the Guise of a Valuation Expert. ........................................... 16
IV.    Goldberg Should be Precluded from Offering Himself as an Expert
Witness and Introducing any Additional Expert Testimony. ................................ 18

    A.    Goldberg Has Demonstrated Bad Faith. ................................................... 19

    B.    The Sofitel Factors Weigh In Favor of an Order of Preclusion. ............... 21

i

C.      Goldberg Should be Precluded from Offering any Expert
        Testimony under Rule 16(f) and the Court's Inherent Authority to
        Manage this Case. ...................................................................................... 24

V.      PPVA Should be Awarded Costs and Attorney's Fees. ....................................... 25

CONCLUSION.................................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*,
    301 F.R.D. 31, 36 (S.D.N.Y. 2014) .............................................................. *passim*

*Arnold v. Krause, Inc.*,
    232 F.R.D. 58 (W.D.N.Y. 2004)..............................................................21, 22, 23

*Attia v. Audionamix, Inc.*
    No. 14 Civ. 706(RMB), 2015 WL 5580501 (S.D.N.Y. Sept 21, 2015) ..................11

*Benn v. Metro-North Commuter RR. Co.*,
    No. 3:18-cv-737 (CSH), 2019 WL 6467348 (D. Conn. Dec. 2, 2019)...................26

*Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*,
    No. 15-cv-2926 (DRH)(SIL), 2019 WL 5694256 (E.D.N.Y. July 22, 2019)................ *passim*

*Caruso v. Bon Secours Charity Health Sys., Inc.*,
    703 F. App'x 31 (2d Cir. 2017) .....................................................................13

*Curcio v. Roosevelt Union Free School Dist.*,
    No. 10-CV-5612 (SJF)(AKT), 2012 WL 6641715 (E.D.N.Y. Dec. 19, 2012) .....................24

*Design Strategy, Inc. v. Davis*,
    469 F.3d 284 (2d Cir. 2006)........................................................................22

*E.E.O.C. v. Locals 14 & 15, Int'l Union of Operating Eng'rs*,
    No. 72 Civ. 2498 (VLB), 1981 WL 163 (S.D.N.Y. Feb. 11, 1981) .......................10

*Gately v. City of Port Hueneme*,
    No. CV 16-4096-GW, 2017 WL 8236269 (C.D. Cal. Oct. 2, 2017) ......................11

*Harkabi v. SanDisk Corp.*,
    No. 08 Civ. 8203(WHP), 2012 WL 2574717 (S.D.N.Y. June 20, 2012) ...............12

*In re Initial Pub. Offering Sec. Litig.*,
    174 F. Supp. 2d 61 (S.D.N.Y. 2001)..............................................................17

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
    No. 16-CV-1318 (GBD) (BCM), 2021 WL 4810266
    (S.D.N.Y. Sept. 30, 2021).........................................................................11

*Knowledge Based Techs., Inc. v. Int'l Bus. Machs. Corp.*,
    No. 96 CIV. 9461(JSR), 1998 WL 164791 (S.D.N.Y Apr. 8, 1998).......................11

*Kowalski v. YellowPages.com, LLC*,
No. 10 Civ. 7318(PGG), 2012 WL 1097350 (S.D.N.Y. Mar. 31, 2012)...............................14

*Lidle v. Cirrus Design Corp.*,
No. 08 Civ. 1253 (BSJ)(HBP), 2009 WL 4907201 (S.D.N.Y. Dec. 18, 2009) ................23, 24

*LinkCo, Inc. v. Fujitsu Ltd.*,
No. 00 CIV. 7242 (SAS), 2002 WL 1585551 (S.D.N.Y. July 16, 2002) ...............................17

*Lippe v. Bairnco Corp.*,
288 B.R. 678 (S.D.N.Y. 2003)..............................................................................................10

*Michel v. Yale Univ.*,
No. 3:20-CV-01080, 2022 WL 6493546 (D. Conn. Mar. 30, 2022) ..........................13, 14, 15

*Miranda v. Haywood*,
No. 09-CV-1328 (ENV), 2010 WL 11651743 (E.D.N.Y. May 26, 2010) ............................20

*Ordon v. Karpie*,
543 F. Supp. 2d 124 (D. Conn. 2006)....................................................................................23

*Perfect 10, Inc. v. Giganews, Inc.*,
No. CV 11-07098-AB, 2014 WL 10894452 (C.D. Cal. Oct. 31, 2014) ...........................10, 11

*Pinello v. Andreas Stihl AG & Co. KG*,
No. 8:08-CV-452, 2010 WL 11681621 (N.D.N.Y. Jan. 11, 2020) ................................19, 25

*Pitterman v. Gen. Motors LLC*,
3:14-CV-00967, 2016 WL 2892537 (D. Conn. May 16, 2016) .......................................15, 16

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., LTD.*,
No. 11-CV-726 (CBA), 2013 WL 4409434 (E.D.N.Y. Aug. 2, 2013)................14, 19, 23, 24

*Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*,
118 F.3d 955 (2d Cir. 1997)............................................................................ *passim*

*SourceOne Dental, Inc. v. Patterson Cos.*,
2018 WL 2172667, AT *7 (E.D.N.Y. MAY 10, 2018).........................................................17

*Travelers Prop. & Cas. Corp. v. Gen. Elec. Co.*,
150 F. Supp. 2d 360 (D. Conn. 2001)....................................................................................20

*Webb v. Zimmer, Inc.*,
No. 2:14-CV-01106 (ADS)(GRB), 2018 WL 836366
(E.D.N.Y. Feb. 12, 2018)......................................................................................................18

## Rules

Fed. R. Civ. P. 16.............................................................................................. *passim*

Fed. R. Civ. P. 26 ................................................................................................................. *passim*

Fed. R. Civ. P. 37 ................................................................................................................. *passim*

Fed. R. Evid. 702 ........................................................................................................................21

Local Rule 7007-1 .........................................................................................................................9

The current and duly appointed joint official liquidators ("Liquidators") of Plaintiff Platinum Partners Value Arbitrage Fund L.P. (in Official Liquidation) ("PPVA"), in liquidation by way of the Financial Services Division of the Grand Court of the Cayman Islands (cause no. FSD 131 of 2016 (NSJ)), by their undersigned United States counsel, Holland & Knight LLP, respectfully submit this memorandum of law in support of PPVA's Motion to Strike Michael M. Goldberg's ("Goldberg") Expert Disclosure Pursuant to Fed. R. Bank. P. 26(a)(2)(C) ("Expert Disclosure") and Motion to Preclude Expert Testimony Pursuant to Fed. R. Civ. P. 37(c)(1) and 16(f).

## PRELIMINARY STATEMENT[1]

Despite representing over the course of the last *seven months* that he planned to submit a rebuttal expert *report* (pursuant to Fed. R. Civ. P. 26(a)(2)(B)), Goldberg served a facially deficient expert *disclosure* (pursuant to Fed. R. Civ. P. 26(a)(2)(C)) naming *himself* his own expert in a case where he has already been found liable for misappropriating PPVA assets.

Goldberg's expert disclosure does not even try to satisfy the bare bones requirements of Rule 26(a)(2)(C). He does not provide any summary of the facts and opinions on which he is expected to testify as required by Rule 26(a)(2)(C)(ii), stating only that he *will* provide various opinions at trial. Nor do the few vague statements in his expert disclosure satisfy Rule 26(a)(2)(C)(i). He does not identify what assets he intends to opine on at trial[2], asserts topics that *again* seek to re-open liability and an end-run-around Judge Chapman's summary judgment decision, and alludes to unspecified "other issues." That obviously prejudices PPVA, which is left

---

[1] Capitalized terms not otherwise defined herein have the same meaning as in the Liquidators' Motion for Summary Judgment. *See* Dkt. Nos. 19-24, 33-35, 41.

[2] While the Navidea Warrant is the only of PPVA's assets at issue in this case, Goldberg has alluded to the valuation of other PPVA assets throughout the course of this action. *See, e.g.* Dkt. No. 88-10.

with no understanding of what Goldberg intends to offer at trial and no way to prepare for trial—or even a deposition[3].

Indeed, during the parties' pre-motion conference on March 12, 2024, Goldberg, through counsel, made it clear that he does *not* in fact intend to offer a valuation opinion as to the Navidea Warrant. Rather, Goldberg intends to testify about how the terms of his separation agreement operated as a matter of law—*i.e.,* that the Navidea Warrant had no value to PPVA because it was Goldberg's property as of the date of the Amended Term Sheet. That argument is directly contrary to what has already been determined, repeatedly, on liability.

During the same conference, Goldberg's counsel represented that he will opine on "*facts* related to the transferred securities that were the subject of the separation agreement" and "what occurred with *other securities* and such as it relates to the mechanics of how the separation agreement worked." None of those topics are disclosed on the face of his Expert Disclosure; Goldberg cannot testify to *facts* under the guise of an expert opinion; what may or may not have occurred with *other securities* has no bearing on the Navidea Warrant it issue here, which Goldberg has already been determined to have misappropriated; and the legal effect of Goldberg's separation agreement has already been adjudicated and he cannot testify as a legal expert anyway. Nor have Goldberg or his counsel disclosed his actual opinions as required by Rule 26(a)(2)(C)(ii). Goldberg has confirmed that he does not intend to offer a valuation opinion at all—he only intends to try (again) to relitigate liability.

The paucity of information in Goldberg's disclosure and his counsel's subsequent admissions that he essentially seeks to relitigate liability through his "expert" opinion make clear his disingenuous approach to this action. Over the past seven months, Goldberg has been pleading

---

[3] Per the status conference held March 12, 2024 concerning this Motion, PPVA reserves all rights to depose Goldberg as to his Expert Disclosure pending a decision on this motion.

for ongoing extensions of his time to submit his expert *report* based on purported needs for more documents and information (substantially all of which he admittedly has had in his possession for over four years). PPVA has extended multiple courtesies by agreeing to each and every request for extension. The Court has been exceedingly patient in reviewing Goldberg's overly broad and unduly burdensome damages discovery demands and related motion to compel. And PPVA even extended the professional courtesy of *re-producing all of the 40,000-plus pages of discovery* it produced four years ago based on Goldberg's representation that he no longer had access to those documents and they were necessary to completing his expert *report*.

In reality, Goldberg has been deceiving the Court and PPVA for the last seven months. If he intended to produce a non-compliant expert disclosure all along, there certainly was no need for him to take seven months to do so. Nor was there any need for PPVA to undertake substantial efforts and costs to respond to his damages discovery demands or motion to compel, or to re-produce over 40,000 pages of discovery as a professional courtesy.

Moreover, the obvious bias of having this Defendant serve as his own expert in a case where he is on the hook for a potential judgment of millions of dollars cannot be cured and renders any testimony that he intends to give at trial hopelessly unreliable. In this bench trial on *damages only*, there is zero probative value to his proposed expert testimony on liability or non-specific "issues" of valuation as to unidentified assets.

It is apparent that Goldberg has completely misled PPVA and the Court in an effort to protract this action and avoid judgment. Goldberg has produced neither an expert report nor disclosure compliant with the Federal Rules. His "expert disclosure" renders PPVA with no ability to understand the basis of his purported "expertise" or opinion and therefore prejudices PPVA. His admissions during the March 12 status conference make clear that he intends to offer improper

fact testimony and legal opinions under the guise of a valuation expert opinion in the hope of re-opening the issue of liability. Goldberg has moreover blatantly taken advantage of the multiple leniencies allowed by this Court and the courtesies extended by PPVA, and his conduct warrants precluding Goldberg from offering any expert opinion and this case proceeding expeditiously to a damages trial.

The Court should grant PPVA's motion to strike Goldberg's expert disclosure and preclude Goldberg from offering his own testimony or that of any purported expert on the issue of damages. The Court should also award PPVA costs and attorneys' fees for bringing this motion and any additional costs related to expert discovery.

## <u>RELEVANT PROCEDURAL HISTORY</u>

I.  **Goldberg Has Had Access to Documents Supposedly Needed to Substantiate His Expert Opinion Since 2019 and Has Caused Considerable Unjustified Delay in Expert Discovery.**

A.  **PPVA Produced All Damages Related Documents When Fact Discovery Was Open Four Years Ago.**

In May 2019, PPVA made two productions of 2,124 documents and 40,797 pages, expending approximately 175 hours of attorney time to confirm responsiveness of documents to Goldberg's first request for production ("First RFPs") and review for privilege. *See* Dkt No. 88 ¶ 13; Dkt. Nos. 88-4, 88-5. Importantly, fact discovery was never bifurcated between liability and damages. At Goldberg's request, in June 2019, PPVA provided an index of documents responding to agreed-upon search terms. *See* Dkt. No. 88-7.[4] On November 11, 2019, Goldberg served a second set of requests for production ("Second RFPs"). Dkt. No. 88-8. PPVA objected to

---

[4] PPVA produced documents responsive to all search terms it originally proposed and which the parties agreed to, following a linear review for responsiveness and privilege. *See* Dkt. No. 88-3. For the purposes of the index only, Goldberg requested that PPVA index the Bates-stamped documents to a subset of search terms that he identified. *See* Dkt. No. 88-7.

4

Goldberg's Second RFPs on December 17, 2019 (*see* Dkt. No. 88-9) as entirely duplicative of the First RFPs, and Goldberg never raised any issues related to PPVA's response to the Second RFPs. Dkt. No. 88 ¶ 16. Thus, as of May 2019, *all* fact discovery—including related to damages—was substantially complete, and Goldberg has had nearly all documents required to submit an expert report valuating damages since this date.

**B.    In March 2023, the Court Orders the Parties to Serve Expert *Reports*, and Goldberg Propounds Additional Duplicative Discovery Requests.**

During the parties' first status conference with this Court on March 2, 2023 (following Judge Chapman's retirement), Goldberg represented that he required limited additional discovery to prepare his expert *report*. On that representation, the Court allowed Goldberg to propound limited additional damages-only discovery in advance of expert discovery. *See* Dkt. No. 85. At this conference, the Court set the initial schedule for expert discovery as to the damages issue directing PPVA to file its expert report by May 5, 2023[5], and Goldberg to file an expert report by June 30, 2023. *See* Dkt. No. 85, at 10-11.

Rather than serve discovery related to the narrow issue of damages, on March 17, 2023, three years after the parties had concluded fact discovery, Goldberg propounded another 31 requests for production ("Third RFPs"), the vast majority of which obviously intended to try to re-open the merits of Judge Chapman's liability finding. *See* Dkt. No. 88-10. PPVA objected to the Third RFPs as entirely duplicative to Goldberg's First RFPs and Second RFPs or not relevant to the question of damages at all. *See* Dkt. No. 84-1. After PPVA served its written objections and responses to the Third RFPs the parties reached an impasse and a status conference was scheduled for June 13, 2023.

---

[5] On stipulation by the parties, PPVA served its expert report on June 12, 2023. Shen Decl. Exs. 1, 2.

### C.    On June 12, 2023, PPVA Served its Expert Report, and Goldberg Submitted an Unsuccessful Motion to Compel Duplicative and Irrelevant Documents.

At the June 13, 2023 status conference, Goldberg again represented to the Court that he needed documents concerning damages responsive to the Third RFPs to prepare his expert report and depositions but could not explain what additional documents were needed beyond what PPVA had already produced over four years ago.  Dkt. No. 77, at 9-12.  The Court directed Goldberg to submit a motion to compel detailing specifically what Goldberg sought (see *id*. at 21-22), which was filed on July 17, 2023.  *See* Dkt. Nos. 82-84.

Following full briefing and oral argument, on September 20, 2023, the Court denied Goldberg's motion to compel on virtually all grounds, noting that the Third RFPS "are identical in both form and substance to those found in the first and second requests for production and are thus unnecessarily repetitive."[6]  Dkt. No. 94, at 23.  The motion to compel was **only** granted with respect to documents produced by CohnReznick LLP, PPVA's former auditor, to PPVA after the close of fact discovery in this case.  *See id*. at 19-21.  As the Court acknowledged, those workpapers were not in PPVA's possession four years ago when fact discovery was open.  *See id*. at 14-15. The Court found persuasive, however, Goldberg's representation that those workpapers were critical to his expert report.  *See id*. at 19-21.

PPVA complied with the Court's order, producing the CohnReznick audit workpapers on October 30, 2023 pursuant to its counsel's standard ESI protocol and in the same format that all prior productions had been made.  Shen Decl. Ex. 3.  The following day—for the first time in this

---

[6] The Court denied the motion to compel on various grounds, including: (i) PPVA provided indexed documents produced to Goldberg in response to the First and Second RFPs following the meet and confers in 2019, without objection by Goldberg; (ii) Goldberg failed to identify any publicly available document withheld by PPVA; (iii) PPVA already produced the periodic reports demanded in Goldberg's motion to compel; and (iv) the effect of the blocker provision on the value of the PPVA Warrant is a matter dependent on expert testimony, not additional documentary evidence.  Dkt. No. 94, at 16-19.

case and inconsistent with the standard ESI protocol previously accepted by the parties—Goldberg requested that PPVA provide its supplemental production in PDF format. *Id.* As a courtesy, PPVA agreed to produce the CohnReznick documents as static PDFs, which required PPVA's eDiscovery vendor to manually convert voluminous workpapers into 163,426 pages of static PDFs at considerable cost and time. Shen Decl. ¶¶ 5, 7, Exs. 3, 4. The static PDFs were provided to Goldberg on November 10, 2023. Shen Decl. Ex. 4.

### D.    PPVA Agrees to Re-Produce Its Prior Productions as a Professional Courtesy.

Around the same time, on October 24, 2023, Goldberg requested that PPVA provide another copy of its second production of documents, originally produced May 2019, more than four years ago. Shen Decl. Ex. 3. Goldberg provided no explanation as to why he or his counsel did not retain documents produced in an active litigation.

In any event, as an additional courtesy, and with the understanding that Goldberg required these documents to prepare his expert report, PPVA agreed to re-produce its prior productions at considerable effort and expense. Shen Decl. Ex. 5. PPVA re-produced its prior productions to Goldberg on December 1, 2023. *Id.*

### E.    PPVA Granted Goldberg's Multiple Requests for Extensions of Time to Purportedly Review PPVA's Production and Provide his Expert Report.

On November 6, 2023, Goldberg requested an additional sixty days to review PPVA's productions "and advise re any expert." Shen Decl. Ex. 3. The next day, PPVA agreed to a reasonable extension of time, in good faith. *Id.* Accordingly, on November 15, 2023, the parties jointly filed a stipulation and proposed scheduling order for Goldberg to file his expert report by January 4, 2024. In total, Goldberg has had *seven months* to prepare his rebuttal to PPVA's expert report dated June 12, 2023. *See* Dkt. No. 95.

II.    **Goldberg Seeks to Appoint Himself His Own Expert and Fails to Comply with Expert Disclosure Requirements.**

PPVA's continued efforts to cooperate and afford Goldberg all professional courtesies were for naught.  On January 5, 2024, Goldberg served a two-page "Expert Disclosure" pursuant to Fed. R. Bank. P. 26(a)(2)(C)[7] naming **himself** as his own expert witness to be called at trial to testify as to the "valuation of [unspecified] encumbered equity instruments."  Shen Decl. Ex. 6. The Expert Disclosure states, in vague terms, the following **topics** on which Goldberg intends to testify:

- The effect of the terms of that certain First Omnibus Amendment to the Binding Term Sheet entered into between Platinum Management (NY) LLC and Dr. Goldberg effective as of June 11, 2015 (the "Separation Agreement") on the value of securities transferred to Dr. Goldberg pursuant to the Separation Agreement.

- The effect of the terms of the Separation Agreement on the value of that certain warrant to purchase 5,411,850 common shares on or before August 20, 2035 (the "Warrant") of Navidea Biopharmaceuticals, Inc. ("Navidea") that is the subject of this adversary proceeding.

- Deficiencies in the valuation of the Warrant provided by Plaintiff's designated expert witness.

- Such other issues concerning the value of the Warrant raised by Plaintiffs at trial or properly submitted in Dr. Goldberg's defense/rebuttal in this Adversary Proceeding.

*Id*.

---

[7] Goldberg submits his Expert Disclosure pursuant to "Federal Rule of Bankruptcy Procedure 26(a)(2)(C)." This rule does not exist.  Federal Rule of Civil Procedure 26(a)(2)(C) is a standalone rule incorporated in adversary proceedings under the Federal Rules of Bankruptcy Procedure.

The Expert disclosure is wholly devoid of any summary of the facts and opinions on which Goldberg intends to testify and is patently insufficient to put PPVA on notice of the substance of Goldberg's purported expert testimony, and thus obviously does not comply with the expert disclosure requirements of Fed. R. Civ. P. 26(a)(2)(C).

### A.    Goldberg Represents During the March 12, 2024 Pre-Motion Conference That He Intends to Testify About Patently Improper Topics.

The parties held a meet and confer pursuant to Local Rule 7007-1(a) on February 6, 2024. Shen Decl. ¶ 10.  Pursuant to Local Rule 7007-1(b), a pre-motion conference was held on March 12, 2024.  Shen Decl. ¶ 11; *id.* at Ex. 7.

During the March 12 conference, Goldberg, through counsel, represented that he intends to opine on:

- "*Facts* relating to the transferred securities that were the subject to the separation agreement," Shen Decl. Ex. 7 at 7:16-18;

- "What occurred with *other securities*," *id.* at 7:22-23; and

- "The mechanics of how the separation agreement worked," *id.* at 7:23-24.

As discussed below, none of those are proper topics for Goldberg to opine on as a *valuation* "expert."

### **ARGUMENT**

## I.    Goldberg Should Not be Permitted to Serve As His Own Expert Here.

Goldberg has already been found liable for misappropriating the Navidea Warrant from PPVA, and has spent the last 20 months trying to re-litigate that liability finding and needlessly protract this action.  His transparent efforts to evade judgment render him so hopelessly biased that it is impossible for him to serve as an independent "source of information," rather than his own advocate.  *See E.E.O.C. v. Locals 14 & 15, Int'l Union of Operating Eng'rs*, No. 72 Civ. 2498

(VLB), 1981 WL 163, at *4 (S.D.N.Y. Feb. 11, 1981) (experts "do not serve as advocates, but as sources of information."). Indeed, "when expert witnesses become partisans, objectivity is sacrificed to the need to win." *Lippe v. Bairnco Corp.*, 288 B.R. 678, 687 (S.D.N.Y. 2003), *aff'd* 99 Fed. App'x 274 (2d Cir. 2004) (quoting *Cacciola v. Selco Balers, Inc.*, 127 F. Supp. 2d 175, 184 (E.D.N.Y. 2001)). That is exactly why Goldberg cannot serve as his own expert here.

Goldberg offering himself as a purported expert witness can be analogized to lawyers serving as expert witnesses. In *Lippe*, the Court held that a lawyer, who acted as counsel for the plaintiffs, may not serve as an expert witness because he acted in a completely partisan manner, and "[i]t would be most inappropriate to permit him now to testify as an expert witness about the very matters he helped develop as a lawyer-advocate." 288 B.R. at 688. The court further explained that "I do not believe that [the expert] can now testify with the detachment and independence that one would expect from an expert witness offering views as a professional." *Id*.

Goldberg's direct financial stake in the outcome of this action only further undermines the probative value of any testimony he could give at trial. *See Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2014 WL 10894452, at *4 (C.D. Cal. Oct. 31, 2014) (distinguishing between outside experts, who have an indirect incentive to win the approval of their employers (the client and attorneys) on the one hand, and experts who have a direct financial stake in the outcome of the litigation, on the other); *see also, e.g., Gately v. City of Port Hueneme*, No. CV 16-4096-GW (JEMx), 2017 WL 8236269, at *12 (C.D. Cal. Oct. 2, 2017) (precluding plaintiff from serving as his own expert where the "true intent in designating himself as an expert is 'to transform his extensive allegations of City's mismanagement into expert opinion and fact;" and "the sole [sic] purpose in presenting this information in the form of expert opinion testimony would be to permit Plaintiff to bolster his own testimony with the aura of expertise."). According to these

sister courts, "[o]nce the expert obtains a direct financial interest in the outcome of the litigation (whether by his or her status as a party, by contingency fee agreement, or otherwise), any semblance of independence or promise of intellectual rigor that normally adheres to an expert witness is fatally wounded." *Perfect 10, Inc.*, 2014 WL 10894452, at *4. "Under those rare circumstances, the conflict of interest is so great, and raises so many 'serious questions about the integrity of the witnesses' expert testimony,' that to admit the conflicted testimony would violate public policy." *Id.* (citing *Straughter v. Raymond*, No. CV 08-2170 CAS CWX, 2011 WL 1789987, at *3 (C.D. Cal. May 9, 2011)); *see also Gately*, 2017 WL 8236269, at *13.

Indeed, courts in this circuit have only allowed party-associated witnesses to serve as experts in a very narrow situation—where the purported expert is an employee of the party, *not the party themselves*. *See e.g.*, *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2021 WL 4810266 (S.D.N.Y. Sept. 30, 2021); *Knowledge Based Techs., Inc. v. Int'l Bus. Machs. Corp.*, No. 96 CIV. 9461(JSR), 1998 WL 164791 (S.D.N.Y Apr. 8, 1998). Even where courts in this circuit have been sympathetic to a party serving as its own expert witness, their decision did not turn on this basis. For instance, in *Attia v. Audionamix, Incorporated*, the court vacated an arbitration decision primarily because the party expert witness was the *only* witness "competent to address the substantive core of his claims refuting spoilation." No. 14 Civ. 706(RMB), 2015 WL 5580501, at *8 (S.D.N.Y. Sept. 21, 2015).

Here, Goldberg can only act in a completely partisan manner, and the conflict of interest would be far too great given his direct financial stake in the outcome of this action and his conduct throughout the course of this action. He is the sole defendant in this case with a potential judgment of millions of dollars hanging over his head, and any purported expert testimony he may offer can only be self-serving and biased. Moreover, Goldberg is not the only witness competent to testify

11

on the valuation of damages.  He had every opportunity to retain an expert over the past four years that this case has been litigated, and indeed represented over the course of the last seven months that he intended to submit an expert *report*—by an independent expert—under Rule 26(a)(2)(B) to justify his multiple requests for extensions.   His misleading the Court and PPVA as to how he intended to proceed with expert discovery is just another example of his obvious bias and why he cannot serve as his own expert here.

## II.    Goldberg's Expert Disclosure Should be Stricken for Failing to Comply with Federal Rule of Civil Procedure 26(a)(2)(C).

Even if Goldberg were not so obviously biased, his expert disclosure must nonetheless be stricken for failing to satisfy even the minimal requirements of Rule 26(a)(2)(C).  The expert disclosure requirements under Rule 26(a)(2) are "designed to prevent a party from raising unexpected or new evidence at trial." *Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*, No. 15-cv-2926 (DRH)(SIL), 2019 WL 5694256, at *3 (E.D.N.Y. July 22, 2019); *Harkabi v. SanDisk Corp.*, No. 08 Civ. 8203(WHP), 2012 WL 2574717, at *3 (S.D.N.Y. June 20, 2012) ("The purpose of the expert disclosure rules is 'to avoid surprise or trial by ambush.'") (quoting *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2022).  Both Rule 26(a)(2)(B), which requires expert reports, and Rule 26(a)(2)(C), which does not, are designed to fulfill this purpose.  Rule 26(a)(2)(B) requires experts to submit a report where they are "retained or specifically employed to provide expert testimony" or where their duties "regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B).  If an expert does not qualify as a Rule 26(a)(2)(B) expert, Rule 26(a)(2)(C) requires "summary disclosures of the opinions to be offered by expert witnesses . . . and of the facts supporting those opinions." Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note to 2010 amendment.

12

Rule 26(a)(2)(C) was passed as an amendment to "resolve[] a tension that has sometimes prompted courts to require [expert reports] even from witnesses" who would not otherwise have to filed expert reports (i.e., those who are not retained experts or are typically hired to provide expert testimony). Rule 26(a)(2)(C) applies to hybrid witnesses who "may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705," and specifically contemplates "physicians or other health care professionals and employees of a party who do not regularly provide expert testimony." *Id.* The Second Circuit has described the distinction as "between an expert who happened to have personal involvement with the events giving rise to litigation and an expert whose only involvement consists of aiding the already-initiated litigation." *Caruso v. Bon Secours Charity Health Sys., Inc.*, 703 F. App'x 31, 33 (2d Cir. 2017); *see also Michel v. Yale Univ.*, No. 3:20-CV-01080 (SALM), 2022 WL 6493546, at *2-6 (D. Conn. Mar. 30, 2022). Because 26(a)(2)(C) expert witnesses "have not been specially retained and may not be as responsive to counsel as those who have," their disclosure requirements are "considerably less extensive." Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note to 2010 amendment.

Goldberg's submission is a bold-faced attempt to sidestep Rule 26(a)(2)(B)'s requirement for an expert report and offer himself both as a fact and expert witness under the "considerably less extensive" requirements of Rule 26(a)(2)(C). However, Goldberg's disclosure is contradictory to the purpose of Rule 26(a)(2)(C), which was designed to put opposing parties on notice of the testimony that may be offered against it. The rule serves the additional purpose of protecting experts from filing reports when they have not been specially retained or do not regularly provide testimony, and therefore may not be as equipped to respond to counsel. Indeed,

the rule was not passed as a vehicle to bypass expert reports required under Rule 26(a)(2)(B) or to allow a party to serve as his own fact and expert witness, as Goldberg seeks to do here.

Even so, Goldberg's submission fails to satisfy even the barebones requirements of Rule 26(a)(2)(C). Rule 26(a)(2)(C) requires non-retained expert disclosures state the subject matter of expert testimony and "a summary of the facts and opinions to which the witness is expected to testify." *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., LTD.*, No. 11-CV-726 (CBA), 2013 WL 4409434, at *8 (E.D.N.Y. Aug. 2, 2013) (citing Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii)). Rule 26(a)(2)(C) disclosures must do more than "merely state the topics of the opinions to which the expert will testify, without stating any view or judgment on such topics." *Michel*, 2022 WL 6493546, at *4 (quoting *Little Hocking Water Ass'n, Inc. v. E.I. DuPont de Nemours & Co.*, No. 2:09-CV-01081 (ALM), 2015 WL 1105840, at *6 (S.D. Ohio Mar. 11, 2015)). The summary provided in a non-retained expert disclosure must contain an "actual opinion." *Id.* The purpose of these requirements is to prevent a party from raising unexpected or new evidence at trial. *See Capricorn*, 2019 WL 5694256, at *3.

Expert disclosures that fail to comply with the requirements of Rule 26(a)(2)(C) must be stricken. *See Kowalski v. YellowPages.com, LLC*, No. 10 Civ. 7318(PGG), 2012 WL 1097350, at *9 (S.D.N.Y. Mar. 31, 2012) (striking Rule 26(a)(2)(C) disclosure at class certification stage where the disclosure was "no more than a statement by defense counsel as to what [the expert's] testimony is expected to be."); *Michel*, 2022 WL 6493546, at *2-6 (striking Rule 26(a)(2)(C) disclosures, in part, for merely providing the subject matter of expected testimony); *Pitterman v. Gen. Motors LLC*, 3:14-CV-00967 (JCH), 2016 WL 2892537, at *3 (D. Conn. May 16, 2016) (striking 26(a)(2)(C) expert disclosures where the disclosures "make[] it impossible for the court

14

to determine what opinions these witnesses plan to testify to.").  Goldberg's disclosure here should be stricken.

Incredibly, despite having four years to analyze the issue of damages, receiving 204,438 pages of damages discovery[8], and having PPVA's expert report for seven months, the best Goldberg can offer is a disclosure that only states in vague terms four broad-reaching subject matters on which Goldberg intends to testify.  On its face, Goldberg's expert disclosure does not comply with Rule 26(a)(2)(C) as he does not state any of his actual opinions and does not summarize the facts underlying those opinions.

Indeed, Goldberg's disclosure does exactly what is prohibited by the Federal Rules:  he provides opaque topics of his intended testimony on the "valuation of [unidentified] encumbered equity instruments," namely (1) "the effect of" the Separation Agreement on the value of [unidentified] securities transferred to Goldberg[9], (2) "the effect of" the Separation Agreement on the value of the PPVA Warrant, (3) deficiencies in the valuation of the PPVA Warrant provided by PPVA's expert; and (4) "such other issues" concerning the PPVA Warrant raised by PPVA at trial or Goldberg's defense/rebuttal.    Shen Decl. Ex. 6.  This list of topics is completely unsatisfactory for purposes of a Rule 26(a)(2)(C) disclosure.  *See Michel*, 2022 WL 6493546, at *4 ("plaintiff's disclosures merely provide the subject matter of the 'expected' testimony, which is insufficient") (citations omitted).  Goldberg's list is utterly devoid of any summary of facts, opinion, or judgment on the valuation of PPVA Warrant, the sole issue before this Court.  Consequently, PPVA would be subjected to unexpected or new evidence at trial, which is especially problematic given that Goldberg is expected to testify as an expert on his own behalf.

---

[8] Including PPVA's production of the CohnReznick audit work papers.
[9] Which on its face appears to be yet another impermissible attempt to expand the scope of this action, which is limited *only* to the Navidea Warrant.

Moreover, the insufficient disclosures leave the Court unprepared to issue any ruling on damages. *See Pitterman*, 2016 WL 2892537, at *3.

Moreover, on its face, Goldberg seeks to yet again try to re-litigate the merits of Judge Chapman's liability finding—an issue that has been foreclosed despite Goldberg's best effort to reargue and seek interlocutory appeal. There is no live issue as to the "effect of the Separation Agreement" on the Navidea Warrant, and, indeed, the only plausible reason that Goldberg would now raise the Separation Agreement again is to seek to overturn Judge Chapman's finding that he failed to satisfy the conditions precedent to PPVA assigning the Navidea Warrant to him, as required under the Separation Agreement.

After four years of discovery and at least ten months' notice to prepare an expert report, as ordered by the Court and contemplated between the parties, Goldberg has not provided a report as promised. Instead, he has served an absolutely deficient disclosure under Rule 26(a)(2)(C). The disclosure should accordingly be struck by this Court.

### III.    Goldberg Should Not Be Permitted to Testify as to Facts and Legal Conclusions Under the Guise of a Valuation Expert.

During the March 12 pre-motion conference, Goldberg, through counsel, illuminated for the first time what he actually intends to testify about: facts; other securities besides the Navidea Warrant; and liability. Even if Goldberg had provided a compliant valuation expert disclosure (which he did not), and even if Goldberg could provide unbiased expert testimony (which he cannot), those topics are patently improper and irrelevant to the only remaining question of valuation of the Navidea Warrant.

First, it is well-established that expert witnesses cannot provide fact testimony or conclusory arguments. *See, e.g., LinkCo, Inc. v. Fujitsu Ltd.*, No. 00 CIV. 7242 (SAS), 2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002) (disallowing expert testimony where it contained

"arguments and conclusory statements about questions of fact masquerading" as technical expert opinions); *Sourceone Dental, Inc. v. Patterson Cos.*, 2018 WL 2172667, at *7 (E.D.N.Y. may 10, 2018) ("Expert testimony is not admissible if it merely serves as a conduit to construct a factual narrative" because such testimony will not be helpful to the finder of fact) (citing *Highland Cap. Mgmt., L.P. V. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005)).  PPVA does not dispute Goldberg's ability to testify as a fact witness, but that is a separate and distinct role than his effort to serve as his own damages expert.

Second, any testimony about "what occurred with *other securities* and such as it relates to the mechanics of how the separation agreement worked," *see* Shen Decl. Ex. 7 at 7:21-24, is irrelevant as the Navidea Warrant is the only security at issue in this litigation.

Third, and as obvious from Goldberg's numerous prior efforts to overturn Judge Chapman's liability determination, Goldberg's attempt to provide expert opinion as to the "mechanics of how the separation agreement worked" seeks yet again to relitigate the long-foreclosed question of liability, with Goldberg testifying as his own legal expert.  It is well-established that legal expert testimony is prohibited. *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) ("The rule prohibiting experts from providing their legal opinions or conclusions is "so well-established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle.") (citing authorities across jurisdictions).  Even if permitted, Goldberg—who indisputably has no legal experience or background—is not qualified to provide legal opinions.

In short, it is evident that Goldberg does not intend to opine on valuation of the Navidea Warrant, the only issue remaining in this action.  As such, Goldberg's expert disclosure should be stricken.

IV.    **Goldberg Should be Precluded from Offering Himself as an Expert Witness and Introducing any Additional Expert Testimony.**

Pursuant to Federal Rule of Civil Procedure 37(c)(1)and 16(f), the Court should preclude Goldberg from offering himself as a purported expert witness or any other expert testimony concerning the damages at issue.  Rule 26(a)(2) expert disclosures must be made at the times and in the sequence that the court orders.  *Capricorn*, 2019 WL 5694256, at *3 (citing Fed. R. Civ. P. 26(a)(2)(D)).  Rule 37(c)(1) states that a party who fails to follow this rule and provide information required under the expert disclosure requirements of Rule 26(a) "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Rule 37(c)(1) serves to "'prevent the practice of 'sandbagging' an opposing party with new evidence.'"  *Webb v. Zimmer, Inc.*, No. 2:14-CV-01106 (ADS)(GRB), 2018 WL 836366, at *7 (E.D.N.Y. Feb. 12, 2018) (quoting *DeLuca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 06-CV-5474, 2008 WL 857492, at *12 (S.D.N.Y. Mar. 31, 2008)).

The Second Circuit has identified four factors (the *Softel* factors) to be considered in determining whether an order of preclusion is appropriate under Rule 37(c)(1): (1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.  *Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, 301 F.R.D. 31, 36 (S.D.N.Y. 2014) (citing *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)).  A finding of bad faith is not required to justify preclusion of evidence under Rule 37, but a court may consider bad faith in its analysis.  *Point 4 Data Corp.*, 2013 WL 4409434, at *14 (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006)).  Separately, under Rule 37(c)(1) and the court's inherent power to manage court

proceedings, a party and its counsel may be held liable for expenses, including attorney's fees and costs, resulting from the violation of Rule 26(a)'s disclosure requirements. *Advanced Analytics*, 301 F.R.D. at 36.

Additionally, the Court has power under Federal Rule of Civil Procedure 16, as well as the power derived from its inherent authority to manage the proceedings before it, to impose sanctions for conduct violative of scheduling orders and wasteful of the time of opposing counsel and the Court. *Advanced Analytics,* 301 F.R.D. 31 at 35 (citations omitted). "Rule 16 can and should be read in conjunction or consistent with Rule 37(b) and (c)." *Pinello v. Andreas Stihl AG & Co. KG*, No. 8:08-CV-452 (LEK/RFT), 2010 WL 11681621, at *6 (N.D.N.Y. Jan. 11, 2020). "[P]ursuant to Rule 16, a party's failure to comply with a scheduling or pretrial order may result in preclusion." *Advanced Analytics,* 301 F.R.D. 31 at 35 (citations omitted). Rule 16(f)(2) *mandates* a court to hold a party or its counsel liable for expenses, including attorney's fees and costs for violating a scheduling order. *Id*.

### A.    Goldberg Has Demonstrated Bad Faith.

Before addressing the *Softel* factors, it is evident that Goldberg has demonstrated bad faith in not producing an expert report or sufficient expert disclosure under Rule 26(a)(2)(C). Indeed, Goldberg has wasted the time and resources of PPVA and this Court, and he has taken advantage of PPVA's good-faith conduct in discovery. He propounded duplicative demands for documents produced to him four years ago after an arduous and protracted discovery process. He then forced PPVA to oppose a motion to compel documents that were in his possession for four years under the guise that the documents were necessary to prepare his damages analysis and expert report. After the Court denied Goldberg's demand for duplicative discovery, he requested a re-production of these documents, as well as the production of CohnReznick materials in a format beyond the standard ESI protocols employed by the parties throughout this case. PPVA graciously complied,

19

at its own time and expense.  After these documents were produced, PPVA granted Goldberg's further request for an extension of time to serve his anticipated expert report on January 4, 2024. This was all with the expectation that PPVA was to receive a robust expert report compliant with the Federal Rules of Civil Procedure.  Instead, Goldberg served a completely inadequate expert disclosure that does not meet the requirements of Rule 26(a)(2)(C), naming *himself* as an expert witness.  These facts alone demonstrate bad faith.  *See Travelers Prop. & Cas. Corp. v. Gen. Elec. Co.*, 150 F. Supp. 2d 360, 367 (D. Conn. 2001) (finding that the plaintiff's expert disclosure amounted to bad faith where the expert submitted a three-page expert report, which was inadequate for the scope and magnitude of the case).

Goldberg has also misled this Court and failed to abide by the Court's directives and scheduling orders.  Every relevant court conference contemplated Goldberg serving an expert report (*see* Dkt. No. 85 at 10; Dkt. No. 77, at 6, 12-13), and each scheduling order in this case has set a deadline for expert *reports*, not expert disclosures (*see* Dkt. Nos. 68, 70, 76, 95).  In fact, it is clear that while unnecessarily burdening PPVA and this Court with illegitimate demands, Goldberg never intended to retain an expert or file a report.  The Court should not allow this bad-faith conduct to stand and should grant PPVA's motion to preclude Goldberg from offering himself, or any other expert, on the damage valuation at issue in this case.  *Miranda v. Haywood*, No. 09-CV-1328 (ENV), 2010 WL 11651743, at *4-6 (E.D.N.Y. May 26, 2010) (precluding expert where plaintiffs failed to obey court orders); *Arnold v. Krause, Inc.*, 232 F.R.D. 58, 69 (W.D.N.Y. 2004), *aff'd and adopted*, 233 F.R.D. 126 (W.D.N.Y. 2005) (finding bad faith where the plaintiff refused to obey scheduling orders, noting "[a]dherence to reasonable court deadlines is critical to restoring integrity in court proceedings.") (citations omitted).

Although Goldberg has demonstrated bad faith, a bad faith finding is not required before sanctions can be imposed under Rule 37(c)(1).  *Advanced Analytics*, 301 F.R.D. at 36.

### B.    The *Sofitel* Factors Weigh In Favor of an Order of Preclusion.

Under the first *Softel* factor, Goldberg's failure to provide an expert report or expert disclosure compliant with Rule 26(a)(2)(C) is inexplicable.  Liability and damages discovery was never bifurcated, and as of May 2019, Goldberg possessed 2,124 documents, totaling 40,494 pages to support an expert damages opinion.  He knew as of Judge Chapman's May 10, 2022 summary judgment decision that the only issue remaining in this case was damages, and an expert report would be required to support his defense.  Goldberg was also directed by this Court at the March 2, 2023 status conference to serve an expert report by June 30, 2023, and a scheduling order was entered to effectuate these deadlines to serve expert *reports*.  Multiple scheduling orders were thereafter entered by this Court in April and June 2023 setting extended deadlines for the parties to serve expert *reports*, without any mention of expert disclosures under Federal Rule of Civil Procedure 26(a)(2)(C).  Instead of retaining an expert and preparing his rebuttal report, Goldberg propounded further document demands and filed a motion to compel that was almost entirely denied.  As represented by Goldberg's counsel at the June 13, 2023 status conference and the September 20, 2023 motion to compel hearing, these documents were necessary for Goldberg to prepare his expert *report*.  Per the Court's decision at the motion to compel hearing, PPVA promptly produced CohnReznick documents with the understanding that Goldberg's independent expert would utilize these documents to draft a report compliant with the Federal Rules.

The record demonstrates that Goldberg had sufficient documents and time to prepare his expert report, and it was PPVA and the Court's understanding that he would do so.  Given the factual record, Goldberg cannot possibly explain his inability to provide an expert report, as ordered by this Court, or even a satisfactory expert disclosure.  Therefore, this factor weighs in

favor of precluding Goldberg as an expert and any expert testimony as to damages. *Advanced Analytics*, 301 F.R.D. at 40-41 (finding that the first Rule 37(c)(1) factor favored preclusion of expert where documents were available for "well over a year" and "some materials have been in [the plaintiff's] possession for nearly seven years."); *Arnold*, 232 F.R.D. at 68 (finding that the first Rule 37(c)(1) factor weighed in favor of preclusion where the plaintiff was granted a "generous" period of discovery and "additional generous extensions of the Scheduling Order").

Second, Goldberg's failure to provide a timely and sufficient expert disclosure is not absolved by the potential importance of his purported expert opinion. While damages is the only issue remaining in this case, any purported importance of expert testimony to support Goldberg's damages defense must be considered in light of the burden that Goldberg has placed on PPVA. Indeed, Courts in this circuit have held that, even where, for the sake of argument, expert testimony is important to a party's case, preclusion is still appropriate where the other factors weigh in favor of precluding the testimony. *See Arnold*, 232 F.R.D. at 68; *Design Strategy*, 469 F.3d at 296-97. Of course, Goldberg himself is not important to the damages valuation. Even if he is a qualified expert—which PPVA does not admit—he is the defendant in this case and undoubtedly has a self-serving interest in any damages analysis. Goldberg could have retained an outside expert, but chose not to do so. *See Capricorn*, 2019 WL 5694256, at *7 (precluding expert witness that was not necessary to the plaintiff's case). It is moreover apparent that he does not intend to opinion valuation at all, but rather intends to relitigate liability. As such, and considering the other *Softel* factors and the burden that Goldberg has placed on PPVA, this factor weighs in favor of preclusion.

Third, PPVA is prejudiced by Goldberg's refusal to serve an expert report and his insufficient expert disclosure. The face of Goldberg's disclosure is silent as to his purported opinions and the facts relied upon. As such, allowing Goldberg to serve as an expert witness would

prejudice PPVA's ability to "accommodate potentially significant shifts in theories being offered" against it. *Capricorn*, 2019 WL 5694256, at *8 (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 962 (2d Cir. 1997)). Moreover, having Goldberg serve as his own expert incurably blurs the lines between fact and expert discovery, which raises issues under Rules 403 and 702 at trial. *See Ordon v. Karpie*, 543 F. Supp. 2d 124, 127-28 (D. Conn. 2006).

Allowing Goldberg another opportunity to submit an expert report actually compliant with the Federal Rules will also significantly prejudice PPVA because this Court will be forced to extend or re-open expert discovery beyond the current deadlines in a case that has already dragged out five years due to Goldberg's efforts to avoid judgment. *See Point 4*, 2013 WL 4409434, at *15 (finding prejudice with additional litigation costs from re-opening expert discovery). This is especially prejudicial considering the extensive litigation costs that PPVA has already expended in pursuing its claims "in accordance with the reasonable deadlines of the court established at the parties' behest." *Arnold*, 232 F.R.D. at 69. Indeed, permitting Goldberg "to avoid preclusion under the circumstances presented would render the court's scheduling orders in this case of hollow import and severely undermine the court's duty to manage its docket by commanding compliance with orders[.]" *Id.* Accordingly, the prejudice factor heavily weighs in favor of preclusion of any expert testimony Goldberg may propound.

The fourth *Softel* factor requires that this Court "determine whether a continuance would mitigate the possibility of prejudice" against PPVA. *Lidle v. Cirrus Design Corp.*, No. 08 Civ. 1253 (BSJ)(HBP), 2009 WL 4907201, at *7 (S.D.N.Y. Dec. 18, 2009). Even if a trial date has not been set, a Court may still find that a continuance is not appropriate if the case has been ongoing for an extended period of time. *See Curcio v. Roosevelt Union Free School Dist.*, No. 10-CV-5612 (SJF)(AKT), 2012 WL 6641715, at *6 (E.D.N.Y. Dec. 19, 2012) ("Given that this case has

23

been pending for two (2) years and plaintiff has not offered an acceptable justification for his conduct, the possibility of a continuance weighs in favor of preclusion."); *see also Advanced Analytics*, 301 F.R.D. at 41-42; *Point 4 Data Corp.*, 2013 WL 4409434, at *15. Goldberg has had substantially all documents to produce an expert report since April 2019 and has known for years that an expert report would be required. And the CohnReznick documents produced by PPVA on October 30, 2023 apparently were not utilized in any way by Goldberg despite his representations to the Court that they are critical to a damages analysis. Thus, a continuance is not appropriate in this case, as it would "serve no purpose except to encourage the parties to disregard the Court's scheduling order[s]." *Lidle*, 2009 WL 4907201, at *7. This *Softel* factor weighs in favor of preclusion of Goldberg serving as an expert witness and any potential expert witness Goldberg may offer.

**C.    Goldberg Should be Precluded from Offering any Expert Testimony under Rule 16(f) and the Court's Inherent Authority to Manage this Case.**

The Court should exercise its power under Rule 16 and its inherent authority to manage these proceedings to prevent Goldberg from offering himself as an expert or any other expert on his behalf. *See* Fed. R. Civ. P. 16(f)(1)(C). Goldberg has violated each scheduling order in this case, which called for the parties to submit expert reports on the provided deadlines. He has also disobeyed this Court's directives to file an expert *report.* This conduct, by itself, warrants preclusion. *See Advanced Analytics*, 301 F.R.D. at 38-39 (precluding expert declaration under Rule 16(f) and the court's inherent authority where the plaintiff unjustifiably failed to abide the scheduling order).

Moreover, Goldberg has misled and wasted the time of PPVA and this Court by representing that his duplicative document requests and motion to compel were necessary to produce an expert *report*, which he did not provide. His disclosure only adds insult to injury. This

Court should not condone this behavior. *Id*. at 35 (sanctions may be imposed where conduct is "wasteful of the time of the Court and opposing counsel.") (citation omitted). Precluding Goldberg from providing any expert testimony, from himself or anyone else, under Rule 16(f) and this Court's inherent authority are necessary to control these proceedings and prevent further bad faith, dilatory tactics.

### V.    PPVA Should be Awarded Costs and Attorney's Fees.

Pursuant to Rule 37(c)(1), Rule 16(f), and the Court's inherent authority to manage its proceedings, this Court should award PPVA costs and attorneys' fees. Under Rule 37(c)(1)(A), a court has discretion to "order payment of the reasonable expenses, including attorney's fees, caused by the failure" to satisfy Rule 26(a). Fed. R. 37(c)(1)(A). Rule 16(f)(2) *mandates* the award of reasonable expenses, including attorney's fees for an unjustified violation of a scheduling order. *Id*. Additionally, the Court has inherent power to assess attorney's fees against either party or counsel for "misconduct or the willful disobedience of a court order." *Advanced Analytics*, 301 F.R.D. at 37 (citations omitted).

As set forth, Goldberg has violated Rule 26(a)(2)(C) and multiple scheduling orders. This Court should award PPVA the fees and costs associated with making this Motion, including the cost of re-producing to Goldberg its second production and producing CohnReznick documents in PDF format. Indeed, Rule 16(f)(2) requires that PPVA receive payment for these costs and attorney fees. *See Pinello*, 2010 WL 11681621, at *6 (awarding costs and attorneys' fees for Rule 37(c) motion, noting that "[f]ailing to impose a sanction . . . would undermine the sanctity of a court order"). To the extent that the Court does not completely preclude Goldberg from offering any expert testimony in this case, PPVA should be awarded costs and attorneys fees for future expert discovery, including the costs of any future depositions. *See Benn v. Metro-North Commuter RR. Co.*, No. 3:18-cv-737 (CSH), 2019 WL 6467348, at *9 (D. Conn. Dec. 2, 2019).

25

## **CONCLUSION**

For the foregoing reasons, PPVA respectfully requests that the Court grant its Motion to Strike Goldberg's Expert Disclosure and its Motion to Preclude Goldberg from offering any expert testimony, and award PPVA its costs and attorneys' fees incurred in connection to Goldberg's conduct and this Motion.

Dated: March 15, 2024
       New York, New York

                                    _/s   Qian Shen_____
                                         Warren E. Gluck, Esq.
                                         Robert J. Burns, Esq.
                                         Qian (Sheila) Shen, Esq.
                                         HOLLAND & KNIGHT LLP
                                         31 West 52nd Street
                                         New York, NY 10019
                                         warren.gluck@hklaw.com
                                         robert.burns@hklaw.com
                                         qian.shen@hklaw.com
                                         Tel:   (212) 513-3200
                                         Fax:   (212) 385-9010