IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____

PLATINUM PARTNERS VALUE ARBITRAGE FUND
L.P. (IN OFFICIAL LIQUIDATION), et al.,

                Debtors in Foreign Proceedings.

_____

PLATINUM PARTNERS VALUE ARBITRAGE FUND
L.P.,

                      Plaintiff,

                  -vs-

MICHAEL M. GOLDBERG,

                    Defendant.

_____

Chapter 15

Case No. 16-12925 (JPM)

(Jointly Administered)

Adv. Pro. No. 18-01650


**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION TO STRIKE**


LAW OFFICE OF MARK R. KOOK
Mark R. Kook
1180 Avenue of the Americas, 8th Floor
New York, NY 10036
Tel.: (917) 673-9869
mkook@kooklaw.com

## **<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ................................................................................ <u>1</u>

ARGUMENT ...................................................................................................... 3

I.     The Moving Brief's "Relevant Procedural History" Section
       Is Rife With False Statements And Factual Inaccuracies ................................... 3

II.    Dr. Goldberg Is Fully Qualified and Properly Designated to
       Provide Certain Limited Expert Testimony In This Action................................. 6

III.   Dr. Goldberg's Fed. R. Civ. P. 26(a)(2)(C) Disclosure  Properly Discloses His Proposed
       Expert Testimony............................................................................... 12

IV.   The Balance of PPVA's Arguments Are Without Merit ................................. 18

CONCLUSION................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*Caruso v. Bon Secours Charity Health Sys., Inc.*,
   703 F. App'x 31, 33 (2d Cir. 2017) .......................................................................... 12

*E.E.O.C. v. Locals 14 & 15, Int'l Union of Operating Eng'rs*,
   No. 72 Civ. 2498 (VLB), 1981 WL 163 (S.D.N.Y. Feb. 11, 1981) ........................... 6

*Independent Living Resources v. Oregon Arena Corp.*,
   982 F. Supp. 698 (D. Oregon 1997) .......................................................................... 9

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
   No. 16-CV-1318 (GBD) (BCM), 2021 U.S. Dist. LEXIS 200928 (S.D.N.Y. Sept. 30, 2021)... 9

*Knowledge Based Techs., Inc. v. Int'l Bus. Machs. Corp.*,
   No. 96 CIV. 9461(JSR), 1998 U.S. Dist. LEXIS 4602 (S.D.N.Y Apr. 8, 1998) ..................... 10

*Kowalski v. YellowPages.com, LLC*,
   No. 10 Civ. 7318(PGG), 2012 U.S. Dist. LEXIS 465539 (S.D.N.Y. Mar. 31, 2012).............. 16

*Lippe v. Bairnco Corp.*,
   288 B.R. 678, 687 (S.D.N.Y. 2003), aff'd 99 Fed. App'x 274 (2d Cir. 2004).......................... 8

*Michel v. Yale Univ.*,
   No. 3:20-CV-01080 (SALM), 2022 U.S. Dist. LEXIS 186114 (D. Conn. Mar. 30, 2022) ...... 15

*Outley v. City of New York*,
   837 F.2d 587, 591 (2d Cir. 1988) ...................................................................... 18, 21

*Perfect 10, Inc. v. Giganews, Inc.*,
   No. CV 11-07098-AB (SHx), 2014 WL 10894452 (C.D. Cal. Oct. 31, 2014) .......................... 7

*Pitterman v. Gen. Motors LLC*,
   3:14-CV-00967 (JCH), 2016 U.S. Dist. LEXIS 64436 (D. Conn. May 16, 2016) .................. 16

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., LTD.*,
   No. 11-CV-726 (CBA), 2013 U.S. Dist. LEXIS 109298 (E.D.N.Y. Aug. 2, 2013) ................ 15

**Statutes**

Fed. R. Civ. P. 26(a)(2) ............................................................................................ passim

Fed. R. Civ. P. 26(a)(2)(B) ................................................................................ 5, 8, 12

Fed. R. Civ. P. 26(a)(2)(C) ...................................................................................... passim

Fed. R. Civ. P. 26(e) ...................................................................................................... 4

Fed. R. Civ. P. 37(c)(1) and 16(f) .............................................................................. 1

Fed. R. Civ. P. 37 .......................................................................................................... 7

Fed. R. Evid. 702 ............................................................................................................ 1, 5, 6, 9

Defendant Michael M. Goldberg, M.D. ("Dr. Goldberg") respectfully submits this Memorandum of Law in Opposition to the motion (the "Motion") of Plaintiff Platinum Partners Value Arbitrage Fund L.P. (In Liquidation) ("PPVA") to strike Dr. Goldberg's expert disclosure pursuant to Fed. R. Civ. P. 26(a)(2)(C)[1] and to preclude expert testimony pursuant to Fed. R. Civ. P. 37(c)(1) and 16(f).

## PRELIMINARY STATEMENT

In its memorandum of law in support of its Motion (the "Moving Brief") PPVA portrays a counterfactual universe in which (i) parties may somehow be found to have acted in bad faith for successfully compelling discovery, (ii) one party is permitted to dictate the issues to be tried *and* their adversary's discovery and trial strategies, (iii) scheduling orders setting deadlines after which parties are precluded from serving expert disclosures actually mandate that particular types of experts be retained and particular types of reports produced, and (iv) parties may move to preclude a witness from testifying based on what they *assume* (or, more accurately, self-servingly posit) the witness may testify to, without regard to what the witness actually intends (and discloses he intends) to testify to. The dystopian universe presented in the Moving Brief bears no resemblance to factual reality nor to the fair, equitable proceedings conducted in this Court. As such, the arguments made by PPVA in their misguided presentation must fail.

Fed. R. Evid. 702 provides that

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion *or otherwise* if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

---

[1]    Fed. R. Civ. P. 26 is incorporated by reference in its entirety into the Fed. R. Bank. P. through Fed. R. Bank. P. 7026. For the sake of brevity, this memorandum of law will refer to the substantive provisions of the Fed. R. Civ. P. relevant to Dr. Goldberg's argument and will omit citations to the Fed. R. Bank. P. incorporating them by reference.

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

*Id.* (emphasis added).

Dr. Goldberg's expert disclosure pursuant to Fed. R. Civ. P. 26(a)(2)(C) (the "Disclosure") gives notice to PPVA that Dr. Goldberg, who will be tendered as a fact witness at the damages trial,[2] also intends to present testimony on the following topics:

- The effect of the terms of that certain First Omnibus Amendment to the Binding Term Sheet entered into between Platinum Management (NY) LLC and Dr. Goldberg effective as of June 11, 2015 (the "Separation Agreement") *on the value of securities transferred to Dr. Goldberg pursuant to the Separation Agreement*.

- The effect of the terms of the Separation Agreement *on the value of that certain warrant to purchase 5,411,850 common shares on or before August 20, 2035 (the "Warrant") of Navidea Biopharmaceuticals, Inc. ("Navidea") that is the subject of this adversary proceeding*.

- Deficiencies *in the valuation of the Warrant* provided by Plaintiff's designated expert witness.

- Such other issues *concerning the value of the Warrant* raised by Plaintiffs at trial or properly submitted in Dr. Goldberg's defense/rebuttal in this Adversary Proceeding.

Disclosure at 1 (emphasis added). Dr. Goldberg believes that this testimony will be helpful to the Court (as the fact-finder at the bench trial on damages) in evaluating the value of the Warrant, the reliability and relevance of PPVA's expert valuation of the Warrant and the amount, if any, of damages to which PPVA may be entitled. Although it is not clear that any

---

[2]    If PPVA wishes to make a motion to preclude fact-witness testimony on specific topics prior to trial the Court will presumably provide an opportunity to do so in its pre-trial order. If PPVA wishes to object to specific testimony at the *bench* trial on damages on relevance or other grounds it is free to do so. However, PPVA's effort to preclude Dr. Goldberg from appearing as a witness based on topics that PPVA self-servingly "assumes" he intends to testify on or their purpose finds no support in the Bankruptcy Rules or in any order of this Court, and PPVA cites no such authority.

disclosure was required, out of an abundance of caution Dr. Goldberg served the Disclosure because these topics may venture into areas that could be deemed "evidence under Federal Rule of Evidence 702, 703, or 705" in the area of valuation of the Warrant.[3]

As part of its counter-factual presentation, PPVA rehashes what it apparently perceives to be a winning, if irrelevant, argument – that Dr. Goldberg seeks to relitigate "liability" through the testimony identified in the Disclosure.  However, the Disclosure makes clear that each areas of testimony identified relates solely to the *value* of the Warrant – *i.e.*, the topic PPVA claims (inaccurately) is the *only* topic for the damages trial[4] and that *not a single one* of the topics relates to "liability."[5]

Because the Disclosure fully and properly discloses the topics that Dr. Goldberg intends to testify to at trial that may be deemed "evidence under Federal Rule of Evidence 702," and because the arguments set forth in PPVA's Moving Brief are based on false factual premises, are legally deficient or are irrelevant, the Motion should be denied.

## ARGUMENT

### I.    The Moving Brief's "Relevant Procedural History" Section Is Rife With False Statements And Factual Inaccuracies

---

[3]    Fed. R. Civ. P. 26(a)(2)(C) *does not* require that the disclosing party provide a summary of the disclosed witness's qualifications to present such evidence.  However, PPVA is well aware that "Beginning in 2007, Goldberg served as a portfolio manager for Platinum [Management (NY) LLC]" until he left that position as of December 11, 2013 pursuant to the separation agreement (the "Separation Agreement") giving rise to PPVA's claims in this action. *See* Modified Bench Decision and Order on Cross-Motions for Summary Judgment [Dkt. No. 44] at 3; Separation Agreement at 1, Background [Dkt. No. 20 at 32].

[4]    The issue at the damages trial will be what, if any, amount of damages PPVA may be entitled to based on the earlier ruling that Dr. Goldberg improperly received assignment of the Warrant.  While the value of the Warrant at any particular time may or may not be one fact relevant to that determination, all facts that the Court rules relevant to the actual amount of damages, if any, that PPVA may be entitled to will be appropriate topics for testimony at the trial.

[5]    PPVA's argument that Dr. Goldberg *intends* to "relitigate" liability is particularly ironic since PPVA has no knowledge of Dr. Goldberg's trial strategy.  It is also quite ironic given that PPVA spends pages of its Moving Brief (Moving Brief at 4-7) either attempting to relitigate this Court's ruling compelling PPVA to produce certain documents concerning damages, or, at best, complaining about it.

3

The counter-factual nature of PPVA's arguments is nowhere more apparent than in the "Relevant Procedural History" section of the Moving Brief.

First, at the outset of the section, PPVA asserts in a false section heading that "PPVA Produced *All* Damages Related Documents When Fact Discovery Was Open Four Years Ago." (Moving Brief at 4, emphasis added.)  As the Court is aware, this statement is patently false.  In fact, on September 20, 2023 the Court ordered PPVA to produce documents relating to damages that PPVA obtained from its auditors, CohnReznick, in 2019, which the Court noted PPVA did not possess when it responded to Dr. Goldberg's fact discovery requests for production.  (*See* Transcript of Proceedings on September 20, 2023, Kook Aff. Ex. 2 at 20-21.)  Notably, although the Court clearly determined that these documents were relevant to damages, and although PPVA argued that Dr. Goldberg's damages discovery requests were wholly duplicative of his earlier requests, PPVA *did not* supplement its earlier production as required by Fed. R. Civ. P. 26(e)[6] and argued vigorously that it should not be required to produce the CohnReznick documents or any of the other documents the Court ordered produced.

Second, Dr. Goldberg's request for an extension of his expert designation deadline was based on the fact, clearly stated by PPVA in its Moving Brief (at p. 7), that in response to the Court's order that PPVA produce the CohnReznick documents and other damages-related documents PPVA produced 163,426 pages of materials.  As PPVA acknowledges, PPVA consented to Dr. Goldberg's request for an extension of the expert designation deadline.  This same section refutes PPVA's claim that Dr. Goldberg committed to producing a report of a retained expert when it acknowledges that Dr. Goldberg requested the 60-day extension in order

---

[6]    The Court specifically held that the CohnReznick documents fell squarely within the scope of Dr. Goldberg's earlier documents requests.  Transcript of Proceedings, Kook Aff. Ex. 2 at 21.

to review the 163,426 pages of CohnReznick documents and thereafter "advise re *any* expert."
(Moving Brief at 7.)

Third, PPVA either misunderstands (or feigns misunderstanding of) the purpose of Fed.
R. Civ. P. 26(a)(2)(C). Unlike the expert requirements imposed for experts retained specifically
to provide "evidence under Federal Rule of Evidence 702, 703, or 705" who are required to
produce a formal report by Fed. R. Civ. P. 26(a)(2)(B), Fed. R. Civ. P. 26(a)(2)(C) applies to
witnesses who are not retained as experts but are qualified by training or experienced to provide
evidence on specialized topics that fall under Federal Rule of Evidence 702, 703, or 705.
Witnesses for which Fed. R. Civ. P. 26(a)(2)C) disclosures are provided are frequently
individuals, including parties, who are involved in the facts giving rise to litigation and who will
also serve as fact witnesses. There is no suggestion in Fed. R. Civ. P. 26(a)(2)(C) that an
individual for which a disclosure is served pursuant to that rule cannot also serve as a fact
witness. *See* Fed. R. Civ. P. 26(a)(2)(C).

In this case, Dr. Goldberg will be tendered as a fact witness at trial to testify to certain
facts that Dr. Goldberg believes are relevant to determining what, if any, damages PPVA may be
entitled to. Because he is also qualified by education and experience (including an MBA and
decades of investing and providing investment advice in the biotechnology space, including to
PPVA through its manager, Platinum Management) he will also discuss how the existence and
terms of the Separation Agreement would impact an analysis of the value of the Warrant. These
topics are clearly disclosed in the Disclosure. At the conference, Dr. Goldberg's counsel noted
that Dr. Goldberg will be a fact witness at the trial on certain topics. PPVA's attempt to argue
that Dr. Goldberg may not offer factual testimony as a party to this action simply because he will
also offer certain testimony on topics potentially falling under Fed. R. Evid. 702, 703 or 705 is

baseless, and PPVA – not surprisingly – ignores this issue and presents a counter-factual

argument that Dr. Goldberg is bound by limitations applicable to retained experts who have no

first-hand knowledge of facts.

### II. Dr. Goldberg Is Fully Qualified and Properly Designated to Provide Certain Limited Expert Testimony In This Action

PPVA begins its "Argument" in support of the Motion with yet another dystopian

argument:  that Dr. Goldberg cannot serve as an "independent 'source of information,' rather

than his own advocate."  (Moving Brief at 9.)  However, Dr. Goldberg is not suggesting –

including through his designation pursuant to Fed. R. Civ. P. 26(a)(2)(C) – that he is an

"independent" source of information.  Nor is he seeking to be offered to the finder of fact as

such.[7]  For this reason, the authority cited by PPVA in support of this argument is wholly

inapposite and does not support PPVA's Motion.

*E.E.O.C. v. Locals 14 & 15, Int'l Union of Operating Eng'rs*, No. 72 Civ. 2498 (VLB),

1981 U.S. Dist. LEXIS 11194 (S.D.N.Y. Feb. 11, 1981), involved a plaintiff's attempt to

disqualify a retained expert of the opposing party because the expert had previously consulted

with the plaintiff.  It did not involve a party seeking to testify as an expert witness.  *Id.* at *4.

The plaintiff sought to rely on Cannon 5 of the Code of Professional Responsibility (this was a

1981 case) which addressed conflicts of interest by *attorneys*.  *Id.* at *1-2.  The court rejected the

argument that the retained expert was bound by attorney conflict of interest rules and permitted

him to testify.  *Id.* at *8-17.  The statement quoted by PPVA, that "experts 'do not serve as

advocates, but as sources of *information*'" utterly fails to support PPVA's argument on any

---

[7]    Even if one could argue that a jury might be misled if Dr. Goldberg was introduced as an "independent" expert, that could not occur in this adversary proceeding.  First, the damages trial in this action will be a bench trial and the Court is obviously aware that Dr. Goldberg is a party.  Second, Dr. Goldberg will also testify with personal knowledge about certain facts relevant to damages and it would be obvious to any finder of fact that he was personally involved in the facts and circumstances giving rise to this action even though he is qualified by training and experience to testify to certain issues under Fed. R. Evid. 702, 703 and 705.

level.  First, the reference to "advocates" in *E.E.O.C.* referred to attorneys and was intended to explain why conflict of interest rules applicable to attorneys are not applicable to retained witnesses.  *Id.* at *9-10.  Second, the expert witness in *E.E.O.C.* was a *retained* expert, not a witness designated pursuant to Fed. R. Civ. P. 26(a)(2)(C) as is the case with Dr. Goldberg.  *Id.* at *4.  Third, this quote makes clear that even a retained expert witnesses can be sources of "information" in addition to opinions.

In *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2014 U.S. Dist. LEXIS 185066 (C.D. Cal. Oct. 31, 2014), involved a *Daubert* motion seeing to preclude expert testimony "on the grounds that Dr. Zada is inherently conflicted and incapable of offering expert testimony, that Dr. Zada lacks qualification to offer any of his opinions, and that the opinions are inherently speculative," *not* a motion to strike an expert disclosure pursuant to Fed. R. Civ. P. 37.  *Id.* at *2.  The court was considering the admissibility of expert testimony offered by the CEO and owner of the plaintiff who the Court noted "has never testified as an expert witness in any litigation before, has never published any books or peer-reviewed articles on any relevant topics at issue in this action, has no relevant academic training, and has virtually no understanding of Usenet technologies or Defendants' server-side operations  *Id.* at 3-4 (internal citations omitted).  In precluding the individual from testifying as a retained expert the court relied not on bases to strike an expert designation, but on the court's "inherent power" to control proceedings.  When discussing the basis for its decision, the court stated that:

> To begin with, the Court shares Judge Collins' skepticism that Dr. Zada qualifies as an expert for the purposes of this litigation at all. (See Dkt. No. 180, p. 5 (raising "serious questions" about Dr. Zada's prior testimony in declaration which rose to the level of "expert testimony that Zada is not qualified to give"). To the extent Dr. Zada's testimony on Defendants' "repeat infringer" policies and the amount of infringement found on Defendants' Usenet servers amounts to anything more than raw speculation, it is only because he is testifying from his own observations as a lay witness.

*Id.* at *18.

In the Motion, PPVA does not question Dr. Goldberg's qualification as an expert on valuing

securities.  In fact, Dr. Goldberg provided precisely that type of advice to PPVA for years as an

investment advisor to PPVA's manager, PPVA Management.  It is also notable that the

individual at issue in *Perfect 10* was not a named party, so his financial interest was not

completely apparent, and that the case in *Perfect 10* was to be tried before a jury (*id.* at *18).

Here, Dr. Goldberg is a party (the *only* defendant) in this action, and this is a bench trial, so the

Court is fully capable of assessing Dr. Goldberg's testimony in light of his readily apparent

interest in the outcome of the case.

*Lippe v. Bairnco Corp.*, 288 B.R. 678, 687 (S.D.N.Y. 2003), aff'd 99 Fed. App'x 274 (2d

Cir. 2004), also did not involve a non-retained witness designated pursuant to Fed. R. Civ. P.

26(a)(2)(C) but, rather, an individual proffered as a retained expert, who provided a 129-page

expert report pursuant to Fed. R. Civ. P. 26(a)(2)(B).  *Id.* at 681-682.  The court had previously

issued an order limiting the scope of testimony the individual would be permitted to present at

trial

> in part because much of Carney's proposed testimony was improper, as he was
> proposing to tell the jury what result to reach – that defendants had engaged in
> fraudulent conveyances. He was proposing to tell the jury that defendants'
> witnesses were not to be believed and that their "real purpose" was "to remove the
> most valuable and promising business assets that Keene owned from the reach of
> its asbestos creditors.

*Id.* at 682.  The court in *Lippe* further ruled that, contrary to the representations of the party

propounding the individual as a retained expert, the individual had been retained as *counsel*

rather than an expert witness.  *Id.* at 683-684.  The court held that counsel for a party could not

act as a retained witness:

his report and deposition testimony make clear, Carney was going to do his best
to persuade the jury that the "business purpose" of the transactions in question
was an improper one – that defendants' "real purpose," their true motivation, in
engaging in the transactions was to hide the assets from asbestos creditors.
Plaintiffs envisioned that Carney would testify to and summarize the relevant
facts (as to which he had no personal knowledge) and then opine – or, more
accurately, argue – that defendants were intending to defraud asbestos claimants
by engaging in fraudulent transactions. But this is what a lawyer does in his or her
summation to the jury. This is not the function of an expert witness. Carney's
views as to the credibility of defendants' witnesses and defendants' "real"
motivations are simply not relevant

*Id.* at 688.  The passages from *Lippe* quoted by PPVA were included in a section of the decision

in which the court made clear that it would not permit the individual to "offer[] a personal

evaluation of the testimony and credibility of others or the motivations of the parties."  *Id.* at

687.  In *Lippe* the expert had included these assessments in his report pursuant to Fed. R. Civ. P.

26(a)(2)(B) and intended to present that testimony at trial.  *None* of these issues or topics are

identified in Dr. Goldberg's Disclosure and he does not intend to testify as to those types of

issues at trial.  Moreover, further distinguishing this case from *Lippe* is the fact that Dr. Goldberg

is not being offered as a retained expert but is a party who will present certain disclosed

testimony concerning issues potentially within the purview of Fed. R. Evid. 702, 702 or 705.  He

*is not* being offered as (or represented to be) an "objective," "disinterested" witness.

Notably the court in *Lippe* specifically recognized that "[t]he reliability requirements do

not preclude an expert from testifying on the basis of experience alone or in conjunction with

other knowledge, training, skill, or education" and that "[r]ejection of expert testimony . . . is

still the exception rather than the rule, and the trial court's role as gatekeeper is not intended to

serve as a replacement for the adversary system." *Id.* at 686 (quoting *United States v. 14.38*

*Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)) (internal quotations and citations omitted).

In an odd attempt to support its argument PPVA engages in what can best be described as "pretzel logic" by seeking to rely on cases in the Southern District of New York which *did* allow employees of parties to testify as expert witnesses on behalf of their employer-parties for the proposition that they somehow support the exclusion of parties themselves as expert witnesses. The very language of the cited cases, as well as the most rudimentary principles of logic, definitively refute PPVA's argument.

For example, in *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2021 U.S. Dist. LEXIS 200928 (S.D.N.Y. Sept. 30, 2021), the court permitted an individual who was the Chief Technical Officer of a company that had directed the plaintiff to commence the lawsuit and was paying the plaintiff's cost of prosecuting the case to testify as an expert witness for the plaintiff. *Id.* at *5. The court cited several cases in which party-related, interested witnesses were permitted to testify as expert witnesses in trials in the Southern District of New York:

> *See Tedone v. H.J. Heinz Co.*, 686 F. Supp. 2d 300, 311 (S.D.N.Y. 2009) (the fact that a proposed expert is an "interested witness" "does not automatically disqualify him from rendering expert testimony"); *Keystone Mfg. Co. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 568 (W.D.N.Y. 2005) (arguments "may be raised on cross-examination at trial on the issues of [his] bias and credibility, and the appropriate weight, if any, to be afforded his expert testimony").

*Id.* at *53-54. The court then laid out its rationale for allowing the testimony in very plain terms:

> Dietrich is biased — which will be plain to the trier of fact, with or without an interested witness charge — and his prior testimony in this action was not without difficulties. Nonetheless, he is knowledgeable about the IPTV business in general and has a deep technical understanding of the function of STBs and middleware. Under the circumstances, the Court will exercise its discretion to permit him to testify, within the bounds of Rule 702.

*Id.* at 54-55. Notably, the reference to jury charges makes clear that the *Ifomir* case would be tried to a jury. The court nonetheless concluded that the witness's bias would be evident and that even a jury could easily weigh his credibility in light of that bias.

*Knowledge Based Techs., Inc. v. Int'l Bus. Machs. Corp.*, No. 96 CIV. 9461(JSR), 1998

U.S. Dist. LEXIS 4602 (S.D.N.Y Apr. 8, 1998), likewise permitted officers and directors of a

party to testify as expert witnesses. The court put its rationale in very blunt terms:

> Claims of bias and self-interest could fairly be levelled at a great many experts
> whose testimony is routinely admitted in federal courts. In the case of experts who
> themselves are parties or employees of parties, such biases are, if anything, more
> obvious than in the case of hired experts and hence are readily assessable by a
> jury. Accordingly, courts routinely permit expert testimony by parties, employees,
> and others with financial and other plain interests in the outcome of the litigation,
> *see, e.g., Independent Living Resources v. Oregon Arena Corp.*, 982 F. Supp. 698,
> 784 n.116 (D. Or. 1997) (collecting cases); *In re Agent Orange Product Liability
> Litig.*, 611 F. Supp. 1267, 1279-80 (E.D.N.Y. 1985), aff'd, 818 F.2d 187 (2d Cir.
> 1987). *See also Manufacturing Research Corp. v. Graybar Elec. Co.*, 679 F.2d
> 1355, 1366 (11th Cir. 1982); *Dunn v. Sears, Roebuck & Co.*, 639 F.2d 1171, 1174
> (5th Cir. 1981), modified on other grounds, 645 F.2d 511 (5th Cir. 1981); cf.
> *Proteus Books, Ltd. v. Cherry Lane Music Co.*, 873 F.2d 502, 515 (2d Cir. 1989).
> Whatever their self-interests, Messrs. Prezioso and Goetz are highly
> knowledgeable of the complex computer code at issue in this case, as well as the
> underlying factual allegations in controversy. They are entirely distinguishable
> from "advocates for a cause" who hawk their wares to many different plaintiffs,
> *Johnston v. United States*, 597 F. Supp. 374, 411 (D. Kan. 1984), or from experts
> who form their conclusions without ever knowing any of the specific facts of the
> particular cases in which they plan to testify, *see Viterbo v. Dow Chemical Co.*,
> 826 F.2d 420, 423 & n.2 (5th Cir. 1987).

*Id.* at *1-2. That reasoning is especially relevant here, since Dr. Goldberg not only has specific

expertise in the area he intends to provide expert testimony, he actually provided that very same

expertise to PPVA as a financial advisor to its manager, Platinum Management. Moreover, the

rationale in *Knowledge Based Tech's* is even more persuasive here, where the damages issue will

be tried to the Court, not a jury.

The *Independent Living Resources* case cited by Judge Rakoff in *IBM* is particularly

instructive. For example, in *Independent Living Resources*, 982 F. Supp. 698 (D. Oregon 1997)

the court held that:

> I reject defendant's argument that Robert Pike cannot offer expert testimony
> because he is a party to this action. In an era where experts frequently are little
> more than hired guns, lacking even a semblance of impartiality, there is little

justification to exclude the testimony of an otherwise qualified expert merely
because he or she also is a party to the action.  That is particularly true where trial
will be to the court rather than to a jury.

982 F. Supp. at 784.  As Judge Rakoff recognized, the court in *Independent Resources* cited a

series of cases permitting parties to testify as expert witnesses:

> Other courts have reached a similar conclusion. *See, e.g., Tagatz v. Marquette
> Univ.*, 861 F.2d 1040, 1042 (7th Cir 1988) (party may testify as expert);
> *Rodriguez v. Pacificare of Texas, Inc.*, 980 F.2d 1014, 1019 (5th Cir 1993)
> (same); *Dunn v. Sears, Roebuck & Co.*, 639 F.2d 1171, 1174 (5th Cir 1981)
> (employee of party may testify as expert witness); *Ampat/Midwest, Inc. v. Illinois
> Tool Works, Inc.*, 896 F.2d 1035 (7th Cir 1990) (same); *Scheidt v. Klein*, 956 F.2d
> 963, 968 (10th Cir 1992) (party or his employee may testify as expert, though
> probably dictum). Bias ordinarily is grounds for impeaching, not excluding, the
> expert's testimony. *Rodriguez*, 980 F.2d at 1019; *Dunn*, 639 F.2d at 1174.

982 F. Supp. 698 at n. 116.

In sum, the weight of authority (even that authority cited by PPVA) weighs strongly in

favor of this Court allowing Dr. Goldberg to testify, and assessing his credibility in light of the

known fact that he is a party and the obvious fact that he has a financial interest in its outcome.

The cases cited by PPVA simply do not support the exclusion of expert testimony by a qualified

party in a bench trial.

### III. Dr. Goldberg's Fed. R. Civ. P. 26(a)(2)(C) Disclosure Properly Discloses His Proposed Expert Testimony

PPVA's argument that Dr. Goldberg's Designation does not comply with Fed. R. Civ. P.

26(a)(2)(C), like its other arguments, is counterfactual and illogical.  At the outset of its

argument, PPVA claims that "Goldberg's submission [*i.e.*, his Disclosure] is a bold-faced

attempt to sidestep Rule 26(a)(2)(B)'s requirement for an expert report and offer himself both as

a fact and expert witness under the 'considerably less extensive' requirements of Rule

26(a)(2)(C) . . .."  (Moving Brief at 13.)  However, in the immediately preceding paragraph

PPVA quotes Second Circuit authority which describes the distinction between a non-retained

expert like Dr. Goldberg who is merely required to serve a disclosure pursuant to Fed. R. Civ. P. 26(a)(2)(C) and a retained expert witness who must prepare a report pursuant to Fed. R. Civ. P. 26(a)(2)(B) as "between an expert who happened to have personal involvement with the events giving rise to the litigation and an expert whose only involvement consists of aiding the already-initiated litigation." (Moving Brief at 13 (citing *Caruso v. Bon Secours Charity Health Sys., Inc.*, 703 F. App'x 31, 33 (2d Cir. 2017).) Obviously, Dr. Goldberg – the sole defendant in this action – is "an expert who happened to have personal involvement with the events giving rise to the litigation" and *not* "an expert whose only involvement consists of aiding the already-initiated litigation." Accordingly, PPVA's argument that Dr. Goldberg is somehow trying to "sidestep" the requirements of Fed. R. Civ. P. 26(a)(2)(B) is not only counter-factual, it directly contradicts PPVA's own cited controlling authority from the Second Circuit (and the plain text of Fed. R. Civ. P. 26(a)(2(B) and (C).

PPVA's argument that Dr. Goldberg's Disclosure fails to comply with Fed. R. Civ. P 26(a)(2)(C) likewise fails. Fed. R. Civ. P. 26(a)(2) provides that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2). Fed. R. Evid. In turn provides that

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion *or otherwise* if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

*Id.* (emphasis added).  In this case, Dr. Goldberg does not intend to provide any opinion as to the value of the Warrant.  Rather, based on his knowledge, skill, experience, training and education he intends to testify as to technical, or other specialized knowledge concerning the way that the Separation Agreement would be reviewed by a potential purchaser of the Warrant and how that consideration would affect any attempt to arrive at a value of the Warrant.  This is fully disclosed in the Disclosure.

It is significant here that Dr. Goldberg is not disclosed to provide affirmative expert opinions.  Rather, he is identified in rebuttal to the retained expert proffered by PPVA.  That expert did not consider the potential impact of the Separation Agreement on the value of the Warrant when performing his valuation work or offering his *opinion* as to the precise value of the Warrant as of his assumed "Valuation Date."  Accordingly, Dr. Goldberg will explain to the trier of fact (in this case the Court) how the existence of the Separation Agreement and its terms would affect any valuation of the Warrant and should and would have been considered by any reasonable investor considering purchasing the Warrant.

There can be no doubt that the Disclosure fully discloses this intent, and gives PPVA notice of the scope of his intended testimony, when it discloses that Dr. Goldberg "intends to introduce testimony on the following subject matters and facts:"

- The effect of the terms of that certain First Omnibus Amendment to the Binding Term Sheet entered into between Platinum Management (NY) LLC and Dr. Goldberg effective as of June 11, 2015 (the "Separation Agreement") on the value of securities transferred to Dr. Goldberg pursuant to the Separation Agreement.

- The effect of the terms of the Separation Agreement on the value of that certain warrant to purchase 5,411,850 common shares on or before August 20, 2035 (the "Warrant") of Navidea Biopharmaceuticals, Inc. ("Navidea") that is the subject of this adversary proceeding.

- Deficiencies in the valuation of the Warrant provided by Plaintiff's designated expert witness.

14

- Such other issues concerning the value of the Warrant raised by Plaintiffs at trial or properly submitted in Dr. Goldberg's defense/rebuttal in this Adversary Proceeding.

(Disclosure at 1.) Dr. Goldberg does not intend to present an opinion on the value on any specific date (or at any time) of the Warrant. Rather, he intends to testify that the existence of the Separation Agreement and its terms would necessarily affect the value of the Warrant *at any time* the Warrant was subject to the Separation Agreement's terms. This testimony will be offered to rebut PPVA's expert valuation opinion, which does not take into account any impact of the Separation Agreement or its terms on the value of the Warrant. These topics are clearly disclosed in the Disclosure. Quite simply put, the Disclosure fully discloses "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts . . . to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

Finally, the cases cited by PPVA in support of its argument that Dr. Goldberg's Disclosure is deficient do not support its position. For example, *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., LTD.*, No. 11-CV-726 (CBA), 2013 U.S. Dist. LEXIS 109298 (E.D.N.Y. Aug. 2, 2013), involved an individual who was an officer of the plaintiff and who sought to offer testimony (in the form of a declaration in support of summary judgment) stating opinions about the copyrightability of certain of the plaintiff's products, including that certain elements of the products were "unique" and "constitutes copyrightable subject matter under title 17 of the United States Code." *Id.* at *30. However, the witness had never been disclosed. *Id.* at *21.

*Michel v. Yale Univ.*, No. 3:20-CV-01080 (SALM), 2022 U.S. Dist. LEXIS 186114 (D. Conn. Mar. 30, 2022), involved disclosures made by the plaintiff regarding three proposed expert witnesses pursuant to Fed. R. Civ. P. 26(a)(2)(C). *Id.* at *1-2. The disclosures stated that

the witnesses were "expected" to provide *opinions* regarding the relative cost and value of in-person versus online university educations (*id.* at *3), but, in fact, the attorney making the disclosure had never spoken to the purported experts (*id.* at *5) and they had never spoken to the plaintiff's counsel, had not agreed to act as expert witnesses and testified in the dispute concerning the adequacy of the disclosures that that they did not intend to testify in the case (*id.* at *5-6).  Moreover, the disclosures in *Michel*, which were for purported witnesses with *absolutely no* involvement in or knowledge of  the underlying facts (*i.e.*, retained witnesses) and stated that the witnesses were going to give detailed *opinions* but merely referred to prior publications by the witnesses on the identified topics.  *Id.* at *3.  The Court understandably rejected these purported *opinion* disclosures because:

> the disclosures merely summarize facts from the non-retained experts publications regarding the price or market value of online education versus in-person education. See Doc. #109 at 4-6. The disclosures fail to offer any understanding of how these experts would apply their general findings to the specific circumstances of this case.

*Id.* at *10.  Here, Dr. Goldberg has fully disclosed the facts he intends to testify to – the impact of the Separation Agreement and its terms on any valuation of the Warrant or other securities subject to its terms.

PPVA's citation to *Kowalski v. YellowPages.com, LLC*, No. 10 Civ. 7318(PGG), 2012 U.S. Dist. LEXIS 465539, at *9 (S.D.N.Y. Mar. 31, 2012), is disturbingly misleading.  In *Kowalski* the defendant sought to rely on its disclosure pursuant to Fed. R. Civ. P. 26(a)(2)(C) concerning a putative expert for the defense as evidence in opposition to the plaintiffs' motion for class certification.  *Id.*  Far from holding that the disclosure failed to satisfy Fed. R. Civ. P. 26(a)(2)(C) – or even *discussing* the sufficiency of the disclosure – the court merely held that the disclosure was an attorney statement of the subjects upon which the putative expert would testify at trial, and was not *evidence* that could be relied upon at the class certification stage.  The

decision makes apparent that court "struck" the disclosure as "evidence" in opposition to the motion, not as an expert disclosure pursuant to Fed. R. Civ. P. 26(a)(2)(C):

> The purpose of Rule 26 disclosures is to alert the opposing party that the witness may be called to support the party's claims and further, that the opposing party may need to take discovery from that named witness . . . As Rule 26(a)(2)(C) disclosures are not themselves evidence, the Lee Disclosure will be disregarded. The disclosure is — as Plaintiffs point out — no more than a statement by defense counsel as to what Lee's testimony is expected to be.

*Kowalski* at *29.

It is true that the court in *Pitterman v. Gen. Motors LLC*, 3:14-CV-00967 (JCH), 2016 U.S. Dist. LEXIS 64436, at *3 (D. Conn. May 16, 2016), struck certain disclosures pursuant to Fed. R. Civ. P. 26(a)(2)(C) on the ground that "[t]he insufficiency of the plaintiffs' Rule 26(a)(2)(C) disclosures for these witnesses makes it impossible for the court to determine what opinions these witnesses plan to testify to," what PPVA does not disclose is that the import of that deficiency was that "[a]s a result, it is impossible for the court to say, without more information, whether these witnesses would qualify as expert witnesses." *Id.* at *6-7. There is no discussion of the contents of the disclosures, nor is there any discussion of *how* any deficiencies would prevent the court from judging the witnesses' qualifications (nor any discussion of how this is relevant since Fed. R. Civ. P. 26(a)(2)(C) does not require disclosure of the witness's qualifications, or even speak to that issue). *Id.* Moreover, PPVA fails to disclose that the Court in *Pitterman* gave the propounding party fourteen (14) days to supplement its disclosures as to these and other witnesses. *Id.* at *7.

Even if there were some reasonable claim that PPVA did not fully understand the scope of Dr. Goldberg's proposed testimony based on the disclosure, PPVA could simply have asked for clarification. And under the existing scheduling order PPVA was also entitled to depose Dr. Goldberg on or before March 2, 2023 (two months after the Disclosure was served) but elected

not to do so, presumably in an effort to manufacture some type of purported "prejudice" based on the Disclosure. Dr. Goldberg stands ready to provide any further clarification that the Court may deem appropriate and to sit for an additional deposition concerning the matters disclosed in the Disclosure if PPVA wishes to conduct one.

PPVA audaciously argues that Dr. Goldberg had "four years to analyze the issue of damages, receiv[ed] 204,438 pages of damages discovery, and [had] PPVA's expert report for seven months" before serving his Disclosure. As this Court is well aware, PPVA has the burden of proving damages and any amount of damages at trial, and Dr. Goldberg's Disclosure was served in rebuttal to PPVA's expert report. Thus, the "four years" that this litigation has been pending was not relevant to Dr. Goldberg's rebuttal of PPVA's expert. And while it is true that Dr. Goldberg received PPVA's expert report approximately seven months before he served his Disclosure, he only received PPVA's damages document production of 163,426 pages on October 30, 2023 (Kook Decl. ¶ 3), just two months before he served his Disclosure, and only after making a successful motion to compel. Thus, even ignoring the time it took Dr. Goldberg to review the 163,426 pages of damages discovery, he had no more than two months to make rebuttal expert designations.

## IV. The Balance of PPVA's Arguments Are Without Merit

PPVA makes several other arguments in support of its Motion, none of which have merit.

For example, PPVA argues that Dr. Goldberg intends to impermissibly testify about "facts." However, Dr. Goldberg is not a retained expert. He is a *party* to this litigation and, since the plaintiffs are merely liquidators for PPVA and played no role at PPVA during the time it was an operating business, he is the *only* party with any personal knowledge of the facts underlying this action. In arguing that he is not entitled to testify about "facts" PPVA once again reveals its (actual or feigned) ignorance regarding the nature of a Fed. R. Civ. P. 26(a)(2)(C)

disclosures.  They *do not* convert fact witnesses into a retained experts who are not permitted to

testify to underlying facts (because they rarely have personal knowledge of such facts).  They

*dos not* divest fact witnesses of historical factual knowledge.  And they *do not* provide a basis

for an opposing party to prevent the party from testifying as an ordinary witness.  Moreover, to

the extent PPVA rolls out a parade of potential horribles regarding impermissible subject matters

that Dr. Goldberg *may* seek to testify about at trial, PPVA is free to object at trial to any such

testimony (or to make motions to preclude testimony on specific subjects if the Court's pre-trial

procedures permit) and the Court is fully capable of precluding any improper testimony, or,

alternatively in the case of this bench trial, disregarding it when ruling.

PPVA also argues that if there is some deficiency found in the Disclosure the Court

should effectively impose the death penalty for such a first, minor offense.  However, as the

Second Circuit has repeatedly held, "[b]efore the extreme sanction of preclusion may be used by

the district court, a judge should inquire more fully into the actual difficulties which the violation

causes, and must consider less drastic responses."  *Outley v. City of New York*, 837 F.2d 587, 591

(2d Cir. 1988).  As even the cases cited by PPVA make clear, a brief opportunity to supplement

the Disclosure in compliance with any order of the Court and an extension of the expert

discovery deadline to allow PPVA to depose Dr. Goldberg on expert issues (which it could have

done already)  would be the only appropriate remedies for such a deficiency.

PPVA cites to the *Sofitel* factors in support of its argument, but *all* of the *Sofitel* factors

argue in favor of a remedy far short of a preclusion order even if the Court finds the Disclosure

somehow deficient.  First, as set forth herein, Dr. Goldberg believes that the Disclosure is

sufficient under Fed. R. Civ. P. 26(a)(2)(C).  If the Court finds some deficiency, the deficiency

would be inadvertent, and one that Dr. Goldberg is not aware of.  Moreover, Dr. Goldberg stands ready to remedy any deficiency the Court may identify forthwith.

Second, the expert testimony disclosed in the Disclosure is evidence to be presented in rebuttal to PPVA's expert witness, and is the only such evidence available to Dr. Goldberg. Thus, precluding Dr. Goldberg from providing this testimony will irrevocably prejudice his ability to defend himself at the damages trial.

Third, PPVA will suffer no prejudice to "meet the new testimony."  Because the evidence will be proffered solely in rebuttal to PPVA's damages expert, PPVA already has a witness (the only witness) necessary to contest Dr. Goldberg's testimony – their own expert witness.  Additionally, Dr. Goldberg stands ready to sit for an additional deposition to allow PPVA to investigate and test his proposed expert testimony more fully.

Fourth, the "possibility of a continuance" would fully and fairly remedy any deficiency the Court may find in the Disclosure.  The only scheduling date that has passed that is of any significance to the Disclosure or the case is the deadline for the close of expert discovery, which was March 4, 2024.  *See* Scheduling Order dated February 12, 2024 [Dkt. No. 97] at 1.  And it appears the only reason PPVA did not take Dr. Goldberg's deposition between the date the Disclosure was served (January 4, 2024)  and the expert discovery cutoff (March 5, 2024) was a self-serving hope that doing to would manufacture some form of "prejudice" to justify its preclusion motion.  There was nothing preventing PPVA from taking Dr. Goldberg's deposition within the time permitted int eh Scheduling Order and still bringing this Motion.  However, this case has not been scheduled for trial, and the Court has set a hearing date of April 3, 2024, for the hearing on this Motion.  Thus, the only "continuance" that would even be necessary to address any deficiency would be the setting of a date on which Dr. Goldberg would serve a

supplemented disclosure and the date to complete any additional deposition of Dr. Goldberg that PPVA may wish to take.

Moreover, PPVA's argument that Dr. Goldberg has demonstrated bad faith is baseless. Other than again rearguing, or at least complaining about the Court's order requiring PPVA to produce damages-related documents, and pointing out that the parties agreed to extend the deadline for Dr. Goldberg to serve expert disclosures based on his receipt of a 163,426 page damages production in response to this Court's order requiring PPVA to produce the CohnReznick and other documents, PPVA provides no basis at all to support a bad faith claim. While PPVA may try to characterize the deadline after which Dr. Goldberg would be precluded from disclosing experts as an order to retain a retained expert and produce a full-blown expert report on that date, respectfully, that is not what Dr. Goldberg understood the scheduling order to require. Rather, Dr. Goldberg understood the scheduling order to set a date by which he was required to serve any expert disclosures he determined were appropriate, consistent with the parties' rights to control their own defense of a civil claim such as the one here. And there is no dispute that Dr. Goldberg served his Disclosure within the time provided in the applicable scheduling order.

In light of the Second Circuit's admonition that "[b]efore the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses," an order striking the Disclosure and precluding Dr. Goldberg from providing expert testimony at trial cannot be justified on the facts present here. *See Outley*, 837 F.2d at 591. Rather, at most, the Court should direct Dr. Goldberg to supplement his Disclosure to correct any deficiency identified by the Court and should grant a reasonable extension to the close of expert discovery

21

to allow PPVA to depose Dr. Goldberg on the subject of his expert testimony – actions that Dr.

Goldberg would have readily agreed to in a meet and confer process had PPVA sought to

address substantive issues it had with the Disclosure rather than attempting to gain a substantive

advantage through it contrived, procedural Motion.

**CONCLUSION**

Based on the foregoing, Defendant Dr. Michael Goldberg respectfully requests that the

Court deny PPVA's Motion in its entirety and grant Dr. Goldberg such other and further relief

as the Court deems just and proper.

Dated:  March 22, 2024

LAW OFFICE OF MARK R. KOOK

By: _/s/ Mark. R. Kook_____
      Mark R. Kook
1180 Avenue of the Americas, 8th Floor
New York, NY 10036
Tel.: (917) 673-9869
mkook@kooklaw.com

and

Gregory Zimmer, Esq.
142 New Chalet Drive
Mohegan Lake, NY 10547
Tel.: (914) 402-5683

Attorneys for Defendant