**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P. (IN OFFICIAL LIQUIDATION), *et al*.<br><br>       Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 16-12925 (JPM)<br>(Jointly Administered) |
| PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P.,<br><br>       Plaintiff,<br><br>       vs.<br><br>MICHAEL M. GOLDBERG,<br><br>       Defendant. | Adv. Proc. No. 18-01650 (JPM) |

**PLAINTIFF PLATINUM PARTNERS VALUE ARBITRAGE FUND LP'S
RESPONSE TO DEFENDANT MICHAEL M. GOLDBERG'S POST-TRIAL BRIEF**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ................................................................................................................... 4

I.    Goldberg, Once Again, Impermissibly Tries to Relitigate His Liability for
      Misappropriating the PPVA Warrant. ..................................................................... 4

      A.    The Court's Summary Judgment Decision Is the Law of the Case. ........... 5

      B.    Goldberg Expends Considerable Efforts on an Irrelevant Argument
            that This Dispute Arises from the Term Sheets. ........................................ 9

      C.    Goldberg Did Not Introduce Any New Evidence at Trial that
            Justifies a Different Conclusion as to His Liability. ................................ 10

II.   Goldberg's Challenges to Napier's Valuation of the PPVA Warrant Are
      Baseless. .............................................................................................................. 11

      A.    Napier Properly Valued the PPVA Warrant as a Quantum of
            PPVA's Damages for Goldberg's Misappropriation of the PPVA
            Warrant. ................................................................................................... 11

      B.    Napier Properly Made an Independent Determination of the
            Valuation Date of the PPVA Warrant. ...................................................... 13

      C.    Napier Properly Relied on the Summary Judgment Decision and
            Order in His Valuation. ............................................................................ 13

III.  Goldberg's Own Testimony Is Irrelevant to Damages. ........................................ 16

      A.    Goldberg's Reliance on the Separation Agreements and Publicly
            Filed SEC Documents Is Not Relevant to Damages. ................................ 17

      B.    Goldberg's Testimony Regarding "Additional Considerations"
            Does Not Impact Napier's Valuation of the PPVA Warrant. ..................... 19

IV.   Goldberg Is Not Entitled to Attorneys' Fees. ...................................................... 22

CONCLUSION .............................................................................................................. 24

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arch Ins. Co. v. Precision Stone, Inc.*,
  584 F.3d 33 (2d Cir. 2009)..........................................................................11, 12

*In re Highland Fin. Corp.*,
  216 B.R. 109 (Bankr. S.D.N.Y. 1997) ...................................................6, 8

*Jones v. Midland Funding, LLC*,
  616 F. Supp. 2d 224 (D. Conn. 2009)...................................................12

*Liona Corp. v. PCH Assocs. (In re PCH Assocs.)*,
  949 F.2d 585 (2d Cir. 1991)..................................................................5, 8

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
  232 F. Supp. 3d 558 (S.D.N.Y. 2017).....................................................6, 8

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*,
  937 F. Supp. 276 (S.D.N.Y. 1996) ........................................................6, 8

*Oliveri v. Thompson*,
  803 F.2d 1265 (2d Cir. 1986)................................................................22

*Sagendorf-Teal v. County of Rensselaer*,
  100 F.3d 270 (2d Cir. 1996).................................................................6

*U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3, AFL-CIO*,
  313 F. Supp. 2d 213 (S.D.N.Y. 2004)....................................................12

*United States v. Carr*,
  557 F.3d 93 (2d Cir. 2009).........................................................5, 6, 7, 8

*United States v. Plugh*,
  648 F.3d 118 (2d Cir. 2011)................................................................5, 6

*United States v. United States Smelting Refining & Mining Co.*,
  339 U.S. 186 (1950)...........................................................................6

*United States v. Watts*,
  934 F. Supp. 2d 451 (E.D.N.Y. 2013) ..................................................6

*Westerbeke Corp. v. Daihatsu Motor Co.*,
  304 F.3d 200 (2d Cir. 2002)................................................................6, 8

The current and duly appointed joint official liquidators ("Liquidators") of Plaintiff Platinum Partners Value Arbitrage Fund L.P. (in Official Liquidation) ("PPVA"), in liquidation by way of the Financial Services Division of the Grand Court of the Cayman Islands (cause no. FSD 131 of 2016 (NSJ)), by their undersigned United States counsel, Holland & Knight LLP, respectfully submit this Response to Defendant Michael M. Goldberg's Post-Trial Brief (the "Goldberg Brief").

## **PRELIMINARY STATEMENT**

The Goldberg Brief demonstrates that it was always his intention to turn this trial—one solely focused on the quantum of damages for Goldberg's misappropriation of the PPVA Warrant—into yet another desperate effort to relitigate liability, an issue foreclosed nearly three years ago at summary judgment. At trial, Goldberg failed to offer *any* evidence as to the value of the PPVA Warrant on the date he and Nordlicht backdated a purported assignment of the PPVA Warrant to himself. Instead, his trial strategy and now the Goldberg Brief transparently reargue whether the PPVA Warrant is property of the PPVA estate. Goldberg's arguments in his post-trial brief that three documents purportedly giving him "sole voting and dispositive power" over the PPVA Warrant granted him sole power to sell the PPVA Warrant are meritless and, notably, were previously raised and rejected by Judge Chapman. *See* Dkt. Nos. 46, 50.

As he previously argued in his Motion for Reconsideration, Goldberg again asserts that he had "sole voting and dispositive power" as a result of the Separation Agreements. That argument, however, conveniently ignores Goldberg's own repeated failures to satisfy the conditions precedent to the Separation Agreements having *any* effect. As the Court correctly held at summary judgment, Goldberg's failure to satisfy two conditions precedent explicitly set forth in the Separation Agreements nullified *any* rights he could claim to the PPVA Warrant—including any voting and dispositive powers over the PPVA Warrant. As such, the authority to dispose of the

1

PPVA Warrant was solely vested in PPVA's liquidators as of the commencement of the Cayman Liquidation on August 23, 2016.

Goldberg then relies on the language in PPVA's April 4, 2016 Schedule 13D and Navidea's 2015 fiscal year end Form 10-K as purportedly granting him these "sole voting and dispositive rights." Goldberg previously raised a similar argument in his Motion for Reconsideration, in which he claimed that a different PPVA Schedule 13D, which purportedly provided him "sole voting and dispositive power," vested him with ownership of the shares that were exchangeable for the PPVA Warrant. *See* Dkt. No. 46, at 5, 19. Denying Goldberg's Motion for Reconsideration, Judge Chapman opined that Goldberg attempted to: "(i) relitigate issues previously considered, (ii) present the case under new theories, (iii) secure a rehearing on the merits, or (iv) otherwise take 'a second bite at the apple.'" Dkt. No. 50, at 9. Goldberg is attempting to do the same here. These documents do not change the Court's ruling: Goldberg could not sell, and cannot sell, the PPVA Warrant as of the Cayman Liquidation – this power belongs solely to PPVA's Liquidators.

Citing only his purported "sole voting and dispositive power" over the PPVA Warrant, Goldberg then seeks to undermine the *only* record evidence as to the value of the PPVA Warrant on October 17, 2016 by conflating the issues of ownership with valuation. First, Goldberg claims that Napier did not conduct a "damages" valuation, when the determination of the amount of damages is properly the province of the Court. Second, Goldberg asserts that Napier did not determine his own Valuation Date, which is completely false on the record. Third, Goldberg states that Napier did not consider the documents granting him "sole voting and dispositive power," and instead improperly relied on the Summary Judgment Decision and Order. Yet, Napier testified that any prospective buyer under the Fair Market Value standard, on which his valuation relied,

would consider the same facts and circumstances that the Court considered—including all relevant documents and information—and come to the same conclusion: the PPVA Warrant was the property of PPVA, and only PPVA's Liquidators had authority to dispose of or transfer it.

Goldberg's effort to rebut Napier's analysis through his own self-serving testimony fairs no better. Goldberg's testimony at trial merely offered again the same arguments already considered and rejected by this Court at summary judgment and in his multiple post-summary judgment motions. At bottom, Napier provided a valuation, Goldberg did not, and none of Goldberg's arguments as to liability invalidate Napier's analysis or reduce Napier's valuation in any way.

Finally, Goldberg makes an absurd claim for attorneys' fees without citation to any authority. The record is replete with Goldberg's repeated bad faith tactics throughout this litigation. It is PPVA, not Goldberg, that is entitled to attorneys' fees, as set forth in PPVA's post-trial brief.

Goldberg has entirely failed to rebut the evidence presented at trial as to the scope of damages. As stated in its opening brief, PPVA respectfully requests that the Court enter judgment in its favor as follows:

- $4,069,186.06 in compensatory damages;

- $3,052,224.00 in prejudgment interest;

- $1,253,615.68 in attorneys' fees and costs, plus additional fees and costs incurred in preparation for and during trial[1]; and

- punitive damages to be determined by the Court.

---

[1] PPVA's calculation of its attorneys' fees and costs as presented at trial was current through July 18, 2024. Upon entry of judgment, PPVA will supplement its proof of attorneys' fees and costs in any manner the Court requires to provide an updated bill of costs and fees through judgment.

**ARGUMENT**

Goldberg's liability having been decided at summary judgment, the Court held a trial on the issue of damages on November 19, 2024 and November 20, 2024. As demonstrated in PPVA's Post-Trial Brief, filed on February 14, 2025, PPVA established by a preponderance of evidence the quantum of damages for its claims for turnover, conversion, and unjust enrichment, as well as evidence supporting interest, punitive damages, and PPVA's reasonable costs and attorneys' fees. At trial and in his post-trial brief, rather than offer any rebuttal evidence concerning the quantum of damages owed to PPVA, Goldberg instead chose to focus his efforts on again challenging the Court's Summary Judgment Decision and Order, propounding baseless criticisms of the report and testimony of PPVA's valuation expert, Steven Napier, asserting self-serving and illogical arguments attempting to establish his purported sole dispositive power over the PPVA Warrant, and demanding attorneys' fees to which he is unequivocally not entitled.

## I.    Goldberg, Once Again, Impermissibly Tries to Relitigate His Liability for Misappropriating the PPVA Warrant.

As the Court has held, and the parties have been aware as of the Summary Judgment Decision and Order on May 10, 2022, "the only issue outstanding are the damages arising from the misappropriation of the warrant." Dkt. No. 113, at 16:15-17:4. Accordingly, and as Goldberg apparently recognizes, "[t]he purpose of the Trial was to determine the amount, if any, that [PPVA] should receive based on Judge Chapman's [Summary Judgment Decision and Order], that Dr. Goldberg improperly took possession of [the PPVA Warrant] for the purchase of 5,411,850 shares of common stock of [Navidea] on or about October 17, 2016 and that the Warrant was property of the estate of PPVA." Dkt. No. 139, at 1. Yet, Goldberg has made it clear through his trial strategy and post-trial brief that he does not intend, and never intended, to argue damages *at all*.

4

Indeed, almost the entirety of the Goldberg Brief focuses on an alternative argument—previously raised and rejected by the Court (*see* Dkt. No. 44) —that he, not PPVA, owns the PPVA Warrant and any potential proceeds from its sale to a prospective buyer.  Goldberg argues *ad nauseum* that the Separation Agreements, Platinum's public SEC filings, and the testimony of Joseph SanFilippo and Goldberg himself demonstrate that he was provided "sole dispositive and voting rights" with respect to the PPVA Warrant and its underlying shares of Navidea common stock for which the Warrant could be exchanged.  *See* Dkt. No. 139, at 3.  According to Goldberg, this evidence demonstrates that PPVA did not have the right to sell the PPVA Warrant and did not have a right to its proceeds, and instead had a "limited interest" in the PPVA Warrant.  Goldberg also contends that "PPVA's interest in the Warrant at the time of [the Cayman Liquidation] was commenced excluded the right to sell the Warrant" and that the Separation Agreements "gave Dr. Goldberg sole discretion as to if and when the Warrant could be sold."  *Id*.  Finally, Goldberg claims that "uncontradicted evidence established that PPVA did not have the right to sell the Warrant, and did not have the right to receive the proceeds of a sale of the Warrant by Dr. Goldberg if he elected to sell it or the Navidea common stock into which it was convertible."  *Id*. at 3-4.  These assertions are completely contradictory to the Court's Summary Judgment Decision and Order, and were raised previously by Goldberg in his three post-summary judgment motions, and soundly rejected.  His effort to reargue liability again at trial and in the Goldberg Brief are similarly meritless.

### A.    The Court's Summary Judgment Decision Is the Law of the Case.

The law of the case doctrine provides that, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case."  *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009) (internal quotation marks omitted); *see also United States v. Plugh*, 648 F.3d 118, 123-24 (2d Cir. 2011); *Liona Corp. v. PCH Assocs. (In re PCH Assocs.)*,

949 F.2d 585, 592 (2d Cir. 1991) ("Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation."). Accordingly, "a court may not address issues that have been litigated and decided in earlier proceedings in the same case." *In re Highland Fin. Corp.*, 216 B.R. 109, 113 (Bankr. S.D.N.Y. 1997). The doctrine is "based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." *United States v. United States Smelting Refining & Mining Co.*, 339 U.S. 186, 198 (1950). Moreover, the doctrine is "driven by considerations of fairness to the parties, judicial economy, and the societal interest in finality." *Carr*, 557 F.3d at 102.

The law of the case doctrine "may be properly invoked only if the parties had a full and fair opportunity to litigate the initial determination." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 219 (2d Cir. 2002) (internal quotation marks omitted). The law of the case may be established at summary judgment. *See MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 571 (S.D.N.Y. 2017); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 284-85 (S.D.N.Y. 1996) (holding that issues decided at summary judgment need not be relitigated at trial, rejecting argument that law of the case does not apply to summary judgment motions). While application of the doctrine is "discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment," (*Sagendorf-Teal v. County of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996) (internal quotation marks omitted)), any reconsideration may only be justified in "compelling circumstances." *See United States v. Watts*, 934 F. Supp. 2d 451, 463 (E.D.N.Y. 2013) (citing *Carr*, 557 F.3d at 102); *see also Plugh*, 648 F.3d at 123 (holding that the law of the case doctrine is "subject to limited exceptions made for compelling reasons." (internal quotation marks omitted)). These compelling circumstances

6

"consist[ ] principally of (1) an intervening change in controlling law, (2) new evidence, or (3) the need to correct a clear error of law or to prevent manifest injustice." *Carr*, 557 F.3d at 102.

Here, at summary judgment, the Court analyzed the explicit language of the Separation Agreements and held that the Separation Agreements unambiguously contained two separate conditions precedent (the "Notes Condition" and "Segregated Accounts Condition") to any right of Goldberg to hold a legal or beneficial ownership in the Series B Convertible Preferred Shares (the "Preferred Shares") of Navidea Biopharmaceuticals Inc. ("Navidea") and/or the warrant into which they were exchanged (the "PPVA Warrant"). Dkt. No. 44, at 13, 15-16. Further, the Court found, as a matter of law and undisputed fact, that Goldberg had not satisfied either of these express conditions precedent prior to the commencement of PPVA's Cayman Liquidation on August 23, 2016, following which all authority to dispose of PPVA's assets was vested exclusively in PPVA's Liquidators and the Cayman Court. *Id*. at 19; *see also* Trial Tr. 225:11-226:2 (November 19, 2024). "Accordingly, the obligation to transfer to Goldberg the Preferred Shares, and, subsequently, the PPVA Warrant, was not triggered, and Goldberg **had no live legal right** to the PPVA Warrant as of the commencement of the Cayman Liquidation." *Id*. at 19 (emphasis added).

Moreover, Goldberg ignores a key determination by the Court:

> The timing of any purported satisfaction by Goldberg of both the Segregated Account Condition and Notes Condition is crucial. As of the commencement of the Cayman Liquidation, **no disposition or transfer of PPVA's assets could be made without the approval of the Cayman Court, and only the Liquidators had authority to act on behalf of PPVA**. As such, only if both conditions precedent contained in the Term Sheets were satisfied prior to August 23, 2016 would Goldberg possess a legal right to receive beneficial ownership of the PPVA Warrant. Stated differently, even if the material conditions precedent were in fact satisfied by Goldberg after August 23, 2016**, any transfer of the PPVA Warrant at that time would be void under the Companies Act**.

*Id*. at 16 (emphasis added).

Thus, pursuant to the law of the case doctrine, these decisions are "binding precedent to be followed" (see *In re PCH Assocs.*, 949 F.2d at 592) and the Court need not address these issues because they "have been litigated and decided in earlier proceedings in the same case" (*In re Highland Fin. Corp.*, 216 B.R. at 113). Further, the Court may invoke the law of the case doctrine here because Goldberg has had more than a "full and fair opportunity to litigate the initial determination." *Westerbeke Corp.*, 304 F.3d at 219 (internal quotation marks omitted). The law of the case as to liability was established by the Summary Judgment Decision and Order, which was opposed by Goldberg. *See MF Glob. Holdings Ltd.*, 232 F. Supp at 571; *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 937 F. Supp. at 284-85. Afterwards, Goldberg took three more bites at the apple with his Motion for Reconsideration (*see* Dkt. Nos. 46, 50), Motion for Leave to Appeal (*see* Dkt. Nos. 52, 57), and Motion for Modification (*see* Dkt. Nos. 65, 96), which were all properly denied. Goldberg has not demonstrated any "compelling circumstances" that would justify the Court straying from its prior decisions. Specifically, Goldberg has not identified (1) an intervening change in controlling law; (2) new evidence; or (3) the need to correct a clear error of law or to prevent manifest injustice. *See Carr*, 557 F.3d at 102.

The Summary Judgment Decision and Order is clear. By failing to satisfy the conditions precedent set forth in the unambiguous language of the Separation Agreements, Goldberg does not have, and never has had, any live legal right to the PPVA Warrant. And because he had *no* rights at all to the PPVA Warrant, he had no right to dispose of or transfer the PPVA Warrant, because as of the Cayman Liquidation, that authority solely rested with PPVA's Liquidators due to Goldberg not satisfying the Segregated Accounts Condition and Notes Condition. Any claim by

Goldberg that the Separation Agreements granted him sole dispositive rights over the Warrant flatly contradicts the Court's ruling and violates the law of the case doctrine.

### B.    Goldberg Expends Considerable Efforts on an Irrelevant Argument that This Dispute Arises from the Term Sheets.

There is not, and never was, any dispute that this litigation arises out of the Term Sheets/Separation Agreements. Yet, Goldberg spends considerable space in his post-trial brief making irrelevant and confusing arguments about the enforceability of the Term Sheets.

Goldberg makes irrelevant assertions that the Court in the Summary Judgment Decision and Order never held that the Separation Agreements were "not entirely in force and effect," and that no party to the Separation Agreements or any other person ever asserted that the Separation Agreements were "terminated" or "rescinded." *See, e.g.*, Dkt. No. 139, at 1-2. He also excerpts five words from the Summary Judgment Decision and Order, out of context, and claims that "Judge Chapman, in the Summary Judgment Decision, found that the adversary proceeding 'arises from the Term Sheets.'" Dkt. No. 139, at 2.[2] Finally, Goldberg claims that "[t]here is no dispute, and it is the law of the case, that the parties' respective rights with respect to the warrant are governed by the Amended Separation Agreement." Dkt. No. 139, at 7.

To be clear, PPVA has never disputed the existence or enforceability of the Term Sheets. But those issues are irrelevant to whether the PPVA Warrant belonged to Goldberg as of August 23, 2016. The Term Sheets were enforceable, and Goldberg's right to the PPVA Warrant under the Term Sheets was contingent on and only vested upon his satisfaction of the conditions precedent. Goldberg's entire post-trial brief rests on ignoring those conditions precedent. That was his tactic at summary judgment as well, and the Court has repeatedly made clear that

---

[2] Judge Chapman actually stated: "[n]either party disputes that any purported **entitlement** that Goldberg may have to the Preferred Shares and the PPVA Warrant arises from the Term Sheets." Dkt. No. 44, at 11 (emphasis added).

Goldberg's admitted failure to *ever* satisfy those conditions precedent means he has no live right to the PPVA Warrant. And as of the date PPVA entered liquidation, Nordlicht had no authority to assign him the PPVA Warrant.

**C.    Goldberg Did Not Introduce Any New Evidence at Trial that Justifies a Different Conclusion as to His Liability.**

The Goldberg Brief further contends that the testimony of Joseph SanFilippo, PPVA's former CFO, and the April 4, 2016 Schedule 13D (DX 9) (the "Schedule 13D"), and Navidea's Form 10-K for the fiscal year 2015 (DX 10) (the "2015 Form 10-K") establish Goldberg's sole voting and dispositive power over the PPVA Warrant. None of this evidence justifies overturning the Court's Summary Judgment Decision and Order.

First, SanFilippo acknowledged that he could not testify as to who owned the PPVA Warrant from a legal perspective and could not opine as to the contractual rights and obligations set forth in the Separation Agreements. *See* Trial Tr. 200:12-201:7 (November 19, 2024). Further, it is irrelevant what Platinum's "intention" was with respect to conferring to Goldberg any purported sole dispositive rights over the PPVA Warrant, as the Court has already determined what PPVA and Goldberg's rights are with respect to the disposition or transfer of the PPVA Warrant.

Second, Goldberg's reliance on PPVA's Schedule 13D and Navidea's Form 10-K suffer from the same defect. Notably, Goldberg previously offered and the Court already previously considered Navidea's 2015 Form 10-K at summary judgment. *See* Dkt. No. 30-17.[3] The Court's Summary Judgment Decision and Order was unequivocal: Goldberg had no live right to the PPVA Warrant and Nordlicht had no authority to transfer the PPVA Warrant to Goldberg upon the commencement of the Cayman Liquidation—that authority was vested solely in PPVA's

---

[3] The Navidea Form 10-K was attached as Exhibit 17 to Goldberg's Cross-Motion for Summary Judgment.

Liquidators.  Any testimony by SanFilippo or exhibits introduced regarding Goldberg's purported sole dispositive powers are therefore completely immaterial to Goldberg's legal rights to the PPVA Warrant or his ability to sell it.

## II.    Goldberg's Challenges to Napier's Valuation of the PPVA Warrant Are Baseless.

The Goldberg Brief makes an absurd argument that PPVA did not introduce any evidence as to the value of the PPVA Warrant.  Napier provided a robust valuation of the PPVA Warrant as of October 17, 2016, the date on which the Court determined that Goldberg misappropriated the PPVA Warrant (the "Valuation Date"). Applying standard and accepted valuation principles, Napier's expert report (the "Napier Report") and trial testimony established that the quantum of damages that PPVA is entitled to for its compensatory damages is $4,069,186.06.  Goldberg's attempts to invalidate Napier's analysis are completely unsubstantiated and contrary to the Summary Judgment Decision and Order, as well as the facts established at trial.

### A.    Napier Properly Valued the PPVA Warrant as a Quantum of PPVA's Damages for Goldberg's Misappropriation of the PPVA Warrant.

Goldberg asserts that because Napier testified at trial that he had not conducted a "damages" analysis, his valuation "could, at most, serve as one input into the issue of damages, not an assessment of the amount PPVA was entitled to at trial." Dkt. No. 139, at 9.  This assertion misstates the law on damages and the independent roles of witnesses and the Court in assessing damages.

"Although the amount of recoverable damages is a question of fact, the measure of damages upon which the factual computation is based is a question of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 40 (2d Cir. 2009) (quoting *Wolff & Munier, Inc. v. Whitting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991)).  "Although courts generally permit expert testimony concerning mixed questions of fact and law, the determination of purely legal

11

issues is the exclusive purview of the court . . . This is the case because expert evidence should not be permitted to usurp . . . the role of the trial judge." *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3, AFL-CIO*, 313 F. Supp. 2d 213, 241 (S.D.N.Y. 2004) (internal quotations and citations omitted). Indeed, courts in this District have cautioned experts to avoid making conclusions of law concerning the amount of damages, as "[l]egal conclusions as to ultimate issues generally do not assist the trier of fact because they simply tell the trier of fact what result to reach." *Jones v. Midland Funding, LLC*, 616 F. Supp. 2d 224, 227 (D. Conn. 2009) (quoting *Klaczak v. Consol. Med. Transp. Inc.*, No. 96 C 6502, 2005 WL 1564981, at *8 (N.D. Ill. May 26, 2005)) ("The court cautioned that should [the expert] testify, he must avoid 'mak[ing] legal conclusions regarding any of the four [legal] factors or to opine on the seriousness of the violations or the amount of damages.'").

Accordingly, it is the province of the Court as the fact finder, not Napier, to determine the legal issue of damages. *See Arch Ins. Co.*, 584 F.3d at 40 (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 198 (2d Cir. 2003)) ("[W]hether the district court correctly calculated damages is [thus] a question of law that we review *de novo*."). For this reason, PPVA provided in its Post-Trial Brief and as part of the Joint Pretrial Order the legal standards to measure damages for its claims of turnover, unjust enrichment, and conversion. The Napier Report and his testimony provide the quantum of damages PPVA is entitled to under these legal standards based on the value of the PPVA Warrant at the time it was misappropriated. Goldberg's attempt to undermine Napier's valuation by claiming that he did not provide a "damages" valuation is therefore an incorrect characterization of Napier's role in providing an expert valuation.

**B.      Napier Properly Made an Independent Determination of the Valuation Date
of the PPVA Warrant.**

The Goldberg Brief claims that PPVA dictated the Valuation Date to Napier.  Dkt. No.

139, at 10.  That is incorrect.  Napier testified that he selected October 17, 2016 as the Valuation

Date because "as we read the summary judgment [decision], there was a transaction on that date,

a transfer of the securities on that date.  Given the fact that this is a dispute matter, it seems

intuitively obvious to us that that was the date upon which you needed a valuation.  And of course,

I discussed that with my colleagues."  Trial Tr. 21:13-21 (November 19, 2024).  Further, Napier

testified on cross-examination that he "personally" made "an independent valuation determination

that October 17, 2016 was the appropriate valuation date" because it was "obvious in the summary

judgment that if the valuation is to be performed, it would be performed as of the date of the alleged

transfer in October."  Trial Tr. 51:9-24 (November 19, 2024).  Of course, the October 17, 2016

Valuation Date is completely appropriate, as this was the date on which the Court determined in

its Summary Judgment Decision and Order that Goldberg misappropriated the PPVA Warrant via

a backdated assignment and reissuance of the PPVA Warrant in Goldberg's name.  *See* Dkt. No

44, at 6; PX 026, at ¶¶ 79-90, 92-93; PX 045; PX 015; Stipulated Facts ¶ 15.

**C.      Napier Properly Relied on the Summary Judgment Decision and Order in His
Valuation.**

Goldberg also argues that "PPVA never gave Napier the chance to review the Amended

Separation Agreement," and that he never considered the Schedule 13D and 2015 Form 10-K in

conducting his valuation, which purportedly gave Goldberg sole voting and dispositive rights over

the PPVA Warrant.  Dkt. No. 139, at 10.  The Goldberg Brief then cherry-picks misleading lines

of questioning in which Goldberg's counsel asked Napier whether he considered if "there may

have been some encumbrance" on PPVA's right to sell the PPVA Warrant, if PPVA "did not have

the right to sell" the PPVA Warrant, and if there was an "encumbrance," whether he would need

13

to take this into account in valuing the PPVA Warrant. *Id*. at 11-12. Through this line of questioning, which suggests an alternative version of events completely inconsistent with the Court's Summary Judgment Decision and Order, Goldberg asserts that Napier somehow confirmed that he "performed his valuation ignorant of the encumbrances placed on PPVA's ability to sell the Warrant, which he admitted prevented him from performing an analysis of the value of the Warrant in PPVA's hands." *Id*. at 11. Goldberg further claims, without citing supporting testimony, that Napier "conceded" that these purported "restrictions" "would reduce the value of the Warrant to a *di minimis* amount." *Id*. at 17.

First and foremost, this line of questioning completely derives from the false narrative that only Goldberg, and not PPVA, could sell the PPVA Warrant. At trial, it was another unsuccessful attempt to relitigate liability. Goldberg's questioning at trial as to hypothetical "encumbrances" to PPVA's inability to sell the Warrant and receive its proceeds rests entirely on the incorrect notion that the PPVA Warrant belonged to Goldberg as of the Valuation Date.

Moreover, as Napier testified, the Fair Market Value standard that he applied in his valuation presumes a buyer with "knowledge of all relevant facts" and that any prospective buyer would have conducted due diligence concerning the PPVA Warrant, including with respect to the Separation Agreements and other documents beyond the PPVA Warrant itself. Trial Tr. 42:22-43:1, 104:16-24 (November 19, 2024). Napier further testified that the facts discovered in this due diligence would have been the same facts "baked into" or "subsumed" in the Summary Judgment Decision and Order, in which the Court—considering all relevant evidence and documentation— determined that Goldberg had no live legal right to the PPVA Warrant as of the Valuation Date. *See* Trial Tr. 42:7-44:14; 91:9-22; 104:16-24 (November 19, 2024). Napier was specifically asked on cross-examination whether a prospective buyer, who had reviewed the Separation Agreements,

Schedule 13D, and Form 10-K, would have come to the same conclusion as the Court's Summary Judgment Decision and Order.  In response, Napier stated: "the court has done all the work for them, and this is the conclusion that the prospective buyer would come from.  **PPVA is able to sell the security as of October [17th][4].**"  Trial Tr. 138:16-139:4 (November 19, 2024) (emphasis added).

Goldberg then argues that Napier should not have relied on the Summary Judgment Decision and Order.  Specifically, Goldberg states that the Summary Judgment Decision and Order "never mentions the provision of the Amended Separation Agreement granting Dr. Goldberg sole voting and dispositive rights over the Warrant, or the Schedule 13D or Form 10-K in which PPVA and Navidea, respectively, publicly disclose that he has such rights with respect to the Warrant." Dkt. No. 139, at 16.  However, Napier took this into account when rendering his valuation.  Indeed, Napier testified that "my view is that any and all relevant documents, public or otherwise, were considered by the court . . . So it's very possible that the documents out there that were considered but not—but not specifically mentioned."  Trial Tr. 155:4-156:23 (November 19, 2024).  Moreover, both the Separation Agreements and Form 10-K were submitted as exhibits to the Court as part of the parties' cross motions for summary judgment, and after considering the documents before it, the Court determined that Goldberg had no live legal right to the PPVA Warrant.  *See* Dkt. No. 20-1, at Exs. 2-3; Dkt. No. 30-17.  Napier also testified that the contents of Schedule 13D would be relevant to a prospective purchaser of the PPVA Warrant and considered as part of its

---

[4] The trial transcript appears to contain a transcription error.  As stated in the Napier Report and Napier's trial testimony, Napier's valuation date was October 17, 2016.  The context of this testimony makes clear that Napier testified that PPVA was able to sell the PPVA Warrant as of this Valuation Date, October 17, 2016, not October 27, 2016, as transcribed.

due diligence in determining that the Warrant was the property of PPVA.  *See* Trial Tr. 156:5-157:16 (November 19, 2024).

Thus, Goldberg's claim that Napier did not account for and did not consider any "encumbrances" is completely false, and his valuation is not invalidated in any way.  Consistent with Napier's testimony, the Fair Market Value standard considers a buyer "with knowledge of all relevant facts," which would include the Separation Agreements, PPVA's Schedule 13D, and Navidea's Form 10-K, which a prospective buyer would consider as part of its due diligence.  According to Napier, these prospective buyers would come to the same conclusion as the Court in its Summary Judgment Decision and Order: the Warrant was PPVA's property and PPVA had the live legal right to dispose of or transfer it.  *See* Trial Tr. 45:9-20; 86:17-87:16 (November 19, 2024).

Finally, Goldberg completely mischaracterizes Napier's testimony in asserting that Napier testified that the consideration of any "encumbrances" or "restrictions" would reduce his valuation of the PPVA Warrant "to a *di minimis* amount."  *See* Dkt. No. 139, at 17.  To support this argument, Goldberg cites testimony in which counsel asked Napier a hypothetical situation in which PPVA does not have the right to sell the PPVA Warrant, contrary to the Court's Summary Judgment Decision and Order.  In light of this false assumption, Napier testified that this would have a negative impact on the value of the PPVA Warrant or would affect the value of the PPVA Warrant because "you're not going to be willing to pay as much as to PPVA . . . because they don't own the asset."  Dkt. No. 139, at 17-18.  At no point did Napier ever state that, in reality, the PPVA Warrant would be valued at a *di minimis* amount.

### III.    Goldberg's Own Testimony Is Irrelevant to Damages.

Goldberg, serving as his own expert, did not offer a rebuttal valuation of the PPVA Warrant.  Instead, his testimony and post-trial brief self-servingly argue that the value of the PPVA

Warrant would be reduced due to his purported sole dispositive rights.  Dkt. No. 139, at 19.  Once

again, Goldberg relies on the language in the Separation Agreements, Schedule 13D, and Form

10-K to claim that a prospective buyer would not purchase the PPVA Warrant because they would

not know when Goldberg would approve such a sale.

A. **Goldberg's Reliance on the Separation Agreements and Publicly Filed SEC Documents Is Not Relevant to Damages.**

The documents on which Goldberg relies to assert his purported sole dispositive rights do

not establish that he had the power to sell the PPVA Warrant or exchangeable Navidea common

stock and in fact show that PPVA owned the PPVA Warrant.  As the Court determined in its

Summary Judgment Decision and Order, pursuant to the explicit language of the Separation

Agreements, on which Goldberg relies, Goldberg did not satisfy the Segregated Accounts

Condition and Notes Condition and therefore had no live legal right to the PPVA Warrant as of

the commencement of the Cayman Liquidation on August 23, 2016, and the sole authority to

dispose of or transfer the PPVA Warrant rested with PPVA as of this date.  Navidea's Schedule

13D states that on August 20, 2015, "PPVA exchanged 4,519 shares of Navidea's Series B

Convertible Preferred Stock for Warrants to acquire an aggregate of 14,777,130 shares of Common

Stock at an exercise price of $0.01."  DX 9, at 8; Trial Tr. 206:21-207:21 (November 19, 2024).

This language indicates that PPVA, not Goldberg, exchanged its Preferred Shares for possession

of the PPVA Warrant.  And Goldberg acknowledged at trial that the 2015 Form 10-K stated that:

"[t]o the Company's knowledge, Dr. Goldberg has not filed any report under Section 16(a)

[Beneficial Ownership Reporting Compliance] with respect to the securities of the Company that

he as [sic] a right to acquire from Platinum." *See* DX 10, at 56 (emphasis added); Trial Tr. 108:7-

109:23 (November 20, 2024).  Goldberg further testified that this Form 10-K reported that

Goldberg had beneficial ownership of 331,572 shares of Navidea common stock, but only "the

17

*right to acquire*" the 5,411,850 shares into which the PPVA Warrant could be exchanged. *See* DX 10, at 74 (emphasis added); Trial Tr. 109:24-110:25 (November 20, 2024).[5]

Further, the Goldberg Brief completely ignores a multitude of other documents demonstrating that the PPVA Warrant was the property of PPVA. For instance, the August 20, 2015 Securities Exchange Agreement ("SEA") entered into between PPVA and Navidea listed PPVA as the "investor" holding the 1,655 Preferred Shares that were exchanged for the PPVA Warrant. PX 006, at 5, 13; Trial Tr. 160:22-161:18 (November 19, 2024). These were the same 1,655 Preferred Shares provided for in the Separation Agreements. *See* DX 1 & DX 2, at Schedule 1; Trial Tr. 98:10-100:10 (November 20, 2024). Goldberg was a member of the Navidea board of directors when it voted to approve the SEA, and at the time of his vote, he was aware of and never raised any concerns regarding PPVA being listed as the holder of the 1,655 Preferred Shares. Trial Tr. 100:11-103:2 (November 20, 2024). The PPVA Warrant itself moreover listed PPVA as the holder of the instrument. Stipulated Facts ¶ 12.

After the SEA was executed, Navidea filed various documents with the SEC indicating that PPVA, and not Goldberg, was the holder of the PPVA Warrant. For example, Goldberg confirmed at trial that on April 29, 2016, Navidea filed a Form 4 Statement of Changes in Beneficial Ownership on Goldberg's behalf stating that he beneficially owned 359,572 shares of Navidea common stock. *See* PX 010; Trial Tr. 103:10-104:12 (November 20, 2024). Goldberg also testified that a subsequent Form 4 filed by Navidea on July 7, 2016, again on Goldberg's behalf, stated that Goldberg beneficially owned 403,152 shares of Navidea common stock. *See* PX 011; Trial Tr. 104:13-105:21 (November 20, 2024). These public filings make no reference to the

---

[5] Goldberg signed this document in his capacity as a director of Navidea. Trial Tr. 108:7-18 (November 20, 2024); DX 10, at 83.

PPVA Warrant or the 5,411,850 shares of Navidea common stock for which the Warrant could be exchanged.

While it is obvious that Goldberg introduced the 2015 Form 10-K and Schedule 13D in an effort to relitigate liability, to the extent that they have any bearing on the assessment of damages, these documents do not reduce or otherwise rebut Napier's valuation. As Napier testified, the documents relied on by Goldberg and the other relevant public documents introduced at trial would be considered by a prospective buyer of the PPVA Warrant, and that prospective buyer would come to the same conclusion as the Court in its Summary Judgment Decision and Order: the PPVA Warrant was the property of PPVA, and PPVA had the ability to sell it.

**B.      Goldberg's Testimony Regarding "Additional Considerations" Does Not Impact Napier's Valuation of the PPVA Warrant.**

The Goldberg Brief also states that Napier "never addressed" additional considerations that would have been incorporated into the Fair Market Value standard. None of the testimony cited to support these "additional considerations" proves the arguments set forth in the Goldberg Brief. Notably, Goldberg now proffers "additional considerations" *not* offered at trial, and therefore not considerable by the Court. These "additional considerations" are also refuted by the Summary Judgment Decision and Order and through Napier's testimony.

First, the Goldberg Brief claims that Goldberg testified that "public disclosures made clear that PPVA's estate, which was in the control of the Liquidators as of the Valuation Date, held many times more shares of Navidea stock than those represented by the Warrant, and the fact that a Liquidator's sole mandate is to liquidate the estate's assets meant that those shares would also be sold and would affect the price of Navidea stock and the Warrant." Dkt. No. 139, at 21. This assertion is not supported by the record. Goldberg broadly testified that a prospective buyer "would need to know . . . how many other shares" the Liquidators possessed, "and what is their

19

plan for those other shares." Trial Tr. 53:15-55:9 (November 20, 2024). He further testified that he never actually determined the number of shares the Liquidators held. *See id*. Goldberg did not testify, and no evidence was introduced at trial, concerning the number of Navidea shares the Liquidators held or how that would affect the price of Navidea common stock.

Second, the Goldberg Brief states that Goldberg testified that Napier's assumption that Navidea would immediately register shares after a sixth-month holding period is "implausible" because Navidea disclosed that Goldberg had sole dispositive rights to the PPVA Warrant. Dkt. No. 139, at 21-22. This argument is completely refuted because Goldberg had no legal or beneficial right to the PPVA Warrant as of the commencement of the Cayman Liquidation, and only PPVA had the authority to transfer or dispose of the PPVA Warrant. Moreover, Goldberg's testimony does not support this assertion. Instead, Goldberg testified that Navidea would not be required to register the shares, "registering the shares [is] expensive," and assuming the PPVA Warrant does not include registration rights, Navidea would not register the shares. *See* Trial Tr. 57:18-60:12 (November 20, 2024). But Goldberg completely contradicted this testimony by stating on cross-examination that he does not know whether Navidea would register the underlying shares after a purchaser exercised the PPVA Warrant. *See* Trial Tr. 121:15-122:2 (November 20, 2024). Any additional argument by Goldberg that Navidea never registered a large block of common shares at the request of an investor (*see* Dkt. No. 139, at 22 n.5) is also disposed of by this testimony, as Goldberg confirmed that he had no knowledge as to whether Navidea would register shares exercised by the holder of the PPVA Warrant.

As established at trial, Napier followed the most commonly accepted approach for valuing securities like the Navidea common shares in calculating a 180 day registration period for the shares to be registered to the market, taking into account applicable safe harbor provisions. *See*

20

PX 029, at 19-20; Trial Tr. 35:2-22; 37:25-38:4 (November 19, 2024). Goldberg does not dispute Napier's analysis or reliance on standard valuation principles. Thus, Goldberg's arguments concerning the registration period of Navidea common stock are baseless.

Third, the Goldberg Brief claims that Goldberg noted that "investors savvy enough to consider purchasing a warrant for in excess of five million shares of Navidea common stock would know that the most efficient way to purchase such a block of stock would be to negotiate a discount to its trading price or additional rights directly with Navidea." Dkt. No. 139, at 22. Again, Goldberg did not testify to this effect. Goldberg merely testified that an investor may go to Navidea to buy the shares directly and "you probably have an opportunity to get some kind of a preferred position convertible [into] warrants." See Trial Tr. 62:17-64:3 (November 20, 2024). Goldberg also testified that Navidea "would gladly issue stock way below the market with all kinds of bells and whistles." See Trial Tr. 68:17-71:21 (November 20, 2024). The record shows that Goldberg never testified to any "efficiency" in buying Navidea common stock on the open market or that an investor would "negotiate a discount" with Navidea.

Finally, the Goldberg Brief states that Goldberg testified that "a purchaser who wanted to purchase Navidea stock could purchase freely tradeable registered shares of Navidea in the open market for market price and that no reasonable investor would pay market price (or more than a *di minimis* amount) for the Warrant." Dkt. No. 139, at 22. Yet, Goldberg admitted that a prospective buyer would purchase the PPVA Warrant for the "right price" at the "right discount." *See* Trial Tr. 67:10-68:3; 124:20-125:8 (November 20, 2024). Although he claimed that this discount would be "massive," Goldberg did not offer any evidence demonstrating the value of this discount, such as a discount for lack of marketability ("DLOM") (*see* Trial Tr. 118:11-21; 125:9-10 (November

20, 2024)), valuation principles that would be relevant to this discount, or any supporting documents and testimony besides his own self-serving statements.

On the other hand, Napier applied a DLOM to the unadjusted fair market value of the PPVA Warrant, taking into account the standard registration period and blockage discount applied by valuation professionals to determine the value of the PPVA Warrant as of his Valuation Date. *See* PX 029, at 19-22; Trial Tr. 35:2-22; 37:25-39:7 (November 19, 2024). Napier confirmed this DLOM by analyzing two private investment in public equity ("PIPE") transactions to confirm that his calculated DLOM range was similar to how other similar securities behaved. PX 029, at 24-25; Trial Tr. 40:4-16 (November 19, 2024). Goldberg's baseless testimony regarding a "massive discount," with no supporting evidence or analysis, does not challenge Napier's valuation based on accepted valuation principles.

## IV.    Goldberg Is Not Entitled to Attorneys' Fees.

The Goldberg Brief makes an unsubstantiated throwaway claim for attorneys' fees. This claim is improper on its face: Goldberg does not even attempt to provide a legal basis for his claimed right to attorneys' fees. As stated in PPVA's Post-Trial Brief supporting its claim for attorneys' fees against Goldberg, a court may award attorneys' fees when the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986) (citing *F.D. Rich Co., Inc. v. United States ex rel. Indus. Lumber Co., Inc.*, 417 U.S. 116, 129 (1974)). The Goldberg Brief does not provide this standard or explain how it applies to PPVA's conduct.

Instead, Goldberg baselessly asserts that Napier was "kept in the dark" regarding Goldberg's purported sole dispositive rights to the PPVA Warrant and relied on the Summary Judgment Decision. Goldberg then claims that "PPVA knew all along that it never suffered any damages" and that "PPVA's willful failure to prove that it suffered any actual damages here should

22

require PPVA to pay Dr. Goldberg his attorney fees and costs of this Trial." Dkt. No. 139, at 23-24. Napier was never "kept in the dark" regarding documents purporting to provide Goldberg sole dispositive rights, which are completely irrelevant to the determination of damages here. Napier properly relied on the Summary Judgment Decision and Order which, after considering all relevant documents, unequivocally held that Goldberg had no live right to the PPVA Warrant. As Napier testified, the documents analyzed by the Court in entering its Summary Judgment Decision and Order would have been relevant to a prospective buyer considering "all facts and circumstances" under the Fair Market Value standard. *See* Trial Tr. 91:9-22 (November 19, 2024).

Moreover, Goldberg's assertion that "PPVA knew all along that it never suffered any actual damages" is absurd. PPVA proved Goldberg's liability for misappropriating the PPVA Warrant at summary judgment. PPVA then promptly proceeded to expert discovery to prove its damages for Goldberg's misappropriation, the only remaining issue in the case. *See* Dkt. No. 113, at 16:18-21. PPVA retained an expert to provide a valuation for the damages to which it was entitled, and this expert provided a valuation of the PPVA Warrant that was determined to be the property of PPVA to which Goldberg had no legal right.

Meanwhile, Goldberg and his counsel did everything in their power to prolong this litigation by attempting to relitigate the Court's Summary Judgment Decision and Order on three separate occasions. *See* Dkt. Nos. 46, 52, 65. Goldberg then offered himself as an expert, never provided a valuation or assessment of his damages, and re-litigated liability at trial under the guise that he somehow possessed "sole dispositive rights" to PPVA's property. PPVA has litigated this matter in good faith, and Goldberg has attempted to turn this trial into a wasteful circus of re-litigation. Consequently, it is PPVA, not Goldberg, who is entitled to attorneys' fees, as set forth in PPVA's post-trial brief.

## **CONCLUSION**

Goldberg has presented no evidence refuting PPVA's claim for damages for Goldberg's misappropriation of the PPVA Warrant, or the amount of damages PPVA proved it was entitled to at trial. Consequently, PPVA is entitled to damages in the amount of: (a) $4,069,186.06, reflecting the value of the PPVA Warrant as of October 17, 2016; plus (b) $3,052,224.00 as prejudgment interest accrued since that date; plus (c) at least $1,253,615.68 in attorneys' fees and expenses incurred in prosecuting PPVA's claims against Goldberg to date; plus (d) punitive damages in an amount to be determined by the Court.

Dated: February 28, 2025
     New York, New York

_/s    Robert J. Burns_____
    Warren E. Gluck, Esq.
    Robert J. Burns, Esq.
    Qian (Sheila) Shen, Esq.
    Noah W.S. Parson, Esq.
    HOLLAND & KNIGHT LLP
    787 Seventh Avenue
    New York, NY 10019
    warren.gluck@hklaw.com
    robert.burns@hklaw.com
    qian.shen@hklaw.com
    noah.parson@hklaw.com
    Tel:    (212) 513-3200
    Fax:    (212) 385-9010